| | |
|---|---|
| David S. Meyer (*pro hac vice* pending) <br> Jessica C. Peet (*pro hac vice* pending) <br> **VINSON & ELKINS LLP** <br> The Grace Building <br> 1114 Avenue of the Americas, 32nd Floor <br> New York, New York 10036-7708 <br> Telephone:	(212) 237-0000 <br> Facsimile:	(212) 237-0100 | Matthew J. Pyeatt (*pro hac vice* pending) <br> Trevor G. Spears (*pro hac vice* pending) <br> **VINSON & ELKINS LLP** <br> Trammell Crow Center <br> 2001 Ross Avenue, Suite 3900 <br> Dallas, TX 75201 <br> Telephone:	(214) 220-7700 <br> Facsimile:	(214) 220-7716 |

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:	(804) 644-1700
Facsimile:	(804) 783-6192

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re: | ) <br> ) | Chapter 11 |
| ENVIVA INC., *et al.*, | ) <br> ) | Case No. 24–10453 (BFK) |
| Debtors.[1] | ) <br> ) <br> ) | (Joint Administration Requested) |

**DECLARATION OF**
**MARK RAJCEVICH IN SUPPORT OF THE MOTION**
**OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION**
**FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS**
**AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,**
**(III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES,**
**(IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

I, Mark Rajcevich, declare the following under 28 U.S.C. § 1746:

---

[1] Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been requested, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/enviva. The location of the Debtors' corporate headquarters is: 7272 Wisconsin Avenue, Suite 1800, Bethesda, MD 20814.

1. I am a Managing Director based in the Chicago office of Alvarez & Marsal North America, LLC ("**A&M**"). I am over the age of twenty-one years, and if called upon to testify, I would testify competently to the facts and opinions set forth in this declaration (the "**Declaration**").

2. A&M is the proposed financial advisor for the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases. A&M and its affiliates comprise a leading international advisory services firm with approximately 9,000 employees in locations around the world.

3. A&M has significant experience assisting distressed companies with (a) restructurings and turnaround management, (b) litigation support, (c) mergers and acquisitions, (d) interim management, (e) regulatory and risk advisory, (f) capital markets advisory, (g) tax advisory, (h) financial management and financial and strategic guidance, and (i) performance improvement services and solutions. A&M provides a wide range of debtor advisory services targeted at stabilizing and improving a company's financial position, including: developing or validating forecasts, business plans, and related assessments of strategic position; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring transactions. Additionally, A&M provides advice on specific aspects of the turnaround process and helps manage complex constituency relations and communications. A&M often works alongside company management and key constituents during chapter 11 restructurings to develop a feasible and executable plan of reorganization.

4. I have more than 20 years of experience in advising companies throughout the United States in distressed and bankruptcy-related situations, including public companies. Prior to joining A&M in 2006, I worked for four years in FTI Consulting's restructuring practice and for

2

two years in PricewaterhouseCoopers' Business Recovery Services practice. I hold a bachelor's degree (with high honors) in Finance from the University of Illinois.

5. My primary focus at A&M includes: (a) assessing and modeling financial and operational restructuring strategies; (b) cash-flow forecasting; (c) formulating business plans and related financial projections; (d) implementing cost-cutting and liquidity management measures; and (e) assisting and advising companies through the chapter 11 process, asset dispositions, and wind-downs. I have advised both public and private companies across various industries, including energy, manufacturing, consumer retail, automotive, homebuilding, and real estate development, among others. I have led or otherwise been actively involved in large and complex matters involving the restructuring or reorganization of a multitude of companies, including the following proceedings: *In re Gulfport Energy Corp.*, Case No. 20-35562 (DRJ) (Bankr. S.D. Tex. Nov. 13, 2020); *In re California Resources Corp.*, Case No. 20-33568 (DRJ) (Bankr. S.D. Tex. July 15, 2020); *In re Revlon Inc.*, Case No. 22-10760 (DSJ) (Bankr. S.D.N.Y. June 16, 2022); *In re iHeartMedia Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. Mar. 15, 2018); *In re Chisholm Oil & Gas Operating, LLC*, Case No. 20-11593 (BLS) (Bankr. D. Del. June 17, 2020); *In re Legacy Reserves Inc.*, Case No. 19-33395 (MI) (Bankr. S.D. Tex. June 18, 2019); *In re Stone Energy Corp.*, Case No. 16-36390 (MI) (Bankr. S.D. Tex. Dec. 14, 2016); *In re Penn Virginia Corp.*, Case No. 16-32395 (KLP) (Bankr. E.D. Va. May 12, 2016); and *In re Vantage Drilling Int'l*, Case No. 15-12422 (BLS) (Bankr. D. Del. Dec. 3, 2015). My company-side experience includes the provision of a broad range of financial advisory services, including the preparation and review of financial projections and liquidity and liquidation analyses. I also have represented creditor constituencies in various restructuring transactions.

6. In June 2023, Enviva Inc. and its Debtor (as defined below) and non-Debtor affiliates (collectively, the "*Company*") engaged A&M to provide financial advisory services to the Company. In August 2023, the scope of A&M's engagement was expanded to include restructuring advisory services, including, among other things, assisting the Company in developing a long-term business plan and evaluating and exploring solutions for its balance-sheet and liquidity challenges. Through this engagement, I have become familiar with the Company's day-to-day operations, business and financial affairs, capital structure, liquidity needs, and books and records.

7. On the date hereof (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Eastern District of Virginia (the "*Court*").

8. I am authorized on behalf of the Debtors and A&M to make this Declaration. All statements set forth in this Declaration are based upon: (a) my personal knowledge, belief, or opinion; (b) information learned from my review of the Company's records; (c) information supplied to me or verified by the Company's employees or advisors and/or employees of A&M working directly with me or under my supervision, direction, or control; and/or (d) my knowledge, skill, education, experience, and/or training concerning financial matters including restructuring. Unless otherwise indicated, any financial information contained in this Declaration is unaudited and subject to change, but is accurate to the best of my knowledge. Such financial information is presented on a consolidated basis for the Company, except where specifically noted.

9. As set forth in greater detail below, I believe that without immediate access to cash collateral and debtor-in-possession financing ("*DIP Financing*"), the Debtors would suffer immediate and irreparable harm to the detriment of their businesses, estates, and stakeholders.

**BACKGROUND**

10. A&M has worked closely with the Debtors and their management team to provide a variety of financial advisory services, with a focus on operational and liquidity concerns, including, among other things: (a) reviewing and analyzing the Company's business, operations, and financial projections; (b) evaluating the Debtors' cash-flow projections and liquidity needs; (c) developing a long-term business plan for the Debtors; (d) contingency planning, (e) assisting with electronic data collection and responses to diligence requests from the Debtors' stakeholders and other parties in connection with capital-raising initiatives and other negotiations; (f) meeting and negotiating with counterparties to the Debtors' long-term offtake contracts to enhance the profitability metrics thereunder; (g) assisting the Debtors in their communications strategy with outside parties, including the Debtors' customers and suppliers; (h) working with the Debtors and their other Advisors in evaluating proposed financing alternatives, initially focused on a bridge loan so that certain contract renegotiation efforts would have time to progress, but later involving potential in- and out-of-court financing alternatives; (i) negotiating a restructuring support agreement; (j) assisting the Company in preparing for the chapter 11 filing; and (k) as part of preparing for the chapter 11 cases, analyzing and advising on various terms of debtor-in-possession financing for the Company to assist it in obtaining the most competitive terms and conditions available to the Company.

11. I have participated in numerous meetings with the Debtors and their professional advisors to, among other things, assess and discuss the Debtors' need for, and access to, certain financing alternatives, including DIP Financing. A&M also worked closely with the Debtors and their advisors regarding key terms of the RSA (as defined below), including the related terms of the proposed DIP Facility and the proposed milestones contained therein.

12. As is further detailed in the *Declaration of Christian Tempke in Support of the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, filed contemporaneously herewith, the Debtors and their other Advisors negotiated in good faith and at arm's length with multiple potential financing parties over the course of several months regarding the parameters of in-court and out-of-court alternatives that may be available to the Debtors, initially with a focus on bridge financing but later expanding to include more comprehensive in and out-of-court options. Ultimately, the Debtors reached agreement in principle with the Ad Hoc Group during the early weeks of February 2024, and entered into the RSA with the Ad Hoc Group on March 12, 2024.

## THE DEBTORS' LIQUIDITY NEEDS

13. In the weeks and months leading up to the Petition Date, my team and I worked diligently to develop a comprehensive understanding of the Debtors' liquidity profile, customer contracts, accounts receivable, and trade payables. Over time, A&M and the Company's other professional advisors also began evaluating the magnitude of the potential need for DIP Financing during chapter 11 cases within a range of potential case lengths. As part of this process, the A&M team prepared the DIP Budget (which is attached to the DIP Motion) which I believe contains a reasonable estimate of the Debtors' cash needs.

14. The Company's postpetition operations in the near-term will not generate sufficient cash to continue operations in the ordinary course while funding the expenses associated with these chapter 11 cases and the administrative costs incurred in connection therewith. Accordingly, the

Debtors require immediate access to DIP Financing and authority to use cash collateral to maintain sufficient liquidity to operate and to preserve and maximize value for their stakeholders. Without access to cash collateral and the DIP Facility, the Company would suffer immediate and irreparable harm because it would be unable to make payments necessary to maintain its operations or fund the payments requested as part of the First Day Motions (which I address in more detail in a separate declaration). The DIP Facility and use of cash collateral are needed to fund, among other things, payroll, tax payments, utility deposits, and critical vendor payments, including construction payments for the Epes facility which is a key component of the Debtors' business plan.

15. Based on my understanding of the Company's current financial condition and liquidity projections, I believe the DIP Facility, combined with the use of cash collateral and projected results from operations, will be necessary and sufficient to facilitate the Company's operations, meet the Company's liquidity needs during these chapter 11 cases, including as proposed in the First-Day Motions, and maximize the value of their estates for the benefit of creditors and all stakeholders. Specifically, I believe the proceeds of the DIP Loans and Notes will allow the Debtors to reorganize in accordance with the specific milestones and timelines set forth in the RSA, which I believe will minimize administrative costs associated with these chapter 11 cases and maximize value for creditors and other stakeholders. Accordingly, I believe entering into the DIP Facility and obtaining the consensual use of cash collateral are in the best interest of the Debtors and their estates, and reflect a sound exercise of the Debtors' business judgment. I likewise believe that without immediate access to the interim draw on the DIP Facility, the Debtors will face imminent and irreparable harm.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on March 13, 2024

                                           */s/ Mark Rajcevich*
                                           Mark Rajcevich
                                           Managing Director
                                           Alvarez & Marsal North America, LLC