UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| ENVIVA INC., e*t al.*, ) | Case No. 24-10453-BFK |
| ) | Chapter 11 |
| ) | (Jointly Administered) |
| ) | |
| Debtors. ) | |
| _____ ) | |

**MEMORANDUM OPINION AND ORDER
DENYING DEBTORS' APPLICATION TO
EMPLOY VINSON & ELKINS L.L.P.**

This matter is before the Court on the Debtors' Application to Employ Vinson & Elkins L.L.P. ("V&E") as counsel for the Debtors in Possession pursuant to 11 U.S.C. § 327(a). Docket No. 183. The Application is supported by the Declaration of David S. Meyer, and Mr. Meyer's two Supplemental Declarations. Docket Nos. 183, 442, 481. The U.S. Trustee filed an Objection to the Application, and a Brief in Support of its Objections. Docket No. 273, 440. The Court heard the evidence and the parties' arguments on May 9, 2024. For the reasons stated below, the Court will deny the Application.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

*A. The Debtors.*

1.      Enviva, Inc. and its affiliates (collectively, "Enviva," or "the Debtors") filed Voluntary Petitions under Chapter 11 with this Court on March 12, 2024. Docket No. 1. The cases are being jointly administered. Docket No. 84.

2.      The Debtors are "the world's largest producer of industrial wood pellets, a

1

renewable and sustainable energy source produced by aggregating a natural resource—predominantly waste wood fiber—and processing it into a transportable form." Docket No. 27, Nunziata Decl. ¶ 6. The Debtors "[own] and [operate] ten industrial-scale wood-pellet production plants located in Virginia, North Carolina, South Carolina, Georgia, Florida, and Mississippi." *Id.* at ¶ 7. They have been "developing and constructing two additional plants; the first near Epes, Alabama, and the second near Bond, Mississippi." *Id.*

    B. *The First Day Hearing.*

3. The Court held a first day hearing in the case on March 14, 2024. At that time, no creditors committee had been appointed.

4. The Debtors sought approval on an interim basis of Debtor in Possession financing (the "DiP Facility") in the amount of $500 million, $150 million of which was to be disbursed immediately upon entry of the Interim Order approving the DiP Facility. Docket No. 24.

5. The lenders under the DiP Facility are known as the Ad Hoc Group. The Ad Hoc Group consists of 75% of the holders of Prepetition Senior Secured Debt, 95% of the holders of the Debtors' 6.50% 2026 Notes, 78% of the holders of the Debtors' Epes Bonds, 45% of the holders of the Debtors' Bond Green Bonds, and 5,073,753 shares of common stock in Enviva, Inc. Docket No. 442, Meyer Suppl. Decl. ¶ 22.[1]

6. The Court approved the DiP Facility, but both the Court and the U.S. Trustee questioned the Debtor's proposal to pay $4.6 million of tax and other liabilities for a non-debtor entity known as Enviva Wilmington Holdings, LLC ("EWH"). Docket No. 7, Motion of Debtors

---

[1] The Ad Hoc Group also has entered into a Restructuring Support Agreement ("RSA") with the Debtors, which has not yet been presented to the Court for approval. The Debtors also have entered into a separate RSA with the holders of 45% of its Bond Green Bonds.

for Entry of Interim and Final Orders (I) Authorizing the Payment of Certain Prepetition Taxes and Fees; and (II) Granting Related Relief, p. 9.

7. The Debtors withdrew their request to pay the $4.6 million in EWH obligations at the hearing. Docket No. 128, Hrg. Tr. 51:15-19.

8. One of V&E's current clients, John Hancock, is a member of EWH. Docket No. 481, Meyer Second Suppl. Decl. ¶ 6. As such, John Hancock would have benefitted indirectly from the proposed payment of the $4.6 million on behalf of EWH.

C. *Final Approval of the DiP Facility.*

9. The Court heard the Debtors' Motion for final approval of the DiP Facility on May 1, 2024. The Official Committee of Unsecured Creditors ("the Committee") objected to several features of the DiP Facility. Docket Nos. 375, 390.

10. By the time of the hearing on final approval of the DiP Facility, the Debtors and the Committee resolved all the Committee's concerns, except for one. An unusual feature of the DiP Facility involved granting existing equity holders the opportunity to subscribe to up to $100 million of the DiP Facility (with the Ad Hoc Group backstopping the entire $500 million). Docket No. 128, Hrg. Tr. 30:1-13. By the time of the hearing, this opportunity was fully subscribed.

11. The Court approved the DiP Facility and overruled the Committee's Objections with respect to the $100 million subscription feature. Docket No. 457.

12. As later disclosed in connection with the V&E Application (below), certain members of the Ad Hoc Group are also clients of V&E.

D. *The V&E Application.*

13. On March 27, 2024, the Debtors filed an Application for Entry of an Order Authorizing the Retention and Employment of Vinson & Elkins L.L.P. as Attorneys for the Debtors and Debtors in Possession Effective as of the Petition Date. Docket No. 183 ("the V&E Application"). The Application was supported by a Declaration from Mr. Meyer. *Id.*

14. The Debtors also filed an Application to Employ Kutak Rock LLP as Co-Counsel for the Debtors. Docket No. 187. The Court approved the Kutak Rock Application on April 12, 2024. Docket No. 319.

15. On April 3, 2024, the Court entered an Order Continuing the Hearing on the V&E Application, noting that V&E had disclosed: (a) that it represents certain Officers and Directors of the Debtors in shareholder and derivative litigation; and (b) that it represents the Riverstone entities, which are equity security holders in the Debtors (discussed below). Docket No. 224. *See also* Docket No. 183, Meyer Decl. pp. 9-11. The Court further noted that V&E had not discussed any ethical walls in its Application. Docket No. 224.

16. On April 10, 2024, the U.S. Trustee filed an Objection to the V&E Application. Docket No. 273. On May 2, 2024, the U.S. Trustee filed a Supplemental Brief in support of his Objection. Docket No. 440.

17. The Debtors filed a Reply Brief, and Mr. Meyer filed a Supplemental Declaration in support of the V&E Application. Docket Nos. 441, 442.

18. On May 8, 2024, Mr. Meyer filed a Second Supplemental Declaration. Docket No. 481.

19. At the hearing on the V&E Application, the parties stipulated to the admission of U.S. Trustee Exhibits 101-119, and the Debtors' Exhibits 1-20. Docket No. 532, Hrg. Tr. 5:1-7.

E. *V&E's Representation of Members of the Ad Hoc Group.*

20. Mr. Meyer disclosed in his first Supplemental Declaration that V&E represents certain members of the Ad Hoc Group in unrelated matters. Docket No. 442, Meyer Suppl. Decl. ¶¶ 21-24. Specifically, V&E represents Ares Management, LLC, Morgan Stanley & Co., LLC, Oaktree Capital Management, LP, and Monarch Alternative Capital LP. *Id*. at ¶¶ 25-28.

21. The U.S. Trustee asserts that V&E failed to disclose its connection with Oaktree, and that the U.S. Trustee discovered this connection on its own. Docket No. 440, p. 4.[2]

22. The Monarch representation is notable because it began in April 2024, after V&E filed the Petitions in this case on behalf of the Debtors. Docket No. 442, Meyer Suppl. Decl. ¶ 28.

*F. V&E's Representation of the Officers and Directors.*

23. V&E represents several of the Debtors' Officers and Directors in shareholder and derivative litigation. Docket No. 183, Meyer Decl. ¶ 21, 22.

24. The cases are currently stayed, at least as to the Debtors.

25. V&E will be compensated for its representation of the Officers and Directors through insurance policies. *Id.* at ¶ 22.

26. The Officers and Directors maintain that they are entitled to indemnity from the Debtors. *Id*. at ¶ 18.

27. The U.S. Trustee argues that V&E's representation of the Officers and Directors represents a conflict because the Ad Hoc Group RSA provides that the Debtors' management will receive 3.5% of the equity in the reorganized entities, and additional warrants to purchase equity in the reorganized entities. Docket No. 440, p. 5.

*G. V&E's Continuing Representation of Riverstone.*

---

[2] The U.S. Trustee asserts that V&E is currently representing Oaktree in connection with the bankruptcy case of *Curo Group Holdings Corp.,* in Texas. Docket No. 440, n. 7.

5

28. The first Meyer Declaration disclosed that Riverstone Investment Group, LLC, and its affiliates (collectively, "Riverstone"), are current clients of V&E. Docket No. 183, Meyer Decl. ¶ 20.

29. Riverstone and its affiliates collectively own 43% of the common equity of Enviva, Inc. *Id.*

30. Two members of Enviva's 13-member board are affiliated with Riverstone. Docket No. 442, Meyer Suppl. Decl. ¶ 6.

31. V&E currently represents Riverstone in matters unrelated to this case. *Id*. at ¶ 3.

32. There are no ethical walls erected at V&E concerning its simultaneous representation of Enviva and Riverstone. Docket No. 441, V&E Reply Br. p. 3; *see also* Docket No. 532, Hrg. Tr. 12:13-19. In fact, there are attorneys at V&E who currently represent both Enviva and Riverstone, thereby making any ethical walls impossible.[3]

33. Riverstone represented 0.8% of V&E's billings, and 1.4% of its collections for V&E's fiscal year, ending December 31, 2023. Docket No. 183, Meyer Decl. ¶ 3. This translates to Riverstone being a $14 million-dollar-a-year client for V&E.[4]

---

[3] V&E's extensive connections with Riverstone are not difficult to find on V&E's own website. *See* V&E News, *Vitol and Riverstone Credit Partners Announce the Formation of Valor Upstream Credit Partners, L.P.,* VINSON & ELKINS, https://www.velaw.com/news/vitol-and-riverstone-credit-partners-announce-the-formation-of-valor-upstream-credit-partners-l-p/ (June 21, 2023) ("Vinson & Elkins advised Vitol, the largest independent energy trading company globally, in the formation of Valor Upstream Credit Partners, L.P. ('VCP' or the 'Fund') with Riverstone Credit Partners, a dedicated credit investment platform focused on energy and the energy transition."); V&E News, *Riverstone Holdings Invests in Group14 Technologies' $400M Raise to Accelerate Global Production of Lithium-Silicon Battery Materials,* VINSON & ELKINS, https://www.velaw.com/news/riverstone-holdings-invests-in-group14-technologies-400m-raise-to-accelerate-global-production-of-lithium-silicon-battery-materials/ (May 5, 2022) ("Vinson & Elkins advised an affiliate of Riverstone Holdings LLC in its investment in Group14 Technologies' $400 million Series C funding round led by Porsche AG…").

[4] V&E News, *The American Lawyer Profiles Vinson & Elkins' Record Financial Performance in 2023,* VINSON & ELKINS, https://www.velaw.com/news/the-american-lawyer-profiles-vinson-elkins-record-financial-performance-in-2023/ (Feb. 16, 2024) ("Vinson & Elkins posted a record year in 2023, topping the $1 billion revenue mark for the first time…").

34. Riverstone has consented to V&E's representation of the Debtors, and has engaged its own counsel. Docket No. 442, Meyer Suppl. Decl. ¶ 9.

35. As recently as December 2022, three months before these bankruptcy cases were filed, Mr. Meyer represented Riverstone in two matters in connection with: (a) the bankruptcy cases of *In re Talen Energy Corp.* ("TEC") in the Southern District of Texas; and (b) a preferred equity investment in Anuvia Plant Nutrients Holdings, Inc. ("Anuvia"). *Id*. at ¶ 13.[5]

H.  *The Alleged Preferential Payments*.

36. Finally, the U.S. Trustee argues that V&E is not disinterested because it received certain pre-petition payments of its invoices that might be characterized as preferential under Section 547(b) of the Code. Docket No. 440, pp. 6, 14-17.

37. V&E responds by arguing: (a) it has arguable defenses to any preference liability, such as new value (11 U.S.C. § 547(c)(4)), and ordinary course (11 U.S.C. § 547(c)(2)); and (b) it is willing to waive any Section 502(h) claims that might arise in the event any of the payments are avoided. Docket No. 441, pp. 19-20.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. 157(b)(2)(A) (matters concerning the administration of the estate).

The Court does not question V&E's qualifications to represent the Debtors in this case. V&E is a large, national law firm with deep experience in these kinds of cases. The Court further does not find that V&E was deficient in any way in its ethical obligations of full disclosure and

---

[5] On January 24, 2024, V&E, representing "the Riverstone Parties," and others, submitted an Agreed Stipulation of Dismissal With Prejudice in an adversary proceeding in the Southern District of Texas Bankruptcy Court. Adv. Pro. 22-09001-MI, Docket No. 243. The adversary proceeding was dismissed with prejudice on the same day. *Id*. at Docket No. 244.

condor to the Court, the U.S. Trustee and the parties in interest. The Court does find, however, that V&E's connections with Riverstone, with no ethical walls (indeed, with the impossibility of erecting an ethical wall), render V&E not disinterested within the meaning of Section 327(a) of the Code. The Court, therefore, will deny the Debtors' Application to Employ V&E.

### I. The Disinterestedness Standard.

Bankruptcy Code Section 327 provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).[6]

The term "disinterested person" means a person that:

(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

The two terms – not holding an adverse interest and being disinterested – are generally conflated in the case law. *In re Boy Scouts of Am.,* 35 F.4th 149 (3d Cir. 2022). The Bankruptcy Code and Rules do not define the term "interest adverse to the estate." The courts generally hold that an adverse interest means either "(1) the possession or assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or create an actual or potential dispute with the estate as a rival claimant, or (2) a predisposition of bias against the estate." *In re*

---

[6] A Debtor in Possession, such as Enviva, occupies the position of "trustee" under this statute. 11 U.S.C. § 1107(a).

*Lewis Rd., LLC,* 2011 WL 6140747, at *7 (Bankr. E.D. Va. Dec. 9, 2011); *In re Granite Partners, L.P.,* 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998).

The burden is on the applicant, here V&E, to demonstrate that it meets the disinterestedness standard. *In re Harold & Wiliams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992) ("once the trustee meets the burden of demonstrating that an applicant for professional employment is qualified under § 327, *see* Bankr. Rule 2014(a), the discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system."); *In re Champagne Servs., LLC*, 560 B.R. 196, 201 (Bankr. E.D. Va. 2016).

### II.     V&E's Disclosures.

Bankruptcy Rule 2014 provides in part, as follows:

> The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, *and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.*

Fed. R. Bankr. P. 2014(a) (emphasis added).

Judge Huennekens of this Court held in the *Lewis Road* case:

> Disclosures made pursuant to Rule 2014 "must be explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest." *In re Circle T Pipeline, Inc.,* 2011 Bankr. LEXIS 2490, at *33 (quoting *In re Midway Indus. Contractors, Inc.,* 272 B.R. 651, 662 (Bankr.N.D.Ill.2001)). "[D]ebtors–in–Possession and their attorneys, whose employment is sought to be approved, [must] be meticulous in disclosing 'all connections' with the debtor and other parties in interest, and the failure to do so [justifies] a Court's taking significant punitive or corrective action." *Id.*

*In re Lewis Rd.*, LLC, 2011 WL, at *8.

"Bankruptcy Rule 2014 disclosure is not optional; it's mandatory." *In re Dickson Properties, LLC,* 2012 WL 2026760, at *8 (Bankr. E.D. Va. June 5, 2012).

The Court understands that in complex cases such as this one, Rule 2014(a) disclosures are a difficult, time-consuming task. To be clear, all applicants for professional employment have a continuing duty of disclosure of any connections. The Court finds that V&E was not deficient in its disclosure obligations in this case. It appears that all V&E's connections were disclosed in advance of the hearing on its Employment Application on May 9th.[7] V&E acknowledged its belated disclosure of Oaktree as a client, but V&E described Oaktree as a "late entrant" into the Debtors' debt structure, and the Court accepts that explanation. This is not a case where an undisclosed conflict is discovered deep into the case.

The Court finds that V&E's disclosures satisfied the requirements of Rule 2014(a). Its disclosures are not a reason to disqualify the firm from representing the Debtors in this case.

### III.    V&E's Representation of the Officers and Directors.

V&E represents certain Officers and Directors in shareholder and derivative actions pending elsewhere. Absent bad faith or willful misconduct, officers and directors are generally entitled to indemnification, including defense costs. V&E's fees for its representation of the Officers and Directors will be paid from D&O insurance policies.

The matter is made more complex, however, by the fact that, under the RSAs, the Debtors' management would be entitled to 3.5% of the equity in the reorganized entities, with warrants for additional equity. The Court reiterates that the RSAs have not been presented for approval, and that the RSAs are subject to continuing negotiations with the Committee. The Court views this particular issue as falling on the side of the flexible inquiry required by the Fourth Circuit in *In re Harold & Williams Development Company.* 977 F.2d at 911 ("In

---

[7] The Court would have preferred to know of V&E's representation of John Hancock at the first day hearing, where the Debtors proposed to pay $4.6 million in tax obligations for a non-debtor entity, EWH, in which John Hancock is a member. The Debtors withdrew the request for pay the $4.6 million at the hearing, after both the U.S. Trustee and the Court questioned the propriety of paying $4.6 million on behalf of a non-debtor affiliate.

10

considering the approval of dual appointments, a bankruptcy court should satisfy itself that the foreseeable legal and accounting tasks present no inherent conflict or potential breach of confidence. The court should then weigh, against the risks of any *potential* difficulties, the potential advantages to the bankruptcy estate of a dual appointment, such as savings of time and money spent on estate administration.") (emphasis in original).

For now, at least, the Court finds that V&E's representation of the Officers and Directors does not present an impermissible conflict.

**IV.    The Alleged Preferences.**

The U.S. Trustee also argues that V&E received certain pre-petition transfers that may be characterized as preferences under Section 547(b) of the Code. The Court is not in a position to evaluate any possible defenses, such as new value or ordinary course, to any preference claims. V&E has offered to waive any possible 502(h) claims against the estate, if it is forced to disgorge any preference payments.

The Court finds that this is not a basis to disqualify V&E. If V&E were employed as Debtors' counsel, the Court would consider granting the Committee derivative standing to pursue preference claim against V&E, should the Committee seek such standing. *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003); *but see In re Baltimore Emergency Servs. II, Corp.*, 432 F.3d 557 (4th Cir. 2005) (questioning, but not deciding, the issue of derivative standing). It is more likely that, if not waived consensually in connection with confirmation of a plan, such potential preference claims would be channeled into a liquidating trust for the benefit of the creditors as a part of plan confirmation, and counsel for the liquidating trust could bring the preference claims against

11

V&E, if warranted. *See* 11 U.S.C. § 1123(b)(3)(B) (plan may provide for enforcement of estate claims "by a representative of the estate appointed for such purpose").

The Court finds that the alleged preference claims against V&E are not a reason to disqualify V&E from representing the Debtors in this case, particularly considering V&E's concession that it will waive any Section 502(h) claim should it be forced to disgorge any preferential payments.

V. **V&E's Continuing Representation of Riverstone.**

The Court finds that V&E's simultaneous representation of Riverstone renders V&E not disinterested under Bankruptcy Code Section 327(a). Riverstone has a 43% interest in the Debtors' common stock. It has two of the Debtors' thirteen directors' seats. V&E's representation of Riverstone is extensive. *See* n. 3, above. Riverstone is a $14 million-dollar-a-year client of the firm.

V&E argues that it only represents Riverstone in unrelated matters, Riverstone has consented to V&E's representation of the Debtors in this case, and the Debtors have consented to V&E's continuing representation of Riverstone. While consent may satisfy certain State bar rules on conflicts, it is not a substitute for disinterestedness under Section 327(a). *In re Nilhan Devs., LLC*, 2021 WL 1539354, at *11 (Bankr. N.D. Ga. Apr.19, 2021) ("The requirement that a professional be 'disinterested' cannot be waived or circumvented by agreement or consent among creditors and the debtor"); *In re Dickson Properties, LLC,* 2012 WL 2026760, at *7 (Bankr. E.D. Va. June 5, 2012) ("When [State bar rules concerning informed conflict waivers are] combined with the overlay of the "disinterestedness" standard (11 U.S.C. § 327(a)), there can be no consent by the Debtor in possession without full disclosure to, and approval by, the Court"); *In re Lewis Rd., LLC*, 2011 WL 6140747, at *10 (Bankr. E.D. Va. Dec. 9, 2011)

12

("[E]ven if the conflict was waivable under the Virginia Rules of Professional Conduct, [counsel] must independently satisfy the requirements of § 327"); *In re MF Glob. Inc.*, 464 B.R. 594, 605, n. 9 (Bankr. S.D.N.Y. 2011) ("in a retention approved pursuant to Section 327 ... conflicts waivers rarely suffice to trump the strict requirement of disinterestedness").

There are no ethical walls in place at V&E between its representation of the Debtors and its representation of Riverstone. V&E argues that an ethical wall is unnecessary. But, the fact is that an ethical wall is impossible to impose here. To this day, a number of V&E attorneys work both on Envia matters and Riverstone matters. An ethical wall is an impossibility under such circumstances.

V&E relies on *In re Ceasars Ent. Operating Co., Inc*., 561 B.R. 420 (Bankr. N.D. Ill. 2015), for support. In *Ceasars*, proposed debtors' counsel represented several operating-level subsidiaries of the investment funds Apollo and TPG. *Id.* at 425. Proposed debtors' counsel did not represent Apollo and TPG. *Id.* Judge Goldgar held that the representation of the unrelated operating entitles was "too remote from the bankruptcy cases to conclude that [proposed debtors' counsel] would be predisposed to act adversely to the estates…" *Id*. at 433. In this case, by contrast, V&E represents Riverstone, the investment-level entity, which is a 43% shareholder in the Debtors.

This is not an academic concern. This is a case in which the Debtors have touted the RSAs as the basis for a stand-alone plan. It is not a case in which the Debtors seek approval for a Section 363 sale of substantially all their assets. The RSAs contemplate that existing equity holders will retain five percent (5%) of the equity in the reorganized entities. This will have to be negotiated with the Committee and the other constituents in the case. V&E suggests that if this becomes a problem, it will look to its co-counsel, Kutak Rock, to negotiate the Riverstone-

13

related provisions of the plan. A plan in a stand-alone reorganization case, though, is like a machine in which all of the parts depend on all of the other parts. Further, the allocation of equity in the reorganized entities is a zero-sum game – whatever old equity retains will come at the expense of the creditors unless the creditors are paid in full (or the plan is a consensual one). Even in the case of a "new value" plan, the creditors are entitled to challenge the sufficiency of any new value contribution and to demand that such contributions be market-tested. *See, e.g., Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 454 (1999) ("[the plan] is doomed, we can say without necessarily exhausting its flaws, by its provision for vesting equity in the reorganized business in the Debtor's partners without extending an opportunity to anyone else either to compete for that equity or to propose a competing reorganization plan.") The Court in this case just does not see how V&E can delegate this core function of Chapter 11 counsel to its co-counsel.

In the Court's view, this case is more analogous to *In re Project Orange Assocs., LLC,* 431 B.R. 363 (Bankr. S.D.N.Y. 2010). In *Project Orange*, proposed debtor's counsel represented GE, the debtor's largest unsecured creditor and the supplier of gas turbines critical to the debtor's operations. *Id.* at 365-66. Proposed debtor's counsel argued that it could use conflicts counsel for any issues related to GE. *Id.* at 366. The court rejected that suggestion, holding that it did not appear that proposed debtor's counsel could "'fairly and fully advise' in the negotiation and drafting of a plan when it may not even be able to advocate litigation against GE." *Id.* at 377. The Court ultimately denied the application to employ proposed debtor's counsel. *Id.* at 379 ("as [proposed counsel's] conflict is with the Debtor's largest unsecured creditor that is central to the issues in this case, the Court concludes that it is inappropriate to approve the retention application.") In this case too, the Court cannot see how V&E could possibly negotiate a plan

14

adversely to Riverstone's position. The employment of conflicts counsel can be useful for a discrete portion of a case, such as the prosecution of preference or fraudulent transfer claims, but it cannot be used as a substitute for general bankruptcy counsel's duties to negotiate a plan of reorganization. *In re WM Distribution, Inc.*, 571 B.R. 866, 873 (Bankr. D.N.M. 2017) ("use of conflicts counsel is not appropriate where the adverse interests of the debtors represented by the same general bankruptcy counsel are central to the reorganization efforts of either debtor or to other resolutions of the chapter 11 case or where the adverse interests are so extensive that each debtor should have its own independent general bankruptcy counsel.")

V&E also relies heavily on Bankruptcy Code Section 327(c), which provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). *See also In re Invitae Corp.*, 2024 WL 2230069 (Bankr. D.N.J. May 16, 2024) (finding no actual conflict).

Arguably, Section 327(c) does not apply here because Riverstone is an equity security holder, not a creditor. More importantly, the Court finds that there *is* an actual conflict of interest. V&E cannot be expected to negotiate a Plan that contravenes the interests of its $14 million-dollar-a-year client. In *Invitae*, the proposed law firm billed the adverse party and client (Deerfield) a total of $2.4 million from the inception of the relationship, and $1.8 million in 2023, representing 0.03% of the applicant's revenue for that year. *Id.* at *5. The court described this as "relatively *de minimus*" in the scheme of things. *Id.* In this case, V&E's revenue from Riverstone amounts to 1.4% of its annual revenue for 2023, or 46 times more than the percentage

15

of annual revenue in *Invitae*. The Court does not view V&E's revenues from Riverstone to be *de minimus* in any sense of the term.

V&E argues that the U.S. Trustee improperly advocates for a *per se* rule. The Court agrees that these matters must be addressed under the facts and circumstances of each case. *See In re Harold & Williams Dev. Co.*, 977 F.2d at 910 ("the courts must take care not to fashion *absolute* prohibitions beyond those legislatively mandated without some measure of assurance that the purposes of the Bankruptcy Code *always* will be served thereby") (emphasis in original). But, where: (a) Riverstone owns 43% of the Debtors' equity; (b) Riverstone has two of the Debtors' thirteen directors; (c) Riverstone is a $14,000,000.00 a year client of V&E; and (d) no ethical walls have been imposed, and no ethical walls can be constructed because V&E attorneys continue to represent the Debtors and Riverstone simultaneously, the Court must conclude that V&E is not disinterested within the meaning of Section 327(a).

Finally, the Court understands that this is a setback for the Debtors, though, hopefully not a "value destructive" one, as V&E suggests.[8] The Court hopes that the various constituencies will see the wisdom of a certain amount of flexibility in pushing back milestones, which will be occasioned by the result here.

For all the above reasons, the Court will deny the Debtors' Application to Employ V&E.

## Conclusion

It is therefore **ORDERED**:

A.      The Debtors' Application to Employ Vinson & Elkins L.L.P., pursuant to Bankruptcy Code Section 327(a) (Docket No. 183) is denied.

---

[8] Docket No. 441, V&E Reply Br. p. 4.

B.  The Clerk will mail copies of this Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: May 30 2024

Alexandria, Virginia

/s/ Brian F Kenney
The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: May 30 2024

Copies to:

Enviva Inc.
7272 Wisconsin Ave., Suite 1800
Bethesda, MD 20814
*Chapter 11 Debtor*

Peter J. Barrett
901 East Byrd Street, Suite 1000
Richmond, VA 23219
*Counsel for Debtor*

Jeremy S. Williams
901 East Byrd Street, Suite 1000
Richmond, VA 23219
*Counsel for Debtor*

Gerard R. Vetter
1725 Duke Street, Suite 650
Alexandria, VA 22314
*U.S. Trustee*

Adolyn Clark Wyatt
901 E. Byrd Street, Suite 1000
Richmond, VA 23219
*Counsel for Debtor*

Glenn T. Nunziata
7272 Wisconsin Ave., Suite 1800
Bethesda, MD 20814
*Debtor Designee*

Nicholas S. Herron
200 Granby St, Room 625
Norfolk, VA 23510
*Counsel for U.S. Trustee*

Alexander F. Antypas
2001 K Street NW
Washington, DC 20006
*Proposed Counsel for Unsecured Creditors Committee*

Kristen E. Burgers
1676 International Drive, Suite 1350
Tysons, VA 22102
*Proposed Counsel for Unsecured Creditors Committee*

Matthew J. Pyeatt
Trammell Crow Center
2001 Ross Ave., Suite 3900
Dallas, TX 75201
*Proposed Counsel for Debtor*

17

David S. Meyer
1114 Avenue of the Americas
New York, NY 10036
*Proposed Counsel for Debtor*

Jessica C. Peet
1114 Avenue of the Americas
New York, NY 10036
*Proposed Counsel for Debtor*

Trevor G. Spears
Trammell Crow Center
2001 Ross Ave., Suite 3900
Dallas, TX 75201
*Proposed Counsel for Debtors*