UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| In re: ) | |
| ) | |
| ENVIVA INC., e*t al.*, ) | Case No. 24-10453-BFK |
| ) | Chapter 11 |
| ) | (Jointly Administered) |
| ) | |
| Debtors. ) | |
| _____ ) | |

**MEMORANDUM OPINION AND
ORDER DENYING DEBTORS' MOTION
TO RECONSIDER MEMORANDUM OPINION AND ORDER
DENYING APPLICATION TO EMPLOY VINSON & ELKINS LLP**

This matter comes before the Court on the Debtors' Motion to Reconsider the Court's Memorandum Opinion and Order Denying the Debtors' Application to Employ Vinson & Elkins LLP ("V&E"). Docket No. 663. The Motion is supported by the Declarations of David S. Meyer of V&E and Jason E. Paral. Docket Nos. 664, 665.[1] The Ad Hoc Committee filed a Joinder in Support of the Debtors' Motion, as did the Successor Indenture Trustee for the 6.50% Senior Notes Due 2026. Docket Nos. 703, 704. The U.S. Trustee filed an Opposition to the Motion. Docket No. 705. The Official Committee of Unsecured Creditors filed a Statement in Support of the Debtors' Motion. Docket No, 712. The Court heard the parties' arguments on June 14, 2024. For the reasons stated below, the Court will deny the Motion.

**Procedural History**

  A.  *The May 9, 2024, Hearing.*

---

[1] Mr. Meyer is a partner with V&E. Docket No. 665, ¶ 1. Mr. Paral is the Executive Vice President, General Counsel and Secretary of Enviva, Inc. Docket No. 664, ¶ 1. Prior to his employment with Enviva, he practiced law at V&E from 2008 to 2015. *Id.* at ¶ 5.

On March 27, 2024, the Debtors filed their Application to Employ V&E. Docket No. 183. The Application was supported by the Declaration of David S. Meyer, and later, two Supplemental Meyer Declarations. Docket Nos. 183, 442, 481. The U.S. Trustee filed an Objection to the Application, and a Supplemental Brief in Support of his Objection. Docket Nos. 273, 440. V&E filed a Reply to the U.S. Trustee's Objection. Docket No. 441.

On April 3, 2024, the Court issued an Order, *sua sponte*, setting the V&E Application for a hearing, noting that: (a) V&E represented the Debtors' Officers and Directors in shareholder and derivative litigation; and (b) V&E also represented the Riverstone entities, which owned 43% of the Debtors' common stock. Docket No. 224. The Court noted in its Order: "There does not appear to be any reference to a wall of separation in the Meyer Declaration." *Id*. at p. 1. Apparently unwilling to take the hint, V&E did not address the issue of an ethical wall in its Reply Memorandum. Rather, it argued that it represented Riverstone in unrelated matters, and therefore, it was disinterested. *See* Docket No. 441, pp. 7-15.

On May 9, 2024, the Court held a hearing on the V&E Application. At the hearing, the Court inquired whether a wall of separation at V&E would be appropriate. Mr. Meyer responded as follows:

> But a wall of separation in unrelated matters is not required by the model rules, the Bankruptcy Code, the bankruptcy rules, or the local rules. And we do agree, as we must, that no confidential information of Enviva will be shared with Riverstone, and no confidential information of Riverstone will be shared with Enviva. But a wall of separation where none is required *would be incredibly harmful to Enviva* at this critical phase of its restructuring efforts. To be clear, this isn't a situation where the harm outweighs the need, but rather there's no need *and it would be harmful.*

Docket No. 532, Hr'g. Tr. 13:7-11 (emphasis added).

Mr. Meyer further stated:

> So specifically, if we have scenarios where we have senior partners in particular that have worked on Enviva-related matters but they've also worked on Riverstone-related matters

2

unrelated to Enviva of course over the last calendar year, then the world we find ourselves in is, first, if those partners could not work on Enviva because they worked on Riverstone matters, well, now, *there's certainly a detriment to Enviva* because certain of those partners have highly specialized knowledge, specific information about the company, ongoing matters in which they've represented the company, whether it be in litigation matters, finance matters, restructuring matters. And so to tell Enviva that those parties cannot work on Enviva-related matters *would be detrimental to the debtors*.

*Id*. at 13:14-14:2 (emphasis added).

The Court then asked whether there were attorneys at V&E who simultaneously represented the Debtors and Riverstone. *Id*. at 14:3-5. Mr. Meyer responded that there were a "handful" of such attorneys, and that "it's a very limited group." *Id*. at 14:6-9.

On May 30, 2024, the Court denied the V&E Application, after finding that V&E was not "disinterested" within the meaning of Section 327(a) of the Bankruptcy Code. Docket No. 653.[2]

B. *The Motion to Reconsider.*

On June 3, 2024, the Debtors filed a Motion to Reconsider, supported by the Meyer Declaration and the Paral Declaration. Docket Nos. 663, 664, 665. The Debtors moved for an expedited hearing, which the Court granted. Docket Nos. 666, 668. The U.S. Trustee filed an Opposition to the Motion. Docket No. 705. The Ad Hoc Group and the Indenture Trustee filed Statements in Support of the Debtors' Motion. Docket Nos. 703, 704.

V&E now proposes an ethical wall as follows:

a. **Team A (Enviva)**. All timekeepers who have billed time to the Debtors but have not billed time to Riverstone since the Petition Date will be on Team A, and will be prohibited from working on Riverstone engagements through the later of the effective date of any confirmed plan of reorganization in this case and any dismissal or conversion of the Debtors' chapter 11 cases (or potentially longer should the Court find that circumstances at the time of plan confirmation so warrant);
b. **Team B (Riverstone)**. All timekeepers who have billed time to Riverstone but have not billed time to the Debtors since the Petition Date will be on Team B, and will be prohibited from working for the Debtors through the later of the effective date of any confirmed plan of reorganization in this case and any dismissal or conversion of the Debtors' chapter 11 cases

---

[2] *In re Enviva Inc.,* 2024 WL 2795274 (Bankr. E.D. Va. May 30, 2024) ("*Enviva I*").

(or potentially longer should the Court find that circumstances at the time of plan confirmation so warrant);

c. V&E will divide the 13 timekeepers who have billed time to both Riverstone and the Debtors since the Petition Date as follows:

    (i) All timekeepers who have billed less than 12.5 hours to Riverstone since the Petition Date will be on Team A (Enviva);

    (ii) All timekeepers who have billed 12.5 or more hours to Riverstone since the Petition Date will be on Team B (Riverstone);

d. Any new timekeepers working for the Debtors: (1) will be on Team A; (2) must not have already been on Team B; and (3) will be prohibited from working on matters for Riverstone during the relevant time period;

e. Any new timekeepers working for Riverstone: (1) will be on Team B; (2) must not have already been on Team A; and (3) will be prohibited from working on matters for the Debtors during the relevant time period;

f. V&E will establish an electronic wall in V&E's document management system that prevents team members from accessing the other team's electronic documents;

g. V&E will instruct members of both teams in writing: (1) not to discuss confidential information regarding their respective representation with the other team; (2) not to access files maintained by the other team; and (3) to restrict access to data to protect against in advertent access to such material; and

h. V&E will require members of each team to affirm in writing that they understand and will comply with the ethical screen.

Docket No. 663, pp. 6-7.

Additionally, V&E proposes that any V&E partners who bill more than 10 hours on the Enviva bankruptcy, as well as the members of V&E's Executive Committee, will forgo any participation in the firm's net profits resulting from the representation of Riverstone in 2024 and 2025. *Id*. at p. 2.

The U.S. Trustee argues that: (a) V&E consciously chose not to erect an ethical wall before the May 9th hearing; (b) V&E's newly proposed ethical wall is insufficient; and (c) there has been no clear error or manifest injustice. Docket No. 705, pp. 7-13.

C.  *The Plan Evaluation Committee.*

On the morning of June 14, 2024, the date of the hearing on this matter, the Committee filed a Statement in Support of the Debtors' Motion. Docket No. 712. In its Statement, the Committee advised the Court that it reached an agreement with the Debtors for the creation of a

4

Plan Evaluation Committee ("PEC"). *Id*. at pp. 3-4. At the hearing, the Court admitted into evidence the Resolution of the Board authorizing the establishment of the PEC. Docket No. 713, Ex. A. The PEC would have the following functions:

> WHEREAS, the Board deems it appropriate and advisable for the Board to designate a special committee of the Board (the "***Plan Evaluation Committee***") and to delegate to the Plan Evaluation Committee, to the fullest extent permitted by law, the authority on behalf of the Board to review, evaluate, independently assess, approve, and authorize the filing of or entering into (as applicable) any (i) Plan, (ii) other restructuring transaction, including but not limited to any future DIP financing, refinancing, equity or asset sale (including pursuant to Bankruptcy Code section 363 or otherwise), merger, acquisition, other business combination, or recapitalization, and (iii) settlement of any claims or causes of action against the Company's directors, officers, affiliates, or shareholders (the "***Committee Scope***"[.]
>
> *Id*. (emphasis in original).

The PEC would consist of six Board members, none of whom are Riverstone members. *Id.* The PEC would be entitled to engage its own legal professionals. *Id*. at p. 2. It does not have the authority to engage its own financial advisers without additional Board approval. Docket No. 722, Hr'g. Tr. 88:1-4. The Board Resolution establishing the PEC is not irrevocable. *Id.* at 86:18-19. Counsel for the Committee advised the Court that the Committee understood that the Resolution was revocable, but if the Resolution were revoked, the Committee would react promptly with a Motion to appoint a Chapter 11 Trustee, or for other similar relief. *Id.* at 86:15-18.

The Court heard the parties' arguments on June 14, 2024.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

The Debtors move for reconsideration under Bankruptcy Rules 9023 (incorporating Rule 59 of the Federal Rules of Civil Procedure) and 9024 (incorporating Rule 60 of the Federal Rules of Civil Procedure). The Court will address both arguments, below.

## I. Bankruptcy Rule 9023.

Under Rule 59(e), courts in the Fourth Circuit have recognized three grounds for amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Braunstein v. Pickens*, 406 Fed. App'x. 791, 798 (4th Cir. 2011) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998)). Reconsideration of a judgment is "an extraordinary remedy which should be used sparingly." *In re Mitrano*, 409 B.R. 812, 820 (E.D. Va. 2009) (quoting *Pac. Ins. Co.,* 148 F.3d at 403).

### A. *Intervening Change in the Law.*

There has been no intervening change in the law on the disinterestedness standard under Section 327(a).

### B. *Newly Discovered Evidence.*

V&E and the Debtors proffer that there are three "new facts" that warrant relief under Rule 9023: the newly created ethical wall, the limits on compensation, and the Board Resolution establishing the PEC. These are not, however, newly discovered facts. They are newly created, in response to the Court's decision in *Enviva I*. "Where a motion for reconsideration is based on purportedly newly discovered evidence, the evidence must not have been discoverable prior to judgment by the exercise of reasonable due diligence." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 292 (4th Cir. 2021) (internal citation omitted). Then-Chief Judge St. John properly made the point in *In re Greene* that in order for evidence to be considered as newly discovered, "the evidence must

6

be in existence at the time of the trial." 2013 WL 1724924, at *20 (Bankr. E.D. Va. Apr. 22, 2013), *aff'd sub nom. Greene v. U.S. Dep't of Educ.*, 2013 WL 5503086 (E.D. Va. Oct. 2, 2013), *aff'd*, 573 F. App'x 300 (4th Cir. 2014). V&E's belated acceptance of the need for an ethical wall, its revised compensation arrangement, and the new PEC, do not qualify as newly discovered evidence.

The Court finds it more appropriate to address the Motion to Reconsider under the "clear error of law or manifest injustice" standard, below.

C.   *Clear Error of Law or Manifest Injustice.*

V&E argues that there are three reasons to reconsider the Court's decision in *Enviva I*: (a) V&E has now erected an ethical wall; (b) V&E has modified its compensation structure; and (c) Enviva's Board has approved a Resolution establishing the PEC. The Court will address each of the newly proffered issues, below.

*(1) The Proposed Ethical Wall.*

V&E now proposes to impose an ethical wall. Even with V&E's *volte-face* on the issue of an ethical wall, the Court still finds that V&E is not disinterested.[3] The lack of an ethical wall was only one factor in the Court's denial of the V&E Application. Riverstone is still a multi-million-dollar client for V&E, and is still a 43% shareholder in Enviva. According to the most recent Meyer Declaration, Riverstone has accounted for 0.97% of V&E's revenues for the first five months of 2024 (which translates to roughly $4,500,000.00 for that period, assuming that V&E has another $1 billion year), and V&E has collected 0.22% of its revenues (or $1,100,000.00 for the same period) from Riverstone. Docket No. 665, pp. 4-5. If this trend

---

[3] "*Volte-face*: n. The act of turning so as to face in the opposite direction; figurative a complete change of attitude or opinion." OXFORD ENGLISH DICTIONARY, https://www.oed.com/search/dictionary/?scope=Entries&q=volte-face, (last visited June 24, 2024).

7

continues, V&E's Riverstone billings will exceed $9,000,000.00 for 2024 - 64% of its 2023 billings of $14,000,000.00, but still not "de minimis" in any sense of the term.

Further, the latest Meyer Declaration identifies 13 timekeepers at V&E who have billed time to both Enviva and Riverstone post-petition. Docket No. 665, Meyer Decl. Ex. A. Of these, two V&E attorneys would be walled off. *Id*. at Ex. B. The three-months in the post-petition period, however, do not reflect V&E's extensive pre-petition ties with Riverstone. *See* Docket No. 653, Mem. Op. and Order, pp. 5-7 ("V&E's Continuing Representation of Riverstone"). V&E's use of post-petition time-keeping hours only does not inform the Court as to how extensive the overlap might have been during the run-up to the bankruptcy filing, and the negotiation of the pre-petition Restructuring Support Agreements ("RSAs") in 2023, and the first quarter of 2024. Moreover, V&E uses an arbitrary "less than [or more than] 12.5 hours" billed to Riverstone since the petition date. If the term "more [or less] than 10 hours" were employed, then two additional V&E attorneys, Carter Olson (12.00 hours) and Lindsay Moore (11.25 hours), would find themselves on Team B. *Id.* at ¶ 7; Ex. B. The U.S. Trustee correctly describes this as a "partial ethical wall." Docket No. 705, p. 13.

The Court finds that V&E's proposed ethical wall is insufficient.

*(2) The Compensation Proposal.*

V&E proposes that no attorney who works more than 10 hours on the Debtors' cases, and no member of the firm's Executive Committee, will be entitled to participate in any net profits from its representation of Riverstone. Docket No. 663, Debtors' Mot. at ¶ 1b. This notwithstanding, V&E still has extensive ties to Riverstone. The perception of fairness is important here. *See In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987) ("Perceptions are important; how the matter likely appears to creditors and to other parties in legitimate interest should be

8

taken into account."); *In re Springfield Med. Care Sys., Inc.*, 2019 WL 6273385, at *8 (Bankr. D. Vt. Nov. 22, 2019) ("The Court begins this analysis by recognizing the foundational nexus between the specific requirements for appointment of professionals in bankruptcy cases and the integrity of the bankruptcy process as a whole – both in reality and in terms of public perception."); *In re Granite Partners, L.P.,* 219 B.R. 22, 33 (Bankr. S.D.N.Y.1998) ("[T]he professional has a disabling conflict if it has 'either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one.'") (internal citation omitted). Moreover, the opposite must be true for 2023, and the first quarter of 2024, when the RSAs were negotiated – partners at V&E who represented both Enviva and Riverstone, and the members of the Executive Committee, undoubtedly *did* enjoy some form of compensation based in part on Riverstone revenues.

The Court finds that V&E's proposed compensation arrangement, together with the newly created ethical wall addressed above, do not render it disinterested under Section 327(a).

*(3) The Plan Evaluation Committee.*

On the morning of the hearing on the Motion to Reconsider, the Committee filed its Statement, along with the Board Resolution establishing the PEC. Docket No. 712. At the hearing, both Debtors' counsel and Committee counsel explained to the Court that the PEC was not intended to be the primary vehicle for negotiation of the Plan in this case. Rather, the primary responsibility for negotiating a Plan will continue to rest with management, which answers to the Board, which in turn relies on V&E for advice. The PEC and its counsel will act as a check of sorts on the Board and V&E.

The Court finds that the establishment of the PEC does not solve the disinterestedness problem for three reasons. First, the Resolution establishing the PEC is not irrevocable. The Board can revoke the Resolution at any time, and is likely to do so if the PEC were to disagree with the Board's view of the case. Second, the PEC is not in a position to hire its own financial advisers, and will be completely dependent on the Board's financial advisers for advice.

Third and most importantly, the PEC is not tasked with the primary responsibility of negotiating the Plan. This responsibility continues to reside with the Debtors' Board, management, and V&E. The PEC will only act as a "check" on the Board's discretion. *See* Docket No. 772, Hr'g Tr. 98:13-15[4]; *see also id.* at 100:4-14[5]. This, in the Court's view, is only so much window dressing, an attempt to make it appear that V&E is disinterested. In *Enviva I*, the Court held that V&E could not delegate to conflicts counsel the firm's core function in the case: the negotiation of a Chapter 11 Plan. Docket No. 653, Mem. Op. and Order at p. 15 ("The employment of conflicts counsel can be useful for a discrete portion of a case… but it cannot be used as a substitute for general bankruptcy counsel's duties to negotiate a plan of reorganization.") (citing *In re WM Distribution, Inc.*, 571 B.R. 866, 873 (Bankr. D.N.M. 2017), and *In re Project Orange Assocs., LLC*, 431 B.R. 363 (Bankr. S.D.N.Y. 2010)). The creation of the PEC, which can be disbanded at any time, does not have its own financial advisers, and is not tasked with the primary responsibility of negotiating a Plan, does not solve V&E's disinterestedness problem.

---

[4] "Mr. Meyer: It [the Board] is not delegating negotiating authority to that. The company will continue… to negotiate the plan with all of its stakeholders."

[5] "The company, together with the company's advisors, and we're proposed counsel of the company is the one that's going to negotiate that Chapter 11 plan. The sole farming out that we're discussing here is after that plan has been extensively negotiated, proposed, it's going to go to this six member independent committee that would have its own independent counsel to get -- to give one more look, to say, do we think that this plan is a plan that the company should file and is authorized to file?"

There has been no clear error or manifest injustice here. The Court, therefore, will deny the Debtors' Motion to Reconsider under Bankruptcy Rule 9023.

## II.     Bankruptcy Rule 9024.

The Debtors also move for reconsideration under Bankruptcy Rule 9024. Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60, including Rule 60(b) (Grounds for Relief from a Final Judgment, Order, or Proceeding). Fed. R. Bankr. P. 9024. Relief under Rule 60(b) is "extraordinary and is only to be invoked upon a showing of exceptional circumstances." *United States v. Walsh*, 879 F.3d 530, 536 (4th Cir. 2018) (quoting *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979)). A Rule 60(b) Motion is "not authorized when it is nothing more than a request for the district court to change its mind." *Myers v. Simpson*, 831 F. Supp. 2d 945, 956 (E.D. Va. 2012) (citing *Lee X v. Casey,* 771 F. Supp. 725, 728 (E.D. Va. 1991)). In addition, a motion for reconsideration is not an opportunity for a litigant "to present a better and more compelling argument than was originally presented." *In re Greene*, 2013 WL 1724924, at *2 (Bankr. E.D. Va. Apr. 22, 2013), *aff'd sub nom. Greene v. U.S. Dep't of Educ.,* 2013 WL 5503086 (E.D. Va. Oct. 2, 2013), *aff'd,* 573 F. App'x 300 (4th Cir. 2014) (quoting *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F.Supp.2d 617, 619 (M.D.N.C. 2005)).

This Court has vacated an Order approving the employment of counsel under Rule 60(b) for undisclosed connections. *In re Lewis Rd.*, LLC, 2011 WL 6140747 (Bankr. E.D. Va. Dec. 9, 2011); *see also In re eToys, Inc.,* 331 B.R. 176 (Bankr. D. Del. 2005) (Rule 60(b)(6) allows the Court to consider vacating employment orders for undisclosed conflicts of interest). The Court is not aware of any decisions in the Fourth Circuit vacating an Order denying the employment of counsel because of disclosed conflicts.

V&E argues that the Court should look to Rule 60(b)'s Subsections (5) and (6) – that applying a judgment prospectively is no longer equitable, or "any other reason that justifies relief." Fed. R. Civ. P. 60. Subsection (5) does not apply here. The Court's decision to deny the V&E Application was not inequitable, and nothing has changed other than V&E's position that an ethical wall may now be in order, the revised compensation arrangement, and the PEC, all of which are addressed above. V&E is still not disinterested under Section 327(a).

Subsection (6) is the catch-all provision of Rule 60(b). For all the reasons stated above, the Court finds that the Motion to Reconsider does not present circumstances that justify relief.

The Court, therefore, will deny the Debtors' Motion under Bankruptcy Rule 9024.

**III.    Section 327(e).**

The Debtors, the Ad Hoc Group, and the Indenture Trustee point to the difficulties, delays, and expense that the Debtors inevitably will encounter by the Court's denial of the V&E Application. V&E has acted as Enviva's outside counsel for ten years, and has "deep institutional knowledge" and "unique and specific expertise" with respect to the company's tax matters, securities laws disclosures, and contract renegotiations. Docket No. 664, Paral Decl. ¶¶ 5, 10. The Court accepts all of that as true, but these arguments elide the disinterestedness standard. The parties are essentially inviting the Court to ignore the disinterestedness standard in favor of expediency in the employment of counsel. The Court concludes that it is bound by the disinterestedness standard contained in Section 327(a).

There may, however, be an important role for V&E under Section 327(e) in this case. Section 327(e) incorporates a standard more limited than that of Section 327(a). Whereas Section 327(a) requires professionals to be disinterested generally, Section 327(e) is limited to conflicts "on which such attorney is to be employed." 11 U.S.C. § 327(e). *See In re WWMV, LLC*, 2024

WL 2284898, at *3 (Bankr. S.D.W. Va. May 20, 2024) (one purpose of § 327(e) is "to allow counsel who cannot meet the disinterestedness requirement of § 327(a) nevertheless to render valuable services to the debtor in matters where counsel has no adverse interest") (quoting *In re Tidewater Mem'l Hosp., Inc.,* 110 B.R. 221, 227 (Bankr. E.D. Va. 1989)). As long as the matters do not involve V&E's other clients, V&E might be employed under Section 327(e) on tax matters or securities law compliance, for example. Section 327(e) is not to be employed as an end-run around Section 327(a)'s more general requirement of disinterestedness. *See* 11 U.S.C. § 327(e) ("for a specified, special purpose, other than to represent the trustee in conducting the case"). The Court anticipates that V&E would respect the limits of any employment under Section 327(e), and that V&E would not duplicate efforts by Section 327(a) counsel.

## Conclusion

It is therefore **ORDERED**:

A. The Debtors' Motion to Reconsider (Docket No. 663) is denied.

B. The Clerk will mail copies of this Memorandum Opinion and Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Jul 2 2024

Alexandria, Virginia

/s/ Brian F Kenney
The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: Jul 2 2024

Copies to:

Enviva Inc.
7272 Wisconsin Ave., Suite 1800
Bethesda, MD 20814
*Chapter 11 Debtor*

Glenn T. Nunziata
7272 Wisconsin Ave., Suite 1800
Bethesda, MD 20814
*Debtor Designee*

Peter J. Barrett
901 East Byrd Street, Suite 1000
Richmond, VA 23219
*Counsel for Debtor*

Nicholas S. Herron
200 Granby St, Room 625
Norfolk, VA 23510
*Counsel for U.S. Trustee*

| | |
|---|---|
| Jeremy S. Williams<br>901 East Byrd Street, Suite 1000<br>Richmond, VA 23219<br>*Counsel for Debtor* | Alexander F. Antypas<br>2001 K Street NW<br>Washington, DC 20006<br>*Proposed Counsel for Unsecured Creditors Committee* |
| Gerard R. Vetter<br>1725 Duke Street, Suite 650<br>Alexandria, VA 22314<br>*U.S. Trustee* | Kristen E. Burgers<br>1676 International Drive, Suite 1350<br>Tysons, VA 22102<br>*Proposed Counsel for Unsecured Creditors Committee* |
| Adolyn Clark Wyatt<br>901 E. Byrd Street, Suite 1000<br>Richmond, VA 23219<br>*Counsel for Debtor* | Matthew J. Pyeatt<br>Trammell Crow Center<br>2001 Ross Ave., Suite 3900<br>Dallas, TX 75201<br>*Proposed Counsel for Debtor* |
| David S. Meyer<br>1114 Avenue of the Americas<br>New York, NY 10036<br>*Proposed Counsel for Debtor* | Trevor G. Spears<br>Trammell Crow Center<br>2001 Ross Ave., Suite 3900<br>Dallas, TX 75201<br>*Proposed Counsel for Debtors* |
| Jessica C. Peet<br>1114 Avenue of the Americas<br>New York, NY 10036<br>*Proposed Counsel for Debtor* | |