Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Adolyn C. Wyatt (VA 97746)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

*Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENVIVA INC., *et al.*, | ) | Case No. 24-10453 (BFK) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

## MOTION FOR ENTRY OF AN ORDER
## EXTENDING THE EXCLUSIVITY PERIODS TO
## FILE AND SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") file

this *Motion for Entry of an Order Extending the Exclusivity Periods to File and Solicit Acceptances*

*of a Chapter 11 Plan* (the "***Motion***") and in support respectfully submit the following:

### PRELIMINARY STATEMENT[2]

1.      The Debtors request a 120-day extension of the Exclusivity Periods (as defined

below) to allow the Debtors to finalize a comprehensive and value-maximizing restructuring

transaction, consistent with the Restructuring Support Agreement attached to the First Day

---

[1]      Due to the large number of Debtors in these jointly administered chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://veritaglobal.net/enviva.  The location of the Debtors' corporate headquarters is:  7272 Wisconsin Avenue, Suite 1800, Bethesda, MD 20814.

[2]      Capitalized terms used but not otherwise defined in this Motion shall have the meanings set forth in the *Declaration of Glenn Nunziata in Support of Chapter 11 Petitions* [Docket No. 27] (the "***First Day Declaration***"). The First Day Declaration is incorporated herein by reference.

Declaration as <u>Exhibit C</u> (the "***RSA***"), while avoiding the time-consuming distractions associated with an alternative plan.  Prior to the Petition Date, and following months of hard-fought, arm's-length negotiations, the Debtors and the Ad Hoc Group entered into an RSA that set forth the framework for a value-maximizing restructuring transaction.  In particular, the RSA paved the way for the Debtors to, among other things, renegotiate their long-term offtake contracts with key customers and formulate a go-forward business plan reflecting the Debtors' revised portfolio, in each case pursuant to certain milestones.  The RSA is supported by lenders holding over 81% of the Company's Senior Secured Credit Facility, 98% of the 2026 Notes, 78% of the Epes Green Bonds and 45% of the Bond Green Bonds.  Although several critical milestones under the RSA— including the deadline by which the Debtors must file a plan and disclosure statement—are quickly approaching, the Debtors hope to negotiate an extension of such deadlines in light of recent events. As such, the Debtors are seeking a necessary extension of the Exclusivity Periods to ensure they can see these chapter 11 cases through without the distraction and cost associated with alternative chapter 11 plans proposed by other parties.

2.      The Debtors commenced these chapter 11 cases on the heels of significant financial and operational pressures stemming from both market conditions (*e.g.*, precipitously dropping wood pellet prices and record-high inflation stemming from the war in Ukraine) and operational challenges (*e.g.*, customer disputes and tornado damage to a wood-pellet production plant in Mississippi).  Despite being the largest producer of industrial wood pellets in the world, these conditions proved to be challenging and caused the Debtors' operations and financial stability to suffer immensely.

3.      In light of the sustained market depression and operational hurdles, the Debtors, with the assistance of their advisors, engaged their wide-ranging creditor and customer bases to

devise a comprehensive, long-term restructuring solution that would address their significant

liquidity issues and unsustainable capital structure.  Since then, the Debtors' chapter 11 process

has worked as intended, giving the Debtors access to a critical "breathing spell" to engage with

customers to renegotiate customer contracts, address operational matters, align stakeholders, and

maximize value for the Debtors and their estates.  Indeed, the Debtors have made great progress

in administering the chapter 11 cases and establishing constructive working relationships with

various key stakeholders, as evidenced by the following representative examples:

a.  ensured a smooth transition into chapter 11 by obtaining approval of various motions necessary to stabilizing operations and maintaining relationships with stakeholders who are critical to the Debtors' revenue-generating options and operations;

b.  obtained final approval of a $500 million debtor-in-possession financing facility and the consensual use of cash collateral necessary to administer these chapter 11 cases;

c.  successfully negotiated and executed numerous trade agreements with key suppliers and other vendors that have agreed to provide ongoing goods and services to the Debtors on an ongoing basis;

d.  conducted a comprehensive and systematic review of existing contracts with customers in Europe and Asia and implemented customized strategies with individual customers to renegotiate their long-term contract portfolio and increase profitability;

e.  completed and filed their schedules of assets and liabilities and statements of financial affairs within six weeks of the Petition Date, which required a review and analysis of numerous claims, assets, and contracts with respect to each of the 21 Debtor entities; and

f.  obtained approval to reject several contracts that the Debtors determined were unnecessary and burdensome to the Debtors' estates; and

g.  obtained entry of an order establishing the claims bar dates in these chapter 11 cases to facilitate the timely administration of claims.

4.  As a result, just four months after the Petition Date, the Debtors now stand poised

to propose a comprehensive plan of reorganization.  The plan will provide for the implementation

of various equitization and recapitalization transactions that will ultimately eliminate over $1

billion in debt from the Debtors' balance sheet and raise over $1 billion in additional capital to

3

fund the reorganized Debtors' exit from these chapter 11 cases.  The Debtors are committed to maximizing estate value through a chapter 11 plan with near-global support and an expeditious exit from chapter 11.

5.       Despite the Debtors' significant work to date in renegotiating their customer contracts and preparing a revised business plan, work remains to be done to bring these chapter 11 cases to a close.  Extensive documentation is required to implement and consummate the various transactions underpinning the RSA.  The negotiation and execution of such documentation requires the undivided attention of both the Debtors and the applicable counterparty stakeholders. Additionally, per the Court's recent order [Docket No. 653], the Debtors' proposed retention of lead counsel was denied, and the Debtors are in the process of retaining new lead counsel and getting them up to speed, but such process will take time.  Accordingly, by this Motion, the Debtors are seeking a 120-day extension of the Exclusivity Periods so that they may continue to diligently pursue an appropriate and value-maximizing resolution of these chapter 11 cases without the distraction and cost of an exclusivity dispute.[3]

6.       The extension of the Exclusivity Periods will allow the Debtors to continue to progress in these efforts for the satisfaction of all stakeholders.  It is critical that the Debtors retain the exclusive right to file and prosecute a chapter 11 plan to avoid the time-consuming distractions associated with an alternative plan.  For these reasons, and the reasons set forth below, the Debtors respectfully submit that "cause" exists under section 1121 of the Bankruptcy Code to extend the Exclusivity Periods.

---

[3]     To the extent the Exclusivity Periods have not been extended via Court order, the Debtors note that they have filed this Motion prior to the expiration of the current deadline for the Exclusivity Periods that would otherwise expire on July 10, 2024—i.e., 120 days following the Petition Date.

4894-4631-4185

## **BACKGROUND**

7.     Enviva Inc. and its Debtor and non-Debtor subsidiaries (collectively, the "***Company***") are the world's largest producer of industrial wood pellets, a renewable and sustainable energy source produced by aggregating a natural resource—wood fiber—and processing it into a transportable form.  The Company owns and operates ten industrial-scale wood pellet production plants located in Virginia, North Carolina, South Carolina, Georgia, Florida, and Mississippi.  The Company exports its wood pellets through owned and leased deep-water marine terminals to customers in the United Kingdom, the European Union, and Japan who purchase the wood pellets primarily through long-term, take-or-pay offtake contracts with the Company.

8.     On March 12, 2024 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On March 14, 2024, the Court entered an order authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  *See Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 84].  On March 25, 2024, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "***Committee***"), which Committee was amended on May 23, 2024.  *See Amended Appointment of Unsecured Creditors Committee* [Docket No. 603].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

9.     Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these chapter 11 cases, is set forth in the First Day Declaration.

5

## JURISDICTION AND VENUE

10.     The United States Bankruptcy Court for the Eastern District of Virginia (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     The statutory bases for the relief requested herein are sections 105(a) and 1121 of title 11 of the United States Code (the "***Bankruptcy Code***"), Bankruptcy Rule 9006(b)(1), and rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "***Local Rules***").

## RELIEF REQUESTED

13.     By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) extending the periods during which the Debtors have the exclusive right to (i) file a chapter 11 plan, by 120 days, through and including November 7, 2024 (the "***Filing Exclusivity Period***"), and (ii) solicit votes accepting or rejecting a plan by an additional 120 days, through and including January 6, 2025 (the "***Soliciting Exclusivity Period***" and, together with the Filing Exclusivity Period, the "***Exclusivity Periods***"), without prejudice to

6

the Debtors' right to seek further extensions of the Exclusivity Periods, as may be appropriate

under the circumstances; and (b) granting related relief.

## **BASIS FOR RELIEF REQUESTED**

14.     Section 1121(b) of the Bankruptcy Code vests debtors with the exclusive right to

propose a chapter 11 plan for the first 120 days of a chapter 11 case.  11 U.S.C. § 1121(b); *See In*

*re Bryson Properties, XVIII*, 961 F.2d 496, 504 (4th Cir. 1992) ("Under the Bankruptcy Code, the

debtor has the exclusive right to propose a reorganization plan for 120 days.").  Section 1121(c)(3)

of the Bankruptcy Code further extends the period of exclusivity for an additional 60 days, to a

total of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan.

11 U.S.C. § 1121(c)(3).  The purpose of exclusivity is "to promote an environment in which the

debtor's business may be rehabilitated and a consensual plan may be negotiated."  H.R. Rep. No.

103-835, at 36 (1994).  In these chapter 11 cases, the Exclusivity Periods set forth in sections

1121(b) and (c) of the Bankruptcy Code will expire on July 10, 2024, and September 9, 2024,

respectively, absent further order of the Court.  Accordingly, the Debtors seek the relief requested

in this Motion in accordance with the Procedures for Complex Chapter 11 Cases in the Eastern

District of Virginia as adopted by Rule 1075 of the Local Rules and Rule 9006-1 of the Local

Rules, which states, "[w]ith respect to 11 U.S.C. §1121(d), if a motion to extend the time to file a

plan is filed before the expiration of the period prescribed therein, the time automatically shall be

extended until the Court acts on the motion, without the necessity for the entry of a bridge order."

15.     Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's

exclusivity "for cause," subject to certain limitations not relevant here.  Specifically, section

1121(d) provides that "on request of a party in interest made within the respective periods . . . of

this section and after notice and a hearing, the court may for cause reduce or increase the 120-day

7

4894-4631-4185

period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d). Although the term

"cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly "in order to

allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess., 232 (1978); *see*

*also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative

intent . . . [is] to promote maximum flexibility"); *see also In re Ames Dep't Stores Inc.*, 1991 WL

259036 at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period

is to allow the debtor flexibility to negotiate with its creditors.").

16.    Courts generally examine a number of factors to determine whether a debtor has

had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether

there is "cause" for extension of the Exclusivity Periods. These factors include:

    a.    the size and complexity of the case;

    b.    the need for sufficient time to permit the debtor to negotiate a plan of
          reorganization and prepare adequate information;

    c.    whether the debtor has made progress in negotiations with its creditors;

    d.    the existence of good faith progress toward reorganization;

    e.    whether the debtor is seeking to extend exclusivity to pressure creditors to
          accede to the debtor's reorganization demands;

    f.    whether the debtor has demonstrated reasonable prospects for filing a viable
          plan;

    g.    the fact that the debtor is paying its bills as they become due;

    h.    the amount of time which has elapsed in the case; and/or

    i.    whether an unresolved contingency exists.

*See, e.g.*, *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (denying

motion to terminate exclusivity based on factors for cause); *see In re Quality Inns Int'l, Inc. v.*

*L.B.H. Associates Ltd. P'Ship*, 911 F.2d 724 (4th Cir. 1990); *In re Fountain Powerboat Indus.,*

*Inc.*, No. 09-07132-8-RDD, 2009 WL 4738202, at *3 (Bankr. E.D.N.C. Dec. 4, 2009) (utilizing

the nine-factor test used in other cases, including *Adelphia*, because "the Court has found no Fourth Circuit cases that have considered this issue").

17.    Not all factors are relevant in every case.  The absence of any given factor is not a bar to extending exclusivity; indeed, the existence of even one factor may establish sufficient cause to extend the Exclusivity Periods.  *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01 (Bankr. E.D. Tex. 1996) (listing all nine factors later set forth in *Adelphia*, but determining "cause" to extend exclusivity existed without finding that every factor was met); *see also In re Quality Inns*, 911 F.2d 724 (affirming the bankruptcy court's grant of an exclusivity extension where (a) the debtor was involved in protracted litigation, (b) the case was complex, (c) the debtor had been making every effort to rehabilitate itself, and (d) there was a promise of success).

18.    Courts apply a more lenient standard in determining whether to grant a debtor's first request to extend exclusivity.  *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("The debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts"); *In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) (noting that during the initial 120-day exclusivity period, "bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied") (quoting 11 U.S.C. § 1121(b), (c)(2)); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y 2011) (same).

19.    Courts in this district have granted similar relief for debtors' first exclusivity extension request in several recent cases.  *See, e.g.*, *In re Nordic Aviation Cap. Designated Activity Co.*, No. 21-33693 (KRH) (Bankr. E.D. Va. Apr. 20, 2022) (granting an initial exclusivity extension of 60 days); *In re Ascena Retail Group, Inc.*, No. 20-33113 (KRH) (Bankr. E.D. Va. Dec. 3, 2020) (granting an initial exclusivity extension of 122 days); *In re Le Tote, Inc.*, No.

20-33332 (KLP) (Bankr. E.D. Va. Dec. 2, 2020) (granting an initial exclusivity extension of 120 days); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 2, 2020) (granting an initial exclusivity extension of 159 days); *In re Chinos Holdings, Inc.*, No. 20-32181 (KLP) (Bankr. E.D. Va. Aug. 26, 2020) (granting an initial exclusivity extension of 90 days); *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va. June 1, 2020) (granting an initial exclusivity extension of 91 days); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Dec. 20, 2017) (granting an initial exclusivity and solicitation extension of 180 days).

20.     The Debtors submit that sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods as provided herein.  As discussed in detail below, each of the relevant factors either weighs in favor of an extension of the Exclusivity Periods or is inapplicable in light of the current posture of these chapter 11 cases.

**A.      The Debtors' Chapter 11 Cases Are Large and Complex.**

21.     The size and complexity of a debtor's case alone may constitute cause to extend exclusivity periods.  The legislative history of section 1121(d) of the Bankruptcy Code provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 208 (1978).  Similarly, "[t]he large size of the debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."  *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

22.     The Debtors' chapter 11 cases are sufficiently large and complex to warrant the requested extension of the Exclusivity Periods.  As of the Petition Date, the Debtors have approximately $1.8 billion in funded debt obligations.  As a result of their capital structure, the Debtors have numerous active constituents, including numerous sophisticated vendors, lenders,

10

and stakeholders.  The size and complexity of these chapter 11 cases thus weigh in favor of extending the Exclusivity Periods.

**B.**     **The Debtors Have Made Good Faith Progress Toward a Restructuring.**

23.     Leading up to and since the Petition Date, the Debtors have made substantial progress in negotiating with their stakeholders and administering these chapter 11 cases, which further warrants an extension of the Exclusivity Periods.  This progress includes:

a.    **Entering into the Restructuring Support Agreements.**  The Debtors commenced these chapter 11 cases with substantial creditor support for a comprehensive restructuring.  This support is embodied in the RSA and the Bond Green Bond RSA, which have provided a foundation for these chapter 11 cases to date.  The RSA contemplates an equity rights offering and exit facility, expected to be fully backstopped by the Ad Hoc Group.

b.    **Filing Schedules of Assets and Liabilities and Statements of Financial Affairs.**  On April 26, 2024, the Debtors filed their schedules and statements of financial affairs for each of the 21 Debtor entities.[4]

c.    **Obtaining Critical Financial and Operational Relief.**  The Debtors stabilized their business operations and achieved a smooth landing in chapter 11 through various forms of operational first- and second-day relief.  The Debtors have finalized and received approval of the use of a debtor-in-possession financing facility providing a total of $500 million in new liquidity.  Moreover, the Debtors obtained critical relief in the form of, among other things, authority to continuing utilizing the Debtors' cash management system and to continue paying employees and certain vendors.  The Debtors additionally obtained authority to retain section 327 and ordinary course professionals and established interim compensation procedures.  The Debtors have rejected certain contracts and brokered ancillary settlements with various stakeholders that have resulted in a leaner enterprise.

d.    **Renegotiating Customer Contracts.**  The Debtors have utilized the "breathing spell" afforded by the chapter 11 process to renegotiate several long-term offtake contracts with their European and Asian customers.  Where contracts could not be renegotiated to provide favorable economics, the Debtors have rejected customer contracts pursuant to section 365 of the Bankruptcy Code.  Finalizing the Debtors' go-forward customer portfolio is an essential step in preparing their revised business plan and, ultimately, confirming a chapter 11 plan and expeditiously exiting chapter 11.  While significant progress has been made, such contract

---

[4]    The Debtors filed certain amended schedules of assets and liabilities on May 30, 2024.

11

renegotiations are ongoing and additional work is required to finalize such negotiations.

e.   **Establishing a Bar Date and Claims Process.**  The Debtors received approval from the Court for a claims bar date, which will assist the Debtors by providing certainty as to the universe of claims.  The Debtors have also filed motions with the Court to establish processes for the efficient resolution of claims as well as rejections and assumptions of executory contracts and unexpired leases.  The Debtors have worked with their advisors to evaluate and start processing the claims that have been filed to date.

24.     The Debtors' significant efforts and the progress achieved to date in these chapter 11 cases further support extending the Exclusivity Periods.

**C.     Extending the Exclusivity Periods Will Not Prejudice Creditors.**

25.     The Debtors seek to maintain exclusivity to continue operating their business in the ordinary course and preserve the value of their Estates while ensuring that parties with competing interests do not hinder the Debtors' efforts to complete a value-maximizing chapter 11 plan.  All stakeholders will benefit from continued stability and predictability, which comes only with the Debtors being the sole potential plan proponents.

26.     An extension of the Exclusivity Periods will benefit all creditors by preventing the drain on estate assets that inevitably occurs when multiple parties, with potentially diverging interests, vie for the consideration of their own respective chapter 11 plans.  All stakeholders benefit from the continued stability and predictability that a centralized plan process provides, which can only occur while the Debtors remain the sole potential plan proponents.  Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will instead benefit the Debtors' estates, their creditors, and other key parties in interest.

**D.      The Debtors Are Paying Their Bills as They Come Due.**

27.      Since the Petition Date, the Debtors have paid, and will continue to pay, their post-petition debts in the ordinary course of business or as otherwise provided by Court order, which further supports an extension of exclusivity.

**E.      The Debtors Have Reasonable Prospects for Filing a Viable Plan.**

28.      The Debtors have negotiated and executed an RSA that sets forth the framework for a confirmable chapter 11 plan.  Notwithstanding recent obstacles faced by the Debtors, they intend to file a plan and disclosure statement as expediently as reasonably practicable and similarly seek an extension of certain milestones under the RSA and DIP Facility.  The Debtors have made substantial progress towards filing a plan of reorganization consistent with the RSA, for which the Debtors anticipate support from a wide array of their creditors.

**F.      The Debtors Have Made Significant Progress Despite the Short Duration of These Chapter 11 Cases.**

29.      This Motion is the Debtors' first request for an extension of the Exclusivity Periods. As noted above, courts typically provide a more lenient standard in extending exclusivity for the Debtors' first request.[5]  Therefore, given the short duration of these chapter 11 cases to date, and the substantial work completed by the Debtors during this period, the Debtors submit that this factor weighs in favor of extending the Exclusivity Periods.

---

[5]    *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("The debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts."); *In re Apex Pharm., Inc.*, 203 B.R. at 441 (noting that during the initial 120-day exclusivity period, "bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied") (quoting 11 U.S.C. § 1121(b), (c)(2)); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y 2011) (same).

4894-4631-4185

**G.    The Debtors Are Not Pressuring Creditors by Requesting an Extension of the Exclusivity Periods.**

30.    The Debtors have no ulterior motive in seeking an extension of the Exclusivity Periods.  Indeed, the Debtors are operating their businesses as usual and have worked diligently over the past few months to maximize the value of their businesses.  Accordingly, the Debtors are not seeking an extension to pressure their creditors or other parties in interest.

31.    An objective analysis of the relevant factors demonstrates that the Debtors are doing everything that they should be doing as chapter 11 debtors to facilitate a successful conclusion to these complex chapter 11 cases.  Accordingly, the Debtors respectfully submit that sufficient cause exists to extend the Exclusivity Periods as provided herein.  Courts in this and other districts have granted relief similar to that requested herein.  *See, e.g.*, *In re Nordic Aviation Cap. Designated Activity Co.*, No. 21-33693 (KRH) (Bankr. E.D. Va. Apr. 20, 2022) (granting an initial exclusivity extension of 60 days); *In re Ascena Retail Group, Inc.*, No. 20-33113 (KRH) (Bankr. E.D. Va. Dec. 3, 2020) (granting an initial exclusivity extension of 122 days); *In re Le Tote, Inc.*, No. 20-33332 (KLP) (Bankr. E.D. Va. Dec. 2, 2020) (granting an initial exclusivity extension of 120 days); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 2, 2020) (granting an initial exclusivity extension of 159 days); *In re Chinos Holdings, Inc.*, No. 20-32181 (KLP) (Bankr. E.D. Va. Aug. 26, 2020) (granting an initial exclusivity extension of 90 days); *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va. June 1, 2020) (granting an initial exclusivity extension of 91 days); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Dec. 20, 2017) (extending exclusivity and solicitation 180 days).[6]

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

4894-4631-4185

## NOTICE

32.     Notice of this Motion has been provided by delivery to the following parties or their counsel, as applicable: (a) the Assistant United States Trustee for the Eastern District of Virginia; (b) Akin Gump Strauss Hauer & Feld LLP as co-counsel to the Committee; (c) Hirschler Fleischer PC as co-counsel to the Committee; (d) Davis Polk & Wardwell LLP as co-counsel to the Ad Hoc Group; (e) McGuireWoods LLP as co-counsel to the Ad Hoc Group; (f) McDermott Will & Emery LLP as counsel to the agent under the DIP Facility; (g) Cahill Gordon & Reindel LLP as counsel to the agent under the Senior Secured Credit Facility; (h) Kilpatrick Townsend & Stockton LLP as counsel to the indenture trustee under the 2026 Notes; (i) Kramer Levin Naftalis & Frankel LLP as counsel to the indenture trustees under the Bond Green Bonds and the Epes Green Bonds; (j) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (k) the United States Attorney's Office for the Eastern District of Virginia; (l) the Securities and Exchange Commission; (m) the Internal Revenue Service; and (n) all applicable government agencies or other parties to the extent required by the Bankruptcy Rules or the Local Rules (collectively, the "***Notice Parties***").

## NO PRIOR REQUEST

33.     No prior motion for the relief requested herein has been made to this Court or any other court.

4894-4631-4185

Wherefore, the Debtors respectfully request that the Court enter the Order, substantially in the form attached as **Exhibit A**, and grant such other and further relief to which the Debtors may be entitled.

Richmond, Virginia
Dated:  July 10, 2024

/s/  *Jeremy S. Williams*
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Adolyn C. Wyatt (VA 97746)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

*Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

17

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Adolyn C. Wyatt (VA 97746)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

*Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENVIVA INC., *et al.*, | ) | Case No. 24-10453 (BFK) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## ORDER EXTENDING THE EXCLUSIVITY PERIODS TO
## FILE AND SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN

Upon the Motion[2] filed by the above-referenced debtors and debtors in possession (collectively, the "***Debtors***") for entry of an order (the "***Order***") extending the Filing Exclusivity Period through and including November 7, 2024, and the Debtors' Soliciting Exclusivity Period through and including January 6, 2025, without prejudice to the Debtors' right to seek further extensions of the Exclusivity Periods, as set forth in the Motion; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court, having found that

---

[1]    Due to the large number of Debtors in these jointly administered chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://veritaglobal.net/enviva.  The location of the Debtors' corporate headquarters is:  7272 Wisconsin Avenue, Suite 1800, Bethesda, MD 20814.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

1.      The Debtors' Filing Exclusivity Period pursuant to section 1121(b) of the Bankruptcy Code is hereby extended through and including November 7, 2024.

2.      The Debtors' Soliciting Exclusivity Period pursuant to section 1121(c) of the Bankruptcy Code is hereby extended through and including January 6, 2025.

3.      Nothing herein shall prejudice the Debtors' right to seek further extensions of the Exclusivity Periods, or the rights of any other party in interest to seek or oppose relief with respect to the Exclusivity Periods, in each case consistent with section 1121(d) of the Bankruptcy Code.

4.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

5.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

2

4894-4631-4185

      6.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____

Alexandria, Virginia                            _____

                                              UNITED STATES BANKRUPTCY JUDGE

3

WE ASK FOR THIS:

 /s/ Jeremy S. Williams
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Adolyn C. Wyatt (VA 97746)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

*Counsel to the Debtors and Debtors in Possession*

### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

 /s/ Jeremy S. Williams

4