Paul M. Basta (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:      (212) 373-3000
Facsimile:      (212) 757-3990

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Adolyn C. Wyatt (VA 97746)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

*Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENVIVA INC., *et al.*, | ) ) | Case No. 24-10453 (BFK) |
| Debtors.[1] | ) ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF FILING OF PLAN SUPPLEMENT FOR THE AMENDED JOINT
CHAPTER 11 PLAN OF REORGANIZATION OF ENVIVA INC. AND ITS DEBTOR
AFFILIATES**

   **PLEASE TAKE NOTICE THAT** on October 4, 2024, the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") entered an order (the "Disclosure Statement Order"), among other things, (a) authorizing the above-captioned debtor and its debtor affiliates (together, the "Debtors") to solicit acceptances for the *Amended Joint Chapter 11 Plan of Reorganization for Enviva Inc. and Its Debtor Affiliates* [Docket No. 1150] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization for Enviva Inc. and Its Debtor Affiliates* [Docket No. 1151] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto, and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]   Due to the large number of Debtors in these jointly administered chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' claims and noticing agent at www.veritaglobal.net/enviva. The location of the Debtors' corporate headquarters is:  7500 Old Georgetown Road, Suite 1400, Bethesda, MD 20814.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan, the Debtors hereby file the Plan Supplement, which sets forth the forms of the following documents.  Certain of these documents remain subject to material change and revision based on negotiations or may be subject to various other qualifications, conditions, or limitations:

| Exhibit | Document[3] |
|---|---|
| A | Exit Facility Credit Agreement |
| B | New Organizational Documents |
| C | Stockholders Agreement |
| D | Schedule of Assumed Executory Contracts and Unexpired Leases |
| E | Schedule of Rejected Executory Contracts and Unexpired Leases |
| F | Schedule of Retained Causes of Action |
| G | Identity of the Initial Members of the New Board |
| H | Restructuring Transactions Exhibit |
| I | Identity of the Plan Administrator |
| J | Litigation Trust Agreement |

**PLEASE TAKE FURTHER NOTICE THAT** the documents, schedules, and other information contained in this Plan Supplement are integral to and part of the Plan.  These documents have not yet been approved by the Court.  If the Plan is accepted, the documents contained in the Plan Supplement will be approved by the Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE THAT** all parties reserve all rights in accordance with the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement, and other applicable documents, and rights are further reserved to amend, revise, supplement, or restate the Plan Supplement and any of the documents and designations contained therein in accordance with the Plan.  If material amendments or modifications are made to any of these documents, the Debtors will file a redline with the Court prior to the Confirmation Hearing or Effective Date, as applicable, marked to reflect the same.

**PLEASE TAKE FURTHER NOTICE THAT** all votes to accept or reject the Plan must be **actually received** by the Debtors' Noticing and Claims Agent at the Enviva Ballot Processing Center, c/o Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA, 90245 by no later than **November 6, 2024 at 4:00 p.m. (prevailing Eastern Time)**.

---

[3] The exhibits set forth in the Plan Supplement remain subject to ongoing review and material revision in all respects.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **November 13, 2024 at 10:30 a.m. (prevailing Eastern Time)**, before the Honorable Brian F. Kenney, United States Bankruptcy Judge, 200 S. Washington St., Courtroom No. 1, Alexandria, VA 22314. **The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.**

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **November 6, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "Plan Objection Deadline"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the legal and factual basis for and nature of any objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (d) conform to the applicable Bankruptcy Rules and Bankruptcy Local Rules; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Enviva Inc.,** *et al.* <br> 7500 Old Georgetown Road, Suite 1400 <br> Bethesda, MD 20814 | **Paul, Weiss, Rifkind,** <br> **Wharton & Garrison LLP** <br> 1285 Avenue of the Americas <br> New York, NY 10019 <br> Attn: Paul M. Basta, Andrew M. Parlen, and Michael J. Colarossi <br> Email: pbasta@paulweiss.com, <br> aparlen@paulweiss.com, <br> mcolarossi@paulweiss.com <br><br> *- and -* <br><br> **Kutak Rock LLP** <br> 1021 East Cary Street, Suite 810 <br> Richmond, VA 23219 <br> Attn: Michael A. Condyles, Peter J. Barrett, and Jeremy S. Williams <br> Email: Michael.condyles@kutakrock.com, <br> peter.barrett@kutakrock.com, <br> Jeremy.williams@kutakrock.com |

| **The Official Committee of Unsecured Creditors** |
|:---:|
| **Akin Gump Strauss Hauer & Feld LLP**<br>2001 K Street N.W.<br>Washington, DC 20006<br>Attn: Scott L. Alberino and Alexander F. Antypas<br>Email: salberino@akingump.com, aantypas@akingump.com<br><br>**Akin Gump Strauss Hauer & Feld LLP**<br>One Bryant Park<br>New York, NY 10036<br>Attn: Jason P. Rubin<br>Email: jrubin@akingump.com<br><br>*- and -*<br><br>**Hirschler Fleischer, P.C.**<br>1676 International Drive, Suite 1350<br>Tysons, VA 22102<br>Attn: Lawrence A. Katz and Kristen E. Burgers<br>Email: lkatz@hirschlerlaw.com, kburgers@hirschlerlaw.com |
| **U.S. Trustee** |
| **Office of The United States Trustee**<br>200 Granby Street, Room 625<br>Norfolk, VA 23510<br>Attn: Kenneth N. Whitehurst and Nicholas S. Herron<br>Email: kenneth.n.whitehurst@usdoj.gov, Nicholas.s.herron@usdoj.gov |
| **The Ad Hoc Group** |
| **Davis Polk & Wardwell LLP**<br>450 Lexington Avenue<br>New York, NY 10017<br>Attn: Damian S. Schaible and David Schiff<br>Email: damian.schaible@davispolk.com, david.schiff@davispolk.com<br><br>*- and -*<br><br>**McGuireWoods LLP**<br>800 East Canal Street<br>Richmond, VA 23219<br>Attn: Dion W. Hayes and Connor W. Symons<br>Email: dhayes@mcguirewoods.com, csymons@mcguirewoods.com |

| RWE Committee |
|---|
| **Milbank LLP**<br>55 Hudson Yards<br>New York, NY 10001<br>Attn: Dennis F. Dunne, Evan R. Fleck, and Andrew Harmeyer<br>Email: ddunne@milbank.com, efleck@milbank.com, aharmeyer@milbank.com<br><br>**Milbank LLP**<br>1850 K St. NW, Suite 1100<br>Washington, DC 20006<br>Attn: Andrew M. Leblanc, Erin E. Dexter, and S. Robert Marsters, Jr.<br>Email: aleblanc@milbank.com, edexter@milbank.com, rmarsters@milbank.com<br><br>*- and -*<br><br>**Williams Mullen**<br>200 South 10th Street, Suite 1600<br>Richmond, VA 23219<br>Attn: Michael D. Mueller, Jennifer M. McLemore, and Gabrielle E. Brill<br>Email: mmueller@williamsmullen.com, jmclemore@williamsmullen.com,<br>gbrill@williamsmullen.com |
| **DIP Facility Agent** |
| **McDermott Will & Emery LLP**<br>500 North Capital Street, NW<br>Washington, DC 20001<br>Attn: Jennifer B. Routh<br>Email: jrouth@mwe.com<br><br>**McDermott Will & Emery LLP**<br>One Vanderbilt Avenue<br>New York, NY 10007<br>Attn: Jonathan I. Levine, Lucas B. Barrett<br>Email: jlevine@mwe.com, lbarrett@mwe.com |
| **Agent Under the Senior Secured Credit Facility** |
| **Cahill Gordon & Reindel LLP**<br>32 Old Slip<br>New York, NY 20006<br>Attn: Joel Moss, Jordan Wishnew<br>Email: jmoss@cahill.com, jwishnew@cahill.com |
| **Indenture Trustee Under 2026 Notes** |
| **Kilpatrick Townsend & Stockton LLP**<br>1100 Peachtree Street NE, Suite 2800<br>Atlanta, GA 30309<br>Attn: Paul M. Rosenblatt<br>Email: prosenblatt@ktslaw.com |

| **Indenture Trustee Under Bond Green Bonds and the Epes Green Bonds** |
|:---:|
| **Kramer Levin Naftalis & Frankel LLP**<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Attn: Amy Caton, Douglas Buckley<br>Email: acaton@kramerlevin.com, dbuckley@kramerlevin.com |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Noticing and Claims Agent by (a) writing to Enviva Ballot Processing Center, c/o Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 249-2695 (USA or Canada, toll-free) or +1 (310) 751-2601 (International); or (c) visiting the Debtors' restructuring website at https://www.veritaglobal.net/enviva. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.vaeb.uscourts.gov.

---

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN. ARTICLE VIII.E OF THE PLAN CONTAINS THIRD-PARTY RELEASES. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE NOTICING AND CLAIMS AGENT AS SPECIFIED ABOVE. PLEASE NOTE THAT THE NOTICING AND CLAIMS AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

Dated: October 23, 2024

/s/ *Jeremy S. Williams*

**KUTAK ROCK LLP**
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Adolyn C. Wyatt (VA 97746)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:     (212) 373-3000
Facsimile:     (212) 757-3990

*Counsel to the Debtors and
Debtors in Possession*

## Exhibit A

### Exit Facility Credit Agreement

This Exhibit A contains a term sheet summarizing the terms of the Exit Facility Credit Agreement. The form of the Exit Facility Credit Agreement remains subject to continuing negotiations among the Debtors, the Exit Facility Agent, and the Exit Facility Lender and will be filed at a later date.

Article IV.B.2.a of the Plan provides as follows:

On the Effective Date, the Reorganized Debtors will enter into the Exit Facility in accordance with the terms of the Exit Facility Credit Agreement(s). The Reorganized Debtors may use the proceeds of the Exit Facility for any purpose permitted by the Exit Facility Documents, including the funding of Cash distributions under the Plan and satisfaction of ongoing working capital needs.

The Confirmation Order shall constitute approval of the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Reorganized Debtors in connection therewith), and authorization for the Debtors or the Reorganized Debtors, as applicable, without further notice to or order of the Court, to enter into, execute, deliver, and perform under the Exit Facility Documents and such other documents as may be required or appropriate to effectuate the transactions contemplated thereby. Execution of the Exit Facility Documents by the Exit Facility Agent shall be deemed to bind all Exit Facility Lenders as if each such Exit Facility Lenders had executed the applicable Exit Facility Documents with appropriate authorization, regardless of whether such Exit Facility Lender has executed a signature page thereto.

The Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, whether under the Bankruptcy Code or other applicable non-bankruptcy law, and shall not constitute preferential transfers, fraudulent transfers, obligations, or conveyances, or other voidable transfers or obligations under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted by the Reorganized Debtors in accordance with the Exit Facility Documents (including any Liens and security interests previously granted with respect to the Senior Secured Credit Facility Documents or the DIP Facility Documents that are deemed to be granted in accordance with the Exit Facility Documents) (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the

Exit Facility Documents, (c) shall be deemed automatically perfected on the Effective Date without the need for the taking of any further filing, recordation, approval, consent or other action, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, and (d) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, obligations, or conveyances, or other voidable transfers or obligations under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents, and take any other actions necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically on the Effective Date by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. The Reorganized Debtors shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

Certain documents or portions thereof contained in this Exhibit A and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan. The filing of the forms of the documents set forth in this Plan Supplement (including this Exhibit A) shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

**ENVIVA INC.**

**EXIT FACILITY**

**SUMMARY OF TERMS AND CONDITIONS**

*This summary of principal terms and conditions (this "**Exit Facility Term Sheet**") outlines the material terms of the senior secured first lien Exit Facility to be provided to a reorganized Enviva Inc. and Enviva, LP, as Borrowers.   The final documentation for the financing described herein, if any, will constitute the sole agreement among the parties with respect to the matters addressed herein.*

*This Exit Facility Term Sheet does not attempt to describe all of the terms, conditions, and requirements that would pertain to the financing described herein, which shall be set forth in the final Exit Facility Documentation (as defined below), but rather is intended to be a summary outline of the material terms of such financing.   Capitalized terms used herein but not defined have the respective meanings ascribed to such terms in the Restructuring Support Agreement (the "**Restructuring Support Agreement**"), the Exit Facility Commitment Letter (the "**Commitment Letter**") to which this Exit Facility Term Sheet is attached or in the Plan (as defined in the Commitment Letter).*

## PARTIES

| | |
|---|---|
| Borrowers: | Enviva Inc., a Delaware corporation, as a reorganized debtor (the "**Administrative Borrower**") and Enviva, LP, a Delaware limited partnership, as a reorganized debtor (the "**Subsidiary Borrower**" and together with the Administrative Borrower, the "**Borrowers**"). |
| Guarantors: | The obligations of the Borrowers under the Exit Facility (as defined below) and, at the option of the Borrowers, the obligations of the Borrowers and its Restricted Subsidiaries (as defined below) under any currency, interest rate protection, commodity or other hedging agreement (but excluding any speculative arrangement or Excluded Swap Obligation (to be defined in a manner consistent with the Documentation Principles (as defined below))) (a "**Secured Hedging Agreement**") and any cash management arrangement (a "**Secured Cash Management Arrangement**"), in each case entered into with a lender under any RCF Refinancing or an Exit Creditor (as defined below), the Exit Agent (as defined below), and any person that is an affiliate of a lender under any RCF Refinancing, an Exit Creditor or the Exit Agent at the time the relevant transaction is entered into (collectively, the "**Obligations**") will be unconditionally guaranteed, jointly and severally, by (a) a newly formed holding company that will directly or indirectly hold 100% of the equity interests of the Borrowers ("**Holdings**"), (b) each direct or indirect parent of the Borrowers that is a subsidiary of Holdings, (c) each Restricted Subsidiary of the Borrowers (the persons described in this clause (c), the "**Subsidiary Guarantors**"), and (d) in the case of Secured Hedging Agreements and Secured Cash Management Arrangements of any Restricted Subsidiary, the Borrowers (the persons described in the immediately foregoing clauses (a), (b) and (c), collectively, |

the "**Guarantors**" and the Guarantors, together with the Borrowers, collectively, the "**Credit Parties**"); provided that Excluded Subsidiaries (as defined in the Precedent Credit Agreement (as defined below)) will not be required to become Guarantors.

For purposes of the Exit Facility Documentation, "**Restricted Subsidiary**" means any existing or future direct or indirect subsidiary of the Borrowers that is not an Unrestricted Subsidiary (as defined below).

Exit Creditors:

Each Commitment Party (together with their permitted assignees, the "**Exit Creditors**").

Exit Agent:

Acquiom Agency Services LLC and Seaport Loan Products LLC, or another institution to be mutually agreed by the Requisite Commitment Parties and the Borrowers, will act as administrative agent and collateral agent (in such capacities, the "**Exit Agent**").

**DESCRIPTION OF EXIT FACILITY**

Exit Facility:

A 5-year senior secured first lien term loan facility in an aggregate principal amount of up to $1,050,000,000 (the "**Exit Facility**" and the loans thereunder, the "**Exit Loans**"), consisting of:

(i) Delayed draw term loans in an aggregate principal amount up to $300,000,000 (with $50,000,000 of such amount to be provided on a best efforts basis, and the Exit Loans described in this clause (i), the "**Delayed Draw Term Loans**", the term loan facility consisting of such loans, the "**Delayed Draw Exit Facility**", and the commitment of each Commitment Party to make such term loans, the "**Delayed Draw Commitments**"); and

(ii) Exit term loans in an aggregate outstanding principal amount equal to $750,000,000 (the Exit Loans described in this clause (ii), the "**Exit Term Loans**" and the term loan facility consisting of such loans, the "**Exit Term Loan Facility**").

If a Delayed Draw Term Loan is not fungible for U.S. federal income tax purposes with any portion of the Exit Loans, such Delayed Draw Term Loan will trade separately under a separate CUSIP or other identifying number from any portion of the Exit Loans, and any other Delayed Draw Term Loan, with which such Delayed Draw Term Loan is not fungible. Subject to compliance with applicable securities law, any Exit Loans or any portion of the Exit Facility may, at the option of any Exit Creditor, (i) be provided in the form of notes instead of loans (and any reference herein to "Exit Loans", "Exit Term Loans" or "Delayed Draw Term Loans" shall include such notes) and/or (ii) be funded on a cashless basis

2

by rolling over existing loans or notes outstanding under the DIP Facility Agreement.

| | |
|---|---|
| Amortization: | Annual amortization (payable in equal quarterly installments beginning on the last day of the first full fiscal quarter ending after the Closing Date (as defined below)) shall be required in an aggregate annual amount equal to 1.00% *per annum* of the original principal amount of the Exit Term Loans, with the balance payable on the Maturity Date.<br><br>The Delayed Draw Exit Facility will not amortize. The balance of any amounts drawn under the Delayed Draw Exit Facility shall be payable on the Maturity Date. |
| Incremental Facilities: | Any RCF Refinancing (as defined below) that is a first out revolving credit facility and additional amounts in an amount not to exceed $100,000,000 less the amount of the Delayed Draw Exit Facility on the Closing Date to the extent such amount exceeds $250,000,000. |
| Maturity: | The Exit Facility will mature on the date that is five (5) years following the Closing Date (the "**Maturity Date**"). |
| Use of Proceeds: | The proceeds of the Exit Loans will be used to make payments and distributions under the Plan and for general corporate purposes not otherwise prohibited by the Exit Facility Documentation.<br><br>Once repaid, Exit Loans may not be reborrowed. |
| Delayed Draw Term Loan Draw Mechanics | The Borrowers may make up to six (6) draws of the Delayed Draw Term Loans in minimum amounts of $10,000,000 and maximum amounts of $100,000,000 during the period commencing on the Closing Date through and including the date that is two (2) years from the Closing Date (the "**Delayed Draw Commitment Period**"). |

**CERTAIN PAYMENT PROVISIONS**

| | |
|---|---|
| Interest Rates: | The Exit Loans comprising each borrowing shall bear interest at a rate equal to, as elected by the Borrowers in its sole discretion, (i) Term SOFR (to be mutually agreed and which shall not be less than 1.00% *per annum*) *plus* (x) 4.50% *per annum*, payable in cash at the end of each interest period *plus* 1.00% *per annum*, payable in kind (by capitalizing and adding to the principal amount of the Exit Loans) if the Total Leverage Ratio (as defined in the Precedent Credit Agreement (including any defined terms used in the definition of Total Leverage Ratio)) is less than 3.0x, (y) 5.00% *per annum*, payable in cash at the end of each interest period *plus* 1.00% *per annum*, payable in kind (by capitalizing and adding to the principal amount of the Exit Loans) if the Total Leverage Ratio is 3.0x or greater but less than 3.5x or (z) 5.00% *per annum*, payable in cash at the end of each interest period *plus* 4.00% *per annum*, |

3

payable in kind (by capitalizing and adding to the principal amount of the Exit Loans) if the Total Leverage Ratio is 3.5x or greater or (ii) Base Rate (to be defined in a manner consistent with the Documentation Principles) *plus* (x) 3.50% *per annum*, payable in cash on a quarterly basis *plus* 1.00% *per annum*, payable in kind (by capitalizing and adding to the principal amount of the Exit Loans) if the Total Leverage Ratio is less than 3.0x, (y) 4.00% *per annum*, payable in cash on a quarterly basis *plus* 1.00% *per annum*, payable in kind (by capitalizing and adding to the principal amount of the Exit Loans) if the Total Leverage Ratio is 3.0x or greater but less than 3.5x or (z) 4.00% *per annum*, payable in cash on a quarterly basis *plus* 4.00% *per annum*, payable in kind (by capitalizing and adding to the principal amount of the Exit Loans) if the Total Leverage Ratio is 3.5x or greater.  Any portion of interest that is payable in kind may, at the option of the Borrowers, be paid in cash.

| | |
|---|---|
| Default Interest: | At any time when a payment event of default (with respect to any principal, interest or fees) or bankruptcy event of default exists, at the written election of the Required Lenders (to be mutually defined in a manner consistent with the Documentation Principles), the relevant overdue amounts will bear interest, to the fullest extent permitted by law, (i) in the case of overdue principal or interest, at 2.00% *per annum* above the rate then borne (in the case of principal) by such borrowings or (in the case of interest) by the borrowings to which such overdue amount relates or (ii) in the case of fees, 2.00% *per annum* in excess of the rate otherwise applicable to Exit Loans maintained as Base Rate loans from time to time. |
| Undrawn Commitment Fee: | The Borrowers shall pay to each Commitment Party holding Delayed Draw Commitments an undrawn commitment fee in an amount equal to (x) 2.25% *per annum* if the Total Leverage Ratio is less than 3.0x, payable in cash on a quarterly basis, *plus* 0.50% *per annum*, payable in kind (by capitalizing and adding to the principal amount of the Exit Loans) (y) 2.50% *per annum* if the Total Leverage Ratio is 3.0x or greater but less than 3.5x, payable in cash on a quarterly basis, *plus* 0.50% *per annum*, payable in kind (by capitalizing and adding to the principal amount of the Exit Loans) or (z) 2.50% *per annum*, payable in cash on a quarterly basis *plus* 2.00% *per annum*, payable in kind (by capitalizing and adding to the principal amount of the Exit Loans) if the Total Leverage Ratio is 3.5x or greater (the "**Undrawn Commitment Fee**").  Any portion of the Undrawn Commitment Fee that is payable in kind may, at the option of the Borrowers, be paid in cash. |
| Exit Agent Fees: | To be set forth in a separate fee letter agreement between the Exit Agent and the Borrowers. |
| Optional Prepayments: | The Borrowers may, upon notice requirements to be mutually agreed consistent with the Documentation Principles, prepay the Exit Loans, in whole or in part, in minimum amounts to be agreed |

4

(subject to the prepayment premium set forth under the heading "Call Protection" below).

Borrowers may refinance, in whole or in part, the Delayed Draw Term Loans with a *pari passu* first-out revolving credit facility provided by commercial bank lenders within 1 year of emergence (the "**RCF Refinancing**"); provided that (i) such revolving credit facility matures no more than 91 days prior to the Exit Loans, (ii) if the effective yield of such *pari passu* first-out revolving credit facility is more than 50 bps higher than the corresponding effective yield applicable to the Exit Loans, the applicable margin for the Exit Loans shall be increased to the extent necessary such that the effective yield on the Exit Loans is 50 bps less than the effective yield of such *pari passu* first-out revolving credit facility, and (iii) the terms of such revolving credit facility shall, when taken as a whole, be no more restrictive (as determined by the Borrowers in their reasonable discretion) than those applicable to the Exit Loans (unless such terms automatically apply to, and are for the benefit of, the Exit Loans).  The Exit Facility Documentation shall provide for such revolving credit facility to rank ahead in the "payment waterfall" to the Exit Loans and any Delayed Draw Commitments, and shall require the consent of the majority of the lenders under such revolving credit facility for any amendments, modifications or waivers to the Exit Facility Documentation that by their terms materially adversely affect such lenders in a manner that is different from the other lenders (and may include other voting and consent rights acceptable to the Requisite Commitment Parties).

| | |
|---|---|
| Call Protection: | Any voluntary or actual or required mandatory prepayment of Exit Loans (other than (x) pursuant to a RCF Refinancing or (y) mandatory prepayments made pursuant to clause (ii) or clause (iii) under the heading "Mandatory Prepayments) and any acceleration of the Exit Loans shall be subject to the prepayment premiums (expressed as a percentage of the outstanding principal amount of the Exit Loans that are being prepaid, assigned or accelerated, as applicable) as set forth opposite the relevant period from the Closing Date. The Exit Facility will reflect maximum enforceability of call protection provisions in the event of bankruptcy or insolvency proceeding, including customary "Momentive" protections with respect to payment of the prepayment premiums. |

| Year | Prepayment Premium |
|---|---|
| Year 1: | Make-whole premium |
| Year 2: | 3.00% |
| Year 3: | 1.50% |
| Thereafter: | No premium |

| | |
|---|---|
| Mandatory Prepayments: | The Borrowers shall cause an amount no less than each amount calculated pursuant to the terms below to be offered to prepay the |

5

Exit Loans, in each case, with carve-outs and exceptions consistent with the Documentation Principles (as defined below):

(i)      100% of the net cash proceeds of any incurrence by the Borrowers and/or any of their Restricted Subsidiaries of indebtedness (other than debt otherwise permitted under the Exit Facility Documentation (other than certain permitted refinancing debt));

(ii)     net cash proceeds from asset sales and casualty events consistent with Sections 2.13(b) and 2.13(d) of the Precedent Credit Agreement; *provided*, that the reinvestment period with respect to such net cash proceeds shall be limited to 180 days and such net cash proceeds may only be reinvested in capital assets;

(iii)    The Applicable ECF Percentage (as defined below) of Excess Cash Flow (to be defined in a manner consistent with the Documentation Principles) of the Borrowers and their Restricted Subsidiaries for each fiscal year of the Borrowers (commencing with the fiscal year ending December 31, 2025); provided, that:

> (a)    any such Excess Cash Flow prepayment will be required only if (and only to the extent that) the amount of the prepayment, after giving effect to any reductions and other credits to be set forth in the Exit Facility Documentation in a manner consistent with the Documentation Principles, exceeds an amount per fiscal year to be agreed; and

> (b)    no Excess Cash Flow prepayment shall be required if, after giving effect thereto, Liquidity (as defined below) is less than $100,000,000.

Additionally, the Exit Facility Documentation will include the right of individual Exit Creditors to decline mandatory prepayments with proceeds referred to in clauses (i) through (iii) above (but in the case of clause (i) above, solely to the extent not representing a refinancing of the Exit Loans), in which case, such proceeds shall be available to the Borrowers and its restricted subsidiaries for any usages not prohibited by the Exit Facility Documentation.

As used herein, "Applicable ECF Percentage" shall mean (x) if the Total Leverage Ratio is greater than or equal to 4.5x, 50%, (y) if the Total Leverage Ratio is less than 4.5x but greater than or equal to 3.0x, 25% and (z) if the Total Leverage Ratio is less than 3.0x, 0%.

6

**COLLATERAL**

Collateral:

The Obligations will be secured by a valid and perfected security interest in, with the priority described below under the heading "Ranking", and lien on substantially all tangible and intangible, real and personal property of the Credit Parties (collectively, the "**Collateral**"); it being expressly understood and agreed that the Collateral will not include certain excluded property (x) to be mutually agreed and (y) excluded pursuant to the terms of the Precedent Credit Agreement or the Loan Documents (as defined in the Precedent Credit Agreement).

Ranking:

The Obligations will be secured on a first-priority basis with respect to Collateral.

**CONDITIONS**

Conditions Precedent to Closing:

The availability of the initial borrowing under the Exit Term Loans on the Closing Date shall be conditioned solely upon the conditions set forth on **Annex I** hereto (the date of satisfaction or waiver of such conditions, the "**Closing Date**").

Conditions Precedent to Delayed Draw Term Loan Borrowing:

The Exit Facility Documentation shall contain customary and usual conditions precedent for financings of this type to the funding of the Delayed Draw Term Loans (the date of such satisfaction of conditions, the "**Delayed Draw Borrowing Date**"), which shall be limited to the following:

(i)    No default or event of default shall have occurred and be continuing.

(ii)    Accuracy of representations and warranties in all material respects (or, if qualified by materiality or containing a material adverse effect qualification, in all respects).

(iii)    The amount of such borrowing shall not exceed the amount of Delayed Draw Commitments outstanding at such time.

(iv)    The Delayed Draw Commitment Period shall not have expired.

**DOCUMENTATION**

Exit Facility Documentation:

The definitive financing documentation for the Exit Facility (the "**Exit Facility Documentation**") shall (the items set forth in clauses (i) through (iv) below, the "**Documentation Principles**");

(i)    subject to the mutual agreement of the Borrowers and the Requisite Commitment Parties regarding thresholds, exceptions, "baskets" and grace and cure periods not otherwise set forth in this Exit Facility Term Sheet, be

initially based on, and give due regard to, that certain Amended and Restated Credit Agreement, dated as of October 18, 2018, by and among the Borrowers, the lenders party thereto from time to time and Barclays Bank PLC, as administrative agent, amended, restated, supplemented or otherwise modified on or prior to the date hereof (the "**Precedent Credit Agreement**");

(ii)   contain the terms and conditions set forth in this Exit Facility Term Sheet and such other terms as the Borrowers and the Requisite Commitment Parties may mutually agree, taking into account the operational requirements of Holdings and its subsidiaries;

(iii)   contain the conditions to the effectiveness of the Exit Facility Documentation and initial funding (or deemed funding) of the Exit Facility on the Closing Date set forth on **Annex I** hereto; and

(iv)   except as provided herein and except to the extent the same would contravene any provision hereof, give due regard to the agency and administrative requirements of the Exit Agent to the extent reasonably satisfactory to the Borrowers and the Requisite Commitment Parties.

| | |
|---|---|
| Restructuring Support Agreement Consent Rights | Notwithstanding anything to the contrary herein, any reference in this Exit Facility Term Sheet to a Definitive Document or other instrument shall be construed to include the attendant consent rights set forth in the Restructuring Support Agreement, and failure to explicitly refer to such consent rights when referencing or defining a Definitive Document or instrument shall not impair such rights. |
| Representations and Warranties: | The Exit Facility Documentation shall contain representations and warranties (subject to exceptions and qualifications) customary and usual for financings of this type consistent with the Documentation Principles. |
| Affirmative Covenants: | The Exit Facility Documentation shall contain affirmative covenants (subject to exceptions and qualifications) customary and usual for financings of this type consistent with the Documentation Principles, which shall include in any event (1) delivery of audited annual and unaudited quarterly financial statements within, (i) for each fiscal quarter or fiscal year (as applicable) ending prior to the first anniversary of the Closing Date, 150 days and 75 days, respectively, and (ii) thereafter, 120 days and 60 days respectively, in each case following the end of the respective fiscal year or fiscal quarter, (2) delivery of a compliance certificate concurrently with the delivery of the financial statements referred to in the preceding clause (1), (3) the use of commercially reasonable efforts to obtain within 60 days from emergence (i) a public corporate family rating issued by Moody's and a public corporate credit rating issued by |

8

S&P and (ii) a public credit rating from each of Moody's and S&P with respect to the Exit Loans; provided, that in no event shall the Borrowers be required to maintain a specific rating with any such agency and (4) hosting lenders calls on a quarterly basis, in each case, within 30 days of the delivery of the financial statements referred to in clause (1) above (other than the financial statements delivered for the last fiscal quarter of each fiscal year).

The Borrowers may use available investment capacity to designate any joint venture as an unrestricted subsidiary so long as (i) such joint venture is entered into for bona fide business purposes and not for purposes of any liability management transaction and (ii) 100% of the equity interests in such joint venture owned by any Borrower or any Restricted Subsidiary (or 100% of the equity interests in a parent entity that owns such joint venture and does not incur any indebtedness for borrowed money) are pledged to secure the Exit Facility (each such designated joint venture, an "**Unrestricted Subsidiary**")

| | |
|---|---|
| Financial Covenant: | None. |
| Minimum Liquidity Covenant: | The Borrowers shall not permit Liquidity as of the last day of each fiscal quarter to be less than $25,000,000. |
| Negative Covenants: | The Exit Facility Documentation shall contain negative covenants (including thresholds, qualifications and exceptions to be mutually agreed) customary and usual for financings of this type consistent with the Documentation Principles, that will, in any event, limit the ability to: |

(i) incur additional indebtedness and guarantee indebtedness; provided that the Borrowers and the Restricted Subsidiaries shall be permitted to incur:

a. indebtedness existing on the Closing Date that will be set forth on a schedule is reasonably acceptable to the Commitment Parties;

b. secured first-out letters of credit in an aggregate outstanding principal amount not to exceed $100,000,000;

c. indebtedness not for borrowed money in an aggregate outstanding principal amount not to exceed $25,000,000;

d. indebtedness in respect of capital leases and purchase money indebtedness in an aggregate outstanding principal

9

amount not to exceed $100,000,000 (the "**Purchase Money Debt Basket**");

e.   indebtedness permitted pursuant to Section 6.01(c) of the Precedent Credit Agreement;

f.   Project Finance Indebtedness (as defined in the Precedent Credit Agreement); *provided*, that for the period commencing on the Closing Date through and including the date that is 2 years after the Closing Date, the aggregate outstanding principal amount of Project Finance Indebtedness shall not exceed $100,000,000;

g.   indebtedness permitted pursuant to Section 6.01(g) of the Precedent Credit Agreement; *provided*, that for the period commencing on the Closing Date through and including the date that is 2 years after the Closing Date, the aggregate outstanding principal amount of such indebtedness shall not exceed $25,000,000 and at any time thereafter, the incurrence of such indebtedness shall be subject to pro forma compliance with a Total Leverage Ratio of 3:25 to 1.00 (the "**Acquired Debt**");

h.   Permitted Unsecured Debt (as defined in the Precedent Credit Agreement), subject to pro forma compliance with a Fixed Charge Coverage Ratio (to be defined in a manner to be agreed consistent with the Documentation Principles, and, in any event, with "fixed charges" to include interest paid "in kind") of 2.00 to 1.00;

i.   Indebtedness incurred in connection with any Permitted Sale-Leaseback (as defined below); and

j.   any RCF Refinancing;

(ii) incur liens; *provided* that the following liens shall be permitted:

k.   Liens existing on the Closing Date that will be set forth on a schedule is reasonably acceptable to the Commitment Parties;

l.   Liens securing indebtedness under the Purchase Money Debt Basket on the property financed by such indebtedness;

m.   Liens securing Acquired Debt on the applicable acquired property;

n.   Liens arising in connection with any Permitted Sale-Leaseback on the property subject thereto; and

10

o. Liens securing obligations (other than indebtedness for borrowed money) in an aggregate amount not to exceed $25,000,000:

(iii) make restricted payments; *provided* that restricted payments permitted pursuant to Sections 6.06(a)(v) and 6.06(a)(v)(ii) of the Precedent Credit Agreement shall be permitted with respect to Equity Interests issued or awards made pursuant to the Management Incentive Plan (as defined in the Plan) so long as immediately prior to, and after giving pro forma effect to, making such restricted payment, no event of default shall have occurred or be continuing and the Borrowers are in compliance with the Minimum Liquidity Covenant;

(iv) make investments; *provided* that the following investments shall be permitted:

a. Investments existing on the Closing Date that will be set forth on a schedule is reasonably acceptable to the Commitment Parties;

b. Investments permitted pursuant to Sections 6.04(a) and 6.04(k) of the Precedent Credit Agreement;

c. Permitted Acquisitions (as defined in the Precedent Credit Agreement); *provided* that the aggregate amount of investments in assets that are not (or do not become) owned by a Credit Party or in equity interests in persons that do not become Credit Parties upon consummation of such Permitted Acquisition (x) during the period commencing on the Closing Date through and including the date that is 2 years after the Closing Date, when taken together with any investments made pursuant to clause (iv)(e) below, shall not exceed $25,000,000 (the "**Non-Guarantor Sublimit**") and (y) thereafter, shall be permitted in an aggregate amount for all such investments not to exceed $150,000,000 if the pro forma Total Leverage Ratio after giving effect to any such investment does not exceed 3.25 to 1.00;

d. Investments in an aggregate outstanding amount not to exceed $50,000,000;

e. investments by Credit Parties in Restricted Subsidiaries that are not Credit Parties in an aggregate outstanding amount not to exceed (x) during the period commencing on the Closing Date through and including the date that is 2 years after the Closing Date, when taken together with any investments utilizing the Non-Guarantor Sublimit, $25,000,000; and (y) thereafter, $25,000,000; and

11

f. investments in joint ventures in an aggregate outstanding amount not to exceed $225,000,000 (which joint ventures may be designated "unrestricted subsidiaries" not subject to any of the covenants); *provided*, in the case of this clause (iv)(f), that (A) such joint ventures are entered into for bona fide business purposes and not for purposes of any liability management transaction, (B) 100% of the equity interests in such joint ventures owned by the Borrower and its restricted subsidiaries (or 100% of the equity interests in a parent entity that owns such joint venture and does not incur any indebtedness for borrowed money) are pledged to secure the Exit Facility and (C) the aggregate amount of investments consisting of cash or cash equivalents outstanding at any time under this clause (iv)(f) shall not exceed $150,000,000;

(v) make certain prepayments of Subordinated Indebtedness, Permitted Unsecured Debt, Permitted Junior Refinancing Debt or any Permitted Refinancing Debt thereof (each as defined in the Precedent Credit Agreement); *provided* that, the following prepayment of such debt shall be permitted:

g. subject to no event of default occurring and continuing immediately prior to or after giving effect to such prepayments, prepayments in an aggregate amount not to exceed $7,500,000; and

h. prepayments made in connection with Permitted Junior Refinancing Debt and Permitted Refinancing Debt;

(vi) make dispositions; *provided* that the following dispositions shall be permitted:

i. dispositions permitted pursuant to Section 6.05(b)(xviii) of the Precedent Credit Agreement; *provided* that any indebtedness for borrowed money of any Borrower or any Restricted Subsidiary that is disposing of the asset in question and is assumed by the purchaser of such asset shall not be considered cash for purposes of clause (3) thereof;

j. dispositions permitted pursuant to Section 6.05(b)(ix) of the Precedent Credit Agreement; and

k. sale-leasebacks with respect to property having a fair market value of an amount not to exceed $150,000,000 (with 50% of the net proceeds from all sale-leasebacks entered into on or after the Closing Date with a fair market value in excess of $75,000,000 being subject to a mandatory prepayment (and any reinvestment rights) (a **"Permitted Sale-Leaseback"**).

12

Notwithstanding anything to the contrary set forth herein, the Exit Facility Documentation shall not include baskets or exceptions that permit the incurrence of any indebtedness, or the making of any investments, restricted payments or restricted debt payments utilizing any Available Amount (as defined in the Precedent Credit Agreement), any Available Cash (as defined in the Precedent Credit Agreement) or satisfying any leverage ratio.

| | |
|---|---|
| Events of Default: | The Exit Facility Documentation shall contain events of default (including thresholds, qualifications, exceptions and grace periods) customary and usual for financings of this type and consistent with the Documentation Principles (including the occurrence of a Change in Control (as defined below)); *provided* that the "Materiality Threshold" as such term is used in the Precedent Credit Agreement shall be reduced to $20,000,000. |

As used herein, "**Change in Control**" means the occurrence of any of the following:

(a) any "person" or "group" (as such terms are used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934, but excluding any employee benefit plan of such person or its subsidiaries, and any person or entity acting in its capacity as trustee, agent or other fiduciary or administrator of any such plan) other than the Commitment Parties or institutions controlling or under common control with the Commitment Parties, and any affiliates, related funds or funds under common control or management (as further specified in the Exit Facility Documentation) (the "**Permitted Holders**") becomes the "beneficial owner" (as defined in Rules 13d-3 and 13d-5 under the Securities Exchange Act of 1934, directly or indirectly, of thirty-five percent (35%) or more of the equity interests of the Administrative Borrower entitled to vote for members of the board of directors or equivalent governing body of the Administrative Borrower on a fully-diluted basis; *provided*, that a Change in Control pursuant to this clause (a) shall not occur unless such person or group becomes the beneficial owner of more of such equity interests than those that are beneficially owned by the Permitted Holders;

(b) the Administrative Borrower shall cease to beneficially own, directly or indirectly, equity interests representing 100% of both (i) the aggregate ordinary voting power represented by the issued and outstanding equity interests of the Subsidiary Borrower and (ii) the economic interests represented by the issued and outstanding equity interests of the Subsidiary Borrower; or

(c)      a "Change in Control" or similar event shall occur and be continuing under any Material Indebtedness of the Administrative Borrower or any Restricted Subsidiary.

| | |
|---|---|
| Indemnification and Expenses: | Usual and customary for financings of this type and consistent with the Documentation Principles; to include all reasonable and documented out-of-pocket fees and expenses of advisors of the Ad Hoc Group incurred in connection with the Chapter 11 Cases and implementation of the Plan and restructuring, including, for the avoidance of doubt, the reasonable and documented fees and expenses of Davis Polk, McGuireWoods, and Evercore Group, L.L.C. |
| Assignments and Participations: | Usual and customary for financings of this type and consistent with the Documentation Principles.  The voting limitations and restrictions that are applicable to Affiliated Lenders (as defined in the Precedent Credit Agreement) in the Precedent Credit Agreement shall apply to any Affiliated Lender that owns, directly or indirectly (including through affiliates and/or with related funds or funds under common control or management), more than 50% of the aggregate voting power of the equity interests of the Administrative Borrower. |
| Amendments: | Usual and customary for financings of this type and consistent with the Documentation Principles. |
| Governing Law and Submission to Jurisdiction: | New York. |
| Other Provisions: | The Exit Facility Documentation shall include customary provisions regarding increased costs, illegality, tax indemnities, waiver of trial by jury and other similar provisions. |
| Counsel to Exit Creditors: | Davis Polk. |

14

**Annex I**

**Conditions Precedent to Closing**

The effectiveness of the Exit Facility Documentation and the initial funding (or deemed funding) of the Exit Loans shall be subject to the satisfaction (or waiver by the Requisite Commitment Parties) of solely the following conditions:

1.      One or more final non-appealable orders of the Bankruptcy Court confirming the Plan and authorizing the Borrowers to execute, deliver and perform under all documents contemplated (i) under the Exit Facility Documentation and (ii) in connection with the rights offering and equity investments contemplated by the Plan and the Backstop Agreement and, in each case, approving and authorizing payment of all fees, expenses and other amounts owing thereunder (including backstop, commitment and similar fees) shall have been entered, which orders shall be in form and substance satisfactory to the Requisite Commitment Parties, and, solely with respect to those provisions thereof that affect the rights and duties of the Exit Agent, in form and substance reasonably satisfactory to the Exit Agent, and which orders shall not have been reversed, vacated, amended, supplemented or otherwise modified in any manner that could reasonably be expected to adversely affect the interest of the Exit Creditors, and shall have become final orders of the Bankruptcy Court.

2.      Each Credit Party shall have executed and delivered the relevant Exit Facility Documentation to which it is a party and the Exit Agent shall have received (i) customary legal opinions, evidence of authority, corporate documents, and officers' certificates as to the Credit Parties, (ii) a customary borrowing request, (iii) a customary closing certificate and (iv) a solvency certificate executed by the chief financial officer or other officer of equivalent duties of the Borrowers.

3.      All documents and instruments necessary to establish that the Exit Agent will have a perfected first lien security interest (subject to permitted liens under the Exit Facility Documentation) in the Collateral shall have been executed (to the extent applicable) and delivered to the Exit Agent and, if applicable, be in appropriate form for filing (it being understood and agreed that mortgages or amended mortgages may be provided within a number of days to be mutually agreed after the Closing Date).

4.      The Exit Agent shall have received, at least three (3) business days prior to the Closing Date, all documentation and other information required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including, without limitation, the USA PATRIOT Act and, to the extent the Borrowers qualifies as a "legal entity customer" under 31 C.F.R. § 1010.230 (the "**Beneficial Ownership Regulation**"), a certification regarding beneficial ownership in relation to the Borrowers required by the Beneficial Ownership Regulation, in each case, that has been requested in writing by the Exit Creditors at least ten (10) business days prior to the Closing Date.

5.      All fees, premiums and expenses owing in accordance with the Commitment Letter and the Exit Facility Term Sheet to the extent due and payable on the Closing Date and invoiced at least three (3) business days prior to the Closing Date (including, without limitation, the reasonable fees and expenses of Davis Polk, as counsel to the Exit Creditors, taken as a whole) and all fees and expenses of advisors to the Ad Hoc Group shall have been paid in accordance with the terms thereof.

6.      Each Debtor shall have complied, in all material respects, with the terms of the Plan that are to be performed by each Debtor on or prior to the Effective Date and the conditions to the occurrence of the Effective Date (other than any conditions relating to the occurrence of the Closing Date) set forth in the Plan shall have been satisfied, and the Effective Date shall have occurred, or shall be deemed to have occurred concurrently with the Closing Date, in accordance with the terms and conditions in the Plan and

Confirmation Order, or, with the prior consent of the Requisite Commitment Parties, waived in accordance with the terms of the Plan.

7.      The Definitive Documentation related to the Plan and the restructuring transactions contemplated thereby shall be consistent with the Plan and otherwise be in form and substance acceptable to the Requisite Commitment Parties and shall have been executed and/or delivered, as applicable.

8.      The Restructuring Support Agreement shall not have terminated, and no event shall have occurred as a result of a breach by the Debtors that, with the passage of time or giving of notice, would give rise to a Consenting 2026 Noteholder Termination Event.

9.      The Backstop Agreement shall be in full force and effect, with no unwaived termination event (or event or occurrence that, if not remedied or waived would, with the passage of time, give rise to a termination event) having occurred thereunder, and all fees, premiums and expenses owed under the Backstop Agreement shall have been paid in accordance with the terms therein.

10.     Each of the representations and warranties contained in the Exit Facility Documentation shall be true and correct in all material respects on and as of the Closing Date (other than any such representations and warranties that are made as of a specific date, which shall be true and correct in all material respects as of such date) (without duplication of any materiality qualifiers with respect to any such representation or warranty already qualified by materiality or Material Adverse Effect (to be defined in a manner consistent with the Documentation Principles)).

11.     Liquidity (as defined below) as of the Closing Date as calculated on a date prior to emergence to be mutually determined (the "**Emergence Liquidity Test Date**") (after giving effect to the Restructuring) shall be at least $25,000,000.

"**Liquidity**" shall mean, as of any date, an amount equal to the amount of (a) all unrestricted Cash (to be defined in a manner consistent with the Documentation Principles) and Cash Equivalents (to be defined in a manner consistent with the Documentation Principles) of the Borrowers and their Restricted Subsidiaries as determined in accordance with GAAP, (b) all Cash and Cash Equivalents of the Borrowers and their Restricted Subsidiaries restricted in favor of the Exit Facility, and (c) the Delayed Draw Commitments of each Commitment Party then available.

12.     There shall not be any event or circumstance that gives rise to a termination right of the Requisite Commitment Parties under Section 7(a)(xi) of the Commitment Letter.

13.     All governmental and third-party notifications, filings, consents, waivers and approvals required for the consummation of the transactions contemplated by this Agreement and the Plan shall have been made or received.

14.     The conditions set forth in Section 8.1(c), (h), (i) and (r) of the Backstop Commitment Agreement shall have been satisfied.

**Exhibit B**

**New Organizational Documents**

It is currently contemplated the New Organizational Documents for the Reorganized Debtors will be in substantially the same form as the current organizational documents of the Debtors; *provided* that: (i) the Stockholders Agreement of Reorganized Enviva Inc. will be consistent with the terms set forth on Exhibit C of this Plan Supplement; (ii) certain Debtors will be merged with and into Enviva Inc. in accordance with the Restructuring Transactions Exhibit; and (iii) a registration rights agreement among Reorganized Enviva. Inc. and holders of Reorganized Enviva Inc. Interests remains subject to continuing negotiations among the Debtors and the Consenting 2026 Noteholders, and the Debtors intend to file such registration rights agreement at a later date.

Article IV.J of the Plan provides as follows:

> To the extent required under the Plan or applicable non-bankruptcy law, Reorganized Enviva Inc. and the other Reorganized Debtors, as applicable, will, on or as soon as practicable after the Effective Date, file their respective New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation or formation in accordance with the corporate or other applicable laws of the respective states, provinces, or countries of incorporation or formation. On the Effective Date, the New Organizational Documents shall be effective. To the extent required pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents of each applicable Reorganized Debtor will prohibit the issuance of non-voting equity securities. After the Effective Date, Reorganized Enviva Inc. and the other Reorganized Debtors, as applicable, may amend and restate their respective New Organizational Documents and other constituent documents, as permitted by the laws of their respective states, provinces, or countries of organization or formation and their respective New Organizational Documents.

> On the Effective Date, the New Organizational Documents, in the forms set forth in the Plan Supplement, shall be adopted automatically by the applicable Reorganized Debtors and shall be amended or amended and restated, as applicable, as may be required to be consistent with the provisions of the Plan and the Restructuring Support Agreement, and shall be deemed to be valid, binding, and enforceable in accordance with their terms and provisions.

Certain documents or portions thereof contained in this Exhibit B and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan. The filing of the forms of the documents set forth in this Plan Supplement (including this Exhibit B)

Exh. B-1

shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

## Exhibit C

### Stockholders Agreement

This Exhibit C contains a draft governance term sheet which summarizes, among other things, the terms of the Stockholders Agreement.  The form of the Stockholders Agreement remains subject to continuing negotiations among the Debtors and the Consenting 2026 Noteholders and will be filed at a later date.

Article IV.K of the Plan provides as follows:

> On the Effective Date, Reorganized Enviva Inc. may enter into and adopt the Stockholders Agreement, substantially in the form set forth in the Plan Supplement, and which shall be deemed to be valid, binding upon the parties thereto, and enforceable in accordance with its terms and provisions.  Reorganized Enviva Inc. or the Plan Administrator shall deliver the Stockholders Agreement to each Holder of Reorganized Enviva Inc. Interests, and, to the extent that the Stockholders Agreement purports to bind any such parties, such parties shall be bound thereby, in each case, without the need for execution by any party thereto other than Reorganized Enviva Inc. After the Effective Date, the successors, transferees, and assigns of each Holder of Reorganized Enviva Inc. Interests shall be required to execute a joinder to the Stockholders Agreement as and to the extent required pursuant to the New Organizational Documents or the Stockholders Agreement.

Certain documents or portions thereof contained in this Exhibit C and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan.  The filing of the forms of the documents set forth in this Plan Supplement (including this Exhibit C) shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

**ENVIVA GOVERNANCE TERM SHEET**

The following term sheet sets out preliminary and indicative high-level terms regarding the corporate governance of the reorganized Enviva LLC (the "Company") that would be reflected in the governance documents of the Company following the restructuring transactions.  Percentages below are of common equity.

| | |
|---|---|
| Initial Board of Directors | • <u>Composition</u>: The Board will be comprised of seven (7) directors, which will be designated as follows:<br>   o One (1) director appointed by AIP (the "<u>AIP Director</u>").<br>   o One (1) director appointed by Cyrus/Keyframe (the "<u>Cyrus/Keyframe Director</u>").<br>   o Three (3) directors appointed by equityholders collectively owning more than 50% of the Company's common equity.<br>   o One (1) director appointed jointly by the members of the Ad Hoc Group other than AIP and Cyrus/Keyframe, it being understood that such director shall be either an independent director or an individual affiliated with an equityholder of the Company that is neither AIP nor Cyrus/Keyframe (the "<u>Minority Director</u>").<br>   o The CEO of the Company. |
| Term of Board of Directors | • <u>Initial Term</u>: Twenty-four (24) months from the Effective Date, with vacancies filled by initial appointing parties in their capacity as equityholders of the Company so long as they own at least 50% of the amount of shares of the Company that they owned as of the Effective Date, in the case of AIP and Cyrus/Keyframe, or 65% of the amount of shares of the Company that they owned as of the Effective Date (for the non-AIP and Cyrus/Keyframe Ad Hoc Group members, the 65% threshold applies to the group as a whole and not individual members). In the event that an appointing party or parties own less than 50% or 65%, as applicable, of the amount of shares of the Company that they held as of the Effective Date at the time of a vacancy on the Board of their appointee, the vacancy shall be filled by a majority vote of the other members of the Board.<br><br>• <u>Subsequent Term</u>: One (1) year, with vacancies filled by a majority vote of the other members of the Board or, for the directors nominated by AIP or Cyrus/Keyframe, as applicable, so long as the appointing fund owns at least 50% of the amount of shares of the Company that they owned as of the Effective Date.<br><br>• <u>Removal</u>: Directors elected annually; removal by a majority vote of the members of the Board for cause only or by the party designating such director, provided, however, that if the CEO is terminated, s/he shall be removed from the Board and his/her seat shall be filled with the then acting CEO of the Company. |
| Board of Directors After Initial Term | • <u>Composition</u>: At the end of the Initial Term, one (1) of the seven (7) seats on the Board shall be designated by AIP so long as AIP continues to hold at least 50% of the amount of shares of the Company that they held as of the Effective Date, one (1) of the seven (7) seats on the Board shall be designated by Cyrus/Keyframe so long as Cyrus/Keyframe continues to hold at least 50% of the amount of shares of the Company that they held as of the Effective Date, four (4) of seven (7) seats on the Board shall be elected by a majority vote of the Company's equityholders and the seventh (7th) seat shall be filled by the CEO of the Company. |
| Board Compensation | • No compensation for non-independent directors, other than reimbursement of reasonable and documented out-of-pocket expenses. Independent directors shall be afforded reasonable compensation to be decided by the majority vote of the members of the Board who are not eligible to receive such compensation. |

1

| | |
|---|---|
| Board Actions | • <u>Ordinary Actions</u>: By majority vote in number of the members of the Board. |
| | • <u>Extraordinary Actions</u>: For actions designated below as "<u>Extraordinary Actions</u>," by the vote of five (5) out of seven (7) members of the Board, which shall include the affirmative vote of the AIP Director, the Cyrus/Keyframe Director and the Minority Director during the Initial Term. |
| | • <u>Consent Actions</u>: For actions designated below as "<u>Consent Actions</u>," the Board shall only be authorized to act upon the consent of all equityholders owning 3% or more of the common equity of the Company. |
| | • <u>Related Party Transactions</u>: By majority vote of the members of the Board that are not affiliated with the related party or otherwise do not have an interest in the transaction (excluding transactions for which preemptive rights would apply). |
| Extraordinary Actions | • The following actions are designated as Extraordinary Actions and will require a supermajority Board vote as provided above: <br> o Material amendments or modifications to the Company's governance documents; <br> o Changes to the size of the Board; and <br> o Liquidation, winding up, voluntary bankruptcy or similar proceedings. |
| Consent Actions | The following actions shall require the consent of all equityholders owning more than 3% of the shares of stock of the Company: <br><br> o the payment of dividends or the making of distributions to equityholders of the Company on a non-pro rata basis; <br> o the redemption or repurchase of shares of stock of the Company, each on a non-pro rata basis (other than redemptions, repurchases or other acquisitions of securities pursuant to the terms of a management incentive plan or any employment, award or similar agreement with any officer, director, employee or service provider approved by the Board or an arrangement negotiated by the Company in connection with a departure of an employee of the Company); and <br> o material amendments to the Company's governance documents that disproportionately and adversely affect any holder of more than 3% of the shares of stock of the Company in a manner materially different than other holders; *provided* that only consent of the equityholders that are so disproportionately and adversely affected shall be required (subject to any other vote that may be required as an Extraordinary Action or otherwise). |
| Transfers; Tag / Drag | Transfers (subject to customary limitations (e.g., no transfers to competitors and their affiliates, persons who would create/present regulatory issues/problems, etc.)) will be permitted, subject to customary tag-along rights for 3%+ holders. Customary drag-along right that may be exercised by the election of holders of a majority of the shares of Company stock outstanding. All share transfers will be processed and recorded using a transfer agent. Transfer restrictions shall be subject to customary "permitted transfer" exceptions (e.g., transfers to affiliates). |
| Preemptive Rights | Holders of 3% or more of the shares of the stock of the Company will be entitled to customary preemptive rights in any (i) equity issuance (or issuance of any other security convertible into equity) or (ii) debt issuances in which, in the case of this clause (ii) at least 25% of the aggregate principal amount of such debt is issued to existing stockholders or their respective affiliates (other than debt instruments issued through a customary syndication process or similar). Upon a majority vote of the Board, if the Board determines |

2

in good faith that it is reasonably necessary to do so under the circumstances, the notice and exercise periods for preemptive rights may be decreased in connection with transactions in which the issuance would be to a purchaser in a proposed acquisition of the Company.

| Registration Rights | Following an IPO, (i) holders aggregating more than 3% of the shares of stock of the Company will have customary registration rights (excluding demand rights but including piggyback registration rights), and (ii) holders aggregating more than 10% of the shares of stock will also hold customary demand registration rights (all such holders under (i) and (ii) being subject to customary lock-ups following an initial public offering or other sale of securities of the Company in a registered offering). |
|---|---|
| Other | All equityholders to have customary information rights, subject to commercial sensitivities. Management of the Company will use reasonable efforts hold a call after the end each fiscal quarter to discuss the financial performance of the Company during such prior fiscal quarter. To the extent permissible under law, the governance documents shall provide for disclaimers of fiduciary duties and corporate opportunities. The governance documents will contain exculpation and indemnification rights for managers, directors and officers to the maximum extent allowable under applicable law; provided that no such person shall be indemnified for such person's willful misconduct, bad faith, fraud or knowing violation of law as determined by a final judgement. The Company will obtain and maintain customary directors' and officers' liability insurance (as approved by the Board) to be in effect at all times. |

Information sharing mechanics and trading windows to be discussed. The Company shall use reasonable efforts to confirm approval of trades by members of the Board during normal and customary trading windows.

A MIP shall be implemented in accordance with the terms of the Restructuring Support Agreement and the Plan.

3

## **Exhibit D**

### **Schedule of Assumed Executory Contracts and Unexpired Leases**

This <u>Exhibit D</u> contains the Schedule of Assumed Executory Contracts and Unexpired Leases.

Certain documents or portions thereof contained in this <u>Exhibit D</u> and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan. The filing of the forms of the documents set forth in this Plan Supplement (including this <u>Exhibit D</u>) shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Inc. | ACE American Insurance Company | ATTN: BOX 10678, 5505 N. CUMBERLAND AVE, SUITE 307, CHICAGO, IL 60656-1471, UNITED STATES | Directors & Officers-Excess Side A DIC \| D&O Dated: 12/31/2022 | $ - |
| Enviva Inc. | ACE American Insurance Company | ATTN: BOX 10678, 5505 N. CUMBERLAND AVE, SUITE 307, CHICAGO, IL 60656-1471, UNITED STATES | Directors & Officers-Excess Side A DIC \| IDL Dated: 12/31/2022 | $ - |
| Enviva Inc. | ACE American Insurance Company | ATTN: BOX 10678, 5505 N. CUMBERLAND AVE, SUITE 307, CHICAGO, IL 60656-1471, UNITED STATES | Directors & Officers-Run-Off Dated: 12/31/2021 | $ - |
| Enviva Inc. | ACE American Insurance Company | ATTN: BOX 10678, 5505 N. CUMBERLAND AVE, SUITE 307, CHICAGO, IL 60656-1471, UNITED STATES | Directors & Officers-Run-Off Runoff Dated: 12/31/2021 | $ - |
| Enviva Pellets, LLC | AG Electrical LLC | ANGEL E GONZALEZ, 3500 PRAIRIE WOOD DR, COLONIAL HEIGHTS, VA 23834, | Executed on Standard Terms and Conditions | $ - |
| Enviva Pellets Epes, LLC | Alabama Power Company | JEREMY L. RETHERFORD, 1901 SIXTH AVE. N., SUITE 1500, BIRMINGHAM, AL 35203, UNITED STATES | Electrical Service Contract Dated: 07/01/2023 | $ 7,506.86 |
| Enviva Pellets Epes, LLC | Alabama Power Company | JEREMY L. RETHERFORD, 1901 SIXTH AVE. N., SUITE 1500, BIRMINGHAM, AL 35203, UNITED STATES | Rate Rider EDI Incentive Agreement Dated: 01/31/2023 | $ - |
| Enviva Pellets Epes, LLC | Alabama Power Company | JEREMY L. RETHERFORD, 1901 SIXTH AVE. N., SUITE 1500, BIRMINGHAM, AL 35203, UNITED STATES | Contract For Electric Service Dated: 01/31/2023 | $ - |
| Enviva Pellets Epes, LLC | Alabama Power Company | JEREMY L. RETHERFORD, 1901 SIXTH AVE. N., SUITE 1500, BIRMINGHAM, AL 35203, UNITED STATES | EDI Incentive Agreement Dated: 01/31/2023 | $ - |
| Enviva Pellets Epes, LLC | Alabama Power Company | JEREMY L. RETHERFORD, 1901 SIXTH AVE. N., SUITE 1500, BIRMINGHAM, AL 35203, UNITED STATES | Additional Facilities Operation And Maintenance Agreement Dated: 01/31/2023 | $ - |
| Enviva Pellets Epes, LLC | Alabama Power Company | JEREMY L. RETHERFORD, 1901 SIXTH AVE. N., SUITE 1500, BIRMINGHAM, AL 35203, UNITED STATES | Contract for Electric Service Dated: 03/31/2024 | $ - |
| Enviva Aircraft Holdings Corp. | Alliance Aviation Group LLC | 76 WESTINSTER ST SUITE 400, PROVIDENCE, RI 2903, UNITED STATES | Engine Exchange Agreement Dated: 04/25/2023 | $ - |
| Enviva Aircraft Holdings Corp. | Alliance Aviation Group LLC | 76 WESTINSTER ST SUITE 400, PROVIDENCE, RI 2903, UNITED STATES | Lease and Charter Agreement Dated: 07/06/2022 | $ - |
| Enviva Aircraft Holdings Corp. | Alliance Aviation Group LLC | 76 WESTINSTER ST SUITE 400, PROVIDENCE, RI 2903, UNITED STATES | Aircraft Purchase Agreement Dated: 08/15/2021 | $ - |
| Enviva Aircraft Holdings Corp. | Alliance Aviation Group LLC | 76 WESTINSTER ST SUITE 400, PROVIDENCE, RI 2903, UNITED STATES | Aircraft Purchase Agreement Dated: 06/07/2021 | $ - |
| Enviva Holdings, LP | Alliance Aviation Group LLC | 76 WESTINSTER ST SUITE 400, PROVIDENCE, RI 2903, UNITED STATES | Terms and Conditions Agreement Dated: 06/07/2021 | $ - |
| Enviva Holdings, LP | Alliance Executive Search | 1905 OLD GALLOWS RD, SUITE 400, VIENNA, VA 22180, UNITED STATES | Master Recruiting Services Agreement Dated: 05/07/2021 | $ - |
| Enviva Inc. | Allianz Global Risks US Insurance Co. | 225 WEST WASHINGTON STREET, SUITE 1800, CHICAGO, IL 60606-3484, UNITED STATES | Excess Liability Insurance Dated: 09/01/2021 | $ - |
| Enviva Inc. | Allianz Global Risks US Insurance Co. | 225 WEST WASHINGTON STREET, SUITE 1800, CHICAGO, IL 60606-3484, UNITED STATES | Builders Risk Coverage \| Builders Risk Dated: 05/19/2023 | $ - |
| Enviva Inc. | Allianz Global Risks US Insurance Co. | 225 WEST WASHINGTON STREET, SUITE 1800, CHICAGO, IL 60606-3484, UNITED STATES | Directors & Officers-Excess \| D&O Dated: 12/31/2022 | $ - |
| Enviva Inc. | Allianz Global Risks US Insurance Co. | 225 WEST WASHINGTON STREET, SUITE 1800, CHICAGO, IL 60606-3484, UNITED STATES | Policy Extension Dated: 12/31/2023 | $ - |
| Enviva Inc. | Allianz Global Risks US Insurance Co. | 225 WEST WASHINGTON STREET, SUITE 1800, CHICAGO, IL 60606-3484, UNITED STATES | Directors & Officers-Run-Off \| D&O-Run-Off Dated: 12/31/2021 | $ - |
| Enviva Inc. | Allianz Global Risks US Insurance Company | 225 WEST WASHINGTON STREET, SUITE 1800, CHICAGO, IL 60606-3484, UNITED STATES | Insurance Policy Dated: 12/31/2022 | $ - |
| Enviva Inc. | AlphaSense | 24 UNION SQUARE EAST, SIXTH FLOOR, NEW YORK, NY 10003, UNITED STATES | Term of Use Subscription Agreement Dated: 09/08/2023 | $ - |
| Enviva Inc. | AlphaSense | 24 UNION SQUARE EAST, SIXTH FLOOR, NEW YORK, NY 10003, UNITED STATES | Order Form Dated: 04/16/2024 | $ - |
| Enviva Holdings, LP | Alpine Group Partners LLC | 500 N CAPITOL ST NW, SUITE 210, WASHINGTON, DC 20001, UNITED STATES | Consulting Agreement Dated: 04/1/2021 | $ - |
| Enviva Pellets Epes, LLC | Amandus Kahl GmbH & Co KG | 105 HEMBREE PARK DRIVE, SUITE L, ROSWELL, GA 30076, UNITED STATES | Product Purchase Agreement Dated: 02/03/2023 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Energy Services, LLC | Amandus Kahl GmbH & Co KG | 105 HEMBREE PARK DRIVE, SUITE L, ROSWELL, GA 30076, UNITED STATES | Joint Venture Agreement (Enviva Tooling Services Company, LLC) Dated: 02/05/2021 | $ - |
| Enviva Holdings, LP | Amandus Kahl GmbH & Co KG | 105 HEMBREE PARK DRIVE, SUITE L, ROSWELL, GA 30076, UNITED STATES | Master Terms and Conditions for Purchase of Machinery and Equipment Dated: 07/16/2019 | $ - |
| Enviva Pellets Epes, LLC | Amandus Kahl GmbH & Co KG | 105 HEMBREE PARK DRIVE, SUITE L, ROSWELL, GA 30076, UNITED STATES | Agreement for Purchase of Machinery and Equipment Dated: 04/5/2022 | $ - |
| Enviva Inc. | American International Companies (AIG) | RISK SPECIALISTS COMPANIES INSURANCE AGENCY INC, 2929 ALLEN PARKWAY, SUITE 1300, HOUSTON, TX 77019-2128, UNITED STATES | Cargo Stock Throughput - Marine | Primary-Cargo StockJCRS Thr Dated: 04/18/2023 | $ - |
| Enviva Inc. | American International Companies (AIG) | RISK SPECIALISTS COMPANIES INSURANCE AGENCY INC, 2929 ALLEN PARKWAY, SUITE 1300, HOUSTON, TX 77019-2128, UNITED STATES | Charterers Liability - Marine | Liab Marine Pkg Dated: 04/15/2023 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Commercial Property Coverage | Comm Prop Cvg-Primary-3.1% of $25M-Lexin Dated: 09/01/2022 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Commercial Property Coverage | Comm Prop Cvg-Primary-5% of $50M-Starsto Dated: 09/01/2022 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Commercial Property Coverage | Everest 5% 10M Primary Dated: 09/01/2022 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Excess Property Coverage | XS Prop-20% of $125M xs $25M-PESLIC Dated: 09/01/2022 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Excess Property Coverage | XS Prop-25% of $100M xs $150M-Intact Dated: 09/01/2022 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Excess Property Coverage | XS Property-4% of $50M xs $50M-Axis Dated: 10/01/2022 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Excess Property Coverage | XS Property-2.1% $50M xs $50M-Lexington Dated: 10/01/2022 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Excess Property Coverage | XS Property-7.5% $150M xs $100M-Starr Dated: 10/01/2022 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Excess Property Coverage | XS Property-3.6% $50M xs $100M-Arch Dated: 10/01/2022 | $ - |
| Enviva Inc. | AmWINS Brokerage of Georgia, LLC | ATTN: GREGROY REYNOLDS, 3630 PEACHTREE RD. NE, SUITE 1700, ATLANTA, GA 30326, UNITED STATES | Excess Property Coverage | XS Property-6% of $25M xs $25M-Scottsdal Dated: 10/01/2022 | $ - |
| Enviva Pellets Waycross, LLC | Andritz Inc | 336 WEST PENN ST, MUNCY, PA 17756, UNITED STATES | Service Contract Dated: 07/17/2022 | $ - |
| Enviva Inc. | Aon Property Risk Consulting Inc | PO BOX 955816, ST LOUIS, MO 63195, UNITED STATES | Consulting Agreement  SOU Fire - Dated: 12/5/2023 | $ - |
| Enviva Inc. | Aon Property Risk Consulting Inc | PO BOX 955816, ST LOUIS, MO 63195, UNITED STATES | Consulting Agreement - FREEZE Claim - Dated: 02/21/2023 | $ - |
| Enviva Inc. | Aon Property Risk Consulting Inc | PO BOX 955816, ST LOUIS, MO 63195, UNITED STATES | Consulting Agreement AMO TORNADO - Dated: 03/29/2023 | $ - |
| Enviva Inc. | Aon Risk Services Southwest Inc | PO BOX 955816, ST LOUIS, MO 63195, UNITED STATES | Confirmation of Insurance Dated: 12/31/2023 (Palomar) | $ - |
| Enviva Inc. | Aon Risk Services Southwest Inc | PO BOX 955816, ST LOUIS, MO 63195, UNITED STATES | Confirmation of Insurance Dated: 12/31/2023 (Starstone) | $ - |
| Enviva Inc. | Aon Risk Services Southwest Inc | PO BOX 955816, ST LOUIS, MO 63195, UNITED STATES | Engagement Letter Dated: 07/06/2023 | $ - |
| Enviva Inc. | Aon UK Limited | HEAD OF CLAIMS, NORTH AMERICAN PROPERTY DEPARTMENT, THE AON CENTRE, THE LEADENHALL BUILDING, 122 LEADENHALL STREET, LONDON, EC3V 4AN, UNITED KINGDOM | Commercial Property Coverage Dated: 09/01/2022 | $ - |
| Enviva Inc. | Aon UK Limited | HEAD OF CLAIMS, NORTH AMERICAN PROPERTY DEPARTMENT, THE AON CENTRE, THE LEADENHALL BUILDING, 122 LEADENHALL STREET, LONDON, EC3V 4AN, UNITED KINGDOM | Excess Cargo - Marine | Excess Cargo Dated: 04/18/2023 | $ - |
| Enviva Management Company, LLC | Aramark Refreshment Services | PO BOX 28919, NEW YORK, NY 10087, UNITED STATES | Customer Relationship Agreement Dated: 04/01/2021 | $ 2,154.57 |
| Enviva Pellets, LLC | Ascentium Capital LLC | 23970 US HIGHWAY 59 N, KINGWOOD, TX 77339, UNITED STATES | Lease Agreement Dated: 12/5/2021 | $ - |
| Enviva Inc. | Ascot Insurance Company | 55 WEST 46TH STREET, NEW YORK, NY 10036, UNITED STATES | Excess Bumbershoot Liability - Marine | XS Bumbershoot- 33.334% po 20x5- Ascot Dated: 04/15/2023 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets, LLC | AT&T | AT&T BANKRUPTCY CENTER, 2270 LAKESIDE BLVD, 7TH FLOOR, RICHARDSON, TX 75082, UNITED STATES | Internet and Voice Bundle Agreement Dated: 10/31/2018 | $ - |
| Enviva, LP | AT&T | AT&T BANKRUPTCY CENTER, 2270 LAKESIDE BLVD, 7TH FLOOR, RICHARDSON, TX 75082, UNITED STATES | Pricing Schedule Dated: 01/23/2019 | $ - |
| Enviva Pellets Lucedale, LLC | Atmos Energy Corporation | ATTN BANKRUPTCY GROUP, PO BOX 650205, DALLAS, TX 75265, | Service Contract Dated: 07/01/2021 | $ 43,864.43 |
| Enviva Inc. | Auditboard Inc | 12900 PARK PLAZA DRIVE, SUITE 200, CERRITOS, CA 90703, UNITED STATES | Subscription (SOXHUB) Dated: 03/14/2024 | $ - |
| Enviva Holdings, LP | Automated Systems Design Inc | 775 GODDARD COURT, ALPHARETTA, GA 30005, UNITED STATES | Service Contract Dated: 08/01/2019 | $ 350.00 |
| Enviva Inc. | AXIS Insurance Company | 233 SOUTH WACKER DRIVE, SUITE 3510, CHICAGO, IL 60606, UNITED STATES | Directors & Officers-Excess \| 02-XS D&O Dated: 12/31/2022 | $ - |
| Enviva Inc. | AXIS Insurance Company | 233 SOUTH WACKER DRIVE, SUITE 3510, CHICAGO, IL 60606, UNITED STATES | Policy Extension Dated: 12/31/2023 | $ - |
| Enviva Inc. | AXIS Insurance Company | 233 SOUTH WACKER DRIVE, SUITE 3510, CHICAGO, IL 60606, UNITED STATES | Binder of Insurance Renewal Dated: 12/31/2022 | $ - |
| Enviva Inc. | AXIS Insurance Company | 233 SOUTH WACKER DRIVE, SUITE 3510, CHICAGO, IL 60606, UNITED STATES | Schedule of Underlying Insurance Dated: 12/31/2022 | $ - |
| Enviva Management Company, LLC | AXSMarine SAS | 16 PLACE DE l'IRIS TOUR CB21, PARIS, 92040, FRANCE | Licensing agreement Dated: 04/1/2021 | $ - |
| Enviva Pellets, LLC | Bay Line Railroad LLC | 13901 SUTTON PARK DRIVE SOUTH, SUITE 175, BUILDING C, JACKSONVILLE, FL 32224, UNITED STATES | Railroad Transportation Contract Dated: 01/1/2018 | $ - |
| Enviva Pellets, LLC | Bay Line Railroad LLC | 13901 SUTTON PARK DRIVE SOUTH, SUITE 175, BUILDING C, JACKSONVILLE, FL 32224, UNITED STATES | Railroad Transportation Contract Dated: 11/23/2022 | $ - |
| Enviva Inc. | Berkley Environmental | 101 HUDSON ST, JERSEY CITY, NJ 07302, UNITED STATES | Environmental Site Liability \| Env Site Liab Dated: 09/01/2020 | $ - |
| Enviva Inc. | Berkshire Hathaway Specialty Insurance | 100 FEDERAL ST, FLOOR 7, BOSTON, MA, 02110, UNITED STATES | Rolling Stock \| Rolling Stock Dated: 09/01/2022 | $ - |
| Enviva Pellets, LLC | Big Top Manufacturing Inc | 3255 N US 19, PERRY, FL 32347, UNITED STATES | Purchase of Equipment Without Installation Dated: 05/12/2023 | $ - |
| Enviva Pellets Epes, LLC | Bliss Industries LLC | 900 E OAKLAND AVE, PONCE CITY, OK 74601, UNITED STATES | Scope Change Order Dated: 10/23/2023 | $ - |
| Enviva Pellets Epes, LLC | Bliss Industries LLC | 900 E OAKLAND AVE, PONCE CITY, OK 74601, UNITED STATES | General Conditions of Contract for Purchase of Equipment Dated: 01/04/2023 | $ - |
| Enviva Pellets, LLC | Blue Mantis | TWO INTERNATIONAL DRIVE, STE 260, PORTSMOUTH, NH 03801, UNITED STATES | SOW and MSA (Microsoft licensing (CSP)) Dated: 05/1/2024 | $ - |
| Enviva Inc. | Blue Sky Network LLC | 5353 MISSION CENTER RD, SUITE 222, SAN DIEGO, CA 92108, UNITED STATES | Equipment Purchase and Service Agreement Dated: 06/27/2021 | $ - |
| Enviva Inc. | Bluebeam (Print o Stat) | PO BOX 15055, YORK, PA 17405, UNITED STATES | Software Subscription Dated: 08/28/2023 | $ - |
| Enviva Pellets, LLC | Board Of Commissioners Of Roads And Revenues, Wilkes County, Georgia | C/O KAREN BURTON, WILKES COUNTY COURTHOUSE, ROOM 222, 23 COURT SQUARE, WASHINGTON, GA 30673, UNITED STATES | Option Agreement Dated: 06/26/2023 | $ - |
| Enviva Pellets Epes, LLC | Bollinger Quick Repair, L.L.C. | 8365 HWY. 308, LOCKPORT, LA 70374, UNITED STATES | Shipyard Repair Agreement Dated: 01/24/2024 | $ - |
| Enviva Management Company, LLC | Brandi Colander | 2142 BRANCH AVE SE, WASHINGTON, DC 20020, UNITED STATES | 2024 Retention and Incentive Program Dated: 02/08/2024 | $ - |
| Enviva Pellets, LLC | Broome & Sons Wood Chipping, Inc | 113 WEST BLACK CREEK ROAD, SUMRALL, MS 39482, UNITED STATES | Equipment Lease Agreement Dated: 09/27/2023 | $ - |
| Enviva Pellets, LLC | Broome & Sons Wood Chipping, Inc | 113 WEST BLACK CREEK ROAD, SUMRALL, MS 39482, UNITED STATES | Equipment Lease Agreement Dated: 10/28/2022 | $ - |
| Enviva Pellets Epes, LLC | Bruks Siwertell Inc | 5975 SHILOH RD, SUITE 109, ALPHARETTA, GA 30005, UNITED STATES | Purchase of Equipment and Services Dated: 04/29/2022 | $ - |
| Enviva Pellets Epes, LLC | Burkes Mechanical Inc | 2 INDUSTRIAL ROAD, BRENT, AL 35034, UNITED STATES | Construction Services Agreement Dated: 11/07/2022 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets Lucedale, LLC | C Craig Pepple Consulting LLC | 1311 AUXFORD AVE, TUSCALOOSA, AL 35405, UNITED STATES | Independent Contractor Agreement Dated: 02/10/2022 | $ - |
| Enviva Pellets Epes, LLC | C Craig Pepple Consulting LLC | 1311 AUXFORD AVE, TUSCALOOSA, AL 35405, UNITED STATES | Independent Contractor Agreement Dated: 02/10/2022 | $ - |
| Enviva Port of Pascagoula, LLC | Cajun Industries LLC | 15635 AIRLINE HIGHWAY, BATON ROUGE, LA 70817, UNITED STATES | Construction Services Agreement Dated: 03/05/2021 | $ - |
| Enviva Port of Pascagoula, LLC | Cajun Industries LLC | 15635 AIRLINE HIGHWAY, BATON ROUGE, LA 70817, UNITED STATES | Construction Services Agreement Dated: 02/05/2021 | $ - |
| Enviva Port of Pascagoula, LLC | Cajun Industries LLC | 15635 AIRLINE HIGHWAY, BATON ROUGE, LA 70817, UNITED STATES | Construction Services Agreement Dated: 02/17/2021 | $ - |
| Enviva Pellets Epes, LLC | Cajun Industries LLC | 15635 AIRLINE HIGHWAY, BATON ROUGE, LA 70817, UNITED STATES | Construction Services Agreement Dated: 04/05/2023 | $ - |
| Enviva Port of Pascagoula, LLC | Cajun Industries LLC | 15635 AIRLINE HIGHWAY, BATON ROUGE, LA 70817, UNITED STATES | Construction Services Agreement Dated: 04/20/2021 | $ - |
| Enviva Pellets Epes, LLC | Cajun Industries LLC | 15635 AIRLINE HIGHWAY, BATON ROUGE, LA 70817, UNITED STATES | Construction Services Agreement Dated: 05/26/2023 | $ - |
| Enviva Pellets, LLC | Canal Wood | PO BOX 601385, CHARLOTTE, NC 28260, UNITED STATES | Equipment Sublease Agreement Dated: 02/02/2024 | $ - |
| Enviva Inc. | Carrieres et Fours a Chaux Dumont-Wautier SA | RUE CHARLES DUBOIS, 28, LIMELETTE, 1342, BELGIUM | CIF Biomass Fuel Supply Agreement Dated: 08/03/2022 | $ - |
| Enviva, LP | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Lease Extension Agreement Dated: 12/03/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0264, 0322) Dated: 01/31/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0759) Dated: 01/30/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0206) Dated: 12/2/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0718) Dated: 11/3/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0675) Dated: 05/19/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3214, 3179)  Dated: 08/30/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0227, 0237)  Dated: 01/20/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0228, 0229) Dated: 01/20/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0338) Dated: 07/31/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0364) Dated: 07/31/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0365) Dated: 07/31/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3089) Dated: 03/21/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 1202) Dated: 03/21/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0249) Dated: 01/27/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0252) Dated: 07/6/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0982) Dated: 05/12/2023 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0763) Dated: 09/28/2022 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0812) Dated: 12/15/2022 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0192) Dated: 06/30/2022 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0234) Dated: 11/9/2023 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3025, 3018, and 3027) Dated: 02/24/2024 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0811) Dated: 04/1/2024 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3102) Dated: 05/6/2022 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3102) Dated: 05/6/2024 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3042) Dated: 04/1/2022 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3042) Dated: 04/1/2024 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0352) Dated: 01/31/2023 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3529) Dated: 11/17/2022 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0188) Dated: 12/28/2023 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 9054) Dated: 08/30/2022 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2011) Dated: 08/30/2022 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0718) Dated: 05/30/2023 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 7513, 7514) Dated: 11/8/2023 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 1835) Dated: 10/30/2023 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0189) Dated: 02/4/2024 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 1858) Dated: 02/13/2024 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 1248, 0425, and 2971) Dated: 11/12/2021 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2066) Dated: 04/3/2024 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2066) Dated: 04/3/2019 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 533) Dated: 06/22/2021 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 4194, 4195) Dated: 06/30/2022 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 7158, 3041, 7167) Dated: 11/12/2021 | $                  - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2856) Dated: 11/12/2023 | $                  - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2960) Dated: 11/12/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2989) Dated: 11/12/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 5238) Dated: 03/28/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 4185) Dated: 01/12/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 5310) Dated: 12/8/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2501) Dated: 12/16/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2501) Dated: 12/6/2019 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 9001) Dated: 06/18/2019 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3410) Dated: 06/2/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0672) Dated: 07/24/2020 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0270) Dated: 08/30/2020 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3043, 3048) Dated: 02/24/2024 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3043, 3048) Dated: 02/24/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease Dated: 02/1/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0015) Dated: 04/3/2019 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0238) Dated: 12/22/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 1275) Dated: 04/19/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 3204) Dated: 02/9/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0665, 0064) Dated: 05/4/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2229) Dated: 07/21/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2879) Dated: 08/24/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 4654) Dated: 08/25/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease Dated: 04/3/2019 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 1003) Dated: 04/21/2022 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0754) Dated: 09/16/2021 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 2717) Dated: 06/22/2021 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 4590) Dated: 03/19/2020 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 0009) Dated: 02/01/2023 | $ - |
| Enviva Pellets, LLC | Caterpillar Financial Services Corp | 2120 WEST END AVENUE, NASHVILLE, TN 37203, UNITED STATES | Tax Lease (Serial No. Ending 1026) Dated: 07/31/2023 | $ - |
| Enviva Inc. | CBRE Inc | PO BOX 406588, ATLANTA, GA 30384, UNITED STATES | Consulting Services Agreement Dated: 02/01/2024 | $ - |
| Enviva Inc. | CDP North America, Inc. | 127 W 26TH ST, SUITE 300, NEW YORK, NY 10001, UNITED STATES | CDP Reporter Services Agreement Dated 12/5/2023 | $ - |
| Enviva, LP | CDW Direct LLC | PO BOX 75723, CHICAGO, IL 60675, UNITED STATES | Master Services and Product Sales Agreement Dated: 02/12/2016 | $ - |
| Enviva Inc. | Chainparency | 1400 BROADFIELD BLVD, SUITE 200, HOUSTON, TX 77084, UNITED STATES | Order Form Dated: 10/12/2023 | $ - |
| Enviva, LP | Cisco Systems Capital Corp | 170 W TASMAN DR, SAN JOSE, CA 95134, UNITED STATES | Lease (Cisco Lease 1- Equipment/Software/Services) Dated: 10/3/2019 | $ 3,987.90 |
| Enviva, LP | Cisco Systems Capital Corp | 170 W TASMAN DR, SAN JOSE, CA 95134, UNITED STATES | Lease (Cisco Lease 3 - equipment, services, etc.) Dated: 10/3/2019 | $ - |
| Enviva, LP | Cisco Systems Capital Corp | 170 W TASMAN DR, SAN JOSE, CA 95134, UNITED STATES | Master Lease and Financing Agreement Dated: 10/3/2019 | $ - |
| Enviva, LP | Cisco Systems Capital Corp | 170 W TASMAN DR, SAN JOSE, CA 95134, UNITED STATES | Customer Signing Certificate Dated: 10/15/2019 | $ - |
| Enviva Pellets, LLC | City of Amory | PO DRAWER 457, 109 S FRONT ST, AMORY, MS 38821, UNITED STATES | Option & Right Of First Refusal Agreement Dated: 11/03/2021 | $ - |
| Enviva Pellets Epes, LLC | City of Livingston | 201 CHURCH ST, LIVINGSTON, AL 35470, UNITED STATES | Gas Line Repair Agreement Dated: 01/25/2024 | $ - |
| Enviva Pellets Epes, LLC | City of Livingston | 201 CHURCH ST, LIVINGSTON, AL 35470, UNITED STATES | Amended And Restated Project Incentives And Development Agreement Dated: 07/22/2022 | $ - |
| Enviva Pellets, LLC | Clarence Lee Rhodes | PO BOX 10, SILOAM, GA 30665, UNITED STATES | Option Agreement Dated: 11/18/2022 | $ - |
| Enviva Inc. | Columbia Gas of Virginia Inc | 1809 COYOTE DRIVE, CHESTER, VA 23836, UNITED STATES | Engineering Service Agreement Dated: 09/10/2018 | $ 111,907.45 |
| Enviva Pellets, LLC | Columbia Gas of Virginia Inc | 1809 COYOTE DRIVE, CHESTER, VA 23836, UNITED STATES | Construction Agreement Dated: 03/13/2019 | $ - |
| Enviva Pellets, LLC | Columbia Gas of Virginia Inc | 1809 COYOTE DRIVE, CHESTER, VA 23836, UNITED STATES | Commercial / Industrial Line Extension and Threshold Use Agreement 09/27/2019 | $ - |
| Enviva Holdings, LP | Comcast Corporation | ONE COMCAST CENTER, 32ND FLOOR, PHILADELPHIA, PA 19103, UNITED STATES | Business Service Order Agreement Dated: 02/10/2021 | $ 107.98 |
| Enviva Pellets, LLC | Commonwealth of Virginia | 600 EAST MAIN STREET, SUITE 207, RICHMOND, VA 23219, UNITED STATES | Performance Agreement Dated: 07/01/2021 | $ - |
| Enviva Management Company, LLC | Concur Technologies Inc | 62157 COLLECTIONS CENTER DRIVE, CHICAGO, IL 60693, UNITED STATES | Sales Order Dated: 12/16/2015 | $ - |
| Enviva Management Company, LLC | Concur Technologies Inc | 62157 COLLECTIONS CENTER DRIVE, CHICAGO, IL 60693, UNITED STATES | Sales Order Dated: 11/11/2021 | $ - |
| Enviva Pellets, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Equipment Lease Dated: 08/02/2023 | $ - |
| Enviva Pellets Lucedale, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Dated: 09/1/2021 | $ - |
| Enviva Pellets Lucedale, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 8247) Dated: 01/1/2022 | $ - |
| Enviva Pellets Lucedale, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 331V) Dated: 10/1/2021 | $ - |
| Enviva Pellets Lucedale, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 1058) Dated: 11/1/2021 | $ - |
| Enviva Pellets Lucedale, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 4331, 3139) Dated: 09/1/2021 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets Lucedale, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 6787, 7290) Dated: 09/1/2021 | $ - |
| Enviva Pellets Waycross, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 002R) Dated: 07/24/2023 | $ - |
| Enviva Pellets Waycross, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Dated: 06/16/2023 | $ - |
| Enviva Pellets, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 6591, 6367) Dated: 08/18/2023 | $ - |
| Enviva Pellets, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Sampson Dated: 10/9/2020 | $ - |
| Enviva Pellets, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 4022) Dated: 11/1/2020 | $ - |
| Enviva Pellets Greenwood, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Greenwood Dated: 01/6/2020 | $ - |
| Enviva Pellets Greenwood, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 9050) Dated: 05/1/2020 | $ - |
| Enviva Port of Pascagoula, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 1059, 2152) Dated: 09/1/2021 | $ - |
| Enviva Port of Pascagoula, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Port of Pascagoula Dated: 09/1/2021 | $ - |
| Enviva Pellets, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Port of Wilmington Dated: 08/2/2023 | $ - |
| Enviva Pellets, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Master Lease Agreement Supplement (Serial No. Ending 0340, 0339) Dated: 09/12023 | $ - |
| Enviva Pellets, LLC | Connell Finance Company Inc | 300 CONNEL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Lease Supplement No. 01 (Serial No. Ending 0042) Dated: 11/11/2020 | $ - |
| Enviva, LP | Control Union USA Inc | 125 MALLARD STREET, SUITE D, SAINT ROSE, LA 70087, UNITED STATES | Load Supervision Service Agreement Dated: 03/25/2021 | $ - |
| Enviva, LP | Control Union USA Inc | 125 MALLARD STREET, SUITE D, SAINT ROSE, LA 70087, UNITED STATES | Service Agreement Dated: 03/14/2018 | $ - |
| Enviva Pellets Epes, LLC | Cooper Marine & Timberlands Corp | 118 N ROYAL STREET, MOBILE, AL 36602, UNITED STATES | Barging Services Agreement Dated: 11/28/2023 | $ - |
| Enviva Pellets Epes, LLC | Cooper Marine & Timberlands Corp | 118 N ROYAL STREET, MOBILE, AL 36602, UNITED STATES | Stevedoring Service Contract Dated: 11/28/2023 | $ - |
| Enviva, LP | Cooper Marine & Timberlands Corp | 118 N ROYAL STREET, MOBILE, AL 36602, UNITED STATES | Wood pellet handling agreement dated: 08/01/2012 | $ - |
| Enviva Inc. | Cora Systems Limited | MERCANTILE PLAZA, BRIDGE LANE, CARRICK-ON-SHANNON, N41 HK23, IRELAND | Sales Order Dated: 04/04/2023 | $ - |
| Enviva Inc. | Cora Systems Limited | MERCANTILE PLAZA, BRIDGE LANE, CARRICK-ON-SHANNON, N41 HK23, IRELAND | Subscription Services Agreement Dated: 04/25/2022 | $ - |
| Enviva Inc. | Cora Systems Limited | MERCANTILE PLAZA, BRIDGE LANE, CARRICK-ON-SHANNON, N41 HK23, IRELAND | Sales Order Dated: 12/5/2022 | $ - |
| Enviva, LP | Cotton Commercial USA Inc | 5443 KATEY HOCKLEY CUTOFF ROAD, KATY, TX 77493, UNITED STATES | Master Services Agreement Dated: 09/16/2021 | $ - |
| Enviva Pellets, LLC | Cotton Commercial USA Inc | 5443 KATEY HOCKLEY CUTOFF ROAD, KATY, TX 77493, UNITED STATES | Cotton Commercial MSA - Service Request Dated: 04/20/2023 | $ - |
| Enviva Pellets, LLC | Crab Trucking LLC | 885 WALTER E MARTIN RD, CONWAY, NC 27820, UNITED STATES | Equipment Lease Agreement Dated: 09/27/2023 | $ - |
| Enviva Management Company, LLC | Craig Lorraine | 470 ORCHARD DRIVE, NORTHVILLE, MI 48167, UNITED STATES | 2024 Retention and Incentive Program Dated: 02/08/2024 | $ - |
| Enviva Pellets Greenwood, LLC | CSX Transportation Inc | 500 WATER ST, JACKSONVILLE, FL 32202, UNITED STATES | Logistics Contract Dated: 02/25/2021 | $ - |
| Enviva Wilmington Holdings, LLC | CSX Transportation Inc | 500 WATER ST, JACKSONVILLE, FL 32202, UNITED STATES | Settlement agreement and release Dated: 01/3/2022 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Wilmington Holdings, LLC | CSX Transportation Inc | 500 WATER ST, JACKSONVILLE, FL 32202, UNITED STATES | Rail Transportation Contract Dated: 10/9/2013 | $ - |
| Enviva Pellets Waycross, LLC | CSX Transportation Inc | 500 WATER ST, JACKSONVILLE, FL 32202, UNITED STATES | Logistics Contract Dated: 12/16/2019 | $ - |
| Enviva Pellets Greenwood, LLC | CSX Transportation Inc | 500 WATER ST, JACKSONVILLE, FL 32202, UNITED STATES | Railroad Transportation Contract Dated: 09/1/2015 | $ - |
| Enviva, LP | CT Corporation System | 28 LIBERTY STREET 42ND FLOOR, NEW YORK, NY 10005, UNITED STATES | Assurance Agreement Dated: 12/01/2023 | $ - |
| Enviva Inc. | CT Corporation System | 28 LIBERTY STREET 42ND FLOOR, NEW YORK, NY 10005, UNITED STATES | Renewal Assurance Agreement Dated: 9/28/2023 | $ - |
| Enviva Holdings, LP | Daiichi Chuo Kisen Kaisha | MITA KOKUSAI BUILDING 25F, 1 CHOME - 4-28 MITA, MINATO-KU, TOKYO, 108-0073, JAPAN | Contract of Affreightment Dated: 11/22/2018 | $ - |
| Enviva Management Company, LLC | Datawatch Systems Inc | PO BOX 79845, BALTIMORE, MD 21279, UNITED STATES | Sales Agreement Dated: 05/28/2021 | $ - |
| Enviva Holdings, LP | Datawatch Systems Inc | PO BOX 79845, BALTIMORE, MD 21279, UNITED STATES | Sales Agreement Dated: 10/14/2020 | $ - |
| Enviva Holdings, LP | De Lage Landen Financial Services Inc | PO BOX 825736, PHILADELPHIA, PA 19182, UNITED STATES | Value Lease Agreement Dated: 11/4/2021 | $ - |
| Enviva Inc. | De Lage Landen Financial Services Inc | PO BOX 825736, PHILADELPHIA, PA 19182, UNITED STATES | Value Lease Agreement Dated: 03/9/2022 | $ - |
| Enviva Holdings, LP | Delinea Inc | 201 REDWOOD SHORES PARKWAY, STE 300, REDWOOD CITY, CA 94065, UNITED STATES | Master Subscription and License Agreement Dated: 04/1/2024 | $ - |
| Enviva Holdings, LP | Delinea Inc | 201 REDWOOD SHORES PARKWAY, STE 300, REDWOOD CITY, CA 94065, UNITED STATES | End User License Agreement Dated: 07/15/2021 | $ - |
| Enviva Inc. | Dialpad Inc | 3001 BISHOP DRIVE, SUITE 400 A, SAN RAMON, CA 94583, UNITED STATES | IT Master Services Agreement Dated: 01/17/2023 | $ 16,625.01 |
| Enviva Pellets, LLC | Dialpad Inc | 3001 BISHOP DRIVE, SUITE 400 A, SAN RAMON, CA 94583, UNITED STATES | Order Form Dated: 10/13/2023 | $ - |
| Enviva Inc. | Dialpad Inc | 3001 BISHOP DRIVE, SUITE 400 A, SAN RAMON, CA 94583, UNITED STATES | Service Order Dated: 02/13/2023 | $ - |
| Enviva Inc. | Dialpad Inc | 3001 BISHOP DRIVE, SUITE 400 A, SAN RAMON, CA 94583, UNITED STATES | Master Services Agreement Dated: 01/31/2023 | $ - |
| Enviva Management Company, LLC | Docebo NA | 600 N THOMAS ST, SUITE A, ATHENS, GA 30601, UNITED STATES | Order Form Renewal Dated: 04/21/2024 | $ - |
| Enviva Management Company, LLC | Docebo NA | 600 N THOMAS ST, SUITE A, ATHENS, GA 30601, UNITED STATES | Master Software Service Agreement Dated: 04/23/2021 | $ - |
| Enviva Pellets, LLC | DocuSign Inc | 221 MAIN ST, STE 1000, SAN FRANCISCO, CA 94105, UNITED STATES | Subscription Form Dated: 02/15/2024 | $ - |
| Enviva Holdings, LP | DocuSign Inc | 221 MAIN ST, STE 1000, SAN FRANCISCO, CA 94105, UNITED STATES | Master Services Agreement Dated: 01/31/2020 | $ - |
| Enviva Holdings, LP | DocuSign Inc | 221 MAIN ST, STE 1000, SAN FRANCISCO, CA 94105, UNITED STATES | Master services agreement Dated: 12/31/2019 | $ - |
| Enviva Port of Pascagoula, LLC | Dome Technology LLC | 4946 N 2900 E, IDAHO FALLS, ID 83401, UNITED STATES | Construction Services Agreement Dated: 11/13/2019 | $ - |
| Enviva Pellets, LLC | Dominion North Carolina Power | 5300 THE WOODS RD, KITTY HAWK, NC 27949, UNITED STATES | Agreement for Purchase of Electricity Dated: 01/10/2017 | $ 643,137.12 |
| Enviva Pellets, LLC | Dominion North Carolina Power | 5300 THE WOODS RD, KITTY HAWK, NC 27949, UNITED STATES | Product Purchase Agreement Dated: 02/28/2020 | $ - |
| Enviva Pellets, LLC | Dominion Virginia Power | ATTN TO: ED BAINE, 120 TREDEGAR STREET, RICHMOND, VA 23219-4306, UNITED STATES | Agreement for Electric Service Dated: 03/6/2014 | $ 170,730.92 |
| Enviva Pellets, LLC | Dominion Virginia Power | ATTN TO: ED BAINE, 120 TREDEGAR STREET, RICHMOND, VA 23219-4306, UNITED STATES | Agreement for Electric Service Dated: 02/28/2020 | $ - |
| Enviva Pellets, LLC | Dominion Virginia Power | ATTN TO: ED BAINE, 120 TREDEGAR STREET, RICHMOND, VA 23219-4306, UNITED STATES | Agreement for Electric Service Dated: 06/20/2011 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets, LLC | Dorssers Inc | 29 INDUSTRIAL AVE, PO BOX 940, BLENHEIM, ON NOP 1AO, CANADA | Service Contract Dated: 09/15/2023 | $ - |
| Enviva Holdings, LP | Dow Jones | 4300 ROUTE 1 NORTH MONMTH JUNCTION, NJ 8852, UNITED STATES | Master Agreement Dated: 10/31/2019 | $ - |
| Enviva Pellets, LLC | Duke Energy | 1423 MCNEIL WAY, ABERDEEN, NC 28315, UNITED STATES | Lighting Service Agreement Dated: 01/07/2022 | $ - |
| Enviva Pellets Greenwood, LLC | Duke Energy | 1423 MCNEIL WAY, ABERDEEN, NC 28315, UNITED STATES | Electricity Service Agreement Dated: 02/19/2018 | $ - |
| Enviva Pellets, LLC | Duke Energy | 1423 MCNEIL WAY, ABERDEEN, NC 28315, UNITED STATES | Electricity Supply Agreement Dated: 04/11/2016 | $ - |
| Enviva Inc. | Dustex LLC dba LDX Solutions | 60 CHASTAIN CENTER BLVD, KENNESAW, GA 30144, UNITED STATES | Equipment Purchase (Multi project) Agreement Dated: 11/01/2022 | $ - |
| Enviva Inc. | Dustex LLC dba LDX Solutions | 60 CHASTAIN CENTER BLVD, KENNESAW, GA 30144, UNITED STATES | Purchase of Equipment and Services Dated: 10/31/2022 | $ - |
| Enviva Pellets Epes, LLC | Dustex LLC dba LDX Solutions | 60 CHASTAIN CENTER BLVD, KENNESAW, GA 30144, UNITED STATES | Equipment Purchase (Multi project) Agreement Dated: 11/01/2022 | $ - |
| Enviva Inc. | Dynaway AS | ALFRED NOBELS VEJ 27, AALBORG, 9220, DENMARK | MSA (Dynaway software subscription) Dated: 04/9/2020 | $ 12,210.00 |
| Enviva, LP | East Coast Terminal Company | PO BOX 1646, SAVANNAH, GA 31402, UNITED STATES | Lease Agreement Dated: 03/24/2010 | $ - |
| Enviva Pellets Waycross, LLC | East Coast Terminal Company | PO BOX 1646, SAVANNAH, GA 31402, UNITED STATES | Marine Terminal Service Agreement Dated: 08/18/2020 | $ - |
| Enviva Management Company, LLC | Economic Investment Committee, North Carolina | 150 FAYETTEVILLE ST., SUITE 1200, RALEIGH, NC, 27601, UNITED STATES | Economic Development Agreement Dated: 03/10/2015 | $ - |
| Enviva Inc. | Endurance American Specialty Ins Company | 1221 AVENUE OF THE AMERICAS, NEW YORK, NY 10020, UNITED STATES | Directors & Officers-Excess \| 04-XS D&O Dated: 12/31/2022 | $ - |
| Enviva Inc. | Endurance American Specialty Ins Company | 1221 AVENUE OF THE AMERICAS, NEW YORK, NY 10020, UNITED STATES | D&O Extension Dated: 12/31/2023 | $ - |
| Enviva Inc. | Endurance American Specialty Ins Company | 1221 AVENUE OF THE AMERICAS, NEW YORK, NY 10020, UNITED STATES | Excess Marine Liability Binder Dated: 04/15/2023 | $ - |
| Enviva Pellets, LLC | Enspire Energy LLC | 350 W 22ND ST, SUITE 101, NORFOLK, VA 23517, UNITED STATES | Product Purchase Agreement Dated: 10/27/2022 | $ - |
| Enviva Pellets, LLC | Enspire Energy LLC | 350 W 22ND ST, SUITE 101, NORFOLK, VA 23517, UNITED STATES | Sampson Base Contract for Sale and Purchase of Natural Gas Dated: 08/17/2023 | $ - |
| Enviva Pellets, LLC | Enspire Energy LLC | 350 W 22ND ST, SUITE 101, NORFOLK, VA 23517, UNITED STATES | Northampton Base Contract for Sale and Purchase of Natural Gas Dated: 08/17/2023 | $ - |
| Enviva Pellets, LLC | Enspire Energy LLC | 350 W 22ND ST, SUITE 101, NORFOLK, VA 23517, UNITED STATES | Base Contract for Sale and Purchase of Natural Gas Dated: 09/29/2021 | $ - |
| Enviva Pellets, LLC | Enspire Energy LLC | 350 W 22ND ST, SUITE 101, NORFOLK, VA 23517, UNITED STATES | Special Provisions to NAESB Base Contract Dated: 09/29/2021 | $ - |
| Enviva Management Company, LLC | Enterprise Fleet Management Trust | ENTERPRISE FLEET MANAGEMENT CUSTOMER BILLING, PO BOX 800089, KANSAS CITY, MO 64180, UNITED STATES | Service Agreement Dated: 01/15/2016 | $ - |
| Enviva Management Company, LLC | Enterprise Fleet Management Trust | ENTERPRISE FLEET MANAGEMENT CUSTOMER BILLING, PO BOX 800089, KANSAS CITY, MO 64180, UNITED STATES | Equity Lease Schedule 3722863 Dated: 06/24/2016 | $ - |
| Enviva Management Company, LLC | Enterprise Fleet Management Trust | ENTERPRISE FLEET MANAGEMENT CUSTOMER BILLING, PO BOX 800089, KANSAS CITY, MO 64180, UNITED STATES | Master Equity Lease Agreement Dated: 05/18/2016 | $ - |
| Enviva Management Company, LLC | Enterprise Fleet Management Trust | ENTERPRISE FLEET MANAGEMENT CUSTOMER BILLING, PO BOX 800089, KANSAS CITY, MO 64180, UNITED STATES | Equity Lease Schedule 6882929 Dated: 06/24/2016 | $ - |
| Enviva Inc. | Enviva Wilmington Holdings, LLC | 7272 WISCONSIN AVE, SUITE 1800, BETHESDA, MD, 20814, UNITED STATES | Biomass Sub-Supply Agreement dated: 1/22/2016 | $ - |
| Enviva Inc. | Enviva Wilmington Holdings, LLC | 7272 WISCONSIN AVE, SUITE 1800, BETHESDA, MD, 20814, UNITED STATES | Biomass Supply Agreement for Additional Quantities and Option Quantities dated: 1/22/2016 | $ - |
| Enviva Inc. | Enviva Wilmington Holdings, LLC | 7272 WISCONSIN AVE, SUITE 1800, BETHESDA, MD, 20814, UNITED STATES | Contingent Novation Agreement related to the Sub-Supply Agreement dated: 1/22/2016 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Inc. | Enviva Wilmington Holdings, LLC | 7272 WISCONSIN AVE, SUITE 1800, BETHESDA, MD, 20814, UNITED STATES | Fuel Supply Direct Agreement dated: 8/10/2016 | $ - |
| Enviva Inc. | eSentire Inc | 451 PHILLIP STREET, UNIT 135, WATERLOO, ON N2L 3X2, CANADA | Master Security Services Agreement Dated: 05/10/2022 | $ - |
| Enviva Inc. | ESRI (for ArcGIS) | 380 NEW YORK ST, REDLANDS, CA 92373-8100, UNITED STATES | Master Agreement Dated: 2/09/2024 | $ - |
| Enviva Holdings, LP | Express Employment Professionals | 123 B COLUMBIA DRIVE, CARROLLTON, GA 30117, UNITED STATES | Master Service Recruiting Agreement Dated: 06/21/2021 | $ - |
| Enviva, LP | Ezzell Trucking Inc | WILLIAM KROLL, 220 FAYETTEVILLE STREET SUITE 300, RALEIGH, NC 27601, UNITED STATES | Master Transportation Agreement Dated: 01/01/2021 | $ - |
| Enviva Pellets, LLC | Ezzell Trucking Inc | WILLIAM KROLL, 220 FAYETTEVILLE STREET SUITE 300, RALEIGH, NC 27601, UNITED STATES | Interim Agreement Dated: 02/09/2024 | $ - |
| Enviva Pellets Epes, LLC | Fairbanks Scales Inc | 6800 W 64TH ST, OVERLAND PARK, KS 66202-4100, UNITED STATES | Equipment Purchase Agreement Dated: 07/10/2023 | $ 11,332.17 |
| Enviva, LP | Federal Express | PO BOX 371461, PITTSBURGH, PA 15250, UNITED STATES | Transportation Services Agreement Dated: 03/26/2020 | $ - |
| Enviva Inc. | Fisher and Phillips LLP | 1200 ABERNATHY RD, SUITE 950, ATLANTA, GA 30328, UNITED STATES | Engagement Letter Dated: 03/29/2023 | $ - |
| Enviva Pellets Epes, LLC | Flamex Inc | 4365 FEDERAL DRIVE, GREENSBORO, NC 27410, UNITED STATES | Scope Change Contract Dated: 09/20/2023 | $ - |
| Enviva Pellets Epes, LLC | Flamex Inc | 4365 FEDERAL DRIVE, GREENSBORO, NC 27410, UNITED STATES | Scope Change Contract Dated: 06/21/2023 | $ - |
| Enviva Pellets Epes, LLC | Flamex Inc | 4365 FEDERAL DRIVE, GREENSBORO, NC 27410, UNITED STATES | Independent Contractors Agreement Dated: 05/25/2023 | $ - |
| Enviva Pellets Greenwood, LLC | Flamex Inc | 4365 FEDERAL DRIVE, GREENSBORO, NC 27410, UNITED STATES | Service Contract Dated: 01/26/2021 | $ - |
| Enviva Inc. | Forest Stewardship Council US | 708 N FIRST ST, SUITE 235, MINNEAPOLIS, MN 55401, UNITED STATES | Group License Agreement for the FSC Certification Scheme Dated 12/21/2021 | $ - |
| Enviva, LP | FP Mailing Solutions | PO BOX 157, BEDFORD PARK, IL 60499, UNITED STATES | Rental Agreement Dated: 09/21/2012 | $ - |
| Enviva, LP | FP Mailing Solutions | PO BOX 157, BEDFORD PARK, IL 60499, UNITED STATES | Terms and Conditions Dated: 03/23/2015 | $ - |
| Enviva Inc. | Freshworks | 2950 S. DELEWARE STREET, SUITE 201, SAN MATEO, CA 94403, UNITED STATES | Main Services Agreement Dated: 05/31/2024 | $ - |
| Enviva Pellets Waycross, LLC | Gas South LLC | 3625 CUMBERLAND BLVD, SUITE 1500, ATLANTA, GA 30339, UNITED STATES | Product Purchase Agreement Dated: 01/01/2021 | $ - |
| Enviva Pellets Waycross, LLC | Gas South LLC | 3625 CUMBERLAND BLVD, SUITE 1500, ATLANTA, GA 30339, UNITED STATES | Agreement for Natural Gas Sales Dated: 02/27/2023 | $ - |
| Enviva Inc. | Gas South LLC | 3625 CUMBERLAND BLVD, SUITE 1500, ATLANTA, GA 30339, UNITED STATES | Base Contract for Sale and Purchase of Natural Gas Dated: 08/18/2023 | $ - |
| Enviva Pellets Lucedale, LLC | George County Board Of Supervisors | 329 RATLIFF ST, LUCEDALE, MS 39452, UNITED STATES | Memorandum of Understanding Dated: 08/25/2021 | $ - |
| Enviva Pellets Lucedale, LLC | George County, Mississippi | PRESIDENT, GEORGE COUNTY BOARD OF SUPERVISORS, 329 RATLIFF STREET, LUCEDALE, MS 39452, UNITED STATES | Memorandum Of Understanding Dated: 08/25/2021 | $ - |
| Enviva Pellets Lucedale, LLC | George County, Mississippi | PRESIDENT, GEORGE COUNTY BOARD OF SUPERVISORS, 329 RATLIFF STREET, LUCEDALE, MS 39452, UNITED STATES | Ad Valorem Tax Agreement Dated: 01/07/2019 | $ - |
| Enviva Pellets Lucedale, LLC | George County, Mississippi | PRESIDENT, GEORGE COUNTY BOARD OF SUPERVISORS, 329 RATLIFF STREET, LUCEDALE, MS 39452, UNITED STATES | Memorandum of Understanding Dated: 01/07/2019 | $ - |
| Enviva, LP | Georgia Pacific WFS LLC | 113 PEACHTREE STREET NE, ATLANTA, GA 30303, UNITED STATES | Rate Schedule Agreement Dated: 09/01/2023 | $ - |
| Enviva Pellets Waycross, LLC | Georgia Power | 96 ANNEX, ATLANTA, GA 30396, UNITED STATES | Price Protection Contract Dated: 06/12/2023 | $ - |
| Enviva Pellets Waycross, LLC | Georgia Power | 96 ANNEX, ATLANTA, GA 30396, UNITED STATES | Electric Service Contract Dated: 10/27/2021 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Management Company, LLC | Glenn Nunziata | 7272 WISCONSIN AVENUE, SUITE 1800, BETHESDA, MD 20814, UNITED STATES | Amended and Restated Employment Agreement Dated: 11/09/2023 | $ - |
| Enviva Management Company, LLC | Glenn Nunziata | 7272 WISCONSIN AVENUE, SUITE 1800, BETHESDA, MD 20814, UNITED STATES | Good Reason Confirmation Side Letter Dated: 12/29/2023 | $ - |
| Enviva Holdings, LP | Go Chain, Inc | 1 E LIBERTY ST, #600, RENO, NV 89501, UNITED STATES | Master Services Agreement Dated: 07/8/2021 | $ - |
| Enviva Inc. | Great Midwest Insurance Company | P.O. BOX 844298, DALLAS, TX 75284, UNITED STATES | Insurance Binder Dated: 02/01/2024 | $ - |
| Enviva Management Company, LLC | Green Humanity Recruitment | 11635 79A AVENUE, DELTA, BRITISH COLUMBIA V4C 6V9, CANADA | Master Services Agreement Dated: 12/15/2023 | $ - |
| Enviva Pellets Greenwood, LLC | Greenwood County | 600 MONUMENT ST, SUITE P106, GREENWOOD, SC 29646, UNITED STATES | Economic Development Agreement Dated: 02/16/2018 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | Business Auto Coverage \| Bus Auto Cvg Dated: 09/01/2022 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | Garage Liability Coverage \| Com Pkg-Foreign Dated: 09/01/2022 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | Business Auto Coverage \| Com Pkg-Foreign *PD* Dated: 09/01/2023 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | Directors & Officers-Excess \| 01-XS D&O Dated: 12/31/2022 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | D&O Policy Extension Dated: 12/31/2023 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | Directors & Officers-Run-Off \| D&O-Run-Off Dated: 09/01/2021 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | General Liability Coverage \| General Liability Dated: 09/01/2022 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | Umbrella Liability \| Umbrella Lead Dated: 09/01/2022 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | Workers Compensation \| Workers Comp Dated: 09/01/2022 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | General Liability Coverage Dated: 09/01/2023 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | Multinational Insurance Coverage Dated: 09/01/2023 | $ - |
| Enviva Inc. | Hartford Financial Services Group Inc | PO BOX 415738, BOSTON, MA 02241, UNITED STATES | Premier Excess Insurance Dated: 12/31/2022 | $ - |
| Enviva Inc. | Hartford Fire Insurance Company | ATTN: VP, BUSINESS LAW, HO-1-09, HARTFORD PLAZA, HARTFORD, CT 06155, UNITED STATES | Insurance Agreement Dated: 09/01/2023 | $ - |
| Enviva Inc. | HEWLETT-PACKARD FINANCIAL SERVICES COMPANY | 200 CONNELL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Computer Lease Dated: 10/17/2022 | $ - |
| Enviva Inc. | HEWLETT-PACKARD FINANCIAL SERVICES COMPANY | 200 CONNELL DRIVE, BERKELEY HEIGHTS, NJ 07922, UNITED STATES | Delivery Acceptance Form Dated: 02/22/2023 | $ - |
| Enviva Inc. | HISCOX Insurance Company | 104 SOUTH MICHIGAN AVENUE, SUITE 600, CHICAGO, IL 60603, UNITED STATES | Kidnap and Ransom Insurance Dated: 05/30/2022 | $ - |
| Enviva, LP | Hokuriku Electric Power Company | 15-1 USHIJIMA-CHO, TOYAMA, 930-8686, JAPAN | Fuel Supply Agreement Dated: 08/05/2020 | $ - |
| Enviva, LP | Houldson Consulting Inc | 14581 VEGTER ROAD, MORRISON, IL 61270-9684, UNITED STATES | Master Services Agreement Dated: 10/29/2018 | $ - |
| Enviva Inc. | Hunton Andrews Kurth LLP | C/O M. CHRISTINE KLEIN, 951 E BYRD STREET, RICHMOND, VA 23219, UNITED STATES | Engagement Letter Dated: 08/31/2015 | $ - |
| Enviva Inc. | Ichihara Yawatafuto Biomass Power Gk | KYOBASHI EDOGRAND 25F 2-2-1, CHUO-KU, TOKYO, 104-0031, JAPAN | Fuel Supply Agreement Dated: 01/30/2020 | $ - |
| Enviva Inc. | Indian Harbor Insurance Company | 505 EAGLEVIEW BLDV., SUITE 100, EXTON, PA 19341-1120, UNITED STATES | Cyber Risk Insurance Dated: 09/01/2023 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets Epes, LLC | Industrial Development Authority of Sumter County | P.O. BOX 1059, LIVINGSTON, AL 35470, UNITED STATES | Purchase and Sale Agreement Dated: 12/15/2020 | $ - |
| Enviva Pellets Epes, LLC | Industrial Development Authority of Sumter County | P.O. BOX 1059, LIVINGSTON, AL 35470, UNITED STATES | Purchase and Sale Agreement Dated: 08/02/2022 | $ - |
| Enviva Pellets Epes, LLC | Industrial Development Authority of Sumter County | P.O. BOX 1059, LIVINGSTON, AL 35470, UNITED STATES | Amended and Restated Epes Barge Slip Use & Maintenance Agreement Dated: 07/22/2022 | $ - |
| Enviva Pellets Lucedale, LLC | Instar Group LLC | 2001 ROUTE 46, STE 506, PARSIPPANY, NJ 07054, UNITED STATES | Notice and Acknowledgment Dated: 06/13/2023 | $ - |
| Enviva Pellets Lucedale, LLC | Instar Group LLC | 2001 ROUTE 46, STE 506, PARSIPPANY, NJ 07054, UNITED STATES | Rider One to Railroad Car Lease Agreement Dated: 12/10/2019 | $ - |
| Enviva Pellets Epes, LLC | Intech Process Automation Inc | 1400 BROADFIELD BOULEVARD, SUITE 310, HOUSTON, TX 77084, UNITED STATES | Equipment Purchase Agreement Dated: 02/22/2023 | $ - |
| Enviva Pellets Epes, LLC | InterMat LLC | 3500 N CAUSEWAY BLVD., SUITE 190, METAIRIE, LA 70002, UNITED STATES | Professional Services Agreement Dated: 05/05/2023 | $ - |
| Enviva Pellets Epes, LLC | InterMat LLC | 3500 N CAUSEWAY BLVD., SUITE 190, METAIRIE, LA 70002, UNITED STATES | Scope Change Order 2 - Barge Acquisition and Additional Services Dated: 08/12/2022 | $ - |
| Enviva Pellets Epes, LLC | InterMat LLC | 3500 N CAUSEWAY BLVD., SUITE 190, METAIRIE, LA 70002, UNITED STATES | Professional Services Agreement Dated: 08/09/2021 | $ - |
| Enviva Pellets, LLC | IPEC Inc | 400 WEST MAIN ST., SUITE #114, GAYLORD, MI 49735, UNITED STATES | Construction Services Agreement Dated: 05/02/2023 | $ - |
| Enviva, LP | Iron Mountain Inc | PO BOX 27128, NEW YORK, NY 10087, UNITED STATES | Customer Agreement Dated: 03/25/2013 | $ - |
| Enviva Pellets Epes, LLC | Irondale Industrial Contractors Inc | 2185 ALTON ROAD, BIRMINGHAM, AL 35210, UNITED STATES | Construction Services Agreement Dated: 07/26/2023 | $ - |
| Enviva Pellets Epes, LLC | Irondale Industrial Contractors Inc | 2185 ALTON ROAD, BIRMINGHAM, AL 35210, UNITED STATES | Construction Services Agreement Dated: 01/03/2024 | $ - |
| Enviva Inc. | ISN Software Corp | PO BOX 841808, DALLAS, TX 75284, UNITED STATES | Contractor Qualification Services Dated: 08/09/2023 | $ - |
| Enviva Port of Pascagoula, LLC | Jackson County Tax Collector | PO BOX 697, MARIANNA, FL 32447, UNITED STATES | Ad Valorem Tax Agreement Dated: 01/07/2019 | $ - |
| Enviva Port of Pascagoula, LLC | Jackson County, Mississippi | 2915 CANTY STREET, P.O. BOX 998, PASCAGOULA, MS 39567, UNITED STATES | Ad Valorem Tax Agreement Dated: 01/18/2019 | $ - |
| Enviva Management Company, LLC | James Geraghty | 3906 UNDERWOOD STREET, CHEVY CHASE, MD 20815, UNITED STATES | Fourth Amended and Restated Employment Agreement Dated: 11/09/2023 | $ - |
| Enviva Management Company, LLC | James Geraghty | 3906 UNDERWOOD STREET, CHEVY CHASE, MD 20815, UNITED STATES | Good Reason Confirmation Side Letter Dated: 12/29/2023 | $ - |
| Enviva Management Company, LLC | Jason Paral | 7023 CHURCHILL ROAD, MCLEAN, VA 22101, UNITED STATES | Amended and Restated Employment Agreement Dated: 11/09/2023 | $ - |
| Enviva Management Company, LLC | Jason Paral | 7023 CHURCHILL ROAD, MCLEAN, VA 22101, UNITED STATES | Good Reason Confirmation Side Letter Dated: 12/29/2023 | $ - |
| Enviva Pellets Epes, LLC | Jasper Wood Products, LLC | 37385 JASPER LOWELL RD, JASPER, OR 97438, UNITED STATES | Purchase and Sale Agreement Dated: 12/18/2020 | $ - |
| Enviva Pellets, LLC | John Deere Financial Inc | 11047 LEADBETTER ROAD, ASHLAND, VA 23005, UNITED STATES | Lease Agreement (Serial No. Ending 1120, 9041) Dated: 08/30/2023 | $ - |
| Enviva Pellets, LLC | John Deere Financial Inc | 11047 LEADBETTER ROAD, ASHLAND, VA 23005, UNITED STATES | Loan Contract - Security Agreement (Serial No. Ending 2772) Dated: 10/27/2021 | $ - |
| Enviva Pellets, LLC | John Deere Financial Inc | 11047 LEADBETTER ROAD, ASHLAND, VA 23005, UNITED STATES | Loan Contract - Security Agreement (Serial No. Ending 1174) Dated: 10/27/2021 | $ - |
| Enviva Pellets, LLC | John Deere Financial Inc | 11047 LEADBETTER ROAD, ASHLAND, VA 23005, UNITED STATES | Loan Contract - Security Agreement (Serial No. Ending 8197) Dated: 10/27/2021 | $ - |
| Enviva Pellets, LLC | John Deere Financial Inc | 11047 LEADBETTER ROAD, ASHLAND, VA 23005, UNITED STATES | Lease Agreement (Serial No. Ending 3770,3658, 6712) Dated: 04/20/2022 | $ - |
| Enviva Holdings, LP | John Hancock Life Insurance Company | 197 CLARENDON STREET, C-3, BOSTON, MA 02116, UNITED STATES | Fuel Supply Agreement Dated: 8/10/2016 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Management Company, LLC | John-Paul Taylor | 3305 CUMMING LANE, BETHESDA, MD 20815, UNITED STATES | Employment Agreement Dated: 01/17/2023 | $ - |
| Enviva Management Company, LLC | John-Paul Taylor | 3305 CUMMING LANE, BETHESDA, MD 20815, UNITED STATES | Good Reason Confirmation Side Letter Dated: 12/29/2023 | $ - |
| Enviva Pellets, LLC | JP Morgan Chase Bank NA | 1111 POLARIS PKWY, COLUMBUS, OH 43240, UNITED STATES | Equipment Lease Dated: 02/07/2023 | $ - |
| Enviva Pellets, LLC | JP Morgan Equipment Finance | DEPT 78122, PO BOX 78000, DETROIT, MI 48278, UNITED STATES | Equipment Lease Dated: 03/28/2023 | $ - |
| Enviva Pellets, LLC | JP Morgan Equipment Finance | DEPT 78122, PO BOX 78000, DETROIT, MI 48278, UNITED STATES | Incumbency Certificate Dated: 02/28/2023 | $ - |
| Enviva Pellets, LLC | JP Morgan Equipment Finance | DEPT 78122, PO BOX 78000, DETROIT, MI 48278, UNITED STATES | Equipment Schedule No. 9990008208-02-01-CS002 Dated: 05/01/2023 | $ - |
| Enviva Pellets, LLC | JP Morgan Equipment Finance | DEPT 78122, PO BOX 78000, DETROIT, MI 48278, UNITED STATES | Equipment Schedule No. 9990008208-02-01-CS001 Dated: 02/28/2023 | $ - |
| Enviva Management Company, LLC | Justifacts Credential Verification | 5250 LOGAN FERRY ROAD, MURRYSVILLE, PA 15668, UNITED STATES | Credential Verification Services Agreement Dated: 02/28/2024 | $ - |
| Enviva Pellets, LLC | K and J Transport | 101 DAUGHTRY RD, MURFREESBORO, NC 27855, UNITED STATES | Commercial Truck Lease Agreement Dated: 12/03/2021 | $ - |
| Enviva Pellets, LLC | K and J Transport | 101 DAUGHTRY RD, MURFREESBORO, NC 27855, UNITED STATES | Commercial Truck Lease Agreement Dated: 09/14/2022 | $ - |
| Enviva Management Company, LLC | Kathryn Walsh | 3717 GLENMOOR RESERVE LANE, CHEVY CHASE, MD 20815, UNITED STATES | 2024 Retention and Incentive Program Dated: 02/08/2024 | $ - |
| Enviva Holdings, LP | Kelaca LLC | 6500 CREEDMOOR ROAD, SUITE 104, RALEIGH, NC 27613, UNITED STATES | Master Services Agreement Dated: 06/01/2021 | $ - |
| Enviva Inc. | Lauritzen Bulkers A/S | 15 TUBORG HAVNEVEJ, HELLERUP, 2900, DENMARK | Affreightment Contract Dated: 08/03/2016 | $ - |
| Enviva, LP | Lauritzen Bulkers A/S | 15 TUBORG HAVNEVEJ, HELLERUP, 2900, DENMARK | Affreightment Contract Dated: 09/16/2015 | $ - |
| Enviva, LP | Lauritzen Bulkers A/S | 15 TUBORG HAVNEVEJ, HELLERUP, 2900, DENMARK | Freight Services Agreement Dated: 12/23/2021 | $ - |
| Enviva Inc. | Lenovo Financial Services | 10201 CENTURION PKWY N., STE 100, JACKSONVILLE, FL 32256, UNITED STATES | Master Lease Agreement Dated: 07/12/2023 | $ - |
| Enviva Inc. | Lenovo Financial Services | 10201 CENTURION PKWY N., STE 100, JACKSONVILLE, FL 32256, UNITED STATES | Lease for SOP Infrastructure Rebuild Dated: 09/11/2023 | $ - |
| Enviva Inc. | Lenovo Financial Services | 10201 CENTURION PKWY N., STE 100, JACKSONVILLE, FL 32256, UNITED STATES | Product Schedule to Master Lease Agreement Dated: 09/12/2023 | $ - |
| Enviva Holdings, LP | Lexington Insurance Company | 99 HIGH STREET, BOSTON, MA 02110, UNITED STATES | Commercial Property Insurance Dated: 9/1/2022 | $ - |
| Enviva Inc. | Lhoist Sa | RUE CHARLES DUBOIS 28, LIMELETTE, 1342, BELGIUM | CIF Biomass Fuel Supply Agreement Dated: 08/03/2022 | $ - |
| Enviva Inc. | Liberty Mutual Insurance Europe SE | 175 BERKELEY STREET, BOSTON, MA 02116, UNITED STATES | Terrorism Insurance Dated: 09/01/2022 | $ - |
| Enviva Holdings, LP | Litera | 550 W JACKSON BLVD, SUITE 200, CHICAGO, IL 60661, UNITED STATES | Other Compare Desktop Renewal Dated: 07/13/2023 | $ - |
| Enviva, LP | Litera | 550 W JACKSON BLVD, SUITE 200, CHICAGO, IL 60661, UNITED STATES | Order Form Dated: 08/06/2021 | $ - |
| Enviva Holdings, LP | Lloyds Bank PLC | 150 FOUNTAINBRIDGE, 4TH FLOOR, EDINBURGH, EH3 9PE, UNITED KINGDOM | Additional Fuel Supply Direct Agreement related to the Additional Quantities and Option Quantities Supply Agreement dated: 8/10/2016 | $ - |
| Enviva Holdings, LP | Lloyds Bank PLC | 150 FOUNTAINBRIDGE, 4TH FLOOR, EDINBURGH, EH3 9PE, UNITED KINGDOM | Fuel Supply Direct Agreement dated: 8/10/2016 | $ - |
| Enviva Pellets, LLC | LogicMonitor Inc | DEPT LA 24200, PASADENA, CA 91185, UNITED STATES | Software Subscription Agreement Dated: 01/22/2020 | $ - |
| Enviva Holdings, LP | Longleaf Alliance Inc | 12130 DIXON CENTER ROAD, ANDALUSIA, AL 36420, UNITED STATES | Independent Contractors Agreement Dated: 01/01/2020 | $ 9,962.50 |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Management Company, LLC | Longleaf Alliance Inc | 12130 DIXON CENTER ROAD, ANDALUSIA, AL 36420, UNITED STATES | Master Services Agreement Dated: 02/26/2021 | $ - |
| Enviva Pellets, LLC | Lumen | 665 LEXINGTON AVENUE, MANSFIELD, OH 44907, UNITED STATES | Products and Services Agreement Dated: 11/04/2014 | $ - |
| Enviva Pellets, LLC | Mabrey Trucking Inc | 49 WARREN DRIVE, ROANOE RAPIDS, NC 27870, UNITED STATES | Commercial Truck Lease Agreement Dated: 08/15/2022 | $ - |
| Enviva Pellets, LLC | Mabrey Trucking Inc | 49 WARREN DRIVE, ROANOE RAPIDS, NC 27870, UNITED STATES | Commercial Truck Lease Agreement Dated: 12/29/2023 | $ - |
| Enviva Pellets, LLC | Mabrey Trucking Inc | 49 WARREN DRIVE, ROANOE RAPIDS, NC 27870, UNITED STATES | Commercial Truck Lease Agreement Dated: 01/17/2023 | $ - |
| Enviva Holdings, LP | Maintenance Engineering Solutions | 1003 CAROLINA AVENUE, NORTH AUGUSTA, SC 29841, UNITED STATES | Master Services Agreement for Recruiting Services Dated: 04/01/2021 | $ - |
| Enviva Management Company, LLC | Mark A Coscio | 3214 MAJESTY ROW, SPRING, TX 77380, UNITED STATES | Employment Agreement Dated: 10/01/2022 | $ - |
| Enviva Management Company, LLC | Mark A Coscio | 3214 MAJESTY ROW, SPRING, TX 77380, UNITED STATES | Good Reason Confirmation Side Letter Dated: 12/29/2023 | $ - |
| Enviva Management Company, LLC | Mark Haser | 7272 WISCONSIN AVENUE, SUITE 1800, BETHESDA, MD 20814, UNITED STATES | 2024 Retention and Incentive Program Dated: 02/08/2024 | $ - |
| Enviva Pellets, LLC | Marty Davis Trucking of Lucedale MS LLC | 4257 DICKERSON SAW MILL ROAD, LUCEDALE, MS 39452, UNITED STATES | Equipment Lease Agreement Dated: 10/25/2022 | $ - |
| Enviva Inc. | Masergy Communications Inc | ONE COMCAST CENTER, 32ND FLOOR, PHILADELPHIA, PA 19103, UNITED STATES | Master Service Agreement Dated: 12/21/2021 | $ - |
| Enviva Holdings, LP | Matrix Resources Inc | 400 PERIMETER CENTER TERRACE, SUITE 300, ATLANTA, GA 30346, UNITED STATES | Master Services Agreement for Recruiting Services Dated: 03/02/2021 | $ - |
| Enviva Pellets Epes, LLC | McAbee Construction Inc | 5724 21ST ST, TUSCALOOSA, AL 35401, UNITED STATES | Construction Services Agreement Dated: 08/08/2023 | $ - |
| Enviva Inc. | MGT Teesside Limited | COMPANY SECRETARY, 8 WHITE OAK SQUARE, LONDON RD, SWANLEY, BR8 7AG, UNITED KINGDOM | Contingent Novation Agreement related to the Sub-Supply Agreement dated: 1/22/2016 | $ - |
| Enviva Inc. | MGT Teesside Limited | COMPANY SECRETARY, 8 WHITE OAK SQUARE, LONDON RD, SWANLEY, BR8 7AG, UNITED KINGDOM | EFET Individual Biomass Contract dated: 2/6/2024 | $ - |
| Enviva Inc. | MGT Teesside Limited | COMPANY SECRETARY, 8 WHITE OAK SQUARE, LONDON RD, SWANLEY, BR8 7AG, UNITED KINGDOM | First Amendment to the EFET Individual Biomass Contract | $ - |
| Enviva Inc. | MGT Teesside Limited | COMPANY SECRETARY, 8 WHITE OAK SQUARE, LONDON RD, SWANLEY, BR8 7AG, UNITED KINGDOM | Side Letter dated: 3/7/2024 | $ - |
| Enviva Holdings, LP | MGT Teesside Limited | COMPANY SECRETARY, 8 WHITE OAK SQUARE, LONDON RD, SWANLEY, BR8 7AG, UNITED KINGDOM | Additional Fuel Supply Direct Agreement related to the Additional Quantities and Option Quantities Supply Agreement dated: 8/10/2016 | $ - |
| Enviva Holdings, LP | MGT Teesside Limited | COMPANY SECRETARY, 8 WHITE OAK SQUARE, LONDON RD, SWANLEY, BR8 7AG, UNITED KINGDOM | Fuel Supply Direct Agreement dated: 8/10/2016 | $ - |
| Enviva Holdings, LP | Miller & Chevalier Chartered | 900 16TH ST NW, WASHINGTON, DC 20006, UNITED STATES | Joint Representation Letter Dated: 09/08/2021 | $ - |
| Enviva Pellets, LLC | Milton J Wood Fire Protection Inc | ANNMARIE NEMETH, 3805 FAYE ROAD, JACKSONVILLE, FL 32226, | Construction Services Agreement Dated: 11/23/2022 | $ - |
| Enviva Pellets, LLC | Milton J Wood Fire Protection Inc | ANNMARIE NEMETH, 3805 FAYE ROAD, JACKSONVILLE, FL 32226, | Construction Services Agreement  Dated: 08/11/2023 | $ - |
| Enviva Inc. | Minitab Inc | 1829 PINE HALL ROAD, STATE COLLEGE, PA 16801, UNITED STATES | Renewal of Statistical Analysis Software Dated: 08/3/2023 | $ - |
| Enviva Pellets Lucedale, LLC | Mississippi Development Authority | EXECUTIVE DIRECTOR, 501 NORTH WEST STREET (39202), P.O. BOX 849, JACKSON, MS 39205, UNITED STATES | Memorandum Of Understanding Dated: 01/07/2019 | $ - |
| Enviva Port of Pascagoula, LLC | Mississippi Development Authority | EXECUTIVE DIRECTOR, 501 NORTH WEST STREET (39202), P.O. BOX 849, JACKSON, MS 39205, UNITED STATES | Memorandum Of Understanding Dated: 01/07/2019 | $ - |
| Enviva Pellets Lucedale, LLC | Mississippi Development Authority | EXECUTIVE DIRECTOR, 501 NORTH WEST STREET (39202), P.O. BOX 849, JACKSON, MS 39205, UNITED STATES | Restated Memorandum of Understanding Dated: 01/07/2019 | $ - |
| Enviva Port of Pascagoula, LLC | Mississippi Development Authority | EXECUTIVE DIRECTOR, 501 NORTH WEST STREET (39202), P.O. BOX 849, JACKSON, MS 39205, UNITED STATES | Restated Memorandum of Understanding Dated: 01/07/2019 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets Lucedale, LLC | Mississippi Export Railroad Company | 4519 MCINNIS AVE, MOSS POINT, MS 39563, UNITED STATES | Rail Transportation Contract Dated: 03/23/2020 | $ - |
| Enviva Pellets Lucedale, LLC | Mississippi Export Railroad Company | 4519 MCINNIS AVE, MOSS POINT, MS 39563, UNITED STATES | Railcar Storage Agreement Dated: 03/23/2020 | $ - |
| Enviva Pellets Lucedale, LLC | Mississippi Power | PO BOX 245, BIRMINGHAM, AL 35201, UNITED STATES | Lease And Maintenance Agreement Dated: 03/26/2020 | $ - |
| Enviva Pellets Lucedale, LLC | Mississippi Power | PO BOX 245, BIRMINGHAM, AL 35201, UNITED STATES | Contract For Electric Service Dated: 11/09/2019 | $ - |
| Enviva Pellets Lucedale, LLC | Mississippi Power | PO BOX 245, BIRMINGHAM, AL 35201, UNITED STATES | Load Build Up Contract Addendum | $ - |
| Enviva Port of Pascagoula, LLC | Mississippi Power | PO BOX 245, BIRMINGHAM, AL 35201, UNITED STATES | Service Contract Dated: 12/06/2021 | $ - |
| Enviva Pellets Lucedale, LLC | Mississippi Power | PO BOX 245, BIRMINGHAM, AL 35201, UNITED STATES | Lease and Maintenance of Electric Lines and Equipment Dated: 03/23/2020 | $ - |
| Enviva Pellets, LLC | Mitsubishi HC Capital America Inc | 21925 NETWORK PLACE, CHICAGO, IL 60673, UNITED STATES | Master Agreement No. 7132301 Dated: 08/02/2022 | $ - |
| Enviva Holdings, LP | MOL Drybulk Ltd | MOL DRYBULK LTD. 1-1, TORANOMON 2-CHOME, MINATO-KU, TOKYO 105-8688, JAPAN | Novation Agreement Dated: 06/3/2019 | $ - |
| Enviva Holdings, LP | MOL Drybulk Ltd | MOL DRYBULK LTD. 1-1, TORANOMON 2-CHOME, MINATO-KU, TOKYO 105-8688, JAPAN | Affreightment Contract Dated: 04/07/2021 | $ - |
| Enviva Holdings, LP | MOL Drybulk Ltd | MOL DRYBULK LTD. 1-1, TORANOMON 2-CHOME, MINATO-KU, TOKYO 105-8688, JAPAN | Affreightment Contract Dated: 10/30/2018 | $ - |
| Enviva Holdings, LP | MOL Drybulk Ltd | MOL DRYBULK LTD. 1-1, TORANOMON 2-CHOME, MINATO-KU, TOKYO 105-8688, JAPAN | Freight Services Agreement Dated: 12/23/2014 | $ - |
| Enviva Holdings GP, LLC | Monument Policy Group LLC dba Monument Advocacy | ATTN: BRITT BEPLER, 975 F ST NW, SUITE 400B, WASHINGTON, DC 20004, UNITED STATES | Communication Services Agreement Dated: 04/01/2020 | $ - |
| Enviva Holdings, LP | Monument Policy Group LLC dba Monument Advocacy | ATTN: BRITT BEPLER, 975 F ST NW, SUITE 400B, WASHINGTON, DC 20004, UNITED STATES | Consulting Services Agreement Dated: 08/01/2018 | $ - |
| Enviva Pellets, LLC | Motion Industries Inc | 1605 ALTON ROAD, BIRMINGHAM, AL 35210, UNITED STATES | Product Purchase Agreement Dated: 11/01/2023 | $ - |
| Enviva, LP | MUR Shipping BV | HOGEHILWEG 18 GEBOUW PRIMATR, AMSTERDAM, 1101, NETHERLANDS | Affreightment Contract Dated: 04/10/2019 | $ - |
| Enviva, LP | MUR Shipping BV | HOGEHILWEG 18 GEBOUW PRIMATR, AMSTERDAM, 1101, NETHERLANDS | Affreightment Contract Dated: 05/04/2018 | $ - |
| Enviva Holdings, LP | MUR Shipping BV | HOGEHILWEG 18 GEBOUW PRIMATR, AMSTERDAM, 1101, NETHERLANDS | Contract of Affreightment Dated: 09/17/2020 | $ - |
| Enviva Holdings, LP | National Council for Air & Stream Improvement Inc | 1513 WALNUT STREET, SUITE 200, CARY, NC 27511, UNITED STATES | Sustainability Agreement Dated: 09/29/2021 | $ - |
| Enviva, LP | National Council for Air & Stream Improvement Inc | 1513 WALNUT STREET, SUITE 200, CARY, NC 27511, UNITED STATES | Application for membership under NCASI Dated: 06/25/2018 | $ - |
| Enviva Inc. | National Union Fire Insurance Company of Pittsburgh, Pa | 1271 AVENUE OF THE AMERICAS, FL 37, NEW YORK, NY 10020-1304, UNITED STATES | Policy Dated: 12/31/2022 | $ - |
| Enviva Inc. | National Union Fire Insurance Company of Pittsburgh, Pa | 1271 AVENUE OF THE AMERICAS, FL 37, NEW YORK, NY 10020-1304, UNITED STATES | Endorsement for Policy Extension Dated: 12/31/2022 | $ - |
| Enviva Inc. | National Union Fire Insurance Company of Pittsburgh, Pa | 1271 AVENUE OF THE AMERICAS, FL 37, NEW YORK, NY 10020-1304, UNITED STATES | Excess Liability Insurance Policy Dated: 12/31/2022 | $ - |
| Enviva Inc. | National Union Fire Insurance Company of Pittsburgh, Pa | 1271 AVENUE OF THE AMERICAS, FL 37, NEW YORK, NY 10020-1304, UNITED STATES | Excess Liability Insurance Policy Declarations Dated: 12/31/2022 | $ - |
| Enviva Inc. | National Union Fire Insurance Company of Pittsburgh, Pa | 1271 AVENUE OF THE AMERICAS, FL 37, NEW YORK, NY 10020-1304, UNITED STATES | Policy Extension Dated: 12/31/2023 | $ - |
| Enviva Inc. | National Union Fire Insurance Company of Pittsburgh, Pa | 1271 AVENUE OF THE AMERICAS, FL 37, NEW YORK, NY 10020-1304, UNITED STATES | Policy Extension Dated: 12/31/2022 | $ - |
| Enviva Inc. | National Union Fire Insurance Company of Pittsburgh, Pa | 1271 AVENUE OF THE AMERICAS, FL 37, NEW YORK, NY 10020-1304, UNITED STATES | Policy Endorsement Dated: 12/31/2022 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Holdings, LP | Nautilus Insurance Company | 7233 E. BUTHERUS DRIVE, SCOTTSDALE, AZ 85260, UNITED STATES | Terrorism Insurance Coverage Dated: 9/1/2023 | $ - |
| Enviva Inc. | Navigators Management Company, Inc. | 227 W. MONROE STREET, CHICAGO, IL 60606, UNITED STATES | Excess Bumbershoot Liability - Marine \| XS Bumbershoot- 33.333% po 20x5 - Naviga Dated: 04/15/2023 | $ - |
| Enviva Holdings, LP | Netwrix Corporation | 300 SPECTRUM CENTER DR, SUITE 200, IRVINE, CA 92618, UNITED STATES | Software License Agreement Dated: 07/21/2023 | $ - |
| Enviva Holdings, LP | Nitro Software Inc | 150 SPEAR ST, STE 1500, SAN FRANCISCO, CA 94105, UNITED STATES | Software License Agreement Dated: 06/15/2023 | $ - |
| Enviva Pellets, LLC | Norden | STRANDVEJEN 52, HELLERUP, DK-2900, DENMARK | Contract of Affreightment Dated: 08/11/2016 | $ - |
| Enviva, LP | Norden | STRANDVEJEN 52, HELLERUP, DK-2900, DENMARK | Novation Agreement Dated: 11/22/2016 | $ - |
| Enviva, LP | Norden | STRANDVEJEN 52, HELLERUP, DK-2900, DENMARK | Contract of Affreightment Dated: 08/4/2016 | $ - |
| Enviva Inc. | Norden | STRANDVEJEN 52, HELLERUP, DK-2900, DENMARK | Contract of Affreightment Dated: 12/11/2009 | $ - |
| Enviva, LP | Norden | STRANDVEJEN 52, HELLERUP, DK-2900, DENMARK | Contract of Affreightment Dated: 08/02/2019 | $ - |
| Enviva Inc. | NOREX Inc | 5505 COTTONWOOD LANE SE, PRIOR LAKE, MN 55372, UNITED STATES | Service Agreement Dated 07/15/2022 | $ - |
| Enviva Pellets, LLC | North American Capacity Ins Co | 1200 MAIN STREET, SUITE 800, KANSAS CITY, MO 64105, UNITED STATES | Builders Risk Coverage \| Builders Risk Dated: 05/19/2023 | $ - |
| Enviva Pellets, LLC | Northland Capital Equipment Finance | 333 33RD AVENUE SOUTH, SAINT CLOUD, MN 56301, UNITED STATES | Master Equipment Finance Agreement Dated: 03/11/2022 | $ 1,327.92 |
| Enviva Aircraft Holdings Corp. | Nxt Jet, Inc | 637 PALM DRIVE, SUITE 101, OCOEE, FL 34761, UNITED STATES | Aircraft Charter and Lease Agreement Dated: 08/31/2021 | $ - |
| Enviva Holdings, LP | NYK Bulk & Projects Carriers Ltd | YUSEN BUILDING 3-2 MARUNOUCHI 2-CHOME CHIYODA-KU, TOKYO, 100-0005, JAPAN | Freight Services Agreement Dated: 10/31/2018 | $ - |
| Enviva, LP | NYK Bulk & Projects Carriers Ltd | YUSEN BUILDING 3-2 MARUNOUCHI 2-CHOME CHIYODA-KU, TOKYO, 100-0005, JAPAN | Affreightment Contract Dated: 06/05/2019 | $ - |
| Enviva Inc. | Oanda | 228 PARK AVENUE SOUTH, STE# 20236, NEW YORK, NY 10003, UNITED STATES | Subscription Agreement Dated: 04/15/2021 | $ - |
| Enviva Inc. | Old Republic Insurance Company | 191 NORTH WACKER DRIVE, SUITE 1000, CHICAGO, IL 60606, UNITED STATES | Conditional Binder of Insurance Dated: 02/02/2024 | $ - |
| Enviva Inc. | Old Republic Professional Liability, Inc | 191 NORTH WACKER DRIVE, SUITE 1400, CHICAGO, IL 60606, UNITED STATES | Temporary and Conditional Binder of Insurance Dated: 02/02/2024 | $ - |
| Enviva Pellets, LLC | O'Neal Engineering | PO BOX 1219, WIGGINS, MS 39577, UNITED STATES | Master Service Agreement Dated: 09/23/2023 | $ - |
| Enviva Pellets, LLC | ONeal Inc | 1600 RIVEREDGE PARKWAY, SUITE 925, ATLANTA, GA 30328, UNITED STATES | Engineering Services Agreement Dated: 09/26/2023 | $ 23,939.24 |
| Enviva Management Company, LLC | OneBrightDay Ltd | WINDSOR HOUSE, CORNWALL RD, HARROGATE, GH1 2AP, UNITED KINGDOM | Agency Agreement Dated: 02/05/2021 | $ - |
| Enviva Holdings, LP | Operational Sustainability LLC | PO BOX 79286, HOUSTON, TX 77279, UNITED STATES | Master Services Agreement Dated: 03/17/2021 | $ - |
| Enviva Holdings, LP | Operational Sustainability LLC | PO BOX 79286, HOUSTON, TX 77279, UNITED STATES | Master Services Agreement Dated: 2/7/2018 | $ - |
| Enviva, LP | Oracle (Primavera) | C/O SHAWN M. CHRISTIANSON, ESQ., BUCHALTER, A PROFESSIONAL CORPORATION, 425 MARKET ST., SUITE 2900, SAN FRANCISCO, CA 94105, UNITED STATES | Portfolio Management Cloud Service Dated: 11/23/2020 | $ - |
| Enviva Pellets, LLC | Osborne Hamilton Reynolds | 2892 RIVERMEADE DRIVE, ATLANTA, GA 30327, UNITED STATES | Option Agreement Dated: 11/8/2022 | $ - |
| Enviva, LP | Pacific Basin Supramax Ltd | 31/F ONE ISLAND SOUTH, 2 HEUNG YIP ROAD, HONG KONG, CHINA | Contract of Affreightment Dated: 08/01/2019 | $ - |
| Enviva Inc. | Palomar Excess and Surplus Insurance Company | 7979 IVANHOE AVENUE, SUITE 500, LA JOLLA, CA 92307, UNITED STATES | Excess Public Directors and Officers Liability Insurance Dated: 12/31/2023 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets, LLC | Panama City Port Authority | 5231 WEST HIGHWAY 98, PANAMA CITY, FL 32401, UNITED STATES | Terminal Services Agreement Dated: 05/11/2021 | $ - |
| Enviva Pellets, LLC | Panama City Port Authority | 5231 WEST HIGHWAY 98, PANAMA CITY, FL 32401, UNITED STATES | Bulk Warehouse Service Agreement Dated: 03/22/2007 | $ - |
| Enviva Pellets Epes, LLC | Parker-Hannifin Corporation | 6035 PARKLAND BLVD., CLEVELAND, OH 44124, | Investment Credit Purchase Agreement Dated: 07/28/2021 | $ - |
| Enviva Management Company, LLC | Patriot Shredding | 12358 PARKLAWN DRIVE SUITE 352, ROCKVILLE, MD 20852, UNITED STATES | Master Services Agreement Dated: 05/21/2021 | $ 231.00 |
| Enviva Management Company, LLC | Patriot Shredding | 12358 PARKLAWN DRIVE SUITE 352, ROCKVILLE, MD 20852, UNITED STATES | Services Agreement Dated: 04/17/2024 | $ - |
| Enviva, LP | PCL Shipping PTE LTD | NO 1. KIM SENG PROMENADE, GREAT WORLD CITY, 237994, SINGAPORE | Freight Services Agreement Dated: 12/08/2017 | $ - |
| Enviva Pellets, LLC | PCL Shipping PTE LTD | NO 1. KIM SENG PROMENADE, GREAT WORLD CITY, 237994, SINGAPORE | Contract of Affreightment Dated: 08/12/2016 | $ - |
| Enviva Pellets, LLC | PCL Shipping PTE LTD | NO 1. KIM SENG PROMENADE, GREAT WORLD CITY, 237994, SINGAPORE | Contract of Affreightment Dated: 12/1/2014 | $ - |
| Enviva Pellets, LLC | Peak Leasing LLC | PO BOX 1259, WILMINGTON, NC 28402, UNITED STATES | Lease Agreement (Serial No. Ending 1621) Dated: 08/1/2022 | $ - |
| Enviva Pellets, LLC | Peak Leasing LLC | PO BOX 1259, WILMINGTON, NC 28402, UNITED STATES | #2 Lease Agreement (Serial No. Ending 9613) Dated: 08/1/2022 | $ - |
| Enviva Pellets, LLC | Peak Leasing LLC | PO BOX 1259, WILMINGTON, NC 28402, UNITED STATES | Lease Agreement (Serial No. Ending 8333) Dated: 10/15/2021 | $ - |
| Enviva Pellets, LLC | Peak Leasing LLC | PO BOX 1259, WILMINGTON, NC 28402, UNITED STATES | Lease Agreement (Serial No. Ending 7786) Dated: 10/15/2021 | $ - |
| Enviva Pellets, LLC | Peak Leasing LLC | PO BOX 1259, WILMINGTON, NC 28402, UNITED STATES | Lease Agreement (Serial No. Ending 7805) Dated: 10/15/2021 | $ - |
| Enviva Holdings, LP | People 2.0 North America | 22 VALLEY CREEK BLVD., SUITE 100, EXTON, PA 19341, UNITED STATES | Master Services Recruiting Agreement Dated: 04/01/2021 | $ - |
| Enviva Pellets, LLC | Pete Johnson Logging | 3665 RAINBOW LAKE ROAD, INMAN, SC 29349, UNITED STATES | Equipment Sublease Agreement Dated: 05/23/2022 | $ - |
| Enviva Inc. | Pfeifer & Langen Gmbh & Co. Kg | AACHENER STR. 1042A, COLOGNE, 50835, GERMANY | Fuel Supply Agreement Dated: 07/29/2022 | $ - |
| Enviva Inc. | PHU TAI BIO-ENERGY CORPORATION | LOT B23, CENTRE STREET, PHU TAI, IZ, TRAN QUANG DIEU WARD, QUY NHON, 590000, VIETNAM | Fuel Supply Agreement Dated: 07/06/2023 | $ - |
| Enviva Inc. | PHU TAI BIO-ENERGY CORPORATION | LOT B23, CENTRE STREET, PHU TAI, IZ, TRAN QUANG DIEU WARD, QUY NHON, 590000, VIETNAM | Fuel Supply Agreement Dated: 03/28/2023 | $ - |
| Enviva Pellets, LLC | Piedmont Natural Gas | MARY M. CASKEY, ESQ., HAYNSWORTH SINKLER BOYD, PA, PO BOX 11889, COLUMBIA, SC 29211-1889, UNITED STATES | Natural Gas Transportation Service Agreement Dated: 06/12/2019 | $ - |
| Enviva Inc. | Planful Inc | 150 SPEAR STREET, STE 1850, SAN FRANCISCO, CA 94105, UNITED STATES | Master Subscription Agreement 08/07/2020 | $ 2,114.95 |
| Enviva Inc. | Planful Inc | 150 SPEAR STREET, STE 1850, SAN FRANCISCO, CA 94105, UNITED STATES | Master Subscription Agreement Dated: 11/01/2022 | $ - |
| Enviva Inc. | Potomac Mechanical Contractors Inc | 18915 PREMIERE COURT, GAITHERSBURG, MD 20879, UNITED STATES | HVAC Preventative Maintenance Agreement Dated: 06/29/2023 | $ - |
| Enviva Management Company, LLC | Practicing Law Institute | 1177 AVENUE OF THE AMERICAS, NEW YORK, NY 10036, UNITED STATES | Privileged Membership Agreement Dated: 11/02/2018 | $ - |
| Enviva Pellets Epes, LLC | Primoris Energy Services Corp | 14455 PRIMORIS WAY, HOUSTON, TX 77048, UNITED STATES | Construction Services Agreement Dated: 09/26/2023 | $ - |
| Enviva Inc. | Primoris Energy Services Corp | 14455 PRIMORIS WAY, HOUSTON, TX 77048, UNITED STATES | Construction Service Agreement Dated: 02/08/2024 | $ - |
| Enviva Pellets Waycross, LLC | Progress Rail Leasing Corporation | 1600 PROGRESS DRIVE, ALBERTVILLE, AL 35950, UNITED STATES | Schedule 2 to Master Railcar Lease Agreement Dated: 10/03/2022 | $ - |
| Enviva Pellets Waycross, LLC | Progress Rail Leasing Corporation | 1600 PROGRESS DRIVE, ALBERTVILLE, AL 35950, UNITED STATES | Master Railcar Lease Agreement Dated: 07/31/2020 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Management Company, LLC | PTS Advance | 2860 MICHELLE DR, SUITE 150, IRVINE, CA 92606, UNITED STATES | Employment Master Services Agreement Dated: 08/10/2020 | $ - |
| Enviva Management Company, LLC | PTS Advance | 2860 MICHELLE DR, SUITE 150, IRVINE, CA 92606, UNITED STATES | Contract Employment Agreement Dated: 02/22/2023 | $ - |
| Enviva Inc. | PwC US Tax LLP | 4040 W BOY SCOUT BLVD, TAMPA, FL 33607, UNITED STATES | Statement of Work Dated: 01/16/2024 | $ - |
| Enviva Inc. | PwC US Tax LLP | 4040 W BOY SCOUT BLVD, TAMPA, FL 33607, UNITED STATES | Engagement Letter Dated: 03/07/2024 | $ - |
| Enviva Inc. | QBE Insurance Corporation | 55 WATER ST, NEW YORK, NY 10041, UNITED STATES | Commercial Property Coverage Dated: 09/01/2022 | $ - |
| Enviva Pellets Epes, LLC | Rapid Wireless LLC | PO BOX 416, HARTFORD, AL 36344, UNITED STATES | Internet Access Customer Agreement Dated: 11/23/2022 | $ 1,657.75 |
| Enviva Inc. | Resilience Cyber Ins Solutions | 275 MADISON AVENUE, STE. 902, NEW YORK, NY 10016, UNITED STATES | Cyber Liability - Excess | 01-XS Cyber Liability Dated: 09/15/2022 | $ - |
| Enviva Inc. | Risk Specialists Companies Ins Agcy,Inc. | 100 SUMMER ST, BOSTON, MA, 02110, UNITED STATES | Directors & Officers-Excess Side A DIC | 05-D&O-XS-SideADIC Dated: 12/31/2022 | $ - |
| Enviva Inc. | Risk Specialists Companies Ins Agcy,Inc. | 100 SUMMER ST, BOSTON, MA, 02110, UNITED STATES | Directors & Officers-Run-Off | 21-27 XDOA5 Runoff Dated: 12/31/2021 | $ - |
| Enviva Holdings, LP | Robert Half International Inc | 7315 WISCONSIN AVE, SUITE 550, BETHESDA, MD 20814, UNITED STATES | Master Services Recruiting Agreement Dated: 12/13/2021 | $ - |
| Enviva Pellets Epes, LLC | Rockwell Automation Inc | 1201 S. SECOND ST., MILWAUKEE, WI 53204, UNITED STATES | Product Purchase Agreement Dated: 03/20/2023 | $ - |
| Enviva Pellets Epes, LLC | Rotex Global LLC | 1230 KNOWLTON STREET, CINCINNATI, OH 45223, UNITED STATES | Product Purchase Agreement Dated: 01/11/2023 | $ - |
| Enviva Inc. | R-T Specialty, LLC | 155 N WACKER DR, SUITE 4000, CHICAGO, IL, 60606, UNITED STATES | Builders Risk Coverage | Builders Risk Dated: 05/19/2023 | $ - |
| Enviva Inc. | R-T Specialty, LLC | 155 N WACKER DR, SUITE 4000, CHICAGO, IL, 60606, UNITED STATES | Commercial Property Coverage | Prop-Prim-8.333% part of $150M-GuideOne Dated: 09/01/2022 | $ - |
| Enviva Inc. | R-T Specialty, LLC | 155 N WACKER DR, SUITE 4000, CHICAGO, IL, 60606, UNITED STATES | Excess Liability Coverage | Excess Liab Cvg-$25M xs $25M Dated: 09/01/2022 | $ - |
| Enviva, LP | Russ Logging LLC | 1622 BEECH RIDGE RD, BELLHAVEN, NC 27810, UNITED STATES | Timber Master Agreement Dated: 04/02/2021 | $ - |
| Enviva Inc. | RWE Supply & Trading GmbH | ALTENESSENER STR. 27 D, ESSEN, 45141, GERMANY | CIF Master Agreement Dated: 08/17/2023 | $ - |
| Enviva Inc. | Ryan, LLC | 13155 NOEL RD, SUITE 100, DALLAS, TX, 75240, UNITED STATES | Property Tax Services Agreement Dated: 10/2/2023 | $ - |
| Enviva Pellets, LLC | Sampson County, North Carolina | NEIL E. MCCULLAGH, ESQ., SPOTTS FAIN PC, 411 E. FRANKLIN STREET SUITE 600, RICHMOND, VA 23219, UNITED STATES | Incentive Agreement Dated: 10/25/2013 | $ - |
| Enviva Inc. | SCS Global Services | 2000 POWELL STREET, SUITE 600, EMERYVILLE, CA 94608, UNITED STATES | Sustainability Agreement Dated: 12/28/2023 | $ 67,590.00 |
| Enviva Inc. | SCS Global Services | 2000 POWELL STREET, SUITE 600, EMERYVILLE, CA 94608, UNITED STATES | Forest Council Agreement Dated: 12/28/2023 | $ - |
| Enviva Inc. | SEDNA System Inc | 131 - 409 GRANVILLE STREET, VANCOUVER, BC V6C 1T2, CANADA | Pro-Tier Licensing Agreement Dated: 09/01/2022 | $ - |
| Enviva Inc. | SEDNA System Inc | 131 - 409 GRANVILLE STREET, VANCOUVER, BC V6C 1T2, CANADA | Master Service Agreement Dated: 07/28/2022 | $ - |
| Enviva Inc. | SGS North America Inc | 900 GEORGIA AVENUE, DEER PARK, TX 77536, UNITED STATES | Service Agreement Dated: 09/20/2023 | $ - |
| Enviva Holdings, LP | Sharp Business Systems | 1111 OLD EAGLE SCHOOL RD, WAYNE, PA 19087, UNITED STATES | Customer Care Maintenance Agreement Dated: 03/09/2022 | $ - |
| Enviva Holdings, LP | Sharp Business Systems | 1111 OLD EAGLE SCHOOL RD, WAYNE, PA 19087, UNITED STATES | Value Lease Agreement Dated: 11/04/2021 | $ - |
| Enviva Inc. | Sharp Business Systems | 1111 OLD EAGLE SCHOOL RD, WAYNE, PA 19087, UNITED STATES | Customer Care Maintenance Agreement Dated: 03/09/2022 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Inc. | SHI International (Nutanix) | 290 DAVIDSON AVE, SOMERSET, NJ 08873, UNITED STATES | Software Renewal Dated: 10/28/2022 | $ - |
| Enviva Pellets, LLC | Showtime Logging | 88 JIM MARTIN DR, ROANOKE RAPIDS, NC 27870, UNITED STATES | Equipment Lease Agreement Dated: 10/16/2023 | $ - |
| Enviva Pellets Epes, LLC | SHW Storage & Handling Solutions | 400 GALLERIA PARKWAY, ATLANTA, GA 30339, UNITED STATES | Product Purchase Agreement Dated: 01/25/2023 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 4506) Dated: 03/16/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 0907, 0908, 0909) Dated: 04/10/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 0016) Dated: 04/5/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 0726, 0727) Dated: 07/20/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 5690, 5691) Dated: 05/5/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 1230) Dated: 07/10/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 0724, 0913, 0725) Dated: 06/20/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 1254) Dated: 06/5/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 1257) Dated: 04/5/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Master Lease Agreement (Serial No. Ending 6077) Dated: 03/16/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 6096) Dated: 03/15/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 6095) Dated: 03/15/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 4513) Dated: 03/15/2022 | $ - |
| Enviva Pellets, LLC | Signature Financial | 565 FIFTH AVENUE, 8TH FLOOR, NEW YORK, NY 10017, UNITED STATES | Equipment Schedule (Serial No. Ending 6077) Dated: 03/15/2022 | $ - |
| Enviva Inc. | Skywared Specialty Insurance | 800 GESSNER RD, STE 600, HOUSTON, TX, 77024, UNITED STATES | Insurance Binder Dated: 02/01/2024 | $ - |
| Enviva Holdings, LP | Slover & Loftus LLP | 1224 SEVENTEENTH STREET NW, WASHINGTON, DC 20036, UNITED STATES | Retention Letter Dated: 05/08/2013 | $ - |
| Enviva Holdings, LP | Smartsheet Inc | PO BOX 7410971, CHICAGO, IL 60674, UNITED STATES | Enterprise Plan Subscription Dated: 08/26/2022 | $ - |
| Enviva Pellets, LLC | Soluni LLC | PAUL RAFFLE, 146 BALFOUR DRIVE, DANIEL ISLAND, SC 29492, | Compressed Natural Gas Service Agreement Dated: 02/13/2021 | $ 96,637.28 |
| Enviva Pellets, LLC | Soluni LLC | PAUL RAFFLE, 146 BALFOUR DRIVE, DANIEL ISLAND, SC 29492, | Site License Agreement Dated: 02/10/2021 | $ - |
| Enviva Inc. | Sompo America Insurance Company | 1221 AVENUE OF THE AMERICAS, FLOOR 18, NEW YORK, NY, 10020, UNITED STATES | Directors & Officers-Run-Off | 21-27 XDO4 Sompo Runoff Dated: 12/31/2021 | $ - |
| Enviva Inc. | Sompo America Insurance Company | 1221 AVENUE OF THE AMERICAS, FLOOR 18, NEW YORK, NY, 10020, UNITED STATES | Excess Bumbershoot Liability - Marine | XS Bumbershoot- 33.334% po 20x5- Sompo Dated: 04/15/2023 | $ - |
| Enviva Inc. | Sompo America Insurance Company | 1221 AVENUE OF THE AMERICAS, FLOOR 18, NEW YORK, NY, 10020, UNITED STATES | Management Assurance Policy Dated: 12/31/2022 | $ - |
| Enviva Inc. | Sompo International Insurance Company | US COMMERCIAL MANAGEMENT LIABILITY, 12222 MERIT DRIVE, SUITE 950, DALLAS, TX 75251, UNITED STATES | Management Assurance Policy Binder Dated: 12/31/2023 | $ - |
| Enviva Pellets, LLC | Southampton County, Virginia | 26022 ADMINISTRATION CENTER DR, COURTLAND, VA, 23837, UNITED STATES | Performance Agreement Dated: 05/01/2019 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets, LLC | Spectrum | 8614 WESTWOOD CENTER DR, SUITE 700, VIENNA, VA 22182, UNITED STATES | Enterprise Service Agreement Dated: 01/019/2019 | $ - |
| Enviva Holdings, LP | Spectrum | 8614 WESTWOOD CENTER DR, SUITE 700, VIENNA, VA 22182, UNITED STATES | Customer Service Order Dated: 04/22/2022 | $ - |
| Enviva Pellets, LLC | SSA Gulf Inc | PO BOX 2188, MOBILE, AL 36652, UNITED STATES | Stevedoring Service Agreement Dated: 07/02/2017 | $ 362,927.22 |
| Enviva Inc. | Starr Surplus Lines Insurance Company | 8401 N. CENTRAL EXPRESSWAY, SUITE 515, DALLAS, TX 75225, UNITED STATES | Builders Risk Coverage | Builders Risk Dated: 05/19/2023 | $ - |
| Enviva Inc. | Starstone Specialty Insurance Company | 201 E. FIFTH STREET, SUITE 1200, CINCINATTI, OH 45202, UNITED STATES | Excess Public Directors and Officers Liability Insurance Dated: 12/31/2023 | $ - |
| Enviva Holdings, LP | Steamship Mutual Undrwrg Assoc | AQUATICAL HOUSE, 39 BELL LANE, LONDON, E1 7LU, UNITED KINGDOM | P&I Coverage (Non Club)-Marine | Prot&Indemn Cvg Dated: 04/15/2023 | $ - |
| Enviva Inc. | Stericycle Inc | 2355 WAUKEGAN RD, DEERFIELD, IL 60015, UNITED STATES | Service agreement Dated: 05/13/2021 | $ - |
| Enviva Pellets, LLC | Stone Timber Corporation | PO BOX 166, WILMER, AL 36587, UNITED STATES | Equipment Lease Agreement Dated: 07/15/2022 | $ - |
| Enviva, LP | Sumitomo Forestry Co., Ltd | KEIDANREN KAIKAN, 1-3-2 OTEMACHI, CHIYODA-KU, TOKYO, 100-8270, JAPAN | Fuel Supply Agreement Dated: 02/01/2020 | $ - |
| Enviva Pellets Epes, LLC | Sumter County Alabama | ANNIE RUTH WILSON TAX COLLECTOR, PO DRAWER DD, LIVINGSTON, AL 35470, UNITED STATES | Second Amended And Restated Tax Abatement Agreement Dated: 03/07/2024 | $ - |
| Enviva Pellets Epes, LLC | Sumter County Water Authority | 400 AL HWY 28W, LIVINGSTON, AL 35470, UNITED STATES | Amended And Restated Project Incentives And Development Agreement Dated: 07/22/2022 | $ - |
| Enviva, LP | Sustainable Forestry Initiative Inc | PO BOX 424048, WASHINGTON, DC 20042, UNITED STATES | Sustainability Agreement Dated: 03/25/2020 | $ - |
| Enviva Inc. | Sustainable Forestry Initiative Inc | PO BOX 424048, WASHINGTON, DC 20042, UNITED STATES | SFI Participation and Trademark License Agreement Dated: 04/11/2024 | $ - |
| Enviva Inc. | Swiss Re Corp Solutions Elite Ins Corp | ATTN: CORPORATE SOLUTIONS CLAIMS, 1200 MAIN STREET, SUITE 800, KANSAS CITY, MO 64105, UNITED STATES | Commercial Property Coverage | Comm Prop Cvg-20% of $250M-Swiss Re Dated: 09/01/2022 | $ - |
| Enviva Holdings, LP | Systems Navigator Consultants BV | ELEKTRONICAWEG 25, DELFT, 2628 XG, NETHERLANDS | Master Service Agreement Dated: 6/30/2021 | $ - |
| Enviva Pellets Epes, LLC | Teal Sales Inc | 20818 44TH AVE. WEST, STE 201, LYNWOOD, WA 98039, UNITED STATES | Purchase of Equipment and Services: 07/01/2022 | $ - |
| Enviva Pellets Lucedale, LLC | Texican Holdings Inc | ONE ALLEN CENTER, SUITE 2600, HOUSTON, TX 77002, UNITED STATES | Product Purchase Agreement Dated: 11/01/2022 | $ - |
| Enviva, LP | Think-cell Sales GmbH & CoKG | CHAUSSEESTR 8, BERLIN, 10115, GERMANY | Software License Agreement | $ - |
| Enviva Pellets Epes, LLC | TIC The Industrial Company | 4800 NORTH POINT PARKWAY, ALPHARETTA, GA 30022, UNITED STATES | Professional Service Contract Dated: 04/19/2022 | $ - |
| Enviva Pellets Bond, LLC | TIC The Industrial Company | 4800 NORTH POINT PARKWAY, ALPHARETTA, GA 30022, UNITED STATES | Professional Service Contract Dated: 05/02/2022 | $ - |
| Enviva Pellets, LLC | Timberline Trucking Inc | PO BOX 940, LEAKESVILLE, MS 39451, UNITED STATES | Equipment Sublease Agreement (Serial No. Ending 1230) Dated: 08/25/2023 | $ - |
| Enviva Pellets, LLC | Timberline Trucking Inc | PO BOX 940, LEAKESVILLE, MS 39451, UNITED STATES | Equipment Sublease Agreement (Serial No. Ending 5690, 5691, 8222) Dated: 08/25/2023 | $ - |
| Enviva Holdings, LP | TRC Staffing Services Inc | 115 PERIMETER CENTER PLACE, SUITE 850, ATLANTA, GA 30346, UNITED STATES | Master Services Recruiting Agreement Dated: 09/10/2021 | $ - |
| Enviva Holdings, LP | Trimble Forestry Corporation | 1188 W GEORIGA ST, SUITE 560, VANCOUVER, BC V6E 4A2, CANADA | Master Service Agreement Dated: 08/04/2020 | $ - |
| Enviva Holdings, LP | Trimble Forestry Corporation | 1188 W GEORIGA ST, SUITE 560, VANCOUVER, BC V6E 4A2, CANADA | Log Inventory and Management System Dated: 08/31/2020 | $ - |
| Enviva Holdings, LP | Trimble Forestry Corporation | 1188 W GEORIGA ST, SUITE 560, VANCOUVER, BC V6E 4A2, CANADA | Master Services Agreement Dated: 08/04/2020 | $ - |
| Enviva Inc. | Trimble Solutions USA Inc | 8412 DONNYBROOK DRIVE, CHEVY CHASE, MD 20815, UNITED STATES | Subscription Agreement | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets Lucedale, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Equipment Lease Extension Dated: 06/13/2023 | $ - |
| Enviva Pellets Lucedale, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Railroad Car Lease Agreement Dated: 12/10/2019 | $ - |
| Enviva Pellets Lucedale, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Equipment Lease Assignment Dated: 08/17/2023 | $ - |
| Enviva Pellets Lucedale, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Rider Two to Railroad Car Lease Agreement Dated: 01/4/2021 | $ - |
| Enviva Pellets Greenwood, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Master Lease Agreement Dated: 02/04/2016 | $ - |
| Enviva Pellets Greenwood, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Rider Three to Railroad Car Lease Agreement Dated: 12/6/2022 | $ - |
| Enviva Pellets, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Railroad Car Lease Agreement Dated: 06/20/2017 | $ - |
| Enviva Pellets, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Rider One to Railroad Car Lease Agreement Dated: 06/20/2017 | $ - |
| Enviva Pellets Waycross, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Railroad Car Lease Agreement Dated: 01/31/2023 | $ - |
| Enviva Pellets Waycross, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Rider One to Railroad Car Lease Agreement Dated: 01/31/2023 | $ - |
| Enviva Pellets Greenwood, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Rider Two to Railroad Car Lease Agreement Dated: 08/17/2018 | $ - |
| Enviva Pellets Greenwood, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Rider One to Railroad Car Lease Agreement Dated: 02/04/2016 | $ - |
| Enviva Pellets Greenwood, LLC | Trinity Industries Leasing Company | ATTN MICHAEL COOLEY, REED SMITH LLP, 2850 N. HARWOOD STREET SUITE 1500, DALLAS, TX 75201, UNITED STATES | Assignment and Assumption Agreement and Consent to Assign Dated: 01/31/2018 | $ - |
| Enviva Holdings, LP | True Find Staffing | 2600 E SOUTHLAKE BLVD, SUITE 120329, SOUTHLAKE, TX 76092, UNITED STATES | Master Services Agreement Dated: 04/19/2023 | $ - |
| Enviva Pellets, LLC | Truist Equipment Finance Corp | 3333 PEACHTREE RD NE, 7TH FLOOR SOUTH, ATLANTA, GA 30326, UNITED STATES | Master Lease Agreement Dated: 02/28/2023 | $ - |
| Enviva Pellets, LLC | Truist Equipment Finance Corp | 3333 PEACHTREE RD NE, 7TH FLOOR SOUTH, ATLANTA, GA 30326, UNITED STATES | Master Lease Agreement Dated: 08/10/2022 | $ - |
| Enviva Pellets, LLC | Truist Equipment Finance Corp | 3333 PEACHTREE RD NE, 7TH FLOOR SOUTH, ATLANTA, GA 30326, UNITED STATES | Master Lease Agreement Dated: 04/13/2023 | $ - |
| Enviva Pellets, LLC | Truist Equipment Finance Corp | 3333 PEACHTREE RD NE, 7TH FLOOR SOUTH, ATLANTA, GA 30326, UNITED STATES | Mack Truck Lease Dated: 09/30/2022 | $ - |
| Enviva Pellets, LLC | Truist Equipment Finance Corp | 3333 PEACHTREE RD NE, 7TH FLOOR SOUTH, ATLANTA, GA 30326, UNITED STATES | Equipment Schedule: 02/28/2023 | $ - |
| Enviva Inc. | TTL Inc | 3516 GREENSBORO AVE, TUSCALOOSA, AL 35401, UNITED STATES | Master Services Agreement Dated: 04/27/2023 | $ 1,946.10 |
| Enviva Inc. | Twin City Fire Insurance | ONE COLLEGE PARK, 8910 PURDUE ROAD, INDIANAPOLIS, IN 46568-0930, UNITED STATES | Endorsement Changes Dated: 12/31/2021 | $ - |
| Enviva Pellets, LLC | Two Rivers Inc | 18454 MAIN ST. N, PO BOX 416, BLOUNTSTOWN, FL 32424, UNITED STATES | Equipment Sublease Agreement Dated: 09/17/2022 | $ - |
| Enviva Inc. | U. S. Aviation Underwriters, Inc. | 26022 ADMINISTRATION CENTER DR, COURTLAND, VA, 23837, UNITED STATES | Unmanned Aerial Vehicles | Unmanned Aerial Dated: 11/18/2022 | $ - |
| Enviva Holdings, LP | UKG Inc dba Ultimate Software Group Inc | 200 PARK AVENUE SOUTH, FLOOR 2, NEW YORK, NY 10003, UNITED STATES | Software Services Agreement Dated: 01/12/2024 | $ - |
| Enviva Pellets Epes, LLC | Underwood Fire Equipment Inc | 48216 FRANK ST, WIXOM, MI 48393, UNITED STATES | Product Purchase Agreement Dated: 12/06/2022 | $ - |
| Enviva, LP | Verizon Wireless | ONE VERIZON WAY, BASKING RIDGE, NJ 07920, UNITED STATES | Entity Agreement Dated: 05/16/2017 | $ 3,081.73 |
| Enviva Inc. | Vo Thi Hong Suong | 382/15/2 DIEN BIEN PHU STREET, WARD 11, DISTRICT 10, HO CHI MINH, 700000, VIETNAM | Consulting Agreement Dated: 09/09/2022 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Pellets Epes, LLC | Volta LLC | 1616 GEARS RD, HOUSTON, TX 77067, UNITED STATES | Equipment Purchase Agreement Dated: 03/31/2023 | $ - |
| Enviva Pellets, LLC | W T Jernigan & Sons Trucking Inc | 1339 US 13 SOUTH, AHOSKIE, NC 27910, UNITED STATES | Service Contract Dated: 11/17/2021 | $ - |
| Enviva Pellets Lucedale, LLC | Waste Management of Mississippi Inc | 800 CAPITAL ST., SUITE 3000, HOUSTON, TX 77002, UNITED STATES | Master Service Agreement Dated: 03/01/2021 | $ 18,874.94 |
| Enviva Pellets, LLC | Waste Management of Virginia Inc | 625 CHERRINGTON PKWY, MOON TOWNSHIP, PA 15108-4314, UNITED STATES | Non-Hazardous Waste Service Contract Dated: 08/29/2023 | $ 21,527.24 |
| Enviva Pellets Waycross, LLC | Wells Fargo Rail Corporation | 9377 W HIGGINS RD, SUITE 600, ROSEMONT, IL 60018, UNITED STATES | Lease Agreement Dated: 03/31/2010 | $ - |
| Enviva Pellets Waycross, LLC | Wells Fargo Rail Corporation | 9377 W HIGGINS RD, SUITE 600, ROSEMONT, IL 60018, UNITED STATES | Rider Number Two Dated: 08/02/2021 | $ - |
| Enviva Pellets Waycross, LLC | Wells Fargo Rail Corporation | 9377 W HIGGINS RD, SUITE 600, ROSEMONT, IL 60018, UNITED STATES | Locomotive Lease Dated: 07/31/2020 | $ - |
| Enviva Pellets, LLC | Wesley Bennett Logging LLC | 1406 WASHINGTON ST, ROANOKE RAPIDS, NC 27870, UNITED STATES | Equipment Sublease Agreement Dated: 02/20/2023 | $ - |
| Enviva Pellets, LLC | Wesley Bennett Logging LLC | 1406 WASHINGTON ST, ROANOKE RAPIDS, NC 27870, UNITED STATES | Equipment Sublease Agreement Dated: 10/06/2023 | $ - |
| Enviva, LP | West Florida Electric | 5282 PEANUT ROAD, PO BOX 127, GRACEVILLE, FL 32440, UNITED STATES | Service Contract Dated: 03/09/2007 | $ 974,700.17 |
| Enviva Inc. | Westchester Fire Insurance Company | 436 WALNUT STREET, PHILADELPHIA, PA 19106-3703, UNITED STATES | Excess Liability Coverage Dated: 09/01/2023 | $ - |
| Enviva Pellets Epes, LLC | Western Pneumatics LLC | 60 CHASTAIN CENTER BLVD, KENNESAW, GA 30144, UNITED STATES | Service And Equipment Purchase Agreement Dated: 06/21/2023 | $ - |
| Enviva, LP | Wireless Watchdogs LLC | 317 ISIS AVE, SUITE 207, INGLEWOOD, CA 90301, UNITED STATES | Wireless Consulting and Services Agreement Dated: 02/04/2019 | $ 4,425.00 |
| Enviva Holdings, LP | Wolf & Company PC | 255 STATE STREET, BOSTON, MA 02109, UNITED STATES | Master Services Agreement Dated: 10/18/2021 | $ - |
| Enviva Pellets, LLC | Worldcom Exchange | 43 NORTHWESTERN DR, SALEM, NH 03079, UNITED STATES | Equipment Schedule Tax Lease Dated: 04/11/2022 | $ - |
| Enviva Inc. | XL Insurance | ATTN: BENTON BALLENGER, 3340 PEACHTREE ROAD NE, SUITE 2140, ATLANTA, GA 30326, UNITED STATES | Liability Insurance Policy Dated: 12/27/2022 | $ - |
| Enviva Inc. | XL Insurance | ATTN: BENTON BALLENGER, 3340 PEACHTREE ROAD NE, SUITE 2140, ATLANTA, GA 30326, UNITED STATES | Cyber Liability \| Cyber Liability Dated: 09/15/2022 | $ - |
| Enviva Inc. | XL Insurance America Inc | ATTN: BENTON BALLENGER, 3340 PEACHTREE ROAD NE, SUITE 2140, ATLANTA, GA 30326, UNITED STATES | Builders Risk Coverage \| Builders Risk Dated: 05/19/2023 | $ - |
| Enviva Inc. | XL Insurance America Inc | ATTN: BENTON BALLENGER, 3340 PEACHTREE ROAD NE, SUITE 2140, ATLANTA, GA 30326, UNITED STATES | Commercial Property Coverage Dated: 09/01/2022 | $ - |
| Enviva Inc. | XL Insurance America Inc | ATTN: BENTON BALLENGER, 3340 PEACHTREE ROAD NE, SUITE 2140, ATLANTA, GA 30326, UNITED STATES | Excess Liability Coverage \| Excess Liability Dated: 09/01/2022 | $ - |
| Enviva Inc. | XL Insurance America Inc | ATTN: BENTON BALLENGER, 3340 PEACHTREE ROAD NE, SUITE 2140, ATLANTA, GA 30326, UNITED STATES | Terrorism & Sabotage Property Damage and Time Element Dated: 09/01/2023 | $ - |
| Enviva Inc. | XL Insurance America Inc | ATTN: BENTON BALLENGER, 3340 PEACHTREE ROAD NE, SUITE 2140, ATLANTA, GA 30326, UNITED STATES | Binder of Insurance Dated: 09/01/2023 | $ - |
| Enviva Inc. | XL Professional | 100 CONSTITUTION PLAZA, 17TH FLOOR, HARTFORD, CT 06103, UNITED STATES | Directors & Officers-Primary \| Enviva Inc D&O-Primary Dated: 12/31/2022 | $ - |
| Enviva Inc. | XL Professional | 100 CONSTITUTION PLAZA, 17TH FLOOR, HARTFORD, CT 06103, UNITED STATES | Directors & Officers-Run-Off \| D&O-Run-Off Dated: 09/01/2021 | $ - |
| Enviva Inc. | XL Specialty Insurance Company | 505 EAGLEVIEW BLVD. SUITE 100, DEPT: REGULATORY, EXTON, PA 19341-1120, UNITED STATES | Executive and Corporate Securities Liability Dated: 12/31/2021 | $ - |
| Enviva Inc. | Zurich North America | ATTN JESSICA MELESIO, PO BOX 68549, SCHAUMBURG, IL 60196, UNITED STATES | Builders Risk Coverage \| Builders Risk Dated: 05/19/2023 | $ - |
| Enviva Inc. | Zurich North America | ATTN JESSICA MELESIO, PO BOX 68549, SCHAUMBURG, IL 60196, UNITED STATES | Commercial Crime Policy Declarations Dated: 12/31/2023 | $ - |

**ENVIVA INC., et al.**
**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description | Cure (USD) |
|---|---|---|---|---|
| Enviva Inc. | Zurich North America | ATTN JESSICA MELESIO, PO BOX 68549, SCHAUMBURG, IL 60196, UNITED STATES | Crime - Primary \| ECRI-Crime - Primary Dated: 12/31/2022 | $                    - |
| Enviva Inc. | Zurich North America | ATTN JESSICA MELESIO, PO BOX 68549, SCHAUMBURG, IL 60196, UNITED STATES | Directors & Officers-Run-Off \| Comb Spec Ins Run-OFF Dated: 10/14/2021 | $                    - |
| Enviva Holdings, LP | Zurich North America | ATTN JESSICA MELESIO, PO BOX 68549, SCHAUMBURG, IL 60196, UNITED STATES | Crime Cancellation Endorsement Dated: 09/01/2021 | $                    - |

**Exhibit E**

**Schedule of Rejected Executory Contracts and Unexpired Leases**

This Exhibit E contains the Schedule of Rejected Executory Contracts and Unexpired Leases.

Certain documents or portions thereof contained in this Exhibit E and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan.  The filing of the forms of the documents set forth in this Plan Supplement (including this Exhibit E) shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

**ENVIVA INC., et al.**
**Schedule of Rejected Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description |
|---|---|---|---|
| Enviva, LP | Abundia Global Impact Group LLC | 48 WALL STREET, 11TH FLOOR, NEW YORK, NY 10005, UNITED STATES | CIF Fuel Supply Agreement Dated: 11/01/2021 |
| Enviva Inc. | Abundia Global Impact Group LLC | 48 WALL STREET, 11TH FLOOR, NEW YORK, NY 10005, UNITED STATES | DAP Fuel Supply Agreement Dated: 02/23/2023 |
| Enviva Holdings, LP | Association Resource Group Inc | 7950 JONES BRANCH DR, SUITE 103, MCLEAN, VA 22102, UNITED STATES | Master Service Agreement Dated: 10/18/2019 |
| Enviva Holdings, LP | Association Resource Group Inc | 7950 JONES BRANCH DR, SUITE 103, MCLEAN, VA 22102, UNITED STATES | Statement of Work Dated: 07/27/2022 |
| Enviva Inc. | Association Resource Group Inc | 7950 JONES BRANCH DR, SUITE 103, MCLEAN, VA 22102, UNITED STATES | Support Service Order Form Dated: 09/27/2022 |
| Enviva Holdings, LP | Association Resource Group Inc | 7950 JONES BRANCH DR, SUITE 103, MCLEAN, VA 22102, UNITED STATES | Telecommunications managed services agreement Dated:10/18/2019 |
| Enviva Pellets Waycross, LLC | ATC Alma Telephone Co Inc | PO BOX 2027, 405 W 11TH ST, ALMA, GA 31510, UNITED STATES | Telecom Service Agreement Dated: 01/25/2019 |
| Enviva Pellets Waycross, LLC | ATC Alma Telephone Co Inc | PO BOX 2027, 405 W 11TH ST, ALMA, GA 31510, UNITED STATES | Contract for Broadband Services Dated: 01/23/2019 |
| Enviva Inc. | Atlantech Online Inc | 1010 WAYNE AVE, SUITE 630, SILVER SPRING, MD 20910, UNITED STATES | Master Agreement General Terms and Conditions Dated: 06/21/2019 |
| Enviva Inc. | Baywa AG | C/O MICHAEL D. MUELLER, ESQ., WILLIAMS MULLEN, 200 S. 10TH STREET, SUITE 1600, RICHMOND, VA 23219, UNITED STATES | CIF Biomass Fuel Supply Agreement Dated: 08/02/2022 |
| Enviva Inc. | BVN Thanh Chuong Joint Stock Company | HAMLET 6 THANH HUONG COMMUTE, THANH CHUONG DISTRICT, NGHE AN PROVINCE, VIETNAM | Fuel Supply Agreement Dated: 04/16/2022 |
| Enviva Pellets Waycross, LLC | Canon Solutions America, Inc | 255 W WASHINGTON, ST 600, CHICAGO, IL 60606 | Unified Lease Agreement Dated: 06/03/2019 |
| Enviva Pellets, LLC | Data2Go Wireless | 4171 W HILLSBORO BLVD, STE 3, COCONUT CREEK, FL 33073, UNITED STATES | Wireless Subscription Southampton Agreement Dated: 02/07/2020 |
| Enviva Pellets Greenwood, LLC | Data2Go Wireless | 4171 W HILLSBORO BLVD, STE 3, COCONUT CREEK, FL 33073, UNITED STATES | Wireless Subscription Greenwood Agreement Dated: 04/22/2020 |
| Enviva Holdings, LP | Diligent Corporation | 1385 BROADWAY 19TH FLOOR, NEW YORK, NY 10018, UNITED STATES | Service Agreement Dated: 08/21/2015 |
| Enviva, LP | Dixie Green | C/O EVAN BATES, 1768 WOODBINE DRIVE, BIRMINGHAM, AL 35216, UNITED STATES | Letter Agreement Dated: 06/21/2010 |
| Enviva, LP | Dixie Green | C/O EVAN BATES, 1768 WOODBINE DRIVE, BIRMINGHAM, AL 35216, UNITED STATES | Amended and Restated Wood Pellets Purchase Agreement Dated: 06/21/2010 |
| Enviva Inc. | Duong Linh Production Company Limited | 107/N4/97 BACH DANG STREET, HONG BANG DISTRICT, HAI PHONG CITY, 180000, VIETNAM | Fuel Supply Agreement Dated: 08/12/2022 |
| Enviva Management Company, LLC | Edward Royal Smith | 7272 WISCONSIN AVENUE, SUITE 1800, BETHESDA, MD 20814, UNITED STATES | Sixth Amended and Restated Employment Agreement Dated: 12/01/2021 |
| Enviva Holdings, LP | Enabling Technologies | 10429 PUCCINI LN, ELLICOTT CITY, MD 21042, UNITED STATES | Purchase Agreement Dated: 12/24/2020 |
| Enviva, LP | EZ Recycling LLC | 6263 INGLESIDE DR, WILMINGTON, NC 28409, UNITED STATES | Product Purchase Agreement Dated: 01/31/2022 |
| Enviva Inc. | Faithful and Gould | 200 WESTLAKE PARK BLVD, HOUSTON, TX 77079, UNITED STATES | Professional Services Agreement Dated: 01/20/2023 |
| Enviva Pellets, LLC | Faithful and Gould | 200 WESTLAKE PARK BLVD, HOUSTON, TX 77079, UNITED STATES | Project Management Professional Services Agreement Dated: 08/30/2022 |

**ENVIVA INC., et al.**
**Schedule of Rejected Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description |
|---|---|---|---|
| Enviva Inc. | Fels-Werke Gmbh | GEHEIMRAT-EBERT-STRABE 12, GOSLAR, 38640, GERMANY | Fuel Supply Agreement Dated: 02/28/2023 |
| Enviva Holdings, LP | Financial Search Group | 170 BAYVIEW, PETOSKEY, MI 49770, UNITED STATES | Master Service Recruiting Agreement Dated: 07/29/2021 |
| Enviva Inc. | Harmon Truckin | 717 ORANGE ST, CHIPLEY, FL 32428, UNITED STATES | Timber Master Agreement Dated: 01/01/2023 |
| Enviva Pellets, LLC | Harmon Truckin | 717 ORANGE ST, CHIPLEY, FL 32428, UNITED STATES | Timber Service Contract Dated: 01/01/2023 |
| Enviva Management Company, LLC | John Keppler | 7508 LYNN DRIVE, BETHESDA, MD 20815, UNITED STATES | Separation and General Release Agreement Dated: 11/14/2022 |
| Enviva Management Company, LLC | John Keppler | 7508 LYNN DRIVE, BETHESDA, MD 20815, UNITED STATES | Strategic Advisor Agreement Dated: 11/15/2022 |
| Enviva Inc. | John Keppler | 7508 LYNN DRIVE, BETHESDA, MD 20815, UNITED STATES | Indemnification Agreement Dated: 12/31/2021 |
| Enviva Pellets Bond, LLC | M&W Engineers and Constructors, Inc. | 3405 PASCAGOULA ST, PASCAGOULA, MS 39568, UNITED STATES | Short Form Professional Service Agreement Dated: 12/01/2022 |
| Enviva, LP | Mansfield Power & Gas LLC | 1025 AIRPORT PARKWAY, GAINESVILLE, GA 30501, UNITED STATES | Natural Gas Purchase Agreement Dated: 12/20/2022 |
| Enviva, LP | Mansfield Power & Gas LLC | 1025 AIRPORT PARKWAY, GAINESVILLE, GA 30501, UNITED STATES | Service Contract Dated: 02/02/2023 |
| Enviva Inc. | Michael Andrew Johnson | 6825 NW GRAND BLVD, OKLAHOMA CITY, OK 73116, UNITED STATES | Indemnification Agreement Dated: 12/31/2021 |
| Enviva Management Company, LLC | Michael Andrew Johnson | 6825 NW GRAND BLVD, OKLAHOMA CITY, OK 73116, UNITED STATES | Separation and General Release Agreement Dated: 05/26/2023 |
| Enviva, LP | Net Results Group LLC | PO BOX 73, GLENVIEW, KY 40025, UNITED STATES | Master Services Agreement Dated: 03/05/2020 |
| Enviva Holdings, LP | Nitel Inc | LOCKBOX DEPT 4929, CAROL STREAM, IL 60122, UNITED STATES | Master Service Agreement Dated: 10/31/2021 |
| Enviva, LP | Pacific Basin Handysize Limited, BVI | 31/F ONE ISLAND SOUTH, 2 HEUNG YIP ROAD, HONG KONG, CHINA | Contract of Affreightment Dated: 04/30/2012 |
| Enviva, LP | Pacific Basin Handysize Limited, HK | 31/F ONE ISLAND SOUTH, 2 HEUNG YIP ROAD, HONG KONG, CHINA | Contract of Affreightment Dated: 04/30/2012 |
| Enviva, LP | Sapphire Gas Solutions LLC | URIEL SAENZ, 100 N - I 45 SUITE 650, CONROE, TX 77301, | Equipment Lease Dated: 08/01/2023 |
| Enviva, LP | Sapphire Gas Solutions LLC | URIEL SAENZ, 100 N - I 45 SUITE 650, CONROE, TX 77301, | Service Contract Dated: 08/15/2023 |
| Enviva, LP | Sapphire Gas Solutions LLC | URIEL SAENZ, 100 N - I 45 SUITE 650, CONROE, TX 77301, | Equipment Lease Agreement Dated: 03/01/2024 |
| Enviva Management Company, LLC | Shai Even | 6020 FIELDSTONE DR, DALLAS, TX 75252, UNITED STATES | Separation and General Release Agreement Dated: 08/29/2023 |
| Enviva Inc. | Shai Even | 6020 FIELDSTONE DR, DALLAS, TX 75252, UNITED STATES | Indemnification Agreement Dated: 12/31/2021 |
| Enviva Management Company, LLC | Sonata Software North America Inc | 39300 CIVIC CENTER DR, #270, FREMONT, CA 94538, UNITED STATES | Master Services Agreement Dated: 11/1/2021 |
| Enviva, LP | Starr Indemnity & Liability Company | 399 PARK AVENUE, NEW YORK, NY 10022, UNITED STATES | Confidential Settlement Agreement and Mutual Release Dated: 01/23/2019 |

**ENVIVA INC., et al.**
**Schedule of Rejected Executory Contracts and Unexpired Leases**

| Debtor | Counterparty | Counterparty Address | Contract Description |
|---|---|---|---|
| Enviva Inc. | Starr Indemnity & Liability Company | 399 PARK AVENUE, NEW YORK, NY 10022, UNITED STATES | Non-ownership Liability \| Non-Owned Aviation Dated: 09/01/2023 |
| Enviva Pellets Bond, LLC | Stone County Economic Development Partnership | 115 HATTEN AVE E, WIGGINS, MS 39577, UNITED STATES | Memorandum Of Agreement Re Mississippi Development Infrastructure Program Grant Dated: 03/30/2023 |
| Enviva Pellets Bond, LLC | Stone County Economic Development Partnership | 115 HATTEN AVE E, WIGGINS, MS 39577, UNITED STATES | Memorandum Of Understanding Dated: 03/30/2023 |
| Enviva Pellets Bond, LLC | Stone County Economic Development Partnership | 115 HATTEN AVE E, WIGGINS, MS 39577, UNITED STATES | Parent Guaranty Agreement Dated: 03/22/2023 |
| Enviva Pellets Bond, LLC | Stone County Economic Development Partnership | 115 HATTEN AVE E, WIGGINS, MS 39577, UNITED STATES | Ad Valorem Tax Agreement Dated: 03/30/2023 |
| Enviva Inc. | Teal Sales Inc | 20818 44TH AVE. WEST, STE 201, LYNWOOD, WA 98039, UNITED STATES | Purchase of Equipment and Services: 11/10/2022 |
| Enviva Pellets, LLC | The Lightning Group LLC | 37300 S. HURON RD, NEW BOSTON, MI 48164, UNITED STATES | Master Services Recruiting Agreement Dated: 03/04/2022 |
| Enviva, LP | Thien Hoang Construction & Trading Co Ltd | GROUP 7 BLOCK 1 A, NGUYEN THIEP STREET, PHU PHONG TOWN, 55000, VIETNAM | Fuel Supply Agreement Dated: 11/20/2022 |
| Enviva Management Company, LLC | Thomas Meth | DOUGLAS M. FOLEY, ESQUIRE, KAUFMAN AND CANOLES, P.C., TWO JAMES CENTER, 1021 EAST CARY STREET, SUITE 1400, RICHMOND, VA 23219, UNITED STATES | Bonus Agreement Dated: 11/30/2023 |
| Enviva Inc. | Thomas Meth | DOUGLAS M. FOLEY, ESQUIRE, KAUFMAN AND CANOLES, P.C., TWO JAMES CENTER, 1021 EAST CARY STREET, SUITE 1400, RICHMOND, VA 23219, UNITED STATES | Indemnification Agreement Dated: 12/31/2021 |
| Enviva Inc. | Thomson Reuters | 610 OPPERMAN DRIVE, EAGAN, MN 55123, UNITED STATES | Order Form Dated: 12/01/2021 |
| Enviva, LP | Thrive Operations LLC | 25 FORBES BLVD., SUITE 3, FOXBOROUGH, MA 02035, UNITED STATES | Master Services Agreement Dated: 06/30/2023 |
| Enviva Inc. | Thrive Operations LLC | 25 FORBES BLVD., SUITE 3, FOXBOROUGH, MA 02035, UNITED STATES | Master Services Agreement Dated: 07/28/2023 |
| Enviva Pellets Lucedale, LLC | Turn2 | 3558 KILGORE PARKWAY, BAYTOWN, TX 77523, UNITED STATES | Fire Suppression Installment Agreement |
| Enviva Inc. | US Cloud LC | 12855 FLUSHING MEADOWS DRIVE, ST. LOUIS, MO 63131, UNITED STATES | IT Maintenance And Support Agreement Dated: 06/20/2023 |
| Enviva, LP | Varn Wood Pellets | PO BOX 128, HOBOKEN, GA 31542, UNITED STATES | Fuel Supply Agreement Dated: 01/18/2023 |
| Enviva Inc. | Western Pneumatics LLC | 60 CHASTAIN CENTER BLVD, KENNESAW, GA 30144, UNITED STATES | Service And Equipment Purchase Agreement Dated: 07/23/2023 |
| Enviva Management Company, LLC | William Schmidt | 7272 WISCONSIN AVENUE, SUITE 1800, BETHESDA, MD 20814, UNITED STATES | Seventh Amended and Restated Employment Agreement Dated: 05/01/2023 |
| Enviva Inc. | William Schmidt | 7272 WISCONSIN AVENUE, SUITE 1800, BETHESDA, MD 20814, UNITED STATES | Indemnification Agreement Dated: 12/31/2021 |
| Enviva Holdings, LP | Wolfram Research, Inc | 100 TRADE CENTER DRIVE, CHAMPAIGN, IL 61820, UNITED STATES | Master Services Agreement Dated: 05/14/2020 |
| Enviva Management Company, LLC | Yanina A Kravtsova | 7306 DURBIN TERRACE, BETHESDA, MD 20817, UNITED STATES | Third Amended and Restated Employment Agreement Dated: 06/04/2022 |
| Enviva Pellets, LLC | Zultys Inc | 785 LUCERNE DRIVE, SUNNYVALE, CA 94085, UNITED STATES | Telecom Service Agreement Dated: 07/10/2018 |

**Exhibit F**

**Schedule of Retained Causes of Action**

This Exhibit F contains the Schedule of Retained Causes of Action.

Article IV.P of the Plan provides as follows:

In accordance with section 1123(b)(3) of the Bankruptcy Code, but subject in all respects to Article VIII, the Reorganized Debtors shall retain and may enforce all rights to commence, pursue, litigate, settle or otherwise resolve, as appropriate, any and all Retained Causes of Action (other than Avoidance Actions against the Released Avoidance Action Parties, which shall be released on the Effective Date of the Plan and shall not be Retained Causes of Action) of the Debtors (provided that the Litigation Trust shall receive and retain all of the Debtors' and their Estates' rights to commence, pursue, litigate, settle or otherwise resolve, as appropriate, any and all Excluded Claims), whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Retained Causes of Action, as appropriate, shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue the Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors, and the Litigation Trust may pursue the Excluded Claims, as appropriate, in accordance with the best interests of the Litigation Trust Beneficiaries and as set forth herein. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Retained Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity, except as otherwise expressly provided in the Plan; *provided* that, as of the Effective Date, the Debtors and the Reorganized Debtors shall have no such rights with respect to Excluded Claims in accordance with Article IV.O of the Plan.** Unless any Causes of Action of the Debtors against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including pursuant to Article VIII of the Plan, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication or settlement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.O include any claim or Cause of Action released pursuant to Article VIII of the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity

Exh. F-1

shall vest in the applicable Reorganized Debtor.  The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

## 1.   Causes of Action Related to Contracts and Leases

Except to the extent such Causes of Action are waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Court order, the Debtors preserve for the Reorganized Debtors:  (i) all Causes of Action arising under (A) any executory contract or unexpired lease set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, and (B) any other contract or lease that is retained by the Reorganized Debtors on the Effective Date; and (ii) all Causes of Action against any vendor, supplier of goods or services, or customer of any Debtor for (A) overpayments, back charges, duplicate payments, improper holdbacks, deductions owing or improper deductions taken, deposits, warranties, guarantees, indemnities, recoupment, or setoff, (B) wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations, (C) failure to fully perform or to condition performance on additional requirements under any contract with any Debtor before the assumption or rejection, if applicable, of such contract, (D) payments, deposits, holdbacks, reserves or other amounts, (E) any liens, including mechanics', artisans', materialmens', possessory or statutory liens held by any one or more of the Debtors, (F) counter-claims and defenses related to any contractual obligations, (G) any turnover actions arising under section 542 or 543 of the Bankruptcy Code, and (H) unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property or any business tort claims.  Without limiting the generality of the foregoing, the Debtors preserve for the Reorganized Debtors all of their rights with respect to Causes of Action arising under the contracts and leases identified in Exhibit F-1 (including, for the avoidance of doubt, any Executory Contracts and Unexpired Leases set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases).

## 2.   Causes of Action Related to Insurance Policies

The Debtors preserve for the Reorganized Debtors all rights and Causes of Action, based upon, or related to, in whole or in part, any and all insurance contracts and insurance policies to which any Debtor or any Reorganized Debtor are or were a party or pursuant to which any Debtor or any Reorganized Debtor have any rights whatsoever, whether past, present, or future (including, for the avoidance of doubt, any D&O Liability Insurance Policies), regardless of whether such contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments hereto or thereto, including Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.  Without limiting the generality of the foregoing, the Debtors preserve for the Reorganized Debtors all of their rights with respect to Causes of Action against the Entities identified in Exhibit F-2 attached hereto.

2

### 3. Causes of Action Related to Adversarial Proceedings and Potential Adversarial Proceedings

Except to the extent such Causes of Action are waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Court order, the Debtors preserve for the Reorganized Debtors all Causes of Action against any Entity that is not a Released Party and is party to or that may in future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, regulatory or non-regulatory, including all actual or potential (i) contract and tort actions that may exist or may subsequently arise, (ii) actions relating to environmental and product liability matters, and (iii) actions arising out of, or relating to, the Debtors' intellectual property rights. For the avoidance of doubt, nothing herein shall be read as an admission as to the validity or allowance of any claim against any Debtor, and any and all claims against the Debtors that may be identified herein shall be treated in accordance with the Plan and the Bankruptcy Code. Without limiting the generality of the foregoing, the Debtors also preserve for the Reorganized Debtors all of their rights with respect to Causes of Action against the Entities identified in Exhibit F-3 attached hereto.

### 4. Causes of Action Related to Deposits, Adequate Assurance Postings, and Other Collateral Postings

Except to the extent such Causes of Action are waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Court order, the Debtors preserve for the Reorganized Debtors all Causes of Action against any creditor, lessor, utility, supplier, vendor, landlord, sub-lessee, assignee, or other Entity based upon, in whole or in part, any and all postings of a security deposit, adequate assurance payment, or any other type of deposit, prepayment, or collateral owed by such creditor, lessor, utility, supplier, vendor, landlord, sub-lessee, assignee, or other Entity. Without limiting the generality of the foregoing, the Debtors preserve for the Reorganized Debtors all of their rights with respect to Causes of Action against the Entities identified in Exhibit F-4 attached hereto.

### 5. Causes of Action Related to Taxes

The Debtors preserve for the Reorganized Debtors all Causes of Action based upon, or related to, in whole or in part, any and all tax obligations to which any Debtor or any Reorganized Debtor is or may become a party or pursuant to which any Debtor or any Reorganized Debtor has or may obtain any rights whatsoever, whether past, present, or future, including against or related to all Entities that owe or that may in the future owe money to any Debtor or any Reorganized Debtor in connection with any tax refunds, credits, overpayments, recoupments, or offsets.

### 6. Causes of Action Related to Accounts Receivable and Accounts Payable and other Commercial Causes of Action

Except to the extent such Causes of Action are waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Court order, the Debtors preserve for the Reorganized Debtors all commercial Causes of Action against any Entity arising in the ordinary

3

course of business, such as accounts receivable and accounts payable on account of goods and services being performed.

### 7. Causes of Action Related to Liens

Except to the extent such Causes of Action (a) are waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Court order, or (b) have been released by the Final DIP Order, the Debtors preserve for the Reorganized Debtors all Causes of Action based in whole or in part upon any liens regardless of whether such lien is specifically identified herein.

### 8. Causes of Action Related to Intellectual Property

Except to the extent such Causes of Action are waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Court order, the Debtors preserve for the Reorganized Debtors all Causes of Action based upon, in whole or in part, the Debtors' intellectual property, licensing or licensing agreements, or infringement of intellectual property; *provided* that nothing in the Plan shall impair, enlarge, or in any way alter the equitable and legal rights, obligations, and defenses of any Debtor or any Reorganized Debtor regarding their intellectual property rights, and all rights with respect thereto are expressly retained.

For the avoidance of doubt, as of the Effective Date, the Reorganized Debtors shall have no rights with respect to the Excluded Claims, which shall be transferred to the Litigation Trust as of the Effective Date in accordance with the terms of the Plan and the Litigation Trust Agreement. Subject to the terms of the Plan, the Litigation Trust Agreement, and the authority of the Litigation Trust Board as provided for in the Litigation Trust Agreement and the Plan (including the authority of the Litigation Trust Board with respect to settlement of Excluded Claims), the Litigation Trustee, on behalf of the Litigation Trust, shall have the exclusive right in respect of all Excluded Claims to institute, file, prosecute, enforce, settle, compromise, release, abandon, or withdraw any and all Excluded Claims without any further order of the Court or consent of any other party.

Certain documents or portions thereof contained in this Exhibit F and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan.  The filing of the forms of the documents set forth in this Plan Supplement (including this Exhibit F) shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

**Exhibit F-1**

**Causes of Action Related to Contracts and Leases[1]**

| Non-Debtor Counterparty | Contract |
|---|---|
| Compressed Air Technologies, Inc. | Purchase Order with Enviva Port of Pascagoula, LLC |
| H&M Construction Company, LLC | Construction Services Agreement, dated September 16, 2020, between Enviva Pellets Lucedale, LLC and H&M Construction Company, LLC |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

---

[1]   The Schedule of Assumed Executory Contracts and Unexpired Leases (as defined in the Plan) is hereby incorporated by reference and shall be deemed to be specifically set forth in this Exhibit F-1 of the Schedule of Retained Causes of Action.

**Exhibit F-2**

**Causes of Action Related to Insurance Policies**

| Type of Policy | Insurance Carrier | Insurance Policy Number | Term |
|---|---|---|---|
| Charterers Legal Liability | Steamship Mutual | 154306/1 | 4/15/2024 - 4/15/2025 |
| Charterers Legal Liability | Steamship Mutual | 141403/1 | 4/15/2023 - 4/15/2024 |
| Excess Marine Liability - $20M xs $5M | Endurance American Insurance Company Ascot Insurance Company Navigators Insurance Company | OMX10011201006 / MAXS2410001307-05 / HO24LIA15588301 | 4/15/2024 - 4/15/2025 |
| Excess Marine Liability - $20M xs $5M | Endurance American Insurance Company Ascot Insurance Company Navigators Insurance Company | OMX10011201005 / MAXS2310001307-04 / HO23LIA15588301 | 4/15/2023 - 4/15/2024 |
| Marine Liability / Marine Terminal Operators Liability / Hull / P&I | National Union Fire Ins Co of Pits, PA (AIG) | 14627308 (Marine Liability) 023551550 (Hull/P&I) | 4/15/2024 - 4/15/2025 |
| Marine Liability / Marine Terminal Operators Liability / Hull / P&I | National Union Fire Ins Co of Pits, PA (AIG) | 14627308 (Marine Liability) 023551550 (Hull/P&I) | 4/15/2023 - 4/15/2024 |
| Excess Marine Cargo | Various - Lloyd's London | MACAR2401327 | 4/18/2024 - 4/18/2025 |
| Excess Marine Cargo | Various - Lloyd's London | MACAR2301327 | 4/18/2023 - 4/17/2024 |
| Marine Cargo Transit | National Union Fire Ins Co of Pitts, Pa (AIG) | 023550034 | 4/18/2024 - 4/18/2025 |
| Marine Cargo Transit | National Union Fire Ins Co of Pitts, Pa (AIG) | 023550034 | 4/18/2023 - 4/18/2024 |
| Automobile Liability | Hartford Fire Insurance Co | 61UEJBJ1SRA | 9/1/2024 - 9/1/2025 |
| Automobile Liability | Hartford Fire Insurance Co | 61 UEJWQ0290 | 9/1/2023 - 9/1/2024 |
| Cyber | Indian Harbor Ins Company (XL) | MTP9036997 06 | 9/1/2024 - 9/1/2025 |
| Cyber | Indian Harbor Ins Company (XL) | MTP9036997 05 | 9/1/2023 - 9/1/2024 |
| Excess Cyber - $5M xs $5M | Homeland Insurance Co of New York | 720000409-0003 | 9/1/2024 - 9/1/2025 |
| Excess Cyber - $5M xs $5M | Homeland Insurance Co of New York | 720000409-0002 | 9/1/2023 - 9/1/2024 |
| Excess Liability $5M xs $5M | Homesite Insurance Company of Florida | CXS-038593-00 | 9/1/2024 - 9/1/2025 |
| Excess Liability $10M xs $10M | XL Insurance America, Inc. | US00121187LI24A | 9/1/2024 - 9/1/2025 |
| Excess Liability $15M xs $20M | Westchester Fire Insurance Co. | G71825760 005 | 9/1/2024 - 9/1/2025 |

| Type of Policy | Insurance Carrier | Insurance Policy Number | Term |
|---|---|---|---|
| Excess Liability $15M xs $35M | Great American Assurance Co | EXC 5773084 | 9/1/2024 - 9/1/2025 |
| Excess Liability $15M xs $10M | XL Insurance America, Inc. | US00121187LI23A | 9/1/2023 - 9/1/2024 |
| Excess Liability $25M xs $25M | Westchester Fire Insurance Co. | G71825760 004 | 9/1/2023 - 9/1/2024 |
| Foreign | Hartford Fire Insurance Co | 61 CPE DQ8805 | 9/1/2024 - 9/1/2025 |
| Foreign | Hartford Fire Insurance Co | 61 CPE DQ8805 | 9/1/2023 - 9/1/2024 |
| General Liability | Hartford Fire Insurance Co | 61UEJBJ1T8Z | 9/1/2024 - 9/1/2025 |
| General Liability | Hartford Fire Insurance Co | 61 UEJWQ0289 | 9/1/2023 - 9/1/2024 |
| Property | AXA XL<br>Swiss Re<br>Endurance Specialty<br>Lexington Insurance Co<br>Mutsui<br>Chubb BDA<br>Starr<br>Palm Specialty<br>QBE<br>Fidelis BDA<br>HDI<br>Princeton<br>Sompo BDA<br>Axis<br>Aspen<br>Beazley<br>Alcor BDA<br>Canopius<br>Everest Indemnity<br>StarStone | US00086374PR24A /<br>NAP200284006 /<br>61383729 / EXP7001305 /<br>02343P02 /<br>24SLCFM12221501 /<br>24XSP0786 /<br>24SSLDODD325581 /<br>F24PYDH16334 /<br>B24R0420095M  /<br>PXO124K24 /<br>D35DB8240201 /<br>24ALC757080A /<br>B24R0420094M /<br>PTNAM2411086 /<br>CA3P006959241 /<br>61385297 /<br>CSP0016751P00 | 9/1/2024 - 9/1/2025 |

| Type of Policy | Insurance Carrier | Insurance Policy Number | Term |
|---|---|---|---|
| Property | Swiss Re Corporate Solution<br>Everest Indemnity Insurance<br>Xl Insurance America, Inc.<br>Starr Surplus Lines Ins Co<br>Starstone Specialty Insurance<br>Lloyds Of London<br>Princeton Excess & Surplus Lines<br>Axis Surplus Insurance Company<br>Lexington Insurance Company<br>Arch Specialty Insurance Co<br>Mitsui Sumitomo Ins Co Of America<br>Liberty Specialty Markets Be<br>Hubb Bermuda Insurance Ltd<br>Beazley Insurance Co | NAP 2002840-05 /<br>CA3P006959-231 /<br>US00086374PR23A /<br>23SSLDODD313531 /<br>H70867232CSP /<br>PTNAM2311086 /<br>F23PYDH15294 / 78-A3-XP-0000522-05 /<br>PTNAM2311078 /<br>23SLCFM12138101 /<br>EAF663448-23 /<br>61383720 /<br>23SLCFM12138101 /<br>ESP1015104-01 /<br>PTNAM2311079 /<br>EXP7001305 /<br>LSMAPR405123A /<br>ENVIVA02343P01 /<br>23ALC757080A /<br>W35DB8330101 /<br>23SLCFM12143201 | 9/1/2023 - 9/1/2024 |
| Rolling Stock | Markel American | MKLM3IM0057475 | 9/1/2024 - 9/1/2025 |
| Rolling Stock | Markel American | MKLM3IM0055168 | 9/1/2023 - 9/1/2024 |
| Terrorism | Underwriters at Lloyd's, London | B1526CMCTR2303512 | 9/1/2024 - 9/1/2025 |
| Terrorism | Underwriters at Lloyd's, London | B1526CMCTR2303512 | 9/1/2023 - 9/1/2024 |
| Umbrella Liability $5M | Hartford Casualty Insurance Company | 61RHHBJTGJ | 9/1/2024 - 9/1/2025 |
| Umbrella Liability $10M | Twin City Fire Insurance Co | 61 RHJWQ0291 | 9/1/2023 - 9/1/2024 |
| Workers' Compensation | Hartford Accident & Indemnity Co | 61WEHBJ1T9L | 9/1/2024 - 9/1/2025 |
| Workers' Compensation | Hartford Accident & Indemnity Co | 61 WVWQ02880 | 9/1/2023 - 9/1/2024 |
| Builders Risk - Epes | Zurich North America<br>Allianz Global Risks US Insurance Co.<br>XL Insurance America Inc<br>Starr Surplus Lines Insurance Company<br>R-T Specialty, LLC<br>North American Capacity Ins Co | PBR 7061397 /<br>USE00161823 /<br>US00129447CA23A /<br>SLSTCON11874523 /<br>P087590/001 /<br>EGP100116500 | 5/19/2023 - 11/17/2024 |
| Crime | Zurich American Insurance Co | FID 7592892 01 | 12/31/2023 - 12/31/2024 |
| Employment Practices Liability / Fiduciary | Endurance Assurance Corp | MAP30029960700 | 12/31/2023 - 12/31/2024 |
| Excess D&O 1 | Twin City Fire Ins Co (Hartford) | 61-DA 0413180-22 | 12/31/2023 - 12/31/2024 |
| Excess D&O 2 | AXIS Ins Co | P-001-000729243-02 | 12/31/2023 - 12/31/2024 |

iii

| Type of Policy | Insurance Carrier | Insurance Policy Number | Term |
|---|---|---|---|
| Excess D&O 3 | Allianz Global Risk US Ins Co | USF01018422 | 12/31/2023 - 12/31/2024 |
| Excess D&O A4 | Endurance American Ins Co. (Sompo) | DOX30014659401 | 12/31/2023 - 12/31/2024 |
| Excess D&O A5 | National Union Fire Ins Co of Pitts, Pa. (AIG) | 21460557 | 12/31/2023 - 12/31/2024 |
| Excess D&O A6 | ACE American Ins Co | DOX G71090395 002 | 12/31/2023 - 12/31/2024 |
| Excess D&O IDL | ACE American Ins Co | DOX G71090437 002 | 12/31/2023 - 12/31/2024 |
| Excess D&O IDL | Palomar | CPPLXS23005100 | 12/31/2023 - 12/31/2024 |
| Excess D&O IDL | Starstone Specialty Insurance Company | DNO00084270P00 | 12/31/2023 - 12/31/2024 |
| Primary D&O | XL Specialty Insurance Co | ELU187727-22 | 12/31/2023 - 12/31/2024 |
| Risk Policy | Hiscox Insurance Company Inc. | UKA301217822 | 5/30/2022 - 5/30/2025 |
| Pollution Legal Liability | Nautilus Ins Co | SSP2022821-12 | 9/1/2023 - 9/1/2026 |
| D&O - Run-Off | Zurich American Ins Co | MPL 0083802-06 | 10/14/2021 - 10/14/2027 |
| D&O - Run-Off | XL Specialty Insurance Co | ELU169757-21 | 12/31/2021 - 12/31/2027 |
| D&O - Run-Off | Twin City Fire Ins Co (Hartford) | 61DA028985321 | 12/31/2021 - 12/31/2027 |
| D&O - Run-Off | AXIS Ins Co | P-001-000089547-02 | 12/31/2021 - 12/31/2027 |
| D&O - Run-Off | Allianz Global Risk US Ins Co | USF00083821 | 12-31-2021 - 12-31-2027 |
| D&O - Run-Off | Sompo | DOX30001246002 | 12/31/2021 - 12/31/2027 |
| D&O - Run-Off | National Union Fire Insurance Company of Pittsburgh, Pa. | 01-589-31-28 | 12/31/2021 - 12/31/2027 |
| D&O - Run-Off | ACE American Ins Co | DOX G26815940 007 | 12/31/2021 - 12/31/2027 |
| D&O - Run-Off | ACE American Ins Co | DOX G25603424 005 | 12/31/2021 - 12/31/2027 |
| D&O - Excess - Run-Off | Twin City Fire Insurance Company | 61 DA 0413180-22 | Emergence + 6 years |
| D&O - Excess - Run-Off | AXIS Insurance Company | P-001-000729243-02 | Emergence + 6 years |
| D&O - Excess - Run-Off | Allianz Global Risks US Insurance Company | USF010198422 | Emergence + 6 years |
| D&O - Excess - Run-Off | Endurance American Insurance Company | DOX30014659401 | Emergence + 6 years |
| D&O - Excess - Run-Off | National Union Fire Insurance Company of Pittsburgh, Pa | 02-146-05-57 | Emergence + 6 years |
| D&O - Excess - Run-Off | Great Midwest Insurance Company | HPRO-CX-GM-0000393-00 | Emergence + 6 years |

iv

| Type of Policy | Insurance Carrier | Insurance Policy Number | Term |
|---|---|---|---|
| D&O - Excess - Run-Off | Old Republic Insurance Company | ORPRO 12 104655 | Emergence + 6 years |
| D&O - Excess - Run-Off | Allied World Assurance Company, Ltd. | 0314-1714 | Emergence + 6 years |
| D&O - Excess - Run-Off | Palomar Excess and Surplus Insurance Company | CPPLXS-23-0051-00 | Emergence + 6 years |
| D&O - Excess - Run-Off | Starstone Specialty Insurance Company | DNO00084270P-00 | Emergence + 6 years |
| D&O - Primary - Run-Off | XL Specialty Insurance Company | ELU187727-22 | Emergence + 6 years |

v

**Exhibit F-3**

**Causes of Action Related to Adversarial Proceedings and Potential Adversarial Proceedings**

| Debtor | Non-Debtor Part(ies) / Case Title | Venue / Case No. | Description / Nature of Proceeding |
|---|---|---|---|
| Enviva Pellets, LLC | M/V Astoria, Diamond Crown Shipping Ltd., Ocean Agencies LTD, NorthStandard Limited | North Carolina, not filed yet | M/V Astoria allided with Wilmington shiploader, causing damage |

**Exhibit F-4**

**Causes of Action Related to Deposits, Adequate Assurance Postings, and Other Collateral Postings**

(See Attached.)

| Holder | Obligee | Address | Nature |
|---|---|---|---|
| CSX Transportation Inc | Enviva Pellets Waycross, LLC, Enviva Pellets Greenwood, LLC | 500 WATER ST JACKSONVILLE FL 32202 | Vendor Deposit |
| Conveyor Engineering & Manufacturing | Enviva Pellets, LLC | ATTN TO: GRAIG CONE 1345 76TH AVE SW CEDAR RAPIDS IA 52404 | Vendor Deposit |
| Duragrind Inc | Envvia Pellets Greenwood, LLC, Enviva Pellets, LLC | ATTN TO: JASON RANGEL 2910 W. LE FEVRE RD STERLING IL 61081 | Vendor Deposit |
| Consolidated Mill Supplies LLC | Envvia Pellets Greenwood, LLC, Enviva Pellets, LLC | 4153 BYPASS ROAD,HOMERVILLE,GA,31634 | Vendor Deposit |
| General Iron and Steel Co Inc | Enviva Pellets, LLC | PO BOX 26 ALBERTA VA 23821 | Vendor Deposit |
| GR Mabrey Inc | Enviva Pellets, LLC | PO BOX 326 ROANOKE RAPIDS NC 27870 | Vendor Deposit |
| Trask Instrumentation Inc | Enviva Pellets, LLC | P.O. BOX 219. MARSHVILLE, NC 28103-0219 | Vendor Deposit |
| Jernigan Oil Company Inc | Enviva Pellets, LLC | PO BOX 688 AHOSKIE NC 27910 | Vendor Deposit |
| Campbell Oil Company | Enviva Pellets, LLC | 418 PEANUT RD ELIZABETHTOWN NC 28337 | Vendor Deposit |
| AssetWatch Inc | Enviva Pellets, LLC | 60 COLLEGEVIEW RD WESTERVILLE OH 43081 | Vendor Deposit |
| New Dixie Oil Corporation | Enviva Pellets, LLC | 1501 MARSHALL ST. PO BOX 779 ROANOKE RAPIDS NC 27870 | Vendor Deposit |
| Southeastern Supply LLC | Enviva Pellets, LLC | 85 KIDSPEACE DRIVE BOWDON GA 30108 | Vendor Deposit |
| Mobile Repair Solutions | Enviva Pellets, LLC | 2001 US HIGHWAY 158 OXFORD NC 27565 | Vendor Deposit |

**Utility Adequate Assurance Deposits**

| Holder | Address | Nature |
|---|---|---|
| Duke Energy | 1423 MCNEIL WAY ABERDEEN NC 28315 | Deposit for Utility Provider |
| Mississippi Power | PO BOX 245 BIRMINGHAM AL 35201 | Deposit for Utility Provider |
| Dominion North Carolina Power | 5300 THE WOODS RD KITTY HAWK NC 27949 | Deposit for Utility Provider |
| Georgia Power | 96 ANNEX ATLANTA GA 30396 | Deposit for Utility Provider |
| Dominion Virginia Power | ATTN TO: ED BAINE 120 TREDEGAR STREET RICHMOND VA 23219-4306 | Deposit for Utility Provider |
| Gas South Llc | 3625 CUMBERLAND BLVD SUITE 1500 ATLANTA GA 30339 | Deposit for Utility Provider |
| Enspire Energy Llc | 350 W 22ND ST SUITE 101 NORFOLK VA 23517 | Deposit for Utility Provider |
| Texican Holdings Inc | ONE ALLEN CENTER SUITE 2600 HOUSTON TX 77002 | Deposit for Utility Provider |
| Commissioners Of Public Works | PO BOX 549 GREENWOOD SC 29648 | Deposit for Utility Provider |

ii

| | | |
|---|---|---|
| Sampson County Public Works | PO BOX 580015 CHARLOTTE NC 28258 | Deposit for Utility Provider |
| Piedmont Natural Gas | MARY M. CASKEY, ESQ. COLUMBIA SC 29211-1889 | Deposit for Utility Provider |
| Atmos Energy Corporation | ATTN BANKRUPTCY GROUP PO BOX 650205 DALLAS TX 75265 | Deposit for Utility Provider |
| Teco Peoples Gas | PO BOX 31318 TAMPA FL 33631-3318 | Deposit for Utility Provider |
| Fpl Nw Fl | 700 UNIVERSE BLVD NORTH PALM BEACH FL 33408 | Deposit for Utility Provider |
| Waste Management Of Virginia Inc | 625 CHERRINGTON PKWY MOON TOWNSHIP PA 15108-4314 | Deposit for Utility Provider |
| Waste Management Of Mississippi Inc | 800 CAPITAL ST. SUITE 3000 HOUSTON TX 77002 | Deposit for Utility Provider |
| Waste Management Of Panama City | PO BOX  9001054 LOUISVILLE KY 40290 | Deposit for Utility Provider |

iii

**Exhibit G**

**Identity of the Initial Members of the New Board**

This Exhibit G  discloses the identities of the initial members of the New Board, to the extent known, and other information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code.

Article IV.L of the Plan provides as follows:

> As of the Effective Date, subject to any requirement of Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the terms of the current members of the boards of directors, boards of managers, or other governing bodies of the Debtors shall expire automatically and each person serving as a director or manager of a Debtor shall be removed and shall be deemed to have resigned and cease to have any authority automatically from and after the Effective Date to the extent not expressly included in the list of directors of the New Board, and the New Board of each of the Reorganized Debtors shall be appointed in accordance with the Plan, the New Organizational Documents, and other constituent documents of each Reorganized Debtor.  For the avoidance of doubt, except as otherwise provided in the Plan, the Confirmation Order, the Plan Supplement, or the New Organizational Documents, each Person serving as an officer of a Debtor shall continue to serve in such capacity for such Reorganized Debtor following the Effective Date.

> The size and composition of the New Board shall be determined by the Debtors and the Ad Hoc Group (subject to the consent rights contained in the Restructuring Support Agreement) and shall be set out in the New Organizational Documents or the Stockholders Agreement.  The directors or managers for the other Reorganized Debtors shall be identified and selected by the New Board of Reorganized Enviva Inc. in accordance with the terms of the New Organizational Documents.

> Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in advance of the Confirmation Hearing as part of the Plan Supplement, to the extent known at such time, the identity and affiliations of any Person proposed to serve on the New Board of Reorganized Enviva Inc. or as an officer of any of the Reorganized Debtors.  To the extent any such director, manager, or officer of the Reorganized Debtors is an Insider, the Debtors also will disclose the nature of any compensation to be paid to such director, manager, or officer.  Each such officer and director or manager shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of Reorganized Enviva Inc. and each of the other Reorganized Debtors and applicable laws of the respective Reorganized Debtors' jurisdiction of formation.

The following individual will serve on the New Board of Reorganized Enviva Inc. as of the Effective Date:

| Name | Biography and Affiliations |
|------|----------------------------|
| **Glenn Nunziata** | Mr. Nunziata is a director of the Board of Enviva Inc. and has served as interim Chief Executive Officer since November 2023, after joining Enviva Inc. as Executive Vice President and Chief Financial Officer in August 2023. As interim CEO, Mr. Nunziata oversees all aspects of Enviva's day-to-day operations, with a current focus on strengthening the Company's balance sheet and providing strategic financial leadership to support the company's transformation. Most recently, Mr. Nunziata served as CFO of Smithfield Foods Inc., an $18 billion company that owns and operates processing facilities across the U.S. and works with thousands of farmers and landowners each year managing its diversified supply chain. Prior to his tenure at Smithfield, he held various positions of increasing responsibility at EY over the span of 19 years, most recently as a Partner in Assurance Services. Mr. Nunziata holds a Bachelor of Science and a Masters in Accounting from James Madison University. Mr. Nunziata currently serves as Vice Chairman of the Board of Directors of StoneBridge School and sits on the Board of Advisors for the College of Business at James Madison University. |

In addition, it is anticipated that the following individuals will serve on the New Board of Reorganized Enviva Inc. as of the Effective Date:[1]

- one (1) individual selected by certain funds and/or accounts, or subsidiaries of such funds and/or accounts, managed, advised, or controlled by American Industrial Partners, or a subsidiary or an affiliate thereof ("AIP");

- one (1) individual that is mutually acceptable to certain funds and/or accounts, or subsidiaries of such funds and/or accounts, managed, advised, or controlled by Cyrus Capital Partners, L.P., or a subsidiary or an affiliate thereof ("Cyrus"), and certain funds and/or accounts, or subsidiaries of such funds and/or accounts, managed, advised, or controlled by Keyframe Capital Partners, L.P., or a subsidiary or an affiliate thereof ("Keyframe");

- three (3) individuals selected by the Required 2026 Consenting Noteholders; and

- one (1) director appointed jointly by the members of the Ad Hoc Group other than AIP, Cyrus, and Keyframe, it being understood that such director shall either be an independent

---

[1] To the extent known ahead of the Effective Date, the Debtors will file an amended Plan Supplement with the names and affiliations of these individuals.

2

director or an individual affiliated with an equityholder of the Company that is not AIP, Cyrus, or Keyframe.

Certain documents or portions thereof contained in this Exhibit G and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan. The filing of the forms of the documents set forth in this Plan Supplement (including this Exhibit G) shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

**Exhibit H**

**Restructuring Transactions Exhibit**

This Exhibit H contains the Restructuring Transactions Exhibit.

Certain documents or portions thereof contained in this Exhibit H and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan.  The filing of the forms of the documents set forth in this Plan Supplement (including this Exhibit H) shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

**Restructuring Transactions Exhibit**

This Restructuring Transactions Exhibit sets forth a summary description of certain of the proposed Restructuring Transactions[1] to be effectuated in connection with the *Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1201] (as amended, supplemented or modified from time to time in accordance with its terms, the "Plan"). The Restructuring Transactions remain under discussion among the Debtors and other parties, and all parties reserve all rights, in accordance with the Plan, the Restructuring Support Agreement and the Global Settlement, to modify, amend, supplement, or restate any part of this Restructuring Transactions Exhibit as necessary or appropriate, subject to the consent and approval rights provided in the Plan, the Restructuring Support Agreement and the Global Settlement. The definitive documentation necessary or appropriate to implement the Restructuring Transactions may include, among other things, merger, purchase, assignment, conversion, formation and/or contribution agreements, certificates, or other documentation, as applicable. The Restructuring Transactions shall occur on or as soon as reasonably practicable after the Effective Date in the order set forth below or as otherwise required to effectuate the Plan.

**Step 1**: The following entities shall be merged with and into Enviva Inc., with Enviva Inc. as the sole surviving entity: Enviva Holdings, LP, Enviva Holdings GP, LLC, Enviva GP, LLC, Enviva Pellets, LLC, Enviva Pellets Greenwood, LLC, Enviva Pellets Bond, LLC, Enviva Pellets Amory II, LLC, Enviva Development Finance Company, LLC, Enviva MLP International Holdings, LLC, Enviva Pellets Lucedale, LLC, Enviva Pellets Waycross, LLC, Enviva Port of Pascagoula, LLC, Enviva Partners Finance Corp., Enviva Aircraft Holdings Corp., and Enviva Shipping Holdings, LLC.

**Step 2**: The Debtors shall resolve, reconcile, cancel and/or extinguish, as applicable, any existing balances by and between Enviva Inc. (and/or its affiliates) and Enviva Aircraft Holdings Corp.

**Step 3**: The Debtors shall establish the Litigation Trust and transfer or be deemed to transfer, as applicable, the Litigation Trust Assets to the Litigation Trust in accordance with the Litigation Trust Agreement.

**Step 4**: In accordance with the Plan, each Holder of an Allowed Bond General Unsecured Claim shall receive its Pro Rata share of: (i) to the extent there is a Bond General Unsecured Claims Equity Pool, the Bond General Unsecured Claims Equity Pool; and (ii) if a Holder of a Non-AHG Bond General Unsecured Claim does not timely elect to exercise its Subscription Rights in accordance with the Rights Offering Procedures, such Holder shall be deemed to have elected to receive and shall receive, in lieu of its Pro Rata share of Bond General Unsecured Claims Equity Pool (if any) and Subscription Rights, Cash in an amount equal to 6.622% of the Holder's Allowed Bond General Unsecured Claim.

**Step 5**: In accordance with the Plan, the Debtors shall reinstate the NMTC Claims. The Debtors or Reorganized Debtors shall enter into any amendment to the Prepetition Senior Secured NMTC QLICI Loan Agreement, Prepetition Senior Secured NMTC Source Loan Agreement, or any other applicable definitive document necessary to effectuate such reinstatement, in form and substance

---

[1] Capitalized terms used but not defined herein shall have the definitions set forth in the Plan. In the event of an inconsistency between the Plan and the terms hereof, the terms of the Plan shall control.

acceptable to Debtors or Reorganized Debtors (as applicable) and the applicable other parties to such documents.

**Step 6**: All remaining Intercompany Claims shall be adjusted, Reinstated, compromised, or discharged on the Effective Date in the applicable Debtor's discretion, with the consent of the Majority Consenting 2026 Noteholders.

**Step 7**: Holders of Allowed Claims not otherwise specified herein shall receive the applicable recoveries under the Plan and all Claims shall be discharged in accordance with the Plan. The Debtors or the Reorganized Debtors, as applicable, shall make all other payments required by the Plan.

**Step 8**: Enviva Inc. shall consummate the Rights Offering in an amount equal to (i) $250 million plus (ii) the aggregate principal amount of any DIP Tranche A Claims under the DIP Facility to the extent the Holders of which do not elect to participate in the DIP Tranche A Equity Participation, which certain members of the Ad Hoc Group have agreed to backstop. Concurrently with the consummation of the Rights Offering, in accordance with the Plan, all existing Equity Interests in Enviva Inc. shall be cancelled and extinguished, and Holders of existing Equity Interests in Enviva Inc. shall receive no recovery pursuant to the Plan on account of such Equity Interests.

**Step 9**: Enviva Inc. shall convert from a Delaware corporation to a Delaware limited liability company pursuant to Section 18-214 of the Delaware Limited Liability Company Act (as converted, "Enviva LLC"), and contemporaneous with such conversion, Enviva LLC shall file an Internal Revenue Service Form 8832 electing to be treated as a corporation for U.S. federal income tax purposes effective as of the Effective Date.

**Step 10**: Subject to satisfaction of the conditions precedent set forth in the MGT/Hancock Settlement (or waiver of such conditions precedent in accordance with the terms of the MGT/Hancock Settlement): (a) the Debtors shall effectuate the MGT/Hancock Settlement; and (b) following the effectuation of the MGT/Hancock Settlement, (i) the following entities shall be merged with and into Enviva LLC, with Enviva LLC as the sole surviving entity: Enviva, LP, Enviva Wilmington Holdings, LLC and Enviva Pellets Hamlet, LLC and (ii) all Claims or interests between or among any such entities shall be discharged or extinguished, as applicable, in accordance with the Plan.

*General Authority with Respect to Intercompany Claims and Other Restructuring Transactions Steps*:

At any point following the Effective Date, the Reorganized Debtors may, but will not be required to: (i) merge out of existence, liquidate, dissolve, convert into different entity forms, and/or make tax elections with respect to any other direct or indirect subsidiaries of Enviva Inc. or Enviva LLC, as applicable; (ii) set off, settle, distribute, contribute, cancel, or release without any distribution with respect to intercompany claims; or (iii) transfer assets, rights, obligations, personnel, and similar items among the Debtors or Reorganized Debtors, as applicable, in each case, in furtherance of the transactions contemplated by the Plan and in accordance with the terms and conditions of the New Organization Documents.

**Exhibit I**

**Identity of the Plan Administrator**

This Exhibit I contains the identity of the Plan Administrator.  The Reorganized Debtors will serve as the Plan Administrator as of the Effective Date.

Article VI.B of the Plan provides as follows:

> Distributions under the Plan shall be made by the Plan Administrator.  The Debtors, Reorganized Debtors, and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other Security for the performance of their duties unless otherwise ordered by the Court.  However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash by the Debtors.  To the extent the Plan Administrator is any party other than the Reorganized Debtors, the appointment and removal of the Plan Administrator shall be in the discretion of the Reorganized Debtors.

Article VI.C of the Plan provides as follows:

> The Plan Administrator shall be empowered to: (1) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (2) make all distributions contemplated hereby; (3) oversee and make distributions from the Disputed Claims Reserve; (4) employ professionals to represent it with respect to its responsibilities; and (5) exercise such other powers as may be vested in the Plan Administrator by order of the Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof.

> Except as otherwise ordered by the Court, the amount of any reasonable fees and expenses (including in respect of tax obligations paid or payable by the Plan Administrator) incurred by the Plan Administrator on or after the Effective Date, and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Plan Administrator, in each case directly related to distributions under the Plan and its responsibilities hereunder, shall be subject to agreement between the Plan Administrator and the Reorganized Debtors (in their discretion), and the Reorganized Debtors are authorized to pay such fees and expenses in Cash in the ordinary course of business.  In the event that the Reorganized Debtors and a Plan Administrator are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Court.

Certain documents or portions thereof contained in this Exhibit I and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto.  The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and

conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan. The filing of the forms of the documents set forth in this Plan Supplement (including this Exhibit I) shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

**Exhibit J**

**Litigation Trust Agreement**

This Exhibit J contains the Litigation Trust Agreement.

Certain documents or portions thereof contained in this Exhibit J and the Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan. The filing of the forms of the documents set forth in this Plan Supplement (including this Exhibit J) shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

## LITIGATION TRUST AGREEMENT[1]

This Litigation Trust Agreement (as it may be amended, modified, supplemented or restated from time to time, this "**Agreement**") dated as of [●], 2024 is made and entered into by and among (a) Enviva Inc. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**" and upon emergence from bankruptcy, the "**Reorganized Debtors**"), and (b) [●] (together with any successor trustee appointed pursuant to the terms hereof, the "**Litigation Trustee**"). This Agreement creates and establishes the Litigation Trust (the "**Litigation Trust**") referenced herein in order to facilitate the implementation of *Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and its Debtor Affiliates* [ECF No. 1150] (as may be amended, supplemented or otherwise modified from time to time in accordance with the terms and provisions thereof, the "**Plan**").[2] Each Debtor and the Litigation Trustee are referred to herein individually as a "**Party**" and, collectively, as the "**Parties**."

### RECITALS

WHEREAS, on March 12, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. Sec. 101, *et seq.* (as amended) (the "**Bankruptcy Code**") in the Bankruptcy Court for the Eastern District of Virginia (the "**Bankruptcy Court**");

WHEREAS, on March 24, 2024, the United States Trustee for the Eastern District of Virginia (the "**U.S. Trustee**") appointed the official committee of unsecured creditors in the Cases pursuant to section 1102 of the Bankruptcy Code (as reconstituted on May 23, 2024 and may be further reconstituted from time to time, the "**Committee**");

WHEREAS, on [●], 2024, the Bankruptcy Court entered an order confirming the Plan [ECF No. ●] (the "**Confirmation Order**");

WHEREAS, the Plan provides, among other things, as of the effective date of the Plan (the "**Effective Date**") for (a) the creation and establishment of the Litigation Trust for the benefit of Holders of (x) Allowed Bond General Unsecured Claims (such Holders, the "**Class A Litigation Trust Beneficiaries**") and (y) Allowed Non-Bond General Unsecured Claims (such Holders, the "**Class B Litigation Trust Beneficiaries**" and, together with the Class A Litigation Trust Beneficiaries, the "**Litigation Trust Beneficiaries**"), (b) the issuance of beneficial interests in the Litigation Trust to (A) the Class A Litigation Trust Beneficiaries, which beneficial interests shall

---

[1] This document remains subject to continuing negotiations among the Debtors, the Ad Hoc Group, the Committee, and the RWE Committee with respect thereto. The respective rights of the Debtors and all parties are expressly reserved, subject to the terms and conditions (including for the avoidance of doubt, any consent or approval rights) set forth in the Plan, the Restructuring Support Agreement, the Global Settlement and other applicable documents, and rights are further reserved to amend, revise or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan. The filing of this document shall not be deemed as acceptance of such document by any party pursuant to its applicable consent rights under the Restructuring Support Agreement, the Global Settlement or otherwise, or act as a waiver of any such rights.

[2] For all purposes of this Agreement, references to the Plan shall mean the version of the Plan approved and confirmed through the Confirmation Order that is entered by the Bankruptcy Court.

entitle the Class A Litigation Trust Beneficiaries to their pro rata share of 89.91% of the net proceeds of the Litigation Trust Assets (such interests, collectively, the "**Class A Litigation Trust Interests**") and (B) the Class B Litigation Trust Beneficiaries, which beneficial interests shall entitle the Class B Litigation Trust Beneficiaries to their pro rata share of 10.09% of the net proceeds of the Litigation Trust Assets (such interests, collectively, the "**Class B Litigation Trust Interests**" and, together with the Class A Litigation Trust Interests, the "**Litigation Trust Interests**"), (c) the automatic transfer or assignment to the Litigation Trust of (i) cash in an amount equal to $1 million to fund the administration of the Litigation Trust (the "**Initial Litigation Trust Funding**"), (ii) the Excluded Claims, and (iii) the proceeds of the Excluded Claims (collectively, the "**Litigation Trust Assets**"), and (d) the prosecution, settlement and/or monetization of the Excluded Claims by the Litigation Trustee and the distribution of the proceeds therefrom to the Litigation Trust Beneficiaries in accordance with the Plan, the Confirmation Order and this Agreement; and

WHEREAS, except to the extent otherwise provided in this Agreement with respect to the Disputed Claims Reserve (as defined herein), the Litigation Trust is established pursuant to the Plan, the Confirmation Order, and this Agreement as a "liquidating trust" pursuant to the Internal Revenue Code of 1986, as amended (the "**Tax Code**") and the regulations promulgated thereunder ("**Treasury Regulations**"), including Treasury Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, for the sole purpose of distributing or liquidating the Litigation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust;

WHEREAS, the Litigation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes pursuant to sections 671–677 of the Tax Code, with the Litigation Trust Beneficiaries (except to the extent otherwise provided in this Agreement with respect to the Disputed Claims Reserve) treated as the grantors and owners of the Litigation Trust for U.S. federal income tax purposes.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Litigation Trustee agree as follows:

### Declaration of Trust

The Debtors and the Litigation Trustee enter into this Agreement to effectuate the distribution of all Litigation Trust Assets to the Litigation Trust Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Article IV.O.2 of the Plan, [paragraph [●] of the Confirmation Order] and Section 2.04 of this Agreement, all right, title and interest in, under and to the Litigation Trust Assets shall be absolutely and irrevocably assigned to the Litigation Trust and to its successors and assigns in trust;

TO HAVE AND TO HOLD unto the Litigation Trustee and its successors and assigns in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Litigation Trust Assets are to be held by the Litigation Trust and applied on behalf of the Litigation Trust by the Litigation Trustee on the terms and conditions set forth herein and in the Plan and Confirmation Order, solely for the benefit of the Litigation Trust Beneficiaries, and for no other party.

**ARTICLE I**
**Recitals, Definitions, and Interpretations**

**Section 1.01   Recitals**. The Recitals are incorporated into, and made terms of, this Agreement.

**Section 1.02   Plan Definitions**. All capitalized terms used in this Agreement but not defined herein shall have the meanings set forth in the Plan.

**Section 1.03   Interpretation, Headings**. In this Agreement, except to the extent the context otherwise requires, (a) a reference to any Section, Article, subsection, clause, Schedule, Exhibit, preamble or recital, is to that such Section, Article, subsection, clause, Schedule, Exhibit, preamble or recital under this Agreement, (b) the words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or article of this Agreement, (c) references to any document or agreement, including this Agreement, shall be deemed to include references to such document or agreement as amended, supplemented, replaced, or restated from time to time in accordance with its terms and subject to compliance with any requirements set forth therein, (d) references to any law, statute, rule, regulation, or form (including in the definition thereof) shall be deemed to include references to such statute, rule, regulation, or form as amended, modified, supplemented or replaced from time to time (and, in the case of any statute, any rules and regulations promulgated under such statute), and all references to any section of any statute, rule, regulation, or form shall be deemed to include any successor to such section, (e) references to any Party hereto shall include its successors and permitted assigns, (f) wherever the word "include," "includes" or "including" is used herein, it shall be deemed to be followed by the words "without limitation," and any list of examples following such term shall in no way restrict or limit the generality of the word or provision with respect to which such examples are provided, (g) the words "shall" and "will" are used interchangeably throughout this Agreement, and the use of either connotes a mandatory requirement, (h) the word "or" is not meant to be exclusive, and shall be interpreted as "and/or", (i) references to "day" or "days" are references to calendar days, (j) the terms "Dollars" and "$" mean United States Dollars, (k) whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine and (l) references to any time periods herein that are initiated by the receipt of a notice shall be deemed not to include the date such notice is received in the calculation of such time period. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

**Section 1.04   Conflict Among Documents**. In the event of any inconsistency between the Plan (including Article IV thereof) and this Agreement, this Agreement shall control and take precedence.  In the event of any inconsistency between the Confirmation Order, this Agreement and the Plan, the Confirmation Order shall control and take precedence.  This Agreement shall not

3

be construed to impair or limit in any way the rights of any Person under the Plan or change, modify, or otherwise affect the Global Settlement.

## ARTICLE II
## Establishment of Trust

**Section 2.01   Effectiveness of Agreement; Name of Trust.** This Agreement shall become effective on the date that it is executed by the Litigation Trustee and the Debtors. The litigation trust established by this Agreement shall be officially known as, and may conduct its affairs under the name of, the "**Enviva Litigation Trust**" and, is herein referred to as, the "**Litigation Trust**".

**Section 2.02   Purpose of Trust.** The Debtors and the Litigation Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Litigation Trust for the primary purpose of prosecuting, settling, collecting, holding, administering and liquidating and/or monetizing the Excluded Claims and the distribution of the proceeds recovered therefrom to the Litigation Trust Beneficiaries, in accordance with the Plan, the Confirmation Order and this Agreement for the benefit of Litigation Trust Beneficiaries, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Trust set forth in this Agreement and the Plan. To the extent that a Litigation Trust Board (as defined herein) is established pursuant to this Agreement, the activities and performance of the Litigation Trust and the Litigation Trustee shall be overseen, reviewed and guided by the Litigation Trust Board, as described in Article III and Article IV below.

**Section 2.03   Initial Litigation Trust Funding.**  The Litigation Trust shall be funded with $1 million by the Debtors on the Effective Date. For the avoidance of doubt, the funding in full by the Debtors of the Litigation Trust is an explicit condition precedent to the effectiveness of the Plan.

**Section 2.04   Transfer of Litigation Trust Assets.**

(a)      Conveyance of and Title to Litigation Trust Assets; Privileges.  Pursuant to the Plan and the Confirmation Order, as of the Effective Date, the Debtors, Reorganized Debtors and any party under their control (including the Special Committee) shall irrevocably transfer, assign and deliver, and shall be deemed to have transferred, assigned and delivered, to the Litigation Trust, without recourse, all of their respective rights, title and interest in the Litigation Trust Assets, free and clear of all liens, claims, encumbrances and interests (legal, equitable, beneficial or otherwise), contractually imposed restrictions, and other interests, for the benefit of the Litigation Trust Beneficiaries which shall vest in the Litigation Trust, in trust, and, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Litigation Trust Beneficiaries, *provided* that, any attorney-client privilege, work-product protection, accountant-client privilege, evidentiary privilege, or other privilege, protection, or immunity of the Debtors and/or the Reorganized Debtors (including, for the avoidance of doubt, the Special Committee) that attaches to any document, work product, or other information shared with the Litigation Trust (collectively, the "**Privileges**") shall be extended to and shared with the Litigation

4

Trust, without waiver, as of the Effective Date. For the avoidance of doubt, (a) the Debtors and the Reorganized Debtors, as applicable, on the one hand, and the Litigation Trust, on the other hand, shall share ownership of all applicable Privileges and shall reasonably consult with one another with respect to the potential waiver of any privilege in accordance with the terms of this Agreement; (b) the Debtors or Reorganized Debtors, as applicable, alone shall have the consent rights over disclosure to third parties of any document, work product, or other information subject to any Privileges (subject to the Litigation Trust's right in the event of a dispute to seek an order from the Bankruptcy Court permitting the Liquidation Trust's disclosure of material relating to the Excluded Claims subject to the Privileges as set forth below); and (c) the Reorganized Debtors and Debtors, as applicable, on the one hand, and the Litigation Trust, on the other hand, shall protect the Privileges and reasonably consult with one another in advance of taking any action that may result in or with respect to the potential waiver of any privilege in accordance with the terms of this Agreement. If the Litigation Trust, on the one hand, or the Reorganized Debtors, on the other, object to an action proposed to be taken by the other with regard to the material subject to the Privileges (or a disclosure that would result in a waiver), the Parties shall be permitted to raise the issue with the Bankruptcy Court on no less than fourteen (14) days' written notice to the other Parties or such shorter notice as approved by the Bankruptcy Court. The Party providing advance written notice of a proposed action may take such action unless the Bankruptcy Court determines that (a) such action would cause material adverse harm to the other Party, or (b) the harm to the objecting party would substantially outweigh the benefit to the Party seeking to take the proposed action. The objecting Party shall bear the burden of proof. Each of the Parties shall bear its own costs and expenses, including attorneys' fees, incurred in connection with such dispute. Notwithstanding anything to the contrary contained herein, nothing in this Agreement or in the sharing of documents, work product, and other information contemplated hereunder shall operate as a waiver of any privileges held and retained by the Debtors and Reorganized Debtors (including the Special Committee), including, but not limited to, any privileges that are being shared with the Litigation Trust hereunder; any privileges over documents, work product, or other information concerning the Excluded Claims or any other claims or subject; and any privileges in favor of the Special Committee in addition to the Debtors and Reorganized Debtors. In no event shall any part of the Litigation Trust Assets revert to or be distributed to the Reorganized Debtors; *provided*, *however*, the foregoing shall not prohibit the Litigation Trust, pursuant to the terms and conditions of this Agreement, from making distributions to any Litigation Trust Beneficiary that is or becomes a successor in interest to any one or more of the Reorganized Debtors. Other than as set forth in this Agreement, under no circumstances shall the Debtors or the Reorganized Debtors be required to contribute any additional assets or funds to the Litigation Trust or otherwise be obligated to bear any costs, expenses or liabilities in connection with, or to support or further, the Litigation Trust. Notwithstanding anything to the contrary contained herein, in no event shall any attorney-client privilege, work-product protection, accountant-client privilege, evidentiary privilege, or other privilege, protection, or immunity privilege held by the Debtors or Reorganized Debtors, other than the Privileges, transfer, vest, or be shared by the Litigation Trust, subject only to Section 2.04(b) below. Consistent with the foregoing, the Confirmation Order shall provide that pursuant to Rule 502(d) of the Federal Rules of Evidence, the Debtors or the Reorganization Debtors (including, for the avoidance

of doubt, the Special Committee) shall not be deemed to have waived any privilege (including any attorney-client privilege, work-product protection, accountant-client privilege, evidentiary privilege, or other privilege, protection, or immunity) through, or as a result of, directly or indirectly, sharing any documents, information, or work product with the Litigation Trust.

(b)     Privileged Materials.  The Litigation Trust may request, upon reasonable advance written notice, that the Debtors, the Reorganized Debtors and any party under their control (including the Special Committee) provide specific materials related to the Excluded Claims that are protected by any attorney-client privilege, work-product protection, accountant-client privilege, evidentiary privilege, or other privilege, protection, or immunity in favor of the Debtors or the Reorganized Debtors ("**Privileged Materials**"), only if, in the reasonable judgment of the Litigation Trustee, the Litigation Trustee has a substantial need for those materials to pursue the Excluded Claims.  Any dispute over the provision of Privileged Materials shall be governed by the procedure set forth in Section 2.04(g).  Any Privileged Materials provided by the Debtors or the Reorganized Debtors shall then be treated as Excluded Claims Materials, including for purposes of Section 2.04(d), and shall be subject to the provisions of Section 2.04(a).  The Reorganized Debtors shall pay all fees, expenses, and other costs associated with the Reorganized Debtors or the Debtors (including the Special Committee) providing any Privileged Materials (including the fees, expenses, and other costs of their advisors).

(c)     Books and Records.  At the reasonable request and upon reasonable advance written notice of the Litigation Trustee (which may be upon the direction of the Litigation Trust Board, if any), the Debtors, the Reorganized Debtors and any party under their control (including the Special Committee) shall, at the cost and expense of the Reorganized Debtors: (i) execute and/or deliver Excluded Claims Materials (including those maintained in electronic format and original documents as may be needed); *provided* that neither the Debtors, the Reorganized Debtors nor any party under their control shall have any obligation to share information in violation of applicable law; and (ii) take, or cause to be taken, any further actions; in each case of (i) and (ii), as reasonably necessary to evidence or effectuate the transfer of the Litigation Trust Assets to the Litigation Trust. Notwithstanding anything to the contrary herein, nothing contained in this Agreement shall restrict the Debtors' or the Reorganized Debtors' ability to use any instruments, documents, books, records, and work product of the Debtors or the Reorganized Debtors.

(d)     Transfer of Excluded Claims Materials.  Following the Effective Date, the Reorganized Debtors shall, at their cost and expense, promptly transfer or make readily available to the Litigation Trust and its advisors all work product in respect of the Excluded Claims (as discussed between the Debtors and the Committee prior to the execution of this Agreement) and all documents that have been produced to any party in connection with the Chapter 11 Cases related to the Excluded Claims (the "Excluded Claims Materials") in the possession of the Debtors, the Reorganized Debtors or any party under their control (including the Special Committee); *provided* that neither the Reorganized Debtors nor any party under their control shall have any obligation to share information in violation of applicable law; *provided further,* that the Reorganized Debtors will work in good faith and take commercially reasonable steps to share information with the Litigation Trust and its

6

advisors in a manner that complies with applicable law and in accordance with Section 2.04 of this Agreement, including providing additional documents reasonably qualifying as Excluded Claims Materials at the identification and reasonable request of the Litigation Trustee. Any such Excluded Claims Materials, and any other documents, information, or work product provided by the Debtors or the Reorganized Debtors in connection with this Agreement shall be used solely in connection with the Litigation Trustee's efforts to investigate, prosecute, compromise, settle and/or recover proceeds from the Excluded Claims and any related trial court and appellate proceedings and not for any other purpose, including without limitation for any business or competitive function, and shall continue to be governed by the terms of the Stipulated Protective Order [Docket No. 949], in this case and all other agreements and understandings concerning the production of these materials, with which the Litigation Trust will comply. The Reorganized Debtors shall preserve all Excluded Claims Materials until the earlier of (x) such time as the Litigation Trustee notifies the Reorganized Debtors in writing that such records are no longer required to be preserved or (y) the Termination Date (the "Preservation Termination Date"). Following the occurrence of the Preservation Termination Date, upon the Reorganized Debtor's written request (a "Document Return/Destruction Request"), the Litigation Trust, in its discretion, shall either return to the Reorganized Debtors or destroy all copies of the Excluded Claims Materials in its possession, custody, or control including copies retained by the Litigation Trustee, the Litigation Trust Board, if any, and the Litigation Trust's professionals; *provided*, that the Litigation Trust and its professionals may retain copies of the Excluded Claims Materials (i) that are stored on their respective IT backup and disaster recovery systems until the ordinary course deletion thereof or (ii) as required by law or the Litigation Trust's or its professionals' respective document retention policies; *provided, further*, that any professional of the Litigation Trust may retain work product that may contain or reflect Excluded Claims Materials if prepared in connection with any representation of or engagement by the Litigation Trust. Within thirty (30) days of the Litigation Trust's receipt of a Document Return/Destruction Request, the Litigation Trustee shall certify in writing to the Reorganized Debtors that the Litigation Trust has complied with the obligations in the foregoing sentence.

(e)     <u>Cooperation of the Reorganized Debtors</u>. The Reorganized Debtors and any party under the control of the Reorganized Debtors (including the Special Committee) shall use commercially reasonable efforts to take, or cause to be taken, all such further actions as the Litigation Trustee or, if any, the Litigation Trust Board may reasonably request in effectuating the transition from the Debtors or the Reorganized Debtors, as applicable, to the Litigation Trust, of the administration of the Litigation Trust Assets (including, with respect to reasonably cooperating with the Litigation Trustee and, if any, the Litigation Trust Board, for reasonable requests for telephone conferences, interviews, and appearances of current directors, officers, employees, agents and professionals as witnesses (by affidavits, at depositions, and at hearings/trials, as necessary) and by providing the last known address of any such individual, to the extent reflected in the books and records of the Debtors or the Reorganized Debtors and to the extent permissible under applicable law), in each case in order to permit the Litigation Trustee to investigate, prosecute, protect and preserve all Excluded Claims. The Reorganized Debtors also shall arrange for the Litigation Trustee to receive an updated claims register of General Unsecured Claims from the Noticing and Claims Agent within thirty (30) days after the

Effective Date and shall provide the Litigation Trustee with periodic updates of the foregoing upon reasonable request of the Litigation Trustee (and shall provide the same updates to the Litigation Trust Board, if any, if and as reasonably requested by the Litigation Trust Board).  Upon the Reorganized Debtors payment in full in cash of the Claim of any Holder of a Non-Bond General Unsecured Claim on account of its Pro Rata share of distribution under Article III.B.6.(b)(i) of the Plan on account of its Claim on or after the Effective Date from the GUC Distribution Pool Allocation in accordance with the Plan, the Reorganized Debtors shall inform the Litigation Trustee of such payment as soon as reasonably practicable thereafter and shall provide the Litigation Trustee with an updated schedule of holders of Class B Litigation Trust Interests, which updated schedule shall reflect the cancelation of such Class B Litigation Trust Interest previously held by such Holder.  For the avoidance of doubt, the Debtors or the Reorganized Debtors shall have no obligation to provide any documents, books, or records to the Litigation Trust other than providing the Excluded Claims Materials and complying with the obligations set forth in Section 2.04 of this Agreement.

(f)      Access to Professionals.  To the extent reasonably requested by the Litigation Trustee or the Litigation Trust Board (as applicable), the Debtors, Reorganized Debtors and any party under their control (including the Special Committee) shall use commercially reasonable efforts, at no cost to the Litigation Trust or Litigation Trustee, to cause the professionals retained by the Debtors and Reorganized Debtors during or prior to the Chapter 11 Cases to, subject to any applicable professional rules of responsibility or any non-transferred privileges, use commercially reasonable efforts to cooperate with the Litigation Trust in the investigation and prosecution of the Litigation Claims, including, without limitation, by providing reasonable access to those attorneys, accountants and other professionals with knowledge of matters relevant to the Excluded Claims.  Without limiting the other provisions of Section 2 of this Agreement, no professional that cooperates as provided herein shall be required to prepare new work product without reimbursement by the Litigation Trust for any reasonable and documented fees and out of pocket expenses incurred in connection therewith.

(g)      Disputes Over Information Other than Excluded Claims Materials.  The Litigation Trustee may request documents, books, and records from the Reorganized Debtors or the Debtors other than the Excluded Claims Materials; *provided that* the Litigation Trust must specify in writing why such documents, books, or records are necessary for the Litigation Trust to effectuate its purpose set forth in Section 2.02 of this Agreement; and *provided further that* any request for materials protected by any applicable privilege shall be governed by Section 2.04(b).  If the Reorganized Debtors and Litigation Trust cannot reach agreement with respect to providing such additional information, the Litigation Trustee shall notify the Reorganized Debtors of such dispute in writing.  If the Parties are unable to agree, the Litigation Trust is entitled to submit the dispute to the Bankruptcy Court on no less than fourteen (14) days' written notice to the other Parties, or such shorter period as approved by the Bankruptcy Court, for a determination of whether the requested information, documents, books, and records are necessary to the Litigation Trust effectuating its purpose set forth in Section 2.02 of this Agreement.  Until such time as the matter is resolved by the Bankruptcy Court, the Reorganized Debtors may continue to withhold any such Excluded Claims Materials pending the outcome of such dispute.  The

8

Reorganized Debtors shall pay all fees, expenses, and other costs associated with the Reorganized Debtors or the Debtors providing such materials (including the fees, expenses, and other costs of their advisors).

(h)     Capacity and Nature of Trust. Notwithstanding anything herein or any state or federal law to the contrary, the Litigation Trust itself shall have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Litigation Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name. The Litigation Trust is irrevocable but subject to amendment and waiver as provided in this Agreement. The Litigation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, limited liability partnership, joint venture, corporation, limited liability company, joint stock company or association, nor shall the Litigation Trustee, the Litigation Trust Board, if any, the Litigation Trust Beneficiaries or any Litigation Trust Beneficiary, for any purpose be, or be deemed to be or treated in any way whatsoever to be liable or responsible hereunder as partners or joint venturers. The relationship of the Litigation Trust Beneficiaries, on the one hand, to the Litigation Trust, the Litigation Trust Board, if any, and the Litigation Trustee, on the other hand, shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement, the Plan, and the Confirmation Order.

(i)     No Retention of Excess Cash. Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Litigation Trust or the Litigation Trustee retain cash in excess of a reasonable amount to meet claims, expenses, and contingent liabilities, or to maintain the value of the Litigation Trust Assets during liquidation other than reserves established pursuant to Article III or Section 5.01(b) of this Agreement, and shall distribute or pay all amounts not required to be retained for such purposes to the Litigation Trust Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

(j)     Acceptance by the Litigation Trustee. The Litigation Trustee accepts its appointment as Litigation Trustee of the Litigation Trust.

(k)     Limitations. To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the applicable Estate, and the Litigation Trust, acting by and through the Litigation Trustee and the Litigation Trust Board, if any, shall be deemed to have been designated as a representative of the applicable Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of such Estate subject to the terms of this Agreement, the Plan, and the Confirmation Order. Notwithstanding the foregoing, the proceeds of any such assets retained by the applicable Estate on behalf and for the benefit of the Litigation Trust shall be allocated or transferred to the Litigation Trust pursuant to the Plan as if such

9

transfer had not been restricted under applicable non-bankruptcy law.   The Litigation Trustee may, with the advice and consent of the Litigation Trust Board, if any, commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any such assets retained by the Debtors pursuant to the Plan and Confirmation Order.

(l)      Section 1146. The transfer of the Litigation Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to and to the fullest extent permitted under section 1146(a) of the Bankruptcy Code.

## ARTICLE III
## Trust Administration

**Section 3.01   Rights, Powers, and Privileges of the Litigation Trustee Generally**. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Litigation Trust Assets are transferred to the Litigation Trust, the Litigation Trustee on behalf of the Litigation Trust may control and exercise authority over the Litigation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Litigation Trust; *provided,* that the foregoing shall be subject to the authority of the Litigation Trust Board to the extent set forth herein. In administering the Litigation Trust Assets, the Litigation Trustee shall endeavor not to unduly prolong the Litigation Trust's duration, with due regard that undue haste in the administration of the Litigation Trust Assets may fail to maximize value for the Litigation Trust Beneficiaries and otherwise be imprudent and not in the best interests of the Litigation Trust Beneficiaries. The Litigation Trustee shall not act in a manner inconsistent with its duties and obligations under the Plan, the Confirmation Order or this Agreement.

**Section 3.02   Power to Contract**. In furtherance of the purpose of the Litigation Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order or this Agreement, the Litigation Trustee shall have the right and power on behalf of the Litigation Trust, and also may cause the Litigation Trust, to enter into any covenants or agreements binding the Litigation Trust and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Litigation Trustee to be consistent with and advisable in furthering the purpose of the Litigation Trust; *provided*, that the foregoing shall be subject to, as applicable, the advice, oversight and/or authority of the Litigation Trust Board to the extent set forth herein.

**Section 3.03   Ultimate Right to Act Based on Advice of Counsel or Other Professionals**. Nothing in this Agreement shall be deemed to prevent the Litigation Trustee from taking or refraining to take any action on behalf of the Litigation Trust that, subject to the authority of the Litigation Trust Board as set forth herein, based upon the advice of counsel or other professionals, the Litigation Trustee determines in good faith that it is obligated to take or to refrain from taking in the performance of any duty that the Litigation Trustee may owe the Litigation Trust Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

**Section 3.04   Powers of the Litigation Trustee**. Without limiting the generality of Sections 3.01 and 3.02, and subject to, and without limiting, the authority of the Litigation Trust

10

Board to the extent set forth in Section 4.02 of this Agreement, in addition to any powers granted in the Plan, the Litigation Trustee shall have the power to take the following actions on behalf of the Litigation Trust and any powers reasonably incidental thereto that the Litigation Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Litigation Trust, unless otherwise specifically limited or restricted by the Plan, the Confirmation Order, or this Agreement:

      (a)     maintain and administer bank accounts on behalf of or in the name of the Litigation Trust, which shall be segregated to the extent appropriate in accordance with the Plan and this Agreement;

      (b)     solely in its capacity as the Litigation Trustee and on behalf of the Litigation Trust, hold legal and equitable title to any and all Litigation Trust Assets and to any and all rights of the Litigation Trust Beneficiaries in or arising from the Litigation Trust Assets;

      (c)     with the advice of the Litigation Trust Board, if any, manage, liquidate, supervise, prosecute, and protect, as applicable, the Excluded Claims and any other Litigation Trust Assets, including by the incurrence of any litigation funding or financing by the Litigation Trust;

      (d)     with reasonable notice to, and the advice of, the Litigation Trust Board, if any, pursue, prosecute, enforce, compromise, settle, release, abandon, dismiss or otherwise resolve the Excluded Claims and any other Causes of Action assigned or otherwise transferred to the Litigation Trust;

      (e)     calculate, authorize, and make all distributions to the Litigation Trust Beneficiaries as provided for in, or contemplated by, the Plan and this Agreement;

      (f)     with reasonable notice to, and the advice of, the Litigation Trust Board, if any, commence any or all proceedings with respect to the Excluded Claims and any Causes of Action assigned or otherwise transferred to the Litigation Trust that may be or could have been commenced, and take all actions that may be or could have been taken, by any officer, director, shareholder or other party acting in the name of the Debtors or their Estates with like effect as if duly authorized, exercised and taken by unanimous action of such officers, directors and shareholders or other party;

      (g)     with reasonable notice to, and the advice of, the Litigation Trust Board, if any, engage in, intervene in, join, compromise, adjust, release, mediate, arbitrate, sue on or defend, counterclaim, setoff, recoup, pursue, prosecute, abandon, or otherwise address and settle any actions, suits, proceedings, disputes, claims, controversies, demands, causes of action, or other litigation in favor of or against the Litigation Trust, enter into agreements relating to the foregoing, whether or not any suit is commenced or claim accrued or asserted and, in advance of any controversy, enter into agreements regarding arbitration, adjudication or settlement thereof, all in the name of the Litigation Trust if necessary or appropriate, and institute or continue actions that were or could have been commenced by any of the Debtors prior to the Effective Date that is a Litigation Trust Asset, and prosecute

11

or defend all related litigation or appeals, and, when appropriate, settle such actions and claims;

(h)     with reasonable notice to, and the advice of, the Litigation Trust Board, if any, enforce, waive, assign or release rights, privileges or immunities in accordance with the provisions of this Agreement, including Section 2.04, the Confirmation Order, or the Plan;

(i)     with reasonable notice to, and the advice of, the Litigation Trust Board, if any, seek any relief from, or resolution of any disputes by, the Bankruptcy Court or other court of competent jurisdiction;

(j)     enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement and perform all duties and obligations thereunder;

(k)     obtain reasonable insurance coverage with respect to the liabilities and obligations of the Litigation Trustee under this Agreement (in the form of an errors and omissions policy or otherwise), if the Litigation Trustee reasonably determines that such insurance coverage is appropriate; *provided* that any insurance coverage obtained by the Litigation Trustee also shall be offered to, and obtained for the benefit of, the Litigation Trust Board and/or the Litigation Trust Board Members;

(l)     with reasonable notice to, and the advice of, the Litigation Trust Board, if any, retain, compensate and employ professionals to advise and/or represent the Litigation Trust, whether such professionals are to be compensated on an hourly, fixed fee, contingency fee, or other basis;

(m)     subject to the terms hereof, cause the Litigation Trust to pay all valid and lawful expenses, debts, charges, taxes and liabilities of the Litigation Trust, solely out of the Litigation Trust Assets;

(n)     (i) receive, manage, supervise, protect, and liquidate the Litigation Trust Assets (including, for the avoidance of doubt, holding stocks or securities for a limited time or holding cash in his/her/its law firm's trust account), (ii) withdraw and make distributions from and pay taxes and other obligations owed by the Litigation Trust from funds held by the Litigation Trustee and/or the Litigation Trust and (iii) withdraw and make distributions from and pay taxes and other obligations owed in respect of any Reserved Claims (as defined herein) in accordance with the Plan, in each case as long as such actions are consistent with (A) the Litigation Trust's status as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and are merely incidental to its liquidation and dissolution and (B) any Disputed Claims Reserve's status as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9;

(o)     prepare, or have prepared, and timely file, if necessary, with the appropriate governmental unit any and all tax returns, information returns, and other required documents with respect to the Litigation Trust (including, without limitation, U.S. federal,

12

state, local, or foreign tax or information returns required to be filed by the Litigation Trust) and the Disputed Claims Reserve, pay taxes properly payable by the Litigation Trust and the Disputed Claims Reserve, if any, and cause all taxes payable by the Litigation Trust and the Disputed Claims Reserve, if any, to be paid exclusively out of the Litigation Trust Assets or the Disputed Claims Reserve, as applicable, make all tax withholdings, and timely file and prosecute tax refund claims on behalf of the Litigation Trust;

(p)     request any appropriate tax determination with respect to the Debtors, the Litigation Trust and the Disputed Claims Reserve, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(q)     coordinate reasonably with the Reorganized Debtors as set forth herein, and with reasonable consideration of the advice of the Litigation Trust Board, if any, and subject to any contrary direction by Majority Consent thereof, assert, engage in or resolve (as applicable) any dispute with the Reorganized Debtors regarding such coordination and the Reorganized Debtors' obligations set forth in Section 2.04 of this Agreement;

(r)     make tax elections by and on behalf of the Litigation Trust, which are deemed by the Litigation Trustee, either independently or with the advice of professionals employed by the Litigation Trust, to be in the best interest of maximizing the liquidation value of the Litigation Trust Assets, in light of the Litigation Trustee's duty to maximize the value of the Litigation Trust Assets;

(s)     with the advice of the Litigation Trust Board, if any, take such other actions not specifically enumerated herein as the Litigation Trustee reasonably deems necessary or appropriate to fulfill his duties under this Agreement and to further the objectives of the Litigation Trust;

(t)     in the event that the Litigation Trust shall fail or cease to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), take any and all necessary actions as it shall reasonably deem appropriate to have such assets treated as held by an entity classified as a partnership for U.S. federal tax purposes; and

(u)     with the advice and Majority Consent of the Litigation Trust Board, if any, dissolve the Litigation Trust in accordance with the terms of this Agreement.

**Section 3.05   Exclusive Authority to Pursue Excluded Claims**. The Litigation Trustee, on behalf of the Litigation Trust, subject to the authority of the Litigation Trust Board, if any, to the extent set forth herein, shall have the exclusive right, power, and interest in respect of all Excluded Claims to institute, file, prosecute, review, reconcile, enforce, collect, compromise settle, release, abandon, elect not to pursue, or withdraw the Excluded Claims, without further order of the Court or consent of any other party. The Litigation Trust, acting by and through the Litigation Trustee and the Litigation Trust Board, if any, shall be the sole representatives of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Excluded Claims. The Litigation Trust shall be vested with, and the Litigation Trust and the Litigation Trustee shall be entitled to assert, all setoffs, and defenses of the Debtors or the Litigation Trust to any counterclaims that may be asserted by any defendant with respect to the Excluded Claims. The Litigation Trust shall

13

also be vested with, and the Litigation Trust and the Litigation Trustee shall be entitled to assert, all of the Debtors' and their Estates' rights with respect to any such counterclaims under section 558 of the Bankruptcy Code.

**Section 3.06   Bankruptcy Court Approval of Litigation Trustee Actions**. Except as provided in the Plan or otherwise specified in this Agreement, the Litigation Trustee need not obtain any further order or approval of the Bankruptcy Court or account to the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder. The Litigation Trustee shall exercise his or her business judgment, subject to the authority of the Litigation Trust Board, if any, to the extent set forth herein, for the benefit of the Litigation Trust Beneficiaries to maximize the value of the Litigation Trust Assets and distributions to the Litigation Trust Beneficiaries, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Litigation Trustee, subject to the authority of the Litigation Trust Board, if any, to the extent set forth herein, shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Litigation Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action or course of action proposed to be taken by the Litigation Trustee with respect to any of the Litigation Trust Assets, this Agreement or the Plan, including the administration, distribution or proposed sale of any of the Litigation Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action or course of action upon motion by the Litigation Trust. The Litigation Trustee shall provide to the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Litigation Trust administration.

**Section 3.07   Responsibility for Administration of Distributions to Litigation Trust Beneficiaries**. As of the Effective Date, the Litigation Trust shall become responsible for transferring distributions to the Litigation Trust Beneficiaries entitled to receive distributions from the Litigation Trust pursuant to the Plan, Confirmation Order, and this Agreement.

**Section 3.08   Agents and Professionals**. The Litigation Trustee, with the advice of the Litigation Trust Board, if any, and subject to Section 3.04(l) of this Agreement, may, but shall not be required to, consult with and retain counsel, financial advisors, claims agents, auditors, or other professionals the Litigation Trustee believes have qualifications necessary to assist in the administration of the Litigation Trust, including professionals previously retained by the Debtors or the Committee. For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement, except as provided for in Section 3.14 and subject to Section 3.04(l) of this Agreement, shall limit the Litigation Trustee from engaging counsel or other professionals, including the Litigation Trustee itself or the Litigation Trustee's firm or their affiliates, to do work for the Litigation Trust. The Litigation Trustee, with the advice of the Litigation Trust Board, if any, may pay the reasonable salaries, fees, and expenses of such Persons out of the Initial Litigation Trust Funding and/or Litigation Trust Reserves (as defined herein) in the ordinary course of business.

**Section 3.09   Safekeeping and Investment of Litigation Trust Assets**. All moneys and other assets received by the Litigation Trustee, until distributed, transferred, or paid over as provided herein and in the Plan, shall be held in trust for the benefit of the Litigation Trust Beneficiaries, but need not be segregated in separate accounts from other Litigation Trust Assets except to the extent required by law, the Plan or Section 5.01(b) of this Agreement. The Litigation

14

Trustee shall not be under any obligation to invest Litigation Trust Assets. None of the Litigation Trust, the Litigation Trustee nor the Litigation Trust Board shall have any liability for interest or producing income on any moneys received by them and held for distribution. Except as otherwise provided by the Plan, the powers of the Litigation Trustee to invest any moneys held by the Litigation Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Litigation Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions or other temporary liquid investments, such as treasury bills or money market funds; *provided*, *however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to applicable guidelines, whether set forth in U.S. Internal Revenue Service ("**IRS**") rulings, IRS pronouncements, or otherwise.

**Section 3.10   Maintenance and Disposition of Trust Records**. The Litigation Trustee shall maintain reasonably books and records of accounting relating to the Litigation Trust Assets in a commercially reasonable manner, the management thereof, all transactions undertaken on behalf of the Litigation Trust, all expenses incurred by or on behalf of the Litigation Trust, and all distributions contemplated by or effectuated from the Litigation Trust.  Upon termination of the Litigation Trust, unless otherwise ordered by the Bankruptcy Court, the Litigation Trustee may destroy or otherwise dispose of all records maintained by the Litigation Trustee.  Prior thereto, the Litigation Trustee may, upon notice to all persons on the Bankruptcy Rule 2002 service list and without further Bankruptcy Court approval, destroy any documents that he or she believes are no longer required to effectuate the terms and conditions of the Litigation Trust.

**Section 3.11   [Reporting Requirements**. Upon request by the Litigation Trust Board, if any, the Court or the United States Trustee, the Litigation Trustee shall provide updates and reporting of the Litigation Trustee's and the Litigation Trust's activities (in a form reasonably agreed between the Litigation Trust and Litigation Trust Board, and/or through oral reports to the extent so agreed). In addition, the Litigation Trustee shall provide periodic updates and reporting to the Litigation Trust Beneficiaries as reasonably requested by the Litigation Trust Board and/or as determined by the Litigation Trustee. The Litigation Trustee shall provide, to the Litigation Trust Beneficiaries, at least once per year, a summary financial statement of the Litigation Trust, the identity and contact information of the Litigation Trustee, and the identities of the Litigation Trust Board Members then in office.][3]

**Section 3.12   [Post-Confirmation Reports**.   After the Effective Date, the Litigation Trustee (or any disbursing agents and other Persons engaged by the Litigation Trust to assist with distributions pursuant to Section 5.02 of this Agreement), shall file with the Bankruptcy Court, on a quarterly basis, post-confirmation operating reports in accordance with the U.S. Trustee's "Operating Guidelines and Reporting Requirements of the United States Trustee" (Eastern District of Virginia) for chapter 11 debtors-in-possession.  Such reports shall include, without limitation, the disbursements of the Litigation Trust made during the applicable period, until such time when the Litigation Trust is dissolved in accordance with the terms of this Agreement.]

---

[3]   Reporting requirements remain subject to ongoing review and discussion among the parties, including the Litigation Trustee.

15

**Section 3.13   Final Report**. After the Litigation Trustee has made all distributions provided by the Plan and this Agreement, the Litigation Trustee shall file a final report with the Bankruptcy Court which details and accounts for the Litigation Trust Assets and contains a summary of expenses incurred by the Litigation Trustee and distributions made on account of Claims of Litigation Trust Beneficiaries.

**Section 3.14   Conflicts of Interest**. The Litigation Trustee (with Majority Consent of the Litigation Trust Board, if any), will appoint a disinterested Person to handle any matter where the Litigation Trustee has identified a conflict of interest or where the Bankruptcy Court, on motion of a party in interest, determines that a conflict of interest exists. In the event the Litigation Trustee is unwilling or unable to appoint a disinterested Person to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.

**Section 3.15   No Bond Required; Procurement of Insurance**. Notwithstanding any state or other applicable law to the contrary, the Litigation Trustee shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The Litigation Trustee, with the advice and consent of the Litigation Trust Board, if any, is hereby authorized, but not required, to obtain all reasonable insurance coverage for itself and its agents, representatives, employees, or independent contractors, including coverage with respect to the liabilities, duties, and obligations of the Litigation Trustee and its agents, representatives, employees, or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Litigation Trust and paid out of the Litigation Trust Reserves.

**Section 3.16   Charitable Donations**. The Litigation Trustee, with the advice and consent of the Litigation Trust Board, if any, may donate any remaining proceeds to a charitable organization (A) described in section 501(c)(3) of the Tax Code, (B) exempt from U.S. federal income tax under section 501(a) of the Tax Code, and (C) not a "private foundation" as defined in section 509(a) of the Tax Code, after the Litigation Trustee has made all possible distributions required by the Plan pursuant to the terms and conditions of this Agreement.

**Section 3.17   Fiduciary and Other Duties**.  Notwithstanding anything in the Plan or this Agreement to the contrary, the Trustee and the Litigation Trust Board Members, if any, shall always act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust as set forth in the Plan.  The Litigation Trustee and the Litigation Trust Board Members, if any, shall have fiduciary duties to the Litigation Trust Beneficiaries consistent with the fiduciary duties that a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her or its responsibilities accordingly.  Except for obligations expressly imposed on the Litigation Trustee and the Litigation Trust Board Members, if any, by this Agreement, to the extent that, at law or in equity, the Litigation Trustee or the Litigation Trust Board Members, if any, has duties (including fiduciary duties) to the Litigation Trust Beneficiaries or to any other person that is a party to or is otherwise bound by this Agreement, such duties are hereby eliminated by this Agreement to the fullest extent permitted by applicable law; *provided*, *however*, that this Agreement does not eliminate the implied contractual covenant of good faith and fair dealing.

16

**ARTICLE IV**
**Litigation Trust Board**

**Section 4.01   Litigation Trust Board**.  A three (3) member board (the "**Litigation Trust Board**" and any member of such Litigation Trust Board, a "**Litigation Trust Board Member**") may be established on or prior to the Effective Date, at the sole discretion of the Majority Consenting 2026 Noteholders, to oversee, review and guide the activities and performance of the Litigation Trustee.  If established, two (2) Litigation Trust Board Members shall be appointed by the Majority Consenting 2026 Noteholders and one (1) Litigation Trust Board Member shall be appointed by the Committee, which member shall be mutually agreeable to the RWE Committee (the "**Committee Board Member**").  The Litigation Trust Board, if any, shall be bound by the terms of this Agreement and the Litigation Trust Board Members shall act as fiduciaries of the Litigation Trust pursuant to Section 3.17 of this Agreement. Neither the Litigation Trust Board nor any Litigation Trust Board Members shall act in a manner inconsistent with its duties and obligations under the Plan, the Confirmation Order or this Agreement, including with respect to giving consents and directions as contemplated by Section 4.02.

**Section 4.02   Authority of the Litigation Trust Board**.  To the extent established, the Litigation Trust Board shall, in accordance with this Agreement, the Plan and the Confirmation Order, monitor and advise the Litigation Trustee and oversee the administration of the Litigation Trust and the Litigation Trustee's performance of his/her/its responsibilities under the Plan, the Confirmation Order, and this Agreement.  Further, to the extent established, the Litigation Trust Board shall have the authority, by the affirmative vote of a majority of the Litigation Trust Board Members in office at the time such vote is taken, whether by a meeting in person or in lieu of a meeting in accordance with Section 4.04 of this Agreement ("**Majority Consent**"), to:

(a)   in consultation with the Litigation Trustee and counsel to the Litigation Trust, (i) compel a settlement that the Litigation Trust Board reasonably determines is in the best interests of the Litigation Trust Beneficiaries and does not frustrate the purpose of the Litigation Trust or (ii) veto a settlement that the Litigation Trust Board reasonably determines is not in the best interests of the Litigation Trust Beneficiaries or frustrates the purpose of the Litigation Trust, in each case, it being understood that, in making any such determination, the Litigation Trust Board may reasonably (but not exclusively) consider the impact, if any, on the Reorganized Debtors of the continued pursuit of any Excluded Claim(s);

(b)   approve any compromise, settlement, release, abandonment, dismissal or other resolution of any actions, suits, proceedings, disputes, claims, controversies, demands, causes of action or litigation in favor of or against the Litigation Trust, in each case in respect of the Excluded Claims, as may be proposed by the Litigation Trustee;

(c)   approve the incurrence of any litigation funding or financing by the Litigation Trust and/or any other similar action that may have the effect of subordinating or materially diluting the recoveries of the Litigation Trust Beneficiaries;

17

(d)      approve the retention, compensation and employment by the Litigation Trust of any professional person or firm reasonably expected to earn (x) more than $[250,000] in one year and which amount is expected to be paid from the Initial Litigation Trust Funding, or (y) any contingency fee arrangements for a contingency fee exceeding [●]% of amounts recovered in connection with such contingent fee engagement;

(e)      exercise any consent rights over the powers of the Litigation Trustee or rights to direct the Litigation Trustee to the extent set forth in Section 3, including, for the avoidance of doubt, as set forth in Section 3.11 of this Agreement;

(f)      exercise the rights of the Litigation Trust Board with respect to removal and replacement of the Litigation Trust Board Members and the Litigation Trustee (as applicable) as set forth in this Agreement; provided that, where so specified, rights of removal and replacement shall require unanimous consent of the Litigation Trust Board Members then in office; and

(g)      provide direction to the Litigation Trustee as may be reasonably requested by the Litigation Trustee.

**Section 4.03   Manner of Acting**.

To the extent that a Litigation Trust Board is established:

(a)      a majority of the total number of Litigation Trust Board Members then in office shall constitute a quorum for the transaction of business at any meeting of the Litigation Trust Board and the affirmative vote of a majority of the Litigation Trust Board Members present at the meeting at which a quorum is present shall be the act of the Litigation Trust Board, except as otherwise required by law or as provided in this Agreement.  Any or all of the Litigation Trust Board Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Voting may be conducted by e-mail.  Any Litigation Trust Board Member participating in a meeting by this means is deemed to be present in person at the meeting; and

(b)      any Litigation Trust Board Member who is present at a meeting when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Board, unless: (i) such Litigation Trust Board Member objects at the beginning of the meeting to holding it or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice of his/her dissent or abstention to the Litigation Trust Board before its adjournment.

**Section 4.04   Action Without a Meeting**.  Any action required or permitted to be taken by the Litigation Trust Board at a meeting may be taken without a meeting and by written consent,

18

which consent may be less than unanimous, provided each Litigation Trust Board Member shall have received notice of the action to be taken by written consent in lieu of a meeting at least five (5) Business Days in advance of the effectiveness thereof. Such act by written consent shall require no less than Majority Consent or, if such act requires unanimous consent under this Agreement, unanimous consent.  Any such written consent shall be filed with the minutes of the proceedings of the Litigation Trust Board as soon as reasonably practicable. If the action is taken by unanimous written consent (e-mail being sufficient) of the Litigation Trust Board as evidenced by one or more written consents describing the action taken, such written consents shall be signed by all members of the Litigation Trust Board in office as such time and recorded in the minutes or other transcript of proceedings of the Litigation Trust Board.

**Section 4.05   Tenure, Removal, and Replacement of Litigation Trust Board Members**.  The authority of the Litigation Trust Board Members, if applicable, will be effective as of the Effective Date, and will remain and continue in full force and effect until the Litigation Trust is dissolved in accordance with this Agreement.  The service of the Litigation Trust Board Members will be subject to the following terms and conditions.

(a)   The Litigation Trust Board Members will serve until death or resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below.

(b)   A Litigation Trust Board Member may resign at any time by providing written notice of resignation to the remaining members of the Litigation Trust Board and the Litigation Trustee.  Such resignation will be effective when a successor is appointed as provided herein.

(c)   Any Litigation Trust Board Member may be removed by a majority vote of the remaining members of the Litigation Trust Board for Cause or Disability.  For the purposes of this Section 4.04:

(i)   "Cause" shall mean: (i) a Person's willful failure to perform his/her/its material duties hereunder (including, without limitation, regular attendance at meetings of the Litigation Trust Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft or embezzlement during the performance of his/her/its duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder; and

(ii)   "Disability" shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Litigation Trustee or the Litigation Trust Board Member, as applicable, and reasonably acceptable to the Litigation Trust Board, the Litigation Trust Board Member shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

19

(d)    In the event of a vacancy on the Litigation Trust Board (whether by removal, death or resignation), a new Litigation Trust Board Member may be appointed to fill such position by the remaining Litigation Trust Board Members, and, solely in the case of a replacement of the Committee Board Member, the consent of the Litigation Trustee (such consent not to be unreasonably withheld or delayed) acting unanimously; *provided*, that (i) in the event that no Litigation Trust Board Members are in office, a Litigation Trust Board Member may be appointed by the Litigation Trustee (or the Bankruptcy Court upon the motion or application of a party in interest) and (ii) in the event that all seats on the Litigation Trust Board remain vacant for thirty (30) days or more, the Litigation Trust Board shall be deemed disbanded unless and until such one or more new Litigation Trust Board Members have been duly appointed. The appointment of a successor Litigation Trust Board Member will be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which shall include the name, address, and telephone number of the successor Litigation Trust Board Member.  Immediately upon the appointment of any successor Litigation Trust Board Member, all rights, powers, duties, authority and privileges of the predecessor Litigation Trust Board Member hereunder will be vested in and undertaken by the successor Litigation Trust Board Member without any further act, and such successor Litigation Trust Board Member will not be liable personally for any act or omission of the predecessor Litigation Trust Board Member. The Litigation Trustee shall notify the Litigation Trust Beneficiaries in the event that, at any time following the establishment of the Litigation Trust Board, there are no Litigation Trust Board Members in office.

**Section 4.06    Compensation**. To the extent that a Litigation Trust Board is established, unless determined otherwise by the Majority Consenting 2026 Noteholders, the Litigation Trust Board Members shall not be entitled to compensation in connection with his or her service to the Litigation Trust Board.[4]  However, the Litigation Trust will reimburse the Litigation Trust Board Members for all reasonable and documented out-of-pocket expenses incurred in connection with the performance of each of their duties hereunder.

**Section 4.07    Confidentiality**. To the extent that a Litigation Trust Board is established, each Litigation Trust Board Member shall, during the period that such Litigation Trust Board Member serves as a Litigation Trust Board Member under this Agreement and following the termination of this Agreement or following such Litigation Trust Board Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Litigation Trust Assets relates or of which such Litigation Trust Board Member has become aware in the Litigation Trust Board Member's capacity as a Litigation Trust Board Member, except as otherwise required by law.

**Section 4.08    Recusal**. To the extent that a Litigation Trust Board is established, a Litigation Trust Board Member shall be recused from deliberations and votes on any matters as to which such Litigation Trust Board Member has a conflicting interest as described in Section 3.14 of this Agreement. If a Litigation Trust Board Member does not recuse itself from any such matter where the Litigation Trust Board Member has a conflicting interest, that Litigation Trust Board

---

[4]  Compensation for the Litigation Trust Board, if any, remains subject to ongoing discussion.

20

Member may be recused by the vote of the remaining Litigation Trust Board Members that are not recused.

## ARTICLE V
## Distributions

**Section 5.01   Distribution and Reserve of Litigation Trust Assets**. Following the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trustee shall make continuing efforts on behalf of the Litigation Trust to collect and liquidate or otherwise monetize all Litigation Trust Assets and, subject to the reserves required under the Plan or this Agreement, make distributions to Litigation Trust Beneficiaries, in each case to the extent required by the Plan. Any recovery by the Litigation Trustee on account of the Litigation Trust Assets shall be applied in accordance with the Plan and this Agreement.  The Litigation Trustee shall, with the advice and consent of the Litigation Trust Board, if any, cause the Litigation Trust to make distributions at least annually to the Litigation Trust Beneficiaries of all cash on hand except such amounts (i) that are reasonably necessary to meet contingent liabilities of the Litigation Trust or maintain the value of the Litigation Trust Assets, (ii) that are necessary to pay expenses of the Litigation Trust, and (iii) that are necessary to satisfy other liabilities incurred by the Litigation Trust in accordance with the Plan or this Agreement, and the retention of such amounts listed in (i) through (iii) of the foregoing may preclude distributions to the Litigation Trust Beneficiaries. Notwithstanding the foregoing, distributions to the Litigation Trust Beneficiaries may be made by the Plan Administrator, acting at the direction of the Litigation Trustee.

(a)      **Distributions**. All distributions to be made under this Agreement shall be made in accordance with this Agreement and the Plan, which is incorporated herein by reference.

(i)      The Litigation Trustee shall cause the Litigation Trust to distribute the Litigation Trust Assets to the Litigation Trust Beneficiaries in accordance with the allocation of Litigation Trust Interests set forth in Article III.B of the Plan.

(ii)      Each distribution to the Litigation Trust Beneficiaries made under the Agreement shall be allocated as follows: (x) 89.91% of the net proceeds of the Litigation Trust Assets shall be distributed to Class A Litigation Trust Beneficiaries on a ratable basis, and (y) 10.09% of the net proceeds of the Litigation Trust Assets shall be distributed to Class B Litigation Trust Beneficiaries on a ratable basis consistent with the GUC Distribution Pool Allocation and the Plan, in each case, subject to the appropriate funding and maintenance of the Litigation Trust Reserves, *provided*, that to the extent that any Class B Litigation Trust Beneficiary receives payment in full in cash on account of its Pro Rata share of distribution under Article III.B.6.b(i) of the Plan on account of its Claim on or after the Effective Date from the GUC Distribution Pool Allocation in accordance with the Plan, any Class B Litigation Trust Interests received by such Holder on account of such Claim shall be automatically canceled as of the applicable date for no consideration, and from and after such date shall not be considered as outstanding for any purpose under this Agreement.

21

(iii)      Any excess amounts remaining in the Litigation Trust Reserves (as defined herein), including the Initial Litigation Trust Funding, upon termination of the Litigation Trust shall be distributed to the Litigation Trust Beneficiaries in accordance with the Plan and this Agreement.

(b)      **Reserves; Pooling of Reserved Funds**.  Before any distribution can be made, the Litigation Trustee shall, with the advice of the Litigation Trust Board, if any, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Litigation Trust, including professionals' fees and expenses for any and all professionals retained by the Litigation Trust (the "**Litigation Trust Reserves**"). The Litigation Trust will fund the Litigation Trust Reserves with the Initial Litigation Trust Funding. Subject to Section 3.14 of this Agreement, nothing in this Agreement shall prevent the Litigation Trustee, with the advice of the Litigation Trust Board, if any, from paying, or establishing additional reserves to pay, expenses incurred in administering the Litigation Trust in excess of such Initial Litigation Trust Funding to the extent the Litigation Trustee determines doing so is reasonably necessary to, and consistent with, the purpose of the Litigation Trust. The Litigation Trustee need not maintain the Litigation Trust Reserves in segregated bank accounts and may pool funds in the Litigation Trust Reserves with each other and other funds of the Litigation Trust; *provided, however*, that the Litigation Trust shall treat all such reserved funds as being held in a segregated manner in its books and records. Any funds of the Litigation Trust Reserves, including the Initial Litigation Trust Funding or any subsequent reserve of funds for expenses established consistent with the terms of this Agreement, that are not used to pay expenses of Litigation Trust administration shall be distributed to Litigation Trust Beneficiaries, consistent with the Plan and this Agreement, prior to termination of the Litigation Trust.

(c)      **Distributions Net of Costs**. Distributions shall be made net of the actual and reasonable costs of making the distributions.

(d)      **Right to Rely on Professionals**. Without limitation of the generality of Section 7.06, in determining the amount of any distribution or Litigation Trust Reserves, the Litigation Trustee may rely and shall be fully protected in relying on the advice and opinion of the Litigation Trust's financial advisors, accountants, or other professionals.

**Section 5.02   Method and Timing of Distributions**. The timing and amount of each distribution by the Litigation Trustee shall be determined by the Litigation Trustee, with the advice of the Litigation Trust Board, if any, and shall be made in accordance with the terms of the Plan and this Agreement. The Litigation Trust may engage disbursing agents and other Persons to help make distributions.

**Section 5.03   Unclaimed and Undeliverable Distributions**. If any distribution with respect to a Claim of a Litigation Trust Beneficiary is returned to the Litigation Trustee as undeliverable or is otherwise unclaimed (as reasonably deemed unclaimed or undeliverable by the Litigation Trustee), no further distributions shall be made on account of such Claim unless and until the applicable Litigation Trust Beneficiary claims the distributions by timely notifying the Litigation Trustee in writing of any information necessary to make the distribution to such

22

Litigation Trust Beneficiary in accordance with this Agreement, the Plan and applicable law, including such Litigation Trust Beneficiary's then-current address or taxpayer identification number. If such Litigation Trust Beneficiary timely provides the Litigation Trustee such missing information, all missed distributions shall be made to such Litigation Trust Beneficiary as soon as is reasonably practicable, without interest.

(a) **No Responsibility to Attempt to Locate Litigation Trust Beneficiaries**. The Litigation Trustee may, in its sole discretion, attempt to determine a Litigation Trust Beneficiary's current address or otherwise locate a Litigation Trust Beneficiary, but nothing in this Agreement or the Plan shall require the Litigation Trustee to do so.

(b) **Identification and Addresses**. Except as expressly provided herein, as necessary and in order to determine the actual names and addresses of the Litigation Trust Beneficiaries, the Litigation Trustee may deliver a notice to the Litigation Trust Beneficiaries. Such notice may include a form for each Litigation Trust Beneficiary to complete in order to be properly registered as a Litigation Trust Beneficiary and be eligible for distributions under the Litigation Trust. Such form may request the Litigation Trust Beneficiary's federal taxpayer identification number or social security number if the Litigation Trustee determines that such information is necessary to fulfill the Litigation Trust's tax reporting and withholding obligations as set forth in Section 8.04 of this Agreement. A Litigation Trust Beneficiary may, after the Effective Date, select an alternative mailing address by notifying the Litigation Trustee in writing of such alternative distribution address. Absent receipt of such notice, the Litigation Trustee shall not be obligated to recognize any such change of address. Such notification shall be effective only upon receipt by the Litigation Trustee.

(c) **Disallowance of Claims; Cancellation of Corresponding Litigation Trust Interests**. All Claims in respect of undeliverable or unclaimed distributions (as reasonably deemed unclaimed or undeliverable by the Litigation Trustee) for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be deemed Disallowed and expunged, and any corresponding Litigation Trust Interests in the Litigation Trust of a Litigation Trust Beneficiary holding such claims (the "**Disallowed Claims**") shall be deemed canceled. The Litigation Trust Beneficiary holding any such Disallowed Claim shall no longer have any right, claim, or interest in or to any distributions in respect of such Disallowed Claims. The Litigation Trust Beneficiary holding such Disallowed Claim is forever barred, estopped, and enjoined from receiving any distributions under this Agreement and from asserting such Disallowed Claim against the Litigation Trust or the Litigation Trustee.

(d) **Inapplicability of Unclaimed Property or Escheat Laws**. Unclaimed property held by the Litigation Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

**Section 5.04  Voided Checks; Request for Reissuance**. Distribution checks issued to Litigation Trust Beneficiaries shall be null and void if not negotiated within six months after the date of issuance thereof.  Requests for the reissuance of any check shall be made in writing directly

to the Litigation Trustee by the Litigation Trust Beneficiary that was originally issued such check. All such requests shall be made promptly. Distributions in respect of voided checks shall be treated as unclaimed distributions under the Plan and administered under Section 5.03 of this Agreement.

**Section 5.05   Conflicting Claims**. If any conflicting claims or demands are made or asserted with respect to the Litigation Trust Interests of a Litigation Trust Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such interest resulting in adverse claims or demands being made in connection with such interest, then the Litigation Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

(a)   The Litigation Trustee, with the advice and consent of the Litigation Trust Board, if any, may elect to cause the Litigation Trust to make no distribution with respect to the Litigation Trust Interests subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. Neither the Litigation Trust, the Litigation Trust Board, if any, or the Litigation Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Litigation Trust, the Litigation Trust Board, if any, or Litigation Trustee be liable for interest on any funds which may be so withheld.

(b)   The Litigation Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court, or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Litigation Trustee, which agreement shall include a complete release of the Litigation Trust and the Litigation Trustee. Until the Litigation Trustee receives written notice that one of the conditions of the preceding sentence is met, the Litigation Trustee may deem and treat as the absolute owner under this Agreement of the Litigation Trust Interests in the Litigation Trust the Litigation Trust Beneficiary identified as the owner of that interest in the books and records maintained by the Litigation Trustee. The Litigation Trustee may deem and treat such Person as the absolute owner for purposes of receiving distributions on account thereof for U.S. federal and state income tax purposes and for all other purposes whatsoever.

(c)   In acting or refraining from acting under and in accordance with this Section 5.05, the Litigation Trustee shall be fully protected and incur no liability to any purported claimant or any other Person to the extent set forth in Article VII.

**Section 5.06   Priority of Expenses of Trust**. The Litigation Trust may pay or reserve for all of its expenses before making distributions.

**Section 5.07   Distributions After Allowance of Reserved Claims**.  At such time as a Reserved Claim becomes Allowed and the Rejection Damages Bar Date has passed, the Litigation Trustee shall distribute to the Holder thereof its Class B Litigation Trust Interests and any associated distributions, if any, to which such Holder is then entitled under the Plan as if such

24

Class B Litigation Trust Interest had been issued on the Effective Date. Such distribution, if any, shall be made as soon as reasonably practicable after the date upon which such Reserved Claim becomes Allowed, whether by settlement, compromise or Final Order or judgment of the Bankruptcy Court, but in no event more than sixty (60) days thereafter. The balance of any Cash thereafter retained in the Disputed Claims Reserve account shall be allocated to and included in future distributions to Holders of the remaining applicable Reserved Claims on a pro rata basis at such time as any such Reserved Claim becomes an Allowed Claim or otherwise as provided in the Plan, the Confirmation Order and this Agreement.

**Section 5.08   Distributions After Disallowance of Reserved Claims.** If a Reserved Claim is Disallowed, in whole or in part, the Litigation Trustee shall cancel the applicable Litigation Trust Interest as provided for herein, if applicable, and the Holder of any such Disallowed Claim shall not receive any distributions from the Litigation Trust. Any distribution relating to such Disallowed Claim shall be released and distributed on the next distribution date to the remaining Holders of Class B Litigation Trust Interests and/or held by the Disputed Claims Reserve, as applicable.

**Section 5.09   Distributions to Holders of Reserved Claims**. No distributions shall be made to Holders of Reserved Claims, and the Litigation Trustee shall reserve any distribution attributable to such Reserved Claims in the Disputed Claims Reserve.

**ARTICLE VI**
**Litigation Trust Beneficiaries**

**Section 6.01   Interest Beneficial Only**. The ownership of a Litigation Trust Interest (i.e., a beneficial interest) in the Litigation Trust shall not entitle any Litigation Trust Beneficiary to any title in or to the Litigation Trust Assets, to any right to call for a partition or division of such assets, or to require an accounting.

**Section 6.02   Ownership of Beneficial Interests Hereunder**. Each Litigation Trust Beneficiary shall own a beneficial interest herein, referred to as a Litigation Trust Interest, which shall, subject to Article V of this Agreement and the Plan, be entitled to distributions in the amounts, and at the times, determined by the Litigation Trustee in accordance with the Plan and this Agreement.

**Section 6.03   Evidence of Litigation Trust Interests.** Ownership of Litigation Trust Interests in the Litigation Trust Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Litigation Trust by the Litigation Trustee.

**Section 6.04   No Right to Accounting**. Except as set forth in Section 9.04, neither the Litigation Trust Beneficiaries nor their successors, assigns or creditors nor any other Person shall have any right to an accounting by the Litigation Trustee, and the Litigation Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Litigation Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for making

25

any advance, payment, or distribution out of Litigation Trust Assets or proceeds of Litigation Trust Assets.

**Section 6.05    No Standing**. Except as expressly provided in this Agreement, a Litigation Trust Beneficiary shall not have standing to direct or to seek to direct the Litigation Trust or the Litigation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Litigation Trust Assets.

**Section 6.06    Requirement of Undertaking**. The Litigation Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Litigation Trustee for any action taken or omitted by it as the Litigation Trustee, that the filing party litigant in such suit pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this Section 6.06 shall not apply to any suit by the Litigation Trustee.

**Section 6.07    Limitation on Transferability**. It is understood and agreed that the Litigation Trust Interests shall be non-transferable and non-assignable during the term of this Agreement except will, intestate succession, or otherwise by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Litigation Trustee, and the Litigation Trustee may continue to cause the Litigation Trust to pay all amounts to or for the benefit of the assigning Litigation Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Litigation Trustee may rely upon such proof without the requirement of any further investigation.

**Section 6.08    Delivery of Distributions**. Subject to the terms of this Agreement and the Plan, the Litigation Trustee shall cause the Litigation Trust to make distributions in the manner they deem appropriate in consultation with the Litigation Trust Board and in accordance with the terms of this Agreement and the Plan.

## ARTICLE VII
### Indemnification and Third-Party Rights

**Section 7.01    Parties Dealing with the Litigation Trustee**. In the absence of actual knowledge to the contrary, any Person dealing with the Litigation Trust or the Litigation Trustee shall be entitled to rely on the authority of the Litigation Trustee or any of the Litigation Trustee's agents to act in connection with the Litigation Trust Assets. There is no obligation of any Person dealing with the Litigation Trustee to inquire into the validity, expediency, or propriety of any transaction by the Litigation Trustee or any agent of the Litigation Trustee.

**Section 7.02    Limitation of the Litigation Trustee's and Litigation Trust Board's Liabilities**. In exercising the rights granted herein, the Litigation Trustee and the Litigation Trust Board, if any, shall exercise their respective best judgment, to the end that the affairs of the Litigation Trust shall be properly managed and the interests of all of the Litigation Trust Beneficiaries safeguarded. But, notwithstanding anything herein or in the Plan to the contrary, neither the Litigation Trustee, the Litigation Trust Board, if any, nor their respective firms, companies, affiliates, partners, officers, directors, members, employees, disbursing agents, or duly

designated agents or representatives (collectively, "**Representatives**"), nor any of such Person's successors and assigns shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract or otherwise, except for willful misconduct, intentional misconduct, gross negligence or fraud that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage or expense suffered. In no event shall the Litigation Trustee, the Litigation Trust Board, if any, the Litigation Trust Board Members, if any, or any of its or their respective Representatives be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Litigation Trustee, the Litigation Trust Board, if any, the Litigation Trust Board Members, if any, or any of its or their respective Representatives have been informed of the likelihood of such loss or damages and regardless of the form of action.

Section 7.03   **No Liability for Acts of Other Persons**. None of the Persons identified in Section 7.02 shall be liable for the act or omission of any other Person identified in that Section.

Section 7.04   **No Liability for Acts of Predecessors**. No successor Litigation Trustee shall be in any way responsible for the acts or omissions of any Litigation Trustee in office prior to the date on which such successor becomes the Litigation Trustee, unless a successor Litigation Trustee expressly assumes such responsibility.

Section 7.05   **No Liability for Good Faith Error of Judgment**. None of the Litigation Trustee, the Litigation Trust Board nor the Litigation Trust Board Members, if any, shall be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Litigation Trustee or the Litigation Trust Board Members, if any, was grossly negligent or engaged in fraud or willful misconduct in ascertaining the pertinent facts.

Section 7.06   **Reliance by the Litigation Trustee on Documents and Advice of Counsel or Other Persons**. Except as otherwise provided herein, the Litigation Trustee, the Litigation Trust Board, if any, and the Litigation Trust Board Members, if any, may rely, and shall be protected in acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties. The Litigation Trustee also may engage and consult with its legal counsel and other agents and advisors, and neither the Litigation Trust, the Litigation Trust Board, if any, nor the Litigation Trust Board Members, if any, shall be liable for any action taken, omitted, or suffered by them in accordance with the advice of such counsel, agents, or advisors.

Section 7.07   **No Liability for Acts Approved by Bankruptcy Court**. The Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Litigation Trust Assets and any Claims administered by the Litigation Trust. None of the Litigation Trustee, the Litigation Trust Board nor the Litigation Trust Board Members, if any, shall be liable for any act or omission that has been approved by the

27

Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute willful misconduct, intentional misconduct, gross negligence, or fraud.

**Section 7.08   No Personal Obligation for Trust Liabilities**. Persons dealing with the Litigation Trustee, the Litigation Trust Board, if any, or the Litigation Trust Board Members, if any, shall have recourse only to the Litigation Trust Assets to satisfy any liability incurred by the Litigation Trustee, the Litigation Trust Board, if any, or the Litigation Trust Board Members, if any, to any such Person in carrying out the terms of this Agreement.  For the avoidance of doubt, neither the Litigation Trustee, the Litigation Trust Board, if any, the Litigation Trust Board Members, if any, nor any of their respective agents and professionals, shall have personal, individual obligation to satisfy any such liability.

**Section 7.09   Indemnification**. The Litigation Trustee and the Litigation Trust Board, if any, and each of their respective accountants, agents, assigns, attorneys, consultants, directors, employees, executors, financial advisors, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, the employees of the Litigation Trust, and their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives, affiliate, employer and successors and principals (collectively, the "**Indemnified Parties**" and each, an "**Indemnified Party**") shall, to the fullest extent permitted by applicable law, be defended, held harmless and indemnified by the Litigation Trust solely from the Litigation Trust Assets from time to time and receive reimbursement from and against any and all loss, liability, claim, cost, expense (including reasonable attorney's fees) or damage of any kind, type or nature, whether sounding in tort, contract or otherwise, that the Indemnified Parties may incur or sustain after the Effective Date in connection with any action, suit, proceeding or investigation brought by or threatened against such Indemnified Parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation, acceptance, administration, exercise or performance of any of the Litigation Trust's, Litigation Trustee's, or Litigation Trust Board's, if any, powers and duties under the Plan or this Agreement or in rendering services by the Indemnified Party to the Litigation Trust, Litigation Trust Board or Litigation Trustee (the "**Indemnified Conduct**"), including, without limitation, the costs of counsel or others in investigating, preparing, defending or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense or damage is determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the willful misconduct, intentional misconduct, gross negligence or fraud of the Indemnified Party asserting this provision. Each reference to the Litigation Trust Board in this Section 7.09 shall also include the Litigation Trust Board Members, as applicable.

(a)      **Expense of Trust; Limitation on Source of Payment of Indemnification**. All indemnification liabilities of the Litigation Trust under this Section 7.09 shall be an expense of the Litigation Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Litigation Trust out of the Litigation Trust Reserves after reserving for all actual and anticipated expenses and liabilities of the Litigation Trust. The Litigation Trustee shall not be personally liable for the payment of any Litigation Trust expense or Claim or other liability of the Litigation Trust, and no Person shall look to the

28

Litigation Trustee or other Indemnified Parties personally for the payment of any such expense or liability. For the avoidance of doubt, any and all indemnifications liabilities shall be paid from the Litigation Trust Assets and no other party is responsible for any such payments.

(b) **Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay**. The Litigation Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 7.09 on submission of invoices for such amounts by the Indemnified Party. All invoices for indemnification shall be subject to the approval of the Litigation Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 7.09.

**Section 7.10   No Implied Obligations**. The Litigation Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Litigation Trustee.

**Section 7.11   Confirmation of Survival of Provisions**. Without limitation in any way of any provision of this Agreement, the provisions of this Article VII shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Litigation Trustee, or the termination of the Litigation Trust or this Agreement, and shall inure to the benefit of the Litigation Trustee's and the Indemnified Parties' heirs and assigns.

**Section 7.12   No Liability for the Debtors.** The Debtors, the Reorganized Debtors, and the Post Effective Date Debtors, as applicable, shall have no liability with respect to the distribution or payment of any Litigation Trust Assets to any Litigation Trust Beneficiaries, except as otherwise provided in the Confirmation Order or the Plan.

**ARTICLE VIII**
**Tax Matters**

**Section 8.01   Treatment of Litigation Trust Assets Transfer**. For all U.S. federal, state and local income tax purposes, all parties (including, without limitation, the Debtors, the Litigation Trust Beneficiaries and the Litigation Trustee) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, whether their Claims are Allowed Claims on or after the Effective Date, including any amounts or other assets subsequently transferred to the Litigation Trust (but only at such time as actually transferred) as (i) a transfer of the Litigation Trust Assets (subject to any obligations relating to such Litigation Trust Assets) directly to the Litigation Trust Beneficiaries and, to the extent the Litigation Trust Assets are allocable to Reserved Claims, to the applicable Disputed Claims Reserve (as defined below), followed by (ii) the transfer by the Litigation Trust Beneficiaries to the Litigation Trust of the Litigation Trust Assets (other than the Litigation Trust Assets allocable to the Disputed Claims

29

Reserve) in exchange for interests in the Litigation Trust.  Accordingly, the Litigation Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets (other than such Litigation Trust Assets as are allocable to the Disputed Claims Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

**Section 8.02   Tax Treatment of Reserved Claims**.

(a)      Subject to any definitive guidance from the IRS or a court of competent jurisdiction (including receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), the Litigation Trustee shall (i) timely elect to treat any Litigation Trust Assets allocable to, or retained on account of, Non-Bond General Unsecured Claims as to which the entitlements hereunder are not determinable (a "**Disputed Claims Reserve**" and such Claims, "**Reserved Claims**") as the "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and (ii) report consistently with the foregoing for state and local income tax purposes. All parties (including, without limitation and as applicable, the Debtors, the Litigation Trustee and the Litigation Trustee Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing election.

(b)      With respect to any Litigation Trust Assets and any other income or gain of the Litigation Trust allocable to Reserved Claims, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Reserved Claims), the Litigation Trustee shall cause the Litigation Trust to pay any taxes imposed on the Litigation Trust by any U.S. federal, state or local, or any non-U.S. governmental unit. The Disputed Claims Reserve will be responsible for the payment out of the assets of the Disputed Claims Reserve, of any taxes imposed on the Disputed Claims Reserve or its assets. In the event, and to the extent, any cash in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that might arise upon the distribution of the assets in such reserve), assets of the Disputed Claims Reserve may be sold to pay such taxes.

**Section 8.03   Tax Reporting**.

(a)      The "taxable year" of the Litigation Trust shall be the "calendar year" as such terms are defined in section 441 of the Tax Code.  The Litigation Trustee shall file tax returns for the Litigation Trust treating the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 8.03 and shall duly and timely file with the IRS annual tax returns on Form 1041. In addition, the Litigation Trust shall duly and timely file such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon out of the Litigation Trust Assets (or the income or proceeds thereof).  The Litigation Trustee also will annually send within seventy-five (75) days after the end of each taxable

30

year to each Litigation Trust Beneficiary a Schedule K-1 or other applicable information statement setting forth such holder's share of items of income, gain, loss, deduction or credit (including the receipts and expenditures of the Litigation Trust) as relevant for U.S. federal income tax purposes and will instruct all such Litigation Trust Beneficiaries to use such information in preparing their U.S. federal income tax returns; *provided,* that if the Litigation Trustee elects to make distributions through an intermediary, it shall provide such Schedule K-1 or statement to such intermediaries for them to provide to such Litigation Trust Beneficiaries. The Litigation Trustee shall also duly and timely file or provide (or cause to be duly and timely filed or provided) any other statement, return or disclosure relating to the Litigation Trust that is required by any governmental unit and such other statement, return or disclosure shall be true, correct, and complete.

(b)      Allocations of Litigation Trust taxable income among the Litigation Trust Beneficiaries (other than taxable income allocable to the Disputed Claims Reserve) shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time, and without regard to any restrictions on distributions set forth in the Plan or this Agreement) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Disputed Claims Reserve) to the Litigation Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust. Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets. The tax book value of the Litigation Trust Assets for purposes of this Section 8.03(b) shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

(c)      The Litigation Trustee shall be responsible for payment, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets, including the Disputed Claims Reserve. In the event, and to the extent, any cash retained on account of Reserved Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Reserved Claims, such taxes shall be (i) reimbursed from any subsequent cash amounts retained on account of such Reserved Claims, or (ii) to the extent such Reserved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Litigation Trustee as a result of the resolution of such Reserved Claims.

**Section 8.04   Withholding of Taxes**.

(a)      The Litigation Trustee shall deduct and withhold and timely pay to the appropriate governmental unit all amounts required to be deducted or withheld pursuant to the Tax Code or any provision of any state, local or non-U.S. tax law with respect to any

31

payment or distribution to the Litigation Trust Beneficiaries.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  All such amounts withheld and paid to the appropriate governmental unit shall be treated as amounts distributed to such Litigation Trust Beneficiaries for all purposes of this Agreement, the Plan and the Confirmation Order.

(b)     The Litigation Trustee shall be authorized to collect such tax information from the Litigation Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and this Agreement.  As a condition to receive distributions under the Plan, all Litigation Trust Beneficiaries may be required to identify themselves to the Litigation Trustee and provide tax information and the specifics of their holdings, to the extent the Litigation Trustee deems appropriate, including an IRS Form W-9 or, in the case of Litigation Trust Beneficiaries that are not United States persons within the meaning of section 7701(a)(30) of the Tax Code, certification of foreign status on an applicable IRS Form W-8.

(c)     The Litigation Trustee may refuse to make a distribution to any Litigation Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; _provided_, _however_, that, (i) upon the delivery of such information by a Litigation Trust Beneficiary, the Litigation Trustee shall make such distribution to which the Litigation Trust Beneficiary is entitled, without interest and (ii) if the Litigation Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Litigation Trustee is later held liable for the amount of such withholding, such holder shall be required to reimburse the Litigation Trustee for such liability, unless such liability arises out of the Litigation Trustee's fraud, willful misconduct or gross negligence. The identification requirements in Section 8.04(b) and this Section 8.04(c) may, in certain cases, extend to holders who hold their claims in street name.  If a Litigation Trust Beneficiary fails to comply with such a request for tax information within ninety (90) days, the Litigation Trustee may file a document with the Bankruptcy Court, or if the Chapter 11 Cases have been closed or dismissed, post a document on a website maintained by the Litigation Trust, that will provide twenty-one (21) days' notice before such distribution may be deemed an unclaimed distribution and treated in accordance with the Plan.

(d)     In the event that the Litigation Trustee elects to make distributions through an intermediary, the party who would be the withholding agent with respect to distributions to the Litigation Trust Beneficiary under U.S. federal income tax principles shall be responsible for withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Litigation Trustee.

**Section 8.05   Valuation**. As soon as reasonably practicable following the establishment of the Litigation Trust, the Litigation Trustee shall determine the value of the Litigation Trust Assets transferred to the Litigation Trust, based on the good-faith determination of the Litigation Trustee, and the Litigation Trustee shall apprise, in writing, the applicable Litigation Trust Beneficiaries of such valuation.  The valuation shall be used consistently by all Parties (including the Litigation Trustee and the Litigation Trust Beneficiaries) for all U.S. federal income tax purposes. In connection with the preparation of any valuation contemplated hereby, the Litigation Trust shall be entitled to retain such professionals as the Litigation Trustee shall determine to be appropriate or necessary in accordance with the terms of this Agreement, and the Litigation Trustee shall take such other actions in connection therewith as it determines to be appropriate or necessary.  The Litigation Trust shall bear all of the reasonable and documented costs and expenses incurred in connection with determining such value, including the fees and expenses of any professionals retained in connection therewith.  The Litigation Trust also shall duly and timely file (or cause to be duly and timely filed) any other statements, returns or disclosures relating to the Litigation Trust or the Disputed Claims Reserve that are required by any governmental unit and such other statements, returns or disclosures shall be true, correct, and complete.

**Section 8.06   Expedited Determination of Taxes**.  The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the termination of the Litigation Trust.

## ARTICLE IX
## Litigation Trustee Selection, Removal, Replacement and Compensation

**Section 9.01   Initial Litigation Trustee**. The Litigation Trustee is appointed effective as of the effective date of this Agreement. The initial trustee shall be the Litigation Trustee.

**Section 9.02   Term of Service**. The Litigation Trustee shall serve through the earlier of (a) the completion of the administration of the Litigation Trust Assets and the Litigation Trust, including the winding up of the Litigation Trust, in accordance with this Agreement and the Plan, (b) the termination of the Litigation Trust in accordance with the terms of this Agreement and the Plan or (c) the Litigation Trustee's resignation, death, dissolution, incapacity, termination, or removal.

**Section 9.03   Removal of Litigation Trustee**. The Litigation Trustee may be removed upon (i) the unanimous vote of the Litigation Trust Board at all times provided that at such time the Litigation Trust Board includes the Committee Board Member, or (ii) by Majority Consent for Cause as defined in Section 4.04 of this Agreement.  If no Litigation Trust Board is established, any party in interest, on notice and hearing before the Bankruptcy Court, may seek the removal of the Trustee for Cause; *provided* that if the Litigation Trust Board has been established, such party in interest must first appeal to the Litigation Trust Board for removal for Cause and may apply to the Bankruptcy Court for such relief only if the Litigation Trust Board has denied the request or has failed to respond to such request after forty-five (45) days. In the event of the removal of the

33

Litigation Trustee, the Litigation Trustee shall be entitled to immediate payment of all compensation earned through and including the effective date of such removal.

**Section 9.04   Resignation of Litigation Trustee**. The Litigation Trustee may resign at any time on written notice to the Litigation Trust Board, if any, the Reorganized Debtors, and the Bankruptcy Court. The resignation shall be effective on the later of (a) the date specified in the notice of resignation and (b) the date that is 60 days after the date such notice is filed with the Bankruptcy Court and served on the Litigation Trust Board, if any, and the Reorganized Debtors. In no case shall the resignation of the Litigation Trustee be effective on less than 60 days' notice. In the event of a resignation, the resigning Litigation Trustee shall render to the Reorganized Debtors, the Litigation Trust Board, if any, and the Bankruptcy Court a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Litigation Trustee.

**Section 9.05   Appointment of Successor Litigation Trustee**. Upon the resignation, death, incapacity, or removal of a Litigation Trustee, the Litigation Trust Board, if any, shall, through a unanimous vote, appoint a successor Litigation Trustee.  If there is no Litigation Trust Board, any party in interest (including in the case of resignation, the Litigation Trustee) may file a motion in the Bankruptcy Court to appoint a successor Litigation Trustee, which, in such circumstance, shall be subject to the consent (not to be unreasonably withheld) of the Reorganized Debtors. Any successor Litigation Trustee so appointed shall consent to and accept its appointment as successor Litigation Trustee, which may be done by e-mail or through acquiescence in not objecting to a notice for approval of its appointment as successor Litigation Trustee, and accept in writing the terms of this Agreement.  A successor Litigation Trustee may be appointed to serve only on an interim basis.

**Section 9.06   Powers and Duties of Successor Litigation Trustee**. A successor Litigation Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order. Notwithstanding anything to the contrary herein, a removed, resigned, or resigning Litigation Trustee shall, when requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Trustee under the Litigation Trust all the estates, properties, rights, powers and trusts of such predecessor Litigation Trustee.

**Section 9.07   Trust Continuance**. The resignation, death, incapacitation, dissolution, liquidation, or removal of the Litigation Trustee shall not terminate the Litigation Trust, revoke any existing agency created pursuant to this Agreement or invalidate any action previously taken by the Litigation Trustee.

**Section 9.08   Compensation of Litigation Trustee and Costs of Administration**. The Litigation Trustee shall receive fair and reasonable compensation for its services, which shall be a charge against, and paid out of, the Litigation Trust Assets, and which compensation arrangement shall be acceptable to the Committee and the Majority Consenting 2026 Noteholders. All costs, expenses and obligations incurred by the Litigation Trustee (including those of any professionals employed by the Litigation Trustee to assist in administering the Litigation Trust, in carrying out

34

the Litigation Trustee's responsibilities under this Agreement or in any manner connected, incidental or related thereto) shall be paid by the Litigation Trust from the Litigation Trust Assets prior to any distribution to the Litigation Trust Beneficiaries.


## ARTICLE X
## Trust Duration


**Section 10.01 Duration**. Once the Litigation Trust becomes effective upon the Effective Date of the Plan, the Litigation Trust and this Agreement shall remain and continue in full force and effect until the Litigation Trust is terminated.


**Section 10.02 Termination**.  The Litigation Trust, the Litigation Trust Board, if any, and the Litigation Trust shall be discharged or dissolved, as the case may be, at such time as (i) the Litigation Trust has liquidated or abandoned all Litigation Trust Assets, (ii) the Litigation Trustee determines, with the approval of the Litigation Trust Board, if any, that the pursuit of Excluded Claims is not likely to yield sufficient additional Litigation Trust proceeds to justify further pursuit of such Excluded Claims, (iii) all distributions required to be made by the Litigation Trust under the Plan have been made; *provided*, *however*, that in no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date unless (x) the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-months prior to the beginning of any extension period), orders that a fixed period extension (not to exceed two (2) years, including any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or a "should" level opinion of counsel satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes) or (y) after the closing or dismissal of the Chapter 11 Cases, the Litigation Trustee obtains a favorable private letter ruling from the Internal Revenue Service or a "should" level opinion of counsel satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes, in either case, is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets.  If at any time the Litigation Trustee determines, in reliance upon the advice of such professionals as the Litigation Trustee may retain and with the consent of the Litigation Trust Board, if any, that the expense of administering the Litigation Trust so as to make a final distribution to the Litigation Trust Beneficiaries is likely to exceed the value of the Litigation Trust Assets then remaining in the Litigation Trust, the Litigation Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Litigation Trust, (ii) donate any balance in accordance with Section 3.16 of this Agreement and (iii) dissolve the Litigation Trust (all of the foregoing actions in clauses (i) through (iii) being referred to as the "**Dissolution Process**").  Such date upon which the Litigation Trust shall finally be dissolved shall be referred to herein as the "**Termination Date**."  Upon the Termination Date, the Litigation Trustee and the Litigation Trust Board, if any, shall have no further responsibility in connection with the Litigation Trust except to the extent set forth in Section 10.05 of this Agreement.

**Section 10.03 Extension**.  Subject to the limitations in Section 10.02, the term of the Litigation Trust set forth in Section 10.02 may be extended if such extension is (i) for a finite period of time, (ii) preceded by the Litigation Trustee's determination that the continued existence beyond such period would not adversely affect the status of the Litigation Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d); and (iii) notice of such extension is provided to the Bankruptcy Court and all persons on the Bankruptcy Rule 2002 service list by the beginning of the extended term.

**Section 10.04 No Termination by Litigation Trust Beneficiaries**. The Litigation Trust may not be terminated at any time by the Litigation Trust Beneficiaries.

**Section 10.05 Continuance of Trust for Winding Up; Discharge and Release of Litigation Trustee and Litigation Trust Board**. During the Dissolution Process, the Litigation Trustee, solely for the purpose of liquidating and winding up the affairs of the Litigation Trust, shall continue to act as such until its duties have been fully performed.  During the Dissolution Process, the Litigation Trustee shall continue to be entitled to receive compensation as provided for by Section 9.08 of this Agreement.  Upon distribution of all the Litigation Trust Assets, the Litigation Trustee shall retain the books, records and files that shall have been delivered or created in connection with the administration of the Litigation Trust to the extent not otherwise required to be handled by the Litigation Trustee in accordance with Section 3.11 hereof.  Except as otherwise specifically provided herein, upon the Termination Date, the Litigation Trustee and the Litigation Trust Board, if any, shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Litigation Trust Beneficiaries as provided herein, the Litigation Trust Interests shall be cancelled, and the Litigation Trust will be deemed to have dissolved.

**ARTICLE XI**
**Miscellaneous**

**Section 11.01 Cumulative Rights and Remedies**. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

**Section 11.02 Notices**. All notices to be given to Litigation Trust Beneficiaries may be given by e-mail, ordinary mail or delivered personally to the Litigation Trust Beneficiaries at the addresses appearing on the books kept by the Litigation Trustee. Any notice or other communication which may be or is required to be given, served, or sent pursuant to this Agreement or the Plan shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

(a)    If to the Litigation Trust or the Litigation Trustee:

[●]

36

(b)        If to the Reorganized Debtors:

Enviva Inc.
7500 Old Georgetown Road, Suite 1400
Bethesda, MD 20814
Attention:        Jason E. Paral
Email:                Jason.Paral@envivabiomass.com

With a copy (which does not constitute notice) to:

Paul M. Basta
Andrew M. Parlen
Paul Paterson
Michael J. Colarossi
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the America
New York, NY 10019
+1 212 373 3000
+1 212 757 3990
pbasta@paulweiss.com
aparlen@paulweiss.com
ppaterson@paulweiss.com
mcolarossi@paulweiss.com

And to

Peter J. Barrett
Jeremy S. Williams
Kutak Rock LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
+1 804 644 1700
+1 804 783 6192
peter.barrett@kutakrock.com
jeremy.williams@kutakrock.com

or to such other address as may from time to time be provided in written notice by the Litigation Trustee.

**Section 11.03 Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws, including all matters of validity, construction, and administration.

**Section 11.04 Successors and Assigns**. This Agreement shall inure to the benefit of and shall be binding upon the Parties hereto and their respective successors and assigns.

37

**Section 11.05 Execution**. All funds in the Litigation Trust shall be deemed in *custodia legis* until such times as the funds have actually been paid to or for the benefit of a Litigation Trust Beneficiary, and no Litigation Trust Beneficiary or any other Person can execute upon, garnish or attach the Litigation Trust Assets or the Litigation Trust in any manner or compel payment from the Litigation Trust or the Litigation Trustee except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

**Section 11.06 Amendment**. This Agreement may be amended by written agreement of the Litigation Trustee and the Reorganized Debtors or by order of the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or Confirmation Order.

**Section 11.07 No Waiver**. No failure or delay of any Party hereto to exercise any right or remedy pursuant to this Agreement shall constitute a waiver of or affect such right or remedy.

**Section 11.08 Severability**. If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

**Section 11.09 Further Assurances**. Without limitation of the generality of Article II of this Agreement, the Parties hereto agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated thereby.

**Section 11.10 Counterparts**. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**Section 11.11 Retention of Jurisdiction**. After the Effective Date and to the fullest extent permitted by law, to the extent the Bankruptcy Court elects to exercise jurisdiction, the Bankruptcy Court shall retain exclusive jurisdiction over (a) the Litigation Trust, including the performance of the duties of the Litigation Trustee and overseeing the Litigation Trust, (b) the interpretation of this Agreement and all issues arising under or related to this Agreement, and (c) any adversary proceedings or other litigation arising under or related to this Agreement. If the Bankruptcy Court is without jurisdiction or declines to exercise jurisdiction, any action to enforce or interpret this Agreement will be brought in (a) a court of competent jurisdiction in the State of Texas in Harris County, (b) the United States District Court for the Southern District of Texas or, (c) solely if the foregoing courts are without jurisdiction, then any court of competent jurisdiction as may be selected by the Litigation Trustee.

**Section 11.12 Securities Laws**. The Parties hereto intend that all interests in the Litigation Trust Assets shall not be "securities" under applicable laws, but none of the Parties hereto represent

38

or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan. Subject to the restrictions contained herein, the Litigation Trustee may amend this Agreement to make such changes as are deemed necessary or appropriate, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirements of the pertinent securities laws.

**Section 11.13 Confidentiality**. Except as required in the performance of its duties, the Litigation Trustee shall, while serving as trustee under this Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Litigation Trust Assets relate or of which he has become aware in its capacity as trustee.

39

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date set forth above.

**REORGANIZED DEBTORS**:


By:_____

    Jason E. Paral
    Executive Vice President, General Counsel, and
    Secretary, Enviva Inc.
    On behalf of the Reorganized Debtors


**LITIGATION TRUSTEE**:


By:_____

    [●], solely in their capacity as Litigation Trustee
    under this Agreement