Paul M. Basta (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192

*Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENVIVA INC., *et al.*, | ) | Case No. 24-10453 (BFK) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

## ORDER CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF
## REORGANIZATION OF ENVIVA INC. AND ITS DEBTOR AFFILIATES

WHEREAS Enviva Inc. and its debtor affiliates in the above-captioned chapter 11 cases

(collectively, the "<u>Debtors</u>"),[2] having:

      a.    commenced the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") by
           filing voluntary petitions for relief under chapter 11 of title 11 of the United States
           Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the

---

[1]    Due to the large number of Debtors in these jointly administered Chapter 11 Cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/enviva. The location of the Debtors' corporate headquarters is:  7500 Old Georgetown Road, Suite 1400, Bethesda, MD 20814.

[2]    Unless otherwise noted, capitalized terms not defined in these findings of fact, conclusions of law, and order (collectively, the "<u>Confirmation Order</u>") shall have the meanings ascribed to them in the Plan (as defined herein) or the Confirmation Brief (as defined herein), as applicable.  The rules of interpretation set forth in <u>Article I.B</u> of the Plan shall apply to this Confirmation Order.

Eastern District of Virginia (the "Court") on March 12, 2024 and March 13, 2024 (collectively, the "Petition Date");

b.   continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.   filed, on August 30, 2024, the *Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1054] (as may be amended, supplemented or modified from time to time, the "Plan");

d.   filed, on August 30, 2024, the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1055];

e.   filed, on August 30, 2024, the *Debtors' Motion for Entry of an Order (I) Approving (A) the Adequacy of the Disclosure Statement, (B) the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) the Forms of Ballots, Other Solicitation Materials, and Notices in Connection Therewith, (D) the Scheduling of Certain Dates with Respect Thereto, (E) the Rights Offering Procedures, (F) the Overbid Procedures, and (II) Granting Related Relief* [Docket No. 1057] (the "Solicitation Procedures Motion");

f.   filed, on August 31, 2024, the *Debtors' Motion for Entry of an Order (I) Authorizing the (A) Debtors' Entry Into, and Performance Under, the Backstop Commitment Agreement, (B) Debtors' Entry Into, and Performance Under, the Exit Facility Commitment Letter, and (C) the Payment and Allowance of Related Premiums, Fees and Expenses as Administrative Expense Claims or Superpriority Administrative Expense Claims, as Applicable; and (II) Granting Related Relief* [Docket No. 1058] (the "Backstop Motion") and the *Declaration of Christian Tempke in Support of the Debtors' Motion for Entry of an Order (I) Authorizing the (A) Debtors' Entry Into, and Performance Under, the Backstop Commitment Agreement, (B) Debtors' Entry Into, and Performance Under, the Exit Facility Commitment Letter, and (C) the Payment and Allowance of Related Premiums, Fees and Expenses as Administrative Expense Claims or Superpriority Administrative Expense Claims, as Applicable; and (II) Granting Related Relief* [Docket No. 1059];

g.   filed, on September 25, 2024, the *Notice of Filing of Revised Exhibit to Debtors' Motion for Entry of an Order (I) Approving (A) the Adequacy of the Disclosure Statement, (B) the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) the Forms of Ballots, Other Solicitation Materials, and Notices in Connection Therewith, (D) the Scheduling of Certain Dates with Respect Thereto, (E) the Rights Offering Procedures, (F) the Overbid Procedures, and (II) Granting Related Relief* [Docket No. 1120];

h.   filed, on October 3, 2024, the *Debtors' Motion for Entry of an Order (I) Approving the Settlement Agreement Between the Debtors, Hancock, and MGT Under Federal*

*Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* [Docket No. 1149];

i. filed, on October 4, 2024, the *Notice of Filing of Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1150];

j. filed, on October 4, 2024, the *Notice of Filing of Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1151];

k. filed, on October 4, 2024, the *Notice of Filing of Revised Proposed Order (I) Approving (A)  the Adequacy of the Disclosure Statement, (B) the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) the Forms of Ballots, Other Solicitation Materials, and Notices in Connection Therewith, (D) the Scheduling of Certain Dates with Respect Thereto, (E) the Rights Offering Procedures, (F)  the Overbid Procedures, and (II) Granting Related Relief* [Docket No. 1152];

l. filed, on October 4, 2024, the *Notice of Filing of Revised Proposed Order (I) Authorizing the (A) Debtors' Entry Into, and Performance Under, the Backstop Commitment Agreement, (B) Debtors' Entry Into, and Performance Under, the Exit Facility Commitment Letter, and (C) the Payment and Allowance of Related Premiums, Fees and Expenses as Administrative Expense Claims or Superpriority Administrative Expense Claims, as Applicable; and (II) Granting Related Relief* [Docket No. 1153];

m. filed, on October 4, 2024, the *Stipulation and Agreed Order* concerning the Global Settlement [Docket No. 1155];

n. obtained, on October 4, 2024, entry of the *Stipulation and Agreed Order* concerning the Global Settlement [Docket No. 1182] (the "<u>Global Settlement Order</u>");

o. obtained, on October 4, 2024, entry of the *Order (I) Approving (A)  the Adequacy of the Disclosure Statement, (B) the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C)  the Forms of Ballots, Other Solicitation Materials, and Notices in Connection Therewith, (D) the Scheduling of Certain Dates with Respect Therewith, (E) the Rights Offering Procedures, (F)  the Overbid Procedures, and (II) Granting Related Relief* [Docket No. 1183] (the "<u>Disclosure Statement Order</u>") approving the Disclosure Statement, the voting and solicitation procedures and related notices, forms, and ballots (collectively, the "<u>Solicitation Packages</u>"), the Rights Offering Procedures, the Overbid Procedures, and related dates and deadlines;

p. obtained, on October 4, 2024, entry of the *Order (I) Authorizing the (A) Debtors' Entry Into, and Performance Under, the Backstop Commitment Agreement, (B) Debtors' Entry Into, and Performance Under, the Exit Facility Commitment Letter, and (C) the Payment and Allowance of Related Premiums, Fees and Expenses as*

4874-0658-3801.1

*Administrative Expense Claims, and (II) Granting Related Relief* [Docket No. 1184] (the "<u>Backstop Order</u>");

q.  caused the Rights Offering Procedures, Solicitation Packages and notice of the Confirmation Hearing and the deadline for objecting to Confirmation of the Plan to be distributed on or about October 9, 2024 (the "<u>Solicitation Date</u>"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Disclosure Statement Order, as evidenced by, among other things, the *Certificate of Service of Darlene S. Calderon* regarding solicitation materials served on or before October 10, 2024 [Docket No. 1260] (the "<u>Solicitation Package Affidavits</u>");

r.  caused notice of the Confirmation Hearing (the "<u>Confirmation Hearing Notice</u>") to be published in *The Washington Post* and *USA Today* on October 10, 2024, as evidenced by the *Affidavit of Publication of the Notice of Hearing to Consider Confirmation of the Chapter 11 Plan filed by the Debtors and Related Voting and Objection Deadlines in USA Today and the Washington Post* [Docket No. 1259] (the "<u>Publication Affidavit</u>," and together with the Solicitation Package Affidavits, the "<u>Solicitation Affidavits</u>");

s.  filed, on October 14, 2024, the solicitation version of the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1202] (the "<u>Disclosure Statement</u>");

t.  obtained, on October 16, 2024, entry of the *Order (I) Approving the Settlement Agreement Between the Debtors, Hancock, and MGT Under Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* [Docket No. 1218] (the "<u>MGT/Hancock Settlement Order</u>");

u.  filed, on October 23, 2024, the *Notice of Filing of Plan Supplement for the Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1251];

v.  filed, on October 29, 2024, the *Certificate of Service of Ronaldo Lizarraga Angulo* regarding (i) Notice of Rejection of Executory Contract or Unexpired Lease; and (ii) Notice of Cure of Assumed Executory Contract or Unexpired Lease [Docket No. 1261];

w.  filed, on November 5, 2024, the *Notice of Filing of First Amended Plan Supplement for the Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1283] (the "<u>First Amended Plan Supplement</u>");

x.  filed, on November 11, 2024, the *Certificate of Service of Stanley Y. Martinez* regarding: (i) Notice of Rejection of Executory Contract or Unexpired Lease; and (ii) Notice of Cure of Assumed Executory Contract or Unexpired Lease [Docket No. 1338];

y.  filed, on November 12, 2024, the *Notice of Filing of Proposed Order Confirming the Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1354];

z.  filed, on November 12, 2024, the *Debtors' Memorandum of Law in Support of Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1351] (the "Confirmation Brief");

aa.  filed, on November 12, 2024, the *Declaration of James Lee with Respect to the Tabulation of Votes on the Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1353] (the "Voting Report"); and

bb.  filed, on November 12, 2024, the *Declaration of Glenn Nunziata, Interim Chief Executive Officer and Chief Financial Officer of Enviva Inc., in Support of Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. 1352] (the "Nunziata Confirmation Declaration").

This Court having:

a.  entered, on October 4, 2024, the Disclosure Statement Order;

b.  set November 6, 2024, at 4:00 p.m., prevailing Eastern Time, as the deadline for voting on the Plan (the "Voting Deadline");

c.  set November 6, 2024, at 4:00 p.m., prevailing Eastern Time, as the deadline to file objections to the Plan (the "Confirmation Objection Deadline");

d.  set November 12, 2024, at 12:00 p.m., prevailing Eastern Time, as the deadline to file and reply to objections to Confirmation;

e.  set November 13, 2024, at 10:30 a.m., prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

f.  reviewed the Plan (including the Plan Supplement and the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan), the Disclosure Statement, the Solicitation Affidavits, the Confirmation Brief, the Declarations, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

g.  held the Confirmation Hearing;

h.  heard the statements, arguments, and objections made by counsel in respect of Confirmation;

i. considered all oral representations, testimony, documents, filings, and other evidence presented at the Confirmation Hearing;

j. entered rulings on the record at the Confirmation Hearing;

k. overruled any and all objections on the merits to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

l. taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Plan and the Confirmation Hearing and the opportunity for any party-in-interest to object to Confirmation has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law and orders as follows:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

A.    <u>Findings and Conclusions</u>

1.    The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4874-0658-3801.1

**B.**     **Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))**

2.      The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157
and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern
District of Virginia*, dated July 10, 1984.  Confirmation of the Plan is a core proceeding pursuant
to 28 U.S.C. § 157(b), and this Court may enter a Final Order hereon under <u>Article III</u> of the United
States Constitution.  This Court has exclusive jurisdiction to enter a Final Order determining that
the Plan, including the Restructuring and the establishment of the Litigation Trust contemplated
in connection therewith, complies with all of the applicable provisions of the Bankruptcy Code
and should be confirmed and approved.  Venue is proper before the Court pursuant to 28 U.S.C.
§§ 1408 and 1409.  Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C.
§ 157(b)(2).

**C.**     **Eligibility for Relief**

3.      The Debtors are proper entities eligible for relief under section 109 of the
Bankruptcy Code.

**D.**     **Chapter 11 Petitions**

4.      On the Petition Date, each Debtor commenced a voluntary case under chapter 11
of the Bankruptcy Code.  Since the Petition Date, the Debtors have operated their businesses and
managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the
Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these
Chapter 11 Cases.  On March 25, 2024, the Office of the United States Trustee for the Eastern
District of Virginia (the "<u>U.S. Trustee</u>") appointed an Official Committee of Unsecured Creditors
(the "<u>Committee</u>") [Docket No. 173], which appointment was amended on May 23, 2024 [Docket

No. 603].[3]  In accordance with the *Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 84], the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

## E.      Judicial Notice

5.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing. Any resolutions of any objections explained on the record at the Confirmation Hearing are incorporated herein by reference.

## F.      Disclosure Statement Order

6.      On October 4, 2024, this Court entered the Disclosure Statement Order, which, among other things, fixed November 6, 2024, at 4:00 p.m. (prevailing Eastern Time) as the Voting Deadline and the Confirmation Objection Deadline.

## G.      Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation Notices

7.      As evidenced by the Solicitation Affidavits, the Plan, the Disclosure Statement, the Disclosure Statement Order, the ballots for voting on the Plan (the "Ballots"), the Confirmation Hearing Notice, notices of non-voting status, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "Solicitation Materials"), including notice of the Voting Deadline and the Confirmation Objection Deadline, were transmitted and

---

[3]   The Committee currently comprises the following members: (i) Wilmington Trust, N.A., in its capacity as Indenture Trustee for the Exempt Facilities Revenue Bonds (Enviva Inc. Project), Series 2022 (Green Bonds), (ii) Drax Power Limited, and (iii) Ryder Integrated Logistics.

4874-0658-3801.1

served in good faith and in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Rules, and with procedures set forth in the Disclosure Statement Order. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The transmittal and service of the Solicitation Materials complied with the Disclosure Statement Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, conducted in good faith, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

8. The period during which the Debtors solicited acceptances to the Plan was a reasonable and adequate period of time and the manner of such solicitation was an appropriate process for creditors to have made an informed decision to vote to accept or reject the Plan.

**H.    Solicitation**

9. Based on the record before this Court in the Chapter 11 Cases, the Debtors solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and other applicable law, including sections 1125 and 1126 of the Bankruptcy Code. The Debtors and, as applicable, each of their respective agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of New Securities offered, issued, sold, solicited, and/or purchased under the Plan, and therefore, no such parties, individuals, or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer,

9

issuance, sale, solicitation, and/or purchase of the New Securities offered, issued, sold, solicited, and/or purchased under the Plan.

**I.**     **Voting Certifications**

10.     On November 12, 2024, the Debtors filed the Voting Report with the Court, certifying the method and results of the Ballots tabulated for Class 5 (Bond General Unsecured Claims) and Class 6 (Non-Bond General Unsecured Claims) (the "Voting Classes"). As evidenced in the Voting Report, votes to accept or reject, or modify a prior vote with respect to, the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and all other applicable rules, laws, and regulations.

11.     As set forth in the Plan and the Disclosure Statement, only Holders of Claims in the Voting Classes were eligible to vote on the Plan. Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Senior Secured Credit Facility Claims) and Class 4 (NMTC Claims) are Unimpaired and are presumed to have accepted the Plan. Under section 1126(g) of the Bankruptcy Code, Holders of Claims and Interests in Class 8 (Section 510(b) Claims) and Class 10 (Existing Equity Interests) are receiving no distribution under the Plan and are deemed to have rejected the Plan. Holders of Claims and Interests in Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests) are either Unimpaired or Impaired and were not entitled to vote on the Plan, and Holders of such Claims and Interests are presumed to have accepted the Plan or deemed to have rejected the Plan.

**J.**     **Plan Supplement**

12.     The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended pursuant to a filing with the Court), complies with the terms of the Plan, and the Debtors provided good and proper notice of its filing in accordance with the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order, and all other applicable laws, rules, and regulations. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Global Settlement Order and the Restructuring Support Agreement, the Debtors are authorized to alter, amend, update, modify, or supplement the Plan Supplement on or before the Effective Date; *provided* that any Plan Supplement documents filed, altered, amended, updated, modified or supplemented after entry of this Confirmation Order shall not be materially inconsistent with the Plan, the Global Settlement Order or this Confirmation Order. The transmittal and notice of the Plan Supplement (and all documents identified therein) were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and were conducted in good faith. No other or further notice with respect to the Plan Supplement (and all documents identified therein) is necessary or shall be required.

### K.     Modifications to the Plan

13.     Pursuant to, and in compliance with, section 1127 of the Bankruptcy Code, the Debtors have proposed certain modifications to the Plan as reflected therein, including in the Plan Supplement (the "Plan Modifications"). In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially or adversely affect or change the treatment of any Claims or Interests, (d) require re-solicitation of any Holders of Claims, or (e) require that any such Holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Under the circumstances, the form and manner of notice of the Plan Modifications were adequate, and no other or further notice of the Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims that voted

to accept the Plan or that are conclusively presumed to have accepted the Plan, as applicable, are deemed to have accepted the Plan as modified by the Plan Modifications.  No Holder of a Claim that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

14.     To the extent this Confirmation Order contains modifications to the Plan, such modifications were made to address objections and informal comments received from various parties-in-interest.  Modifications to the Plan since the entry of the Disclosure Statement Order are consistent with the provisions of the Bankruptcy Code.  The disclosure of any Plan modifications prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications.  The Plan as modified shall constitute the Plan submitted for Confirmation.

**L.     <u>Objections</u>**

15.     To the extent that any objections (whether formal or informal), reservations of rights, statements, or joinders with respect to Confirmation of the Plan have not been adjourned, resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein, they are hereby overruled on the merits based on the record before the Court.

**M.     <u>Burden of Proof</u>**

16.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.  Each witness who testified or submitted a declaration on behalf of the Debtors or any other party, in support of the Plan and Confirmation, in connection with the

Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in their testimony.

**N.**    **Bankruptcy Rule 3016**

17.    The Plan and all modifications thereto are dated and identify the Debtors as proponents of the Plan, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).  The discharge, release, injunction, and exculpation provisions of the Plan are set forth in bold therein and in the Disclosure Statement, thereby complying with Bankruptcy Rule 3016(c).

**O.**    **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))**

18.    The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.  More particularly:

**(i)**    **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))**

19.    The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  As required by section 1123(a)(1) of the Bankruptcy Code, other than Administrative Claims (including Allowed Professional Fee Claims, Restructuring Expenses and the Rights Offering Backstop Commitment Premium), DIP Facility Claims, and Priority Tax Claims, which need not be classified, <u>Article III</u> of the Plan designates ten (10) Classes of Claims and Interests.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for improper purposes, and such Classes do not unfairly discriminate between or among Holders of Claims and Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

4874-0658-3801.1

### (ii) Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))

20.     Article III of the Plan specifies that Claims and Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Senior Secured Credit Facility Claims), Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests) are Unimpaired under the Plan, thereby satisfying the requirements of section 1123(a)(2) of the Bankruptcy Code.  Class 3 (Senior Secured Credit Facility Claims) and Class 4 (NMTC Claims) are Unimpaired and are presumed to have accepted the Plan.  Under section 1126(g) of the Bankruptcy Code, Holders of Claims and Interests in Class 8 (Section 510(b) Claims) and Class 10 (Existing Equity Interests) are receiving no distribution under the Plan and are deemed to have rejected the Plan.  Holders of Claims and Interests in Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests) are either Unimpaired or Impaired and were not entitled to vote on the Plan, and Holders of such Claims and Interests are presumed to have accepted the Plan or deemed to have rejected the Plan.

### (iii) Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))

21.     Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including of Class 5 (Bond General Unsecured Claims), Class 6 (Non-Bond General  Unsecured Claims), Class 7 (Intercompany Claims), Class 8 (Section 510(b) Claims), and, as applicable, Class 9 (Intercompany Interests) and Class 10 (Existing Equity Interests), thereby satisfying the requirements of section 1123(a)(3) of the Bankruptcy Code.

### (iv) No Discrimination (11 U.S.C. § 1123(a)(4))

22.     Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class except to the extent that a Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.   Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

4874-0658-3801.1

### (v)    Adequate Means for Plan Implementation (11 U.S.C. § 1123(a)(5))

23.    The Plan and the various documents and agreements included in the Plan Supplement and/or entered into in connection with the Plan provide adequate means for the Plan's execution and implementation, including, without limitation: (a) the consummation of the Restructuring (including the Restructuring Transactions Exhibit included in the Plan Supplement); (b) the execution and delivery of Definitive Documents (including the Litigation Trust Agreement), as applicable, including those agreements or other documents of merger, amalgamation, consolidation, contribution, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (c) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (d) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, contribution, restructuring, disposition, transfer, conversion, amalgamation, arrangement, sale, purchase, liquidation, continuance, or dissolution pursuant to applicable state or local law, if necessary, in each case in accordance with the terms of the Plan; (e) the issuance of the New Securities; (f) the cancellation of certain existing agreements, obligations, instruments, and Interests; (g) the formation of the Litigation Trust in accordance with the terms of the Litigation Trust Agreement and the Plan; (h) the continued vesting of the assets of the Debtors' Estates in the Reorganized Debtors or the transfer of the Litigation Trust Assets to the Litigation Trust, as applicable and pursuant to the terms of the Plan Documents; (i) the entry into the Alternative Exit Debt Financing (as defined herein); and (j) all other actions that the Debtors determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan. Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

### (vi)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))

24.    To the extent required under section 1123(a)(6) of the Bankruptcy Code, no non-voting equity securities shall be issued pursuant to the New Organizational Documents. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### (vii)    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))

25.    The Plan Supplement and <u>Article IV.L</u> of the Plan set forth the manner of selection of the directors and officers of the Reorganized Debtors.  From and after the Effective Date, each such director and officer shall serve and shall be appointed pursuant to the terms of their respective charters and bylaws, limited liability company agreements, or other formation and constituent documents, including the New Organizational Documents and applicable laws of the respective Reorganized Debtor's jurisdiction of formation.  With respect to the Litigation Trust, the Litigation Trustee was selected by the Committee, with the reasonable consent of the Majority Consenting 2026 Noteholders and the RWE Committee, and shall be appointed as of the Effective Date in accordance with the Litigation Trust Agreement and the Plan.  The Litigation Trustee shall report to the Litigation Trust Board comprised of (a) two (2) members appointed by the Majority Consenting 2026 Noteholders and (b) one (1) member appointed by the Committee, which member shall be mutually agreeable to the RWE Committee; *provided* that the Majority Consenting 2026 Noteholders may, in their sole discretion, elect not to establish a Litigation Trust Board, in which case the Litigation Trustee shall be the sole governor of the Litigation Trust; *provided further* that notwithstanding anything to the contrary herein, the Plan or the Plan Supplement, the Litigation Trust Board Members, if any, may be appointed post-Effective Date.  The appointment, employment, or manner of selection of such individuals is consistent with the interests of Holders of Claims and Interests and with public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

4874-0658-3801.1

P.    **Discretionary Contents of the Plan (11 U.S.C. § 1123(b))**

26.    The Plan contains various provisions that may be construed as discretionary but not necessary for Confirmation under the Bankruptcy Code.  Each such discretionary provision complies with section 1123(b) of the Bankruptcy Code and is not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the Plan complies with section 1123(b).

(i)    **Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1))**

27.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

(ii)    **Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))**

28.    Article V.A of the Plan provides, except as otherwise provided in the Plan or any contract, instrument, release or other agreement or document entered into in connection with the Plan, that all of the Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date, other than: (a) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, subject to the consent of the Majority Consenting 2026 Noteholders; (b) those that have been previously rejected or assumed by a Final Order or otherwise in accordance with the Assumption and Rejection Procedures Order; (c) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (d) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; or (e) those that have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto.  The Plan also provides that the assumption or rejection of all Executory Contracts or Unexpired Leases in the Chapter 11 Cases or in the Plan shall be determined by the Debtors, with the consent of the Majority Consenting 2026 Noteholders.

4874-0658-3801.1

29.     The Plan further provides that at any time through and including 60 Business Days after the Effective Date, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases.

**(iii)     Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))**

30.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, including the releases set forth in Article VIII thereof, except as stated otherwise in the Plan or this Confirmation Order, the provisions of the Plan and this Confirmation Order (including the terms of the Global Settlement) shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan.  Such compromises and settlements are the product of extensive arm's-length, good faith negotiations and are fair, equitable, reasonable and in the best interests of the Debtors and their Estates, and are essential to Confirmation of the Plan.

31.     The releases of (a) the Debtors' and Reorganized Debtors' current or former Affiliates, in each case solely in its capacity as such and by reason of its capacity as such, (b) each such Person's or Entity's current and former directors, managers, officers, managed accounts and funds, predecessors, successors and assigns, subsidiaries, and (c) with respect to each such Person or Entity in the foregoing clause (b), each such Person or Entity's current and former directors, officers, managers, members, principals, equity holders, employees, independent contractors, subcontractors, agents, board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as

such (collectively, the "Debtor Related Parties") are an integral component of the settlements and compromises embodied in the Plan. The Debtor Related Parties: (a) made substantial and valuable contributions to the Debtors' restructuring and the Estates, including through extensive negotiations with various stakeholders, and ensured the uninterrupted operation of the Debtors' business during the Chapter 11 Cases; (b) invested significant time and effort to make the Debtors' restructuring a success and preserve the value of the Debtors' Estates in a challenging operating environment; (c) attended and, in certain instances, participated in Court hearings; (d) attended numerous board meetings related to the restructuring and directed the restructuring negotiations that led to the Restructuring Support Agreement, the Global Settlement, the Rights Offering Backstop Agreement, the Alternative Exit Debt Financing and the commitment letter in respect thereof, and the Plan; (e) are entitled to indemnification from the Debtors under applicable law, organizational documents, and agreements; (f) invested significant time and effort in the preparation of the Plan, the Disclosure Statement, all support analyses, and the numerous other pleadings filed in the Chapter 11 Cases, thereby ensuring the smooth administration of the Chapter 11 Cases; and (g) are entitled to all other benefits under any employment contracts with the Debtors. The releases of the Debtor Related Parties contained in the Plan have the consent of the Debtors and the Releasing Parties and are in the best interests of the Estates.

32.      Similarly, the releases of the other Released Parties are an integral component of the settlements and compromises embodied in the Plan and are given for good and valuable consideration provided by the Released Parties. The releases granted by the Releasing Parties described in Article VIII.E of the Plan (the "Third-Party Release") facilitated participation by the Released Parties in both the Plan and the chapter 11 process and were critical in reaching consensus to support the Plan. The releases in favor of the Released Parties, including, among others, the

DIP Creditors and the Restructuring Support Parties, were a necessary element of consideration

that the DIP Creditors and the Restructuring Support Parties required as a condition to, as

applicable, agreeing to support the Plan and entering into the Restructuring Support Agreement,

the Rights Offering Backstop Agreement, the AHG Exit Facility (as defined below), the Ad Hoc

Group Commitment Letter (as defined below) and the Alternative Exit Debt Financing (as defined

herein) and the commitment letter in respect thereof.  Among other things, certain of the Released

Parties have provided DIP financing, agreed to elect to participate in the DIP Tranche A Equity

Participation, provide exit financing commitments through the Rights Offering Backstop

Agreement, the AHG Exit Facility, the Ad Hoc Group Commitment Letter and the Alternative

Exit Debt Financing, or otherwise facilitate the implementation of the Restructuring transactions

contemplated by the Plan to position the Debtors for future success post-emergence.  The releases

of the Released Parties contained in the Plan have the consent of the Debtors and the other

Releasing Parties and are in the best interests of the Debtors' Estates.

### (iv)    The Global Settlement

33.    The Global Settlement, the terms of which are incorporated in the Plan and the

Global Settlement Order, is the culmination of hard-fought, arm's-length, good faith negotiations

among the Debtors, the Ad Hoc Group, the Committee and the RWE Committee.  The Global

Settlement resolves all actual and potential disputes concerning, without limitation, (i) the

litigation and disputes relating to the Final DIP Order and DIP Appeal; (ii) the valuation of the

Reorganized Debtors, Subscription Rights, and New Securities; (iii) the scope of the releases set

forth in the Plan; and (iv) any and all disputes that might be raised impacting the allocation of

value among the Debtors and their respective assets.  The compromises and settlements included

in the Global Settlement are each (a) fair, equitable, and reasonable; (b) integrated with and

dependent on all other compromises and settlements contemplated in connection with the Plan;

(c) necessary and integral to the Plan and the success of the Chapter 11 Cases; and (d) in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

34.    The Global Settlement reflects a fair and balanced resolution of some of the most difficult issues in these Chapter 11 Cases.  Each of the Debtors have undertaken a thorough, independent review of the settlements and compromises contained in the Global Settlement and have determined, in the valid exercise of their business judgment, that entry into the Global Settlement is in the best interests of the Debtors' Estates and their creditors.

35.    Accordingly, based upon the full record of the Chapter 11 Cases, and in consideration for the distributions and other benefits provided under the Plan, this Confirmation Order constitutes a finding by the Court that the Global Settlement incorporated in the Plan and Plan Supplement is in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest, because, among other things: (a) the Global Settlement reflects a reasonable balance between the possible success of litigation with respect to each of the Claims and disputes settled thereunder, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent the Global Settlement, there is a likelihood of complex and protracted litigation, with attendant expense, inconvenience and delay that have the possibility to derail the Debtors' reorganization efforts; (c) each of the parties supporting the Global Settlement, including the Debtors, the Ad Hoc Group, the Committee, and the RWE Committee, are represented by counsel that are recognized as being knowledgeable, competent and experienced; and (d) the Global Settlement is the product of arm's-length bargaining and good-faith negotiations between sophisticated parties.  All documents and agreements necessary to implement the applicable terms of the Global Settlement, including, but not limited to, the Litigation Trust Agreement and any

supplemental documentation contemplated thereby, are essential elements of the Global Settlement and the Plan, and have been negotiated in good faith, at arm's length, and without collusion or fraud, and entry into and consummation of the transactions contemplated thereby is in the best interests of the Debtors, their Estates, and holders of General Unsecured Claims and shall, upon completion of documentation and execution, be valid, binding, and enforceable and not be in conflict with any federal, state, foreign, or local law.  Based on the foregoing, the Global Settlement satisfies the requirements for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

### (v)    Debtor Release

36.    The releases of Claims and Causes of Action by the Debtors described in Article VIII.D of the Plan (the "Debtor Release") are (a) essential to the Confirmation of the Plan; (b) represent a valid exercise of the Debtors' business judgment and otherwise satisfy the requirements of Bankruptcy Rule 9019; (c) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (e) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Debtors, the Reorganized Debtors, the Estates, or any other party acting derivatively on behalf of any of the foregoing asserting any Claims or Cause of Action released pursuant to the Debtor Release.

37.    The Debtor Release is an integral part of the Plan and is in the best interests of the Debtors' Estates as a component of the comprehensive settlement implemented under the Plan. The probability of success in litigation with respect to the released Claims and Causes of Action, when weighed against the costs, supports the Debtor Release.  The Plan, including the Debtor

22

Release, was negotiated by sophisticated parties represented by able counsel and advisors, including the Ad Hoc Group and the Committee. The Debtor Release is therefore the result of a hard-fought and arm's-length negotiation conducted in good faith.

38. The Debtor Release appropriately offers protection to parties that contributed to the Debtors' restructuring process. Each of the Released Parties made significant concessions in and contributions to these Chapter 11 Cases. The Debtor Release for the Debtors' directors and officers, is appropriate because the Debtor Related Parties share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, actively participated in meetings, hearings, and negotiations during these Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization.

39. The scope of the Debtor Release is appropriately tailored to the facts and circumstances of the Chapter 11 Cases. The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical importance of the Debtor Release to the Plan. For the avoidance of doubt, notwithstanding anything to the contrary herein, Excluded Claims shall not be released and shall be conveyed and/or transferred to the Litigation Trust as of the Effective Date in accordance with the Plan.

**(vi)    Third-Party Release**

40. The Third-Party Release is an essential provision of the Plan and is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims and Causes of Action released thereby; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders; (d) critical to the overall success of the Plan; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) a bar to any of the Releasing Parties asserting any

Claim or Cause of Action released pursuant to the Third-Party Release; and (h) consistent with

sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

41.     The Third-Party Release is an integral part of the Plan.  Like the Debtor Release,

the Third-Party Release facilitated participation of critical parties-in-interest in both the Plan

process and the chapter 11 process generally.  The Third-Party Release was critical to incentivizing

parties-in-interest to support the Plan by providing critical concessions and funding, and to

preventing costly and time-consuming litigation regarding various parties' respective rights and

interests.  The Third-Party Release was a core negotiation point and instrumental in developing a

Plan that maximized value for all of the Debtors' stakeholders.  The Third-Party Release is

designed to provide finality for the Debtors, the Reorganized Debtors, and the Released Parties.

As such, the Third-Party Release appropriately offers certain protections to parties who

constructively participated in the Debtors' restructuring.

42.     The Third-Party Release is consensual.  The Plan, the Disclosure Statement, and

the opt-in notices, as approved by the Disclosure Statement Order, provide appropriate and specific

disclosure with respect to the Entities, Claims, and Causes of Action that are subject to the

Third-Party Release and no additional disclosure or action is necessary for the Third-Party Release

to take effect.  As evidenced by the Solicitation Affidavits, the Debtors provided actual notice of

the Third-Party Releases to all known parties-in-interest, including all known Holders of Claims

and Interests, as well as published notice in national publications for the benefit of unknown

parties-in-interest, and no further or other notice is necessary.  Additionally, the release provisions

of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure

Statement, and Ballots and the applicable notices.  The following Holders were properly informed

that they would only be found to have consented to the Third-Party Releases if they affirmatively

elected to opt in to such releases: (a) all Holders of Impaired Claims who voted to accept the Plan; (b) all Holders of Impaired Claims who abstained from voting on the Plan, voted to reject the Plan, or are deemed to have rejected the Plan; (c) all Holders of Unimpaired Claims; and (d) all Holders of Interests.

43.     The scope of the Third-Party Release is appropriately tailored to the facts and circumstances of these Chapter 11 Cases, as it explicitly does not provide a release for (a) any post-Effective Date obligations of any party or Entity under the Plan, (b) any Cause of Action specifically listed on the Schedule of Retained Causes of Action, (c) any Excluded Claims, and (d) any lender under the Senior Secured Credit Agreement of any indemnification or contribution claims of the Senior Secured Credit Facility Agent specifically provided for in such agreement.

44.     In light of, among other things, the consensual nature of the Third-Party Release, the critical role of the Third-Party Release in obtaining the requisite support of the Debtors' stakeholders needed to confirm the Plan, and the significant value provided by the Released Parties to the Debtors' Estates, the Third-Party Release is appropriate.

**(vii)     Exculpation**

45.     The exculpation provisions set forth in <u>Article VIII.F</u> of the Plan are essential to the Plan, appropriate under applicable law, and constitute a proper exercise of the Debtors' business judgment.  The exculpation provisions were proposed in good faith, were formulated following extensive, good faith, arm's-length negotiations with key constituents, and are appropriately limited in scope to achieve the overall purpose of the Plan.  Each Exculpated Party made significant contributions to the Chapter 11 Cases, including with respect to the negotiation and implementation of the Restructuring transactions and the Global Settlement embodied in the Plan.  Each Exculpated Party participated in good faith and in compliance with applicable law with regard to the solicitation of votes, and distribution of consideration pursuant to, the Plan and,

25

therefore, is not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. The exculpation provisions do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order of a court of competent jurisdiction to have constituted gross negligence, knowing and intentional fraud or willful misconduct, or for any Excluded Claims. The record in the Chapter 11 Cases fully supports the exculpation provisions, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation arising from their participation in the Chapter 11 Cases and the Debtors' Restructuring and are consistent with the Bankruptcy Code and applicable law.

(viii)    <strong>Injunction</strong>

46.    The injunction provisions set forth in <u>Article IX.F</u> of the Plan are essential to the Plan and are necessary to implement, preserve, and enforce the discharge, release, and exculpation provisions of the Plan. The injunction provisions are appropriately tailored to achieve those purposes.

47.    Notwithstanding anything to the contrary in this Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases, subject to <u>Article VIII.D</u>, <u>Article VIII.E</u> or <u>Article VIII.F</u> hereof, without the Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as

26

applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable.

### (ix)    Lien Releases

48.    The Plan provides that, except as otherwise provided in this Confirmation Order, the Plan, the Plan Supplement, the Exit Facility Documents (including in connection with any express written amendment of any mortgage, deed of trust, Lien, pledge, or other security interest under the Exit Facility Documents), or in any other Definitive Documentation, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, as set forth in Article VIII.C of the Plan (the "Lien Releases").  The provisions of the Lien Releases are appropriate, fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

### (x)    Preservation of Causes of Action

49.    The provisions set forth in Article IV.P of the Plan regarding the preservation of certain Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.  In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action (other than Avoidance Actions against the Released Avoidance Action Parties, which shall be released on the

4874-0658-3801.1

Effective Date of the Plan pursuant to the terms thereof and shall not be Retained Causes of Action) of the Debtors (*provided* that the Litigation Trust shall receive and retain all of the Debtors' and their Estates' rights to commence, pursue, litigate, settle or otherwise resolve, as appropriate, any and all Excluded Claims), whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Retained Causes of Action, as appropriate, shall be preserved notwithstanding the occurrence of the Effective Date.

### (xi)     Other Appropriate Provisions (11 U.S.C. § 1123(b)(6))

50.     The Plan's other discretionary provisions (including to the extent modified by this Confirmation Order) are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Holders of Claims and Interests, (b) allowance of certain Claims, (c) resolution of Disputed Claims, (d) discharge of certain Claims and termination of certain Interests, (e) the establishment of the Litigation Trust, and (e) retention of Court jurisdiction, thereby satisfying the requirements of section 1123(b)(6) of the Bankruptcy Code.

### Q.     Cure of Defaults (11 U.S.C. § 1123(d))

51.     Article V.D of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract or Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Unless otherwise provided by this Confirmation Order, the cure amount identified in the Cure Notice distributed to the applicable non-Debtor counterparty represents the amount, if any, that the Debtors shall pay in full and complete satisfaction of such Cure Claim. Any Cure Claims shall be satisfied on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the non-Debtor counterparty to such Executory Contract or Unexpired Lease may otherwise agree.   Any disputed cure amount will be determined in

accordance with the procedures set forth in Article V.D of the Plan and applicable bankruptcy and

non-bankruptcy law.  As such, the Plan provides that the Debtors will cure, or provide adequate

assurance that the Debtors will promptly cure, defaults with respect to assumed Executory

Contracts or Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code.  The

Debtors provided sufficient notice to the non-Debtor counterparties to the Executory Contracts

and Unexpired Leases to be assumed under the Plan.  Thus, the Plan complies with section 1123(d)

of the Bankruptcy Code.

**R.**    **Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

52.    The Debtors, as proponents of the Plan, have complied with all applicable

provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code,

including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018,

and 3019.

53.    The Debtors and the Debtor Related Parties, as applicable, solicited votes to accept

or reject, and modifications of prior votes with respect to, the Plan after the Court conditionally

approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy

Code and the Disclosure Statement Order.

54.    Each of the Released Parties and Exculpated Parties are deemed to have acted in

"good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance

with the applicable provisions of the Bankruptcy Code and in a manner consistent with the

Disclosure Statement Order, Disclosure Statement, the Plan, the Bankruptcy Code, the Bankruptcy

Rules, and all other applicable rules, laws, and regulations in connection with all of their respective

activities relating to support and consummation of the Plan, including the negotiation, execution,

delivery, and performance of the Restructuring Support Agreement and are entitled to the

protections of section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan. Without limiting the generality of the foregoing, each of the Debtors and the Debtor Related Parties, as applicable, have solicited and tabulated votes (including modified votes) on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and consummation of the Plan, including the negotiation, execution, delivery, and performance of the Restructuring Support Agreement and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, the exculpation provisions set forth in <u>Article VIII.F</u> of the Plan, and all other protections and rights provided in the Plan.

55.     So long as the offering, issuance, and distribution of recoveries under the Plan are made pursuant to, and in compliance with, the Plan, the Debtors and the Debtor Related Parties, as applicable, will have participated in such offering, issuance, and distribution of recoveries in good faith and in compliance with the applicable provisions of the Bankruptcy Code and, therefore, are not, and will not be, on account of such offering, issuance, and distributions, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made thereunder.

**S.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>**

56.     The Debtors have proposed the Plan (including the Plan Supplement and all other documents necessary or appropriate to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the

4874-0658-3801.1

circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, the process leading to its formulation, the process leading to Confirmation, the support of Holders of Claims in the Voting Classes for the Plan and the Committee, and the transactions to be implemented pursuant thereto. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the hearing to approve the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors. The Definitive Documents are the product of extensive negotiations conducted at arm's length among, as applicable, the Debtors, the Ad Hoc Group, the Committee, the RWE Committee and their respective professionals. Further, the Plan's classification, indemnification, settlement, discharge, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and each is integral to the Plan, supported by valuable consideration, and necessary to the Debtors' successful reorganization. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**T.**      **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**

57.      Any payment made or to be made by the Debtors, or by any Person issuing securities or acquiring property under the Plan, for services or for costs and expenses of the Professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by or is subject to the approval of the Court as reasonable, including as set forth in this Confirmation Order, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**U.**     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))**

58.     The identities of Reorganized Enviva Inc.'s initial directors and officers have been adequately disclosed in the Plan Supplement, and the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.  With respect to the Litigation Trust, the Litigation Trustee was selected by the Committee, with the reasonable consent of the Majority Consenting 2026 Noteholders and the RWE Committee, and shall be appointed as of the Effective Date in accordance with the Litigation Trust Agreement and the Plan.

**V.**     **No Rate Changes (11 U.S.C. § 1129(a)(6))**

59.     Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any rate change over which a governmental regulatory commission has jurisdiction.

**W.**     **Best Interests of Holders of Claims and Interests (11 U.S.C. § 1129(a)(7))**

60.     The liquidation analysis attached as Exhibit E to the Disclosure Statement and the other evidence related thereto in support of Confirmation that was presented, proffered, or adduced at or prior to the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses and evidence were prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  Accordingly, the Plan satisfies the "best interests of creditors" test under section 1129(a)(7) of the Bankruptcy Code.

4874-0658-3801.1

**X.**     **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))**

61.     Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Senior Secured Credit Facility Claims) and Class 4 (NMTC Claims) are Unimpaired by the Plan under section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims in such Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Claims in Class 5 (Bond General Unsecured Claims) and Class 6 (Non-Bond General Unsecured Claims) are Impaired by the Plan and, as established by the Voting Certification, have voted to accept the Plan by the requisite numbers and amount of Claims.  Claims and Interests in Class 7 (Intercompany Claims), Class 8 (Section 510(b) Claims), Class 9 (Intercompany Interests) and Class 10 (Existing Equity Interests) are either Unimpaired or Impaired, and Holders of such Claims and Interests, as applicable, are presumed to have accepted the Plan or deemed to have rejected the Plan and were not entitled to vote thereon.  Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**Y.**     **Treatment of Claims Entitled to Priority Under Section 507 of the Bankruptcy Code (11 U.S.C. § 1129(a)(9))**

62.     The treatment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims pursuant to Article II and Article III of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**Z.**     **Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))**

63.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Certifications, each of Class 5 (Bond General Unsecured Claims) and Class 6 (Non-Bond General Unsecured Claims) is Impaired and voted to accept the Plan by the requisite numbers and amounts of Claims, as determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

4874-0658-3801.1

**AA.** **Feasibility (11 U.S.C. § 1129(a)(11))**

64.     The financial projections attached as Exhibit F to the Disclosure Statement and the evidence that was proffered or adduced at or prior to the Confirmation Hearing, including the Declarations: (a) are reasonable, persuasive, and credible; (b) have not been rebutted by other evidence; (c) utilize reasonable and appropriate methodologies and assumptions; (d) establish that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and in the ordinary course of business, and that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.  Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**BB.** **Payment of Fees (11 U.S.C. § 1129(a)(12))**

65.     As set forth in Article II.D of the Plan, the Debtors shall pay, in full in cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  Thereafter, each Reorganized Debtor shall pay any and all U.S. Trustee fees due and owing under section 1930 of the Judicial Code for each quarter, including any such fees payable on account of the Litigation Trust, until such Debtor's or Reorganized Debtor's Chapter 11 Case is converted, dismissed, or a final decree is issued, whichever occurs first.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**CC.** **Retiree Benefits (11 U.S.C. § 1129(a)(13))**

66.     Pursuant to Article IV.S of the Plan, the Reorganized Debtors will continue to pay all obligations on account of retiree benefits (as that term is defined in section 1114 of the

34

Bankruptcy Code), if any, on and after the Effective Date in accordance with applicable law. Therefore, section 1129(a)(13) of the Bankruptcy Code is satisfied.

**DD.**    **Non-Applicability of Certain Sections (11 U.S.C. § 1129(a)(14), (15), and (16)**

67.    The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

**EE.**    **"Cram Down" Requirements (11 U.S.C. § 1129(b))**

68.    The Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1129(a)(8) have not been met, because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the Rejecting Classes (as defined below).

69.    Based upon the evidence proffered, adduced and presented by the Debtors prior to or at the Confirmation Hearing, the Plan does not "discriminate unfairly" against any Holders of Claims and Interests in Class 7 (Intercompany Claims), Class 8 (Section 510(b) Claims), Class 9 (Intercompany Interests), and Class 10 (Existing Equity Interests) (collectively and, to the extent each is deemed to reject the Plan, the "Rejecting Classes"), as required by section 1129(b)(1) of the Bankruptcy Code, because all similarly situated Holders of Claims and Interests will receive substantially similar treatment, and to the extent the Plan treats any Classes differently, there are valid business, legal and factual reasons to do so.

70.    The Plan is also "fair and equitable" with respect to the Rejecting Classes. Specifically, no Holder of Claims or Interests junior to any Rejecting Class is receiving a distribution on account of such Claim or Interest under the Plan, and no Class of Claims or Interests is receiving more than a full recovery on account of its Claims or Interests.

4874-0658-3801.1

71.     The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy

Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the

Plan.

**FF.    Only One Plan (11 U.S.C. § 1129(c))**

72.     The Plan is the only plan filed in the Chapter 11 Cases and, accordingly, satisfies

section 1129(c) of the Bankruptcy Code.

**GG.    Principal Purpose of the Plan (11 U.S.C. § 1129(d))**

73.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of

the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the

Bankruptcy Code.

**HH.    Not Small Business Cases (11 U.S.C. § 1129(e))**

74.     These Chapter 11 Cases are not small business cases and, accordingly,

section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**II.     Satisfaction of Confirmation Requirements**

75.     Based upon the foregoing and all other pleadings and evidence proffered or

adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy

all the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**JJ.     Valuation.**

76.     The valuation analysis attached as Exhibit G of the Disclosure Statement (the

"Valuation Analysis"), the evidence adduced at the Confirmation Hearing, including in the

Valuation Declaration, and the estimated post-emergence enterprise value of the Reorganized

Debtors are reasonable, credible, and such enterprise value shall be dispositive for purposes of

determining the entitlement of any party in interest to value in accordance with section 1129 of the

Bankruptcy Code.  All parties in interest have been given a fair and reasonable opportunity to

challenge the Valuation Analysis.  The Valuation Analysis (a) is reasonable, persuasive, and credible as of the date such analysis was prepared, presented, or proffered and (b) uses reasonable and appropriate methodologies and assumptions.

**KK.** **Plan Implementation**

77.    The terms of the Plan, including the Plan Supplement, and all exhibits and schedules thereto, and all other agreements, instruments, or other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, and as each may be amended, supplemented, or modified, the "Plan Documents"), are incorporated by reference, are approved in all respects, and are non-severable from, mutually dependent on and constitute an integral part of this Confirmation Order.  The Debtors have exercised reasonable business judgment in determining which agreements to enter into (including, without limitation, in connection with the Alternative Exit Debt Financing and the commitment letter in respect thereof) and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have been negotiated in good faith and at arm's length, are fair and reasonable, and are reaffirmed and approved.

78.    The terms of the Plan, the Plan Supplement and all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date (unless different date(s) is/are specified in the applicable foregoing documents, in which case the applicable terms shall be effective and binding on such date(s)) on the Debtors and any Holder of a Claim or Interest, whether or not the Claim or Interest is Impaired under the Plan and whether or not the Holder of such Claim or Interest has accepted the Plan and any other party in interest.

37

**LL.**   **Binding and Enforceable**

79.     The Plan and the Plan Documents have been negotiated in good faith and at arm's

length and, subject to the occurrence of the Effective Date, shall bind (a) any and all Holders of

Claims and/or Interests and each such Holder's respective agents, successors, and assigns (whether

or not the Claim and/or Interest is Impaired under the Plan, whether or not such Holder has

accepted or rejected the Plan, and whether or not such Holder is entitled to a distribution under the

Plan), (b) all Entities that are parties to or are subject to the settlements, compromises, releases and

injunctions described in the Plan, (c) each Entity acquiring property under the Plan or this

Confirmation Order, and (d) any and all non-Debtor parties to Executory Contracts or Unexpired

Leases with the Debtors.  The Plan and the Plan Documents constitute legal, valid, binding, and

authorized obligations of the respective parties thereto and shall be enforceable in accordance with

their terms.   Pursuant to section 1142(a) of the Bankruptcy Code, the provisions of this

Confirmation Order, the Plan, and Plan Documents shall apply and be enforceable notwithstanding

any otherwise applicable non-bankruptcy law.   Subject to the consent and approval rights of

applicable parties set forth in the Plan, the Restructuring Support Agreement and the Global

Settlement Order, the Debtors are authorized to take any action reasonably necessary or

appropriate to consummate the Plan and the transactions described in, contemplated by, or

necessary to effectuate the Plan.

**MM.**   **Vesting of Assets**

80.     Except as otherwise provided in the Plan Documents or this Confirmation Order,

on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property

(including all interests, rights, and privileges related thereto) in each Debtor's Estate, all Retained

Causes of Action to be retained by the Reorganized Debtors (as set forth in the Schedule of

Retained Causes of Action) and any property acquired by any of the Debtors pursuant to the Plan,

4874-0658-3801.1

in each case, other than the Litigation Trust Assets, shall vest in the applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, encumbrances, or other interests, subject to and in accordance with the Plan Documents, including the Restructuring Transactions Exhibit.  On and after the Effective Date, except as otherwise provided in the Plan Documents or this Confirmation Order, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action that vested in the applicable Reorganized Debtor without supervision or approval by this Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the Debtors or the Reorganized Debtors, as applicable, may pay the charges that they incur on or after the Confirmation Date for professional fees, disbursements, expenses, or related support services without application to this Court, but subject in all respects to the Final DIP Order (including the Approved Budget (as defined therein)).

81.     On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Litigation Trust Assets (including all Excluded Claims) and all interests, rights, and privileges related to the Litigation Trust Assets shall vest in the Litigation Trust, free and clear of all Claims, Liens, Interests, charges, encumbrances, or other interests, unless expressly provided otherwise by the Plan Documents (including the Litigation Trust Agreement) or this Confirmation Order, subject to and in accordance with the Plan Documents (including the Litigation Trust Agreement).

**NN.    <u>Federal Rule of Evidence 502(d) Relief</u>**

82.     Pursuant to the Litigation Trust Agreement, on and/or after the Effective Date, the Litigation Trust will receive documents from counsel to the Debtors and/or counsel to a special committee of the Debtors' board of directors in connection with the Litigation Trustee's prosecution of the Excluded Claims.  Certain of these documents may be subject to attorney-client privilege.

4874-0658-3801.1

83.      Granting relief pursuant to Rule 502(d) of the Federal Rules of Evidence ("Federal Rule 502(d)") will aid in the expeditious and efficient production of documents related to the investigation of issues relating to the Excluded Claims.  As part of this Confirmation Order, granting Federal Rule 502(d) relief will limit further expenditure of time and resources by the Court, the Debtors, the Reorganized Debtors, the Litigation Trustee, and other interested parties.

**OO.**   **Executory Contracts and Unexpired Leases**

84.      The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code and Article V of the Plan.  Each assumption of an Executory Contract or Unexpired Lease pursuant to Article V of the Plan shall be legal, valid, and binding upon the Debtors or the Reorganized Debtors, as applicable, and their successors and assigns and each non-Debtor party and its successors and assigns to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.  Except as set forth in separate orders entered by the Court relating to assumption of Executory Contracts or Unexpired Leases (including the Assumption and Rejection Procedures Order), the Debtors have cured or provided adequate assurances that the Debtors or the Reorganized Debtors, as applicable, will cure defaults (if any) under or relating to each Executory Contract and Unexpired Lease assumed under the Plan, except where objections related to cure amounts have been adjourned to a subsequent hearing.

**PP.**   **Rights Offering**

85.      The Debtors solicited subscriptions to the Rights Offering in good faith pursuant to the Rights Offering Procedures set forth in the Disclosure Statement Order, applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable

4874-0658-3801.1

non-bankruptcy laws, rules, or regulations, and the Rights Offering Procedures are fair, equitable, and reasonable and provide for the Rights Offering to be conducted in a manner that is in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

## QQ. The Ad Hoc Group Commitment Letter

86.    The Plan contemplates that on the Effective Date, the Reorganized Debtors will enter into an exit debt facility with certain members of the Ad Hoc Group (the "AHG Exit Facility"), as contemplated in that certain exit facility commitment letter, dated as of August 30, 2024 (the "Ad Hoc Group Commitment Letter"), among the Debtors and certain members of the Ad Hoc Group; *provided* that the Debtors may enter into an alternative exit debt financing that is more favorable to the Debtors and their Estates in accordance with Article IV.B.2.b of the Plan.

## RR. The Alternative Exit Debt Financing

87.    In accordance with Article IV.B.2.b of the Plan and the terms and conditions of the Ad Hoc Group Commitment Letter, the Debtors conducted a best-efforts exit debt financing process and  received a proposal from a consortium of lenders (the "Alternative Exit Debt Financing Commitment Parties") to fund a first-lien, senior secured exit facility in an aggregate principal amount of $1.05 billion (the "Alternative Exit Debt Financing") comprising (i) exit term loans in an aggregate outstanding principal amount equal to $800 million and (ii) delayed draw term loans in an aggregate principal amount equal to $250 million.  On November 2, 2024, Enviva Inc. and Enviva LP entered into that certain exit facility commitment letter (the "Alternative Exit Debt Financing Commitment Letter"), dated as of November 2, 2024, with the Alternative Exit Debt Financing Commitment Parties, which letter is attached as Exhibit A to the Plan Supplement, memorializing the Alternative Exit Debt Financing Commitment Parties' commitment to fund the Alternative Exit Debt Financing.

88.     The Alternative Exit Debt Financing Commitment Letter and Alternative Exit Debt Financing terms contemplated thereby are the result of careful analysis and extensive arm's length negotiations between the Debtors and the Alternative Exit Debt Financing Commitment Parties, are fair and reasonable, are more favorable to the Debtors and their Estates than the exit debt facility terms contemplated by the Ad Hoc Group Commitment Letter, and represent the best terms available to the Debtors.

89.     The Alternative Exit Debt Financing is an essential element of the Plan, is necessary for Confirmation and the Consummation of the Plan, and is critical to the overall success and feasibility of the Plan and the operations of the Reorganized Debtors.  Entry into the Exit Facility Documents, including the Alternative Exit Debt Financing Commitment Letter, is in the best interests of the Debtors, their Estates, and all Holders of Claims or Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the Exit Facility Documents and have provided sufficient and adequate notice of the material terms of the Alternative Exit Debt Financing, as set forth in the Alternative Exit Debt Financing Commitment Letter.  The terms and conditions of the Alternative Exit Debt Financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with fiduciary duties, are supported by reasonably equivalent value and fair consideration, and have been negotiated in good faith and at arm's length.  Any credit extended and loans made or deemed made to the Reorganized Debtors by the Exit Facility Lenders, and any liens, rights and protections granted by the Debtors and the Reorganized Debtors, in each case, pursuant to the applicable Exit Facility Documents, and any fees, expenses, indemnities or other amounts paid or to be paid thereunder, are deemed to have been extended, issued, granted, and made or deemed made in good faith and for legitimate business purposes, shall not be subject to recharacterization for any purposes whatsoever, and shall not

42

constitute preferential transfers, fraudulent conveyances or other avoidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.  Each party to the Exit Facility Documents and the commitments in respect thereof may rely upon the provisions of this Confirmation Order in closing the Alternative Exit Debt Financing.

**SS.**    **New Securities**

90.    The issuance and distribution of the New Securities are essential elements of the Plan and the Debtors' ability to emerge from the Chapter 11 Cases, and are approved in all respects. Entry into the instruments evidencing or relating to the New Securities is in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the instruments evidencing or relating to the New Securities, including the New Organizational Documents, and have provided sufficient and adequate notice of the material terms of such instruments, which material terms were filed as part of the Plan Supplement, final forms of which will be filed upon completion.  The terms and conditions of the instruments evidencing or relating to the New Securities, including the New Organizational Documents, are fair and reasonable, and were negotiated in good faith and at arm's length.  The Debtors and the Reorganized Debtors are authorized, without further approval of this Court, to execute and deliver all agreements, documents, instruments and certificates relating to the New Securities and to perform their obligations thereunder in accordance with, and subject to, the terms of those agreements.

**TT.**    **Disclosure of Facts**

91.    The Debtors have disclosed all material facts regarding the Plan, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

4874-0658-3801.1

**UU.**    **Retention of Jurisdiction**

92.    Except as otherwise provided in the Plan, any of the Plan Documents, or this Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including the matters set forth in Article XII of the Plan.

**VV.**    **Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

93.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**WW.**    **Good Faith**

94.    The Debtors have proposed the Plan with the legitimate and honest purpose of maximizing the value of each of the Debtors' Estates for the benefit of their stakeholders.  The Plan gives effect to many of the Debtors' restructuring initiatives, including implementing value-maximizing restructuring transactions.  Accordingly, the Debtors (and all of their respective stockholders, members, officers, directors, agents, financial advisers, attorneys, employees, partners, Affiliates, and representatives) have been, are, and will continue to act in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have acted in good faith within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code.

4874-0658-3801.1

# **ORDER**

## **BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

95.     <u>Confirmation</u>.   The Plan, attached hereto as **<u>Exhibit 1</u>**, and each of its provisions

are confirmed pursuant to section 1129 of the Bankruptcy Code.   The documents contained in or

contemplated by the Plan, including the Plan Supplement and other Plan Documents, are hereby

authorized and approved.   The terms of the Plan (including the Plan Supplement) are incorporated

herein by reference and are an integral part of this Confirmation Order.   Subject to the consent and

approval rights of applicable parties set forth in the Plan, the Restructuring Support Agreement

and the Global Settlement Order, and except as may be expressly required by the Plan or this

Confirmation Order, the Debtors, the Litigation Trust, the Litigation Trustee or the Litigation

Trustee Board, as applicable, are authorized to implement and consummate the Plan, the Plan

Supplement, and the other Plan Documents, including taking all actions necessary, advisable, or

appropriate to finalize the Plan Documents and to effectuate the Plan and the Restructuring

transactions, without any further authorization or action by any person, body, or board of directors

except as may be expressly required by the Plan or this Confirmation Order.   The terms of the Plan

(including all consent rights provided therein and in the Global Settlement Order), the Plan

Supplement, all exhibits and attachments thereto, and all other relevant and necessary documents

shall be effective and binding as of the Effective Date on all parties-in-interest, including the

Reorganized Debtors and all Holders of Claims and Interests.   Any amendments or modifications

to the Plan described or set forth in this Confirmation Order are hereby approved, without further

order of this Court.   All Holders of Claims and Interests that voted to accept the Plan are

conclusively presumed to have accepted the Plan as it may have been amended or modified by the

foregoing.   The failure to specifically describe, include, or refer to any particular article, section,

or provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish or

4874-0658-3801.1

impair the effectiveness or enforceability of such article, section, or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

96.    <u>Headings</u>.  Headings utilized herein are for convenience and reference only and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

97.    <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to specifically describe, include, or refer to any particular article, section, or provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish or impair the effectiveness or enforceability of such article, section, or provision, nor constitute a waiver thereof, and such provision shall have the same validity, binding effect, and enforceability as every other provision, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

98.    <u>Objections</u>.  All objections to Confirmation of the Plan, and other responses, comments, statements, or reservation of rights, if any, in opposition to the Plan have been overruled in their entirety and on the merits to the extent not otherwise adjourned to a subsequent hearing, withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order, unless otherwise indicated herein.  All withdrawn objections, if any, are deemed withdrawn with prejudice.

99.    <u>Approval of Restructuring Transactions</u>. The Restructuring transactions set forth in the Plan are hereby approved and authorized in all respects.  The Debtors and the Reorganized Debtors, as applicable, are hereby authorized to implement and consummate the Restructuring transactions pursuant to the Plan, the Plan Documents, and this Confirmation Order, and to enter into any transactions and to take any actions as may be necessary or appropriate to effectuate the

Restructuring transactions, including but not limited to the actions described in in Article IV of the Plan. Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept for filing and/or recording any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, the Plan Supplement, and this Confirmation Order. The consummation of the Plan and implementation of the Restructuring transactions are not intended to, and shall not, constitute a "change of control," "change in control," or other similar event under any lease, contract, or agreement to which the Debtor or Reorganized Debtor, as applicable, is a party. To the maximum extent permitted by law (a) to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other rights with respect thereto, and (b) to the extent any provision in any Executory Contract assumed pursuant to the Plan includes a "change of control," "change in control," or other similar provision, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to exercise any other rights with respect thereto. Any actions relating to the formation, conversion and/or reorganization of Reorganized Enviva Inc. and the Reorganized Debtors, including pursuant to a restructuring steps memorandum in the Plan Supplement, are hereby authorized and approved, in accordance with Article IV.C of the Plan.

100. No Action. Pursuant to section 1142(b) of the Bankruptcy Code and other applicable law, this Confirmation Order shall constitute authorization for the Litigation Trust, the

Litigation Trustee, the Litigation Trust Board, the Debtors, or the Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Plan Documents, the Restructuring transactions, this Confirmation Order, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, the Plan Documents, the Restructuring transactions, or this Confirmation Order, and the respective directors, stockholders, managers, or members of the Debtors or the Reorganized Debtors shall not be required to take any actions in connection with the implementation of the Plan, the Plan Documents, or this Confirmation Order.  The Litigation Trust or the Reorganized Debtors, as applicable, may also, consistent with the Plan and Plan Documents, take any additional steps on, prior to, and after the Effective Date to consolidate and streamline their organization.  The Plan Documents are hereby approved, adopted and effective upon the Effective Date.

101.    Plan Supplement. The Plan Supplement, including the Litigation Trust Agreement, and the Definitive Documents are hereby approved, and shall, upon finalization and execution (as applicable), constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms and not in conflict with any law. Without need for further order or authorization of this Court, and subject to the terms of the Restructuring Support Agreement, the Global Settlement Order, the Plan (each including the consent and approval rights of applicable parties set forth therein), and this Confirmation Order, the Debtors are authorized to modify and amend the Plan Supplement and the Definitive Documents through and including the Effective Date, and the Committee, the Litigation Trustee, the Debtors or Reorganized Debtors, as applicable, are authorized to take all actions necessary and appropriate to effect the transactions contemplated therein prior to, on, and following the Effective

48

Date, *provided* that any Plan Supplement documents filed or modified after entry of this Confirmation Order shall not be materially inconsistent with the Plan, the Global Settlement Order or this Confirmation Order.

102.   <u>Plan Modifications</u>. Pursuant to, and in compliance with, section 1127 of the Bankruptcy Code, the Debtors have made certain Plan Modifications as reflected therein.  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially or adversely affect or change the treatment of any Claims or Interests, (d) require re-solicitation of any Holders of Claims or Interests, or (e) require that any such Holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Under the circumstances, the form and manner of notice of the Plan Modifications were adequate, and no other or further notice of the Plan Modifications is necessary or required.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims that voted to accept the Plan or that are conclusively presumed to have accepted the Plan, as applicable, are deemed to have accepted the Plan as modified by the Plan Modifications.  No Holder of a Claim that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

103.   To the extent that this Confirmation Order contains modifications to the Plan, such modifications were made to address objections and informal comments received from various parties-in-interest.  Modifications to the Plan since the entry of the Disclosure Statement Order are consistent with the provisions of the Bankruptcy Code and the Global Settlement Order.  The disclosure of any Plan modifications prior to or on the record at the Confirmation Hearing

constitutes due and sufficient notice of any and all Plan modifications.  The Plan as modified shall constitute the Plan submitted for Confirmation.

104.    <u>Effectuating Documents; Further Transactions</u>. On and after the Effective Date, the Reorganized Debtors and the officers and members of the boards of directors or managers thereof are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring transactions, and the New Securities issued pursuant to the Plan in the name of and on behalf of the Debtors or the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

105.    <u>Filing and Recording</u>.  This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, governmental agencies, secretaries of state, federal, state, and local officials, and all other Persons and Entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

106.    <u>Governmental Approvals</u>. Except as otherwise set forth herein, this Confirmation Order constitutes all approvals and consents required, if any, by the laws, rules, or regulations of

4874-0658-3801.1

any State or any other governmental authority with respect to the implementation and consummation of the Plan and the Plan Documents and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan or the Plan Documents to the fullest extent permitted by law and nothing herein to the contrary shall diminish the authority of section 1142 of the Bankruptcy Code.

107.    <u>Statutory Fees and U.S. Trustee Reporting</u>.  All U.S. Trustee fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, each Reorganized Debtor shall pay any and all such fees for each quarter (including any fraction thereof), including any such fees payable on account of the Litigation Trust, until such Debtor's or Reorganized Debtor's Chapter 11 Case is converted, dismissed, or a final decree is issued, whichever occurs first.  The Reorganized Debtors shall continue to file quarterly, post-confirmation operating reports in accordance with the U.S. Trustee's Region 4 Guidelines for Debtors-in-Possession ("<u>UST Form 11-PCRs</u>").

108.    After the Effective Date, the Litigation Trustee (or any entity appointed by the Litigation Trustee to make disbursements on account of the Litigation Trust Assets) shall be obligated to file with the Court, on a quarterly basis, separate UST Form 11-PCRs on behalf of the Litigation Trust.  For the avoidance of doubt, such reports shall include, without limitation, the disbursements of the Litigation Trust made during the applicable period until such time when the Litigation Trust is dissolved in accordance with the terms of the Litigation Trust Agreement.

109.    <u>Cooperation by DTC</u>.  DTC, including any participants and intermediaries, shall fully cooperate and facilitate any steps required of it as provided for in the Plan.  Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Securities through the facilities of DTC, the Reorganized Debtors need not provide any further

evidence other than the Plan or this Confirmation Order with respect to the treatment of the New

Securities under applicable securities laws.  DTC is required to accept and conclusively rely upon

the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Securities

are exempt from registration and/or eligible for DTC book-entry delivery, settlement and

depository services.  Each Entity that becomes a Holder of New Securities indirectly through the

facilities of DTC will be deemed bound by the terms and conditions of the New Organizational

Documents and shall be deemed to be a beneficial owner of New Securities subject to the terms

and conditions thereof.

110.    Exemption from Transfer Taxes and Recording Fees.   To the fullest extent

permitted by section 1146(a) of the Bankruptcy Code, (a) any issuance, transfer, or exchange of a

Security (including of the Reorganized Enviva Inc. Interests), (b) any grant of collateral under the

Alternative Exit Debt Financing, (c) any creation, modification, consolidation or recording of any

Lien, mortgage, deed of trust, or other security interest, (d) any transfer (whether from a Debtor to

a Reorganized Debtor or to any other Person) of property, (e) the making or assignment of any

lease or sublease, (f) any Restructuring authorized by the Plan, (g) the making or delivery of any

deed or other instrument of transfer under, in furtherance of, or in connection with the Plan,

including (i) any merger agreements; (ii) agreements of consolidation, restructuring, disposition,

liquidation, or dissolution; (iii) deeds; (iv) bills of sale; (v) assignments executed in connection

with any Restructuring occurring under the Plan; or (vi) the other Definitive Documentation, in

each case, pursuant to, in contemplation of, or in connection with, the Plan or the Confirmation

Order, or (h) any transfer to the Litigation Trust or any issuances of Litigation Trust Interests, shall

not, in each case, be subject to any document recording tax, personal property tax, stamp tax,

conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or

use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory

filing or recording fee, or other similar tax or governmental assessment, and upon entry of the

Confirmation Order, the appropriate federal, state or local governmental officials or agents shall

forgo the collection of any such tax or governmental assessment and accept for filing and

recordation any instruments of transfer or other relevant documents without the payment of any

such tax, recordation fee, or governmental assessment.

111.    <u>Exemption from Securities Laws</u>.  Except as otherwise set forth in the Plan or this

Confirmation Order, the New Securities issued under <u>Article III</u> of the Plan (other than any

Unsubscribed Shares, the Reorganized Enviva Inc. Interests issued on account of the Rights

Offering Backstop Commitment Premium, and the MIP Equity) will be issued without registration

under the Securities Act or any similar federal, state, or local law in reliance upon section 1145 of

the Bankruptcy Code (or pursuant to another available exemption from registration under the

Securities Act).  Such Reorganized Enviva Inc. Interests issued under the Plan in reliance upon

section 1145 of the Bankruptcy Code are exempt from, among other things, the registration

requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law

requiring registration prior to the offering, issuance, distribution, or sale of Securities. Pursuant to

section 1145 of the Bankruptcy Code, such Reorganized Enviva Inc. Interests issued under the

Plan in reliance upon section 1145 of the Bankruptcy Code may be sold without registration under

the Securities Act by the recipients thereof, subject to: (1) the provisions of section 1145(b)(1) of

the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the

Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the

rules and regulations of the United States Securities and Exchange Commission, if any, applicable

at the time of any future transfer of such Securities or instruments; (2) the restrictions, if any, on

4874-0658-3801.1

the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents and the Stockholders Agreement (if any); and (3) any other applicable regulatory approvals and requirements

112.    Under Rule 144(a)(1), an "affiliate" of Reorganized Enviva Inc. is a person that directly, or indirectly controls, or is controlled by, or is under common control with Reorganized Enviva Inc. Affiliates (under Rule 144(a)(1)) of Reorganized Enviva Inc. that receive Reorganized Enviva Inc. Interests that will be subject to the requirements of Rule 144 with respect to control securities, including volume limitations, current public information requirements, manner of sale requirements, and filing requirements.  The Reorganized Enviva Inc. Interests issued to Holders of Claims or Interests in exchange for such Claims or Interests, shall be issued in reliance on section 1145 of the Bankruptcy Code.  The MIP Equity will be issued pursuant to a registration statement or an available exemption from registration under the Securities Act and other applicable law.

113.    The Unsubscribed Shares and the Reorganized Enviva Inc. Interests issued on account of the Rights Offering Backstop Commitment Premium will be treated as issued pursuant to Section 4(a)(2) of the Securities Act and/or Regulation D thereunder, will be "restricted securities" subject to restrictions on resale, and may be resold, exchanged, assigned, or otherwise transferred only pursuant to an effective registration statement, under Rule 144 or another available exemption from registration under the federal and state securities laws.

114.    Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Securities are

exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

115.  <u>Litigation Trust Interests</u>.  As set forth in <u>Article IV.O.2.d</u> of the Plan, if it should be determined that the Litigation Trust Interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code shall apply to the Litigation Trust Interests.

116.  <u>Establishment of the Litigation Trust</u>.  On the Effective Date, the Litigation Trust shall be established for the benefit of the Litigation Trust Beneficiaries in accordance with and for the purposes set forth in the Plan and the Litigation Trust Agreement.  All relevant parties, including the Debtors, the Committee, the Litigation Trustee, and the Holders of Litigation Trust Interests, shall take all actions necessary to cause title to the Litigation Trust Assets to be transferred to the Litigation Trust on the Effective Date in accordance with this Confirmation Order, the Litigation Trust Agreement, and the Plan.  The powers, authority, responsibilities, and duties of the Litigation Trust and the Litigation Trustee are set forth in, and shall be governed by, the Litigation Trust Agreement, the Plan, and this Confirmation Order.

117.  <u>Approval of the Litigation Trust Agreement</u>. The Litigation Trust Agreement is hereby approved and shall be effective as of the Effective Date.  The Litigation Trust shall be subject to the continuing jurisdiction of the Court pursuant to the terms of the Litigation Trust Agreement.

118.  <u>Litigation Trust Beneficiaries</u>.  Beneficiaries of the Litigation Trust shall have such rights and interests in and with respect to the applicable Litigation Trust Assets as set forth in the Plan and the Litigation Trust Agreement, as applicable.

119.  <u>Administration of the Litigation Trust</u>.  The Litigation Trustee and, as applicable, the Litigation Trust Board, shall be compensated in the manner set forth in in the Litigation Trust

Agreement, and shall have all powers, rights, duties, and protections afforded to the Litigation Trust Agreement pursuant to <u>Article IV</u> of the Plan and the Litigation Trust Agreement.

120.    <u>Distribution of the Litigation Trust Assets</u>.    On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Debtors and their Estates shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Litigation Trust, the Litigation Trust Assets (including the Excluded Claims and all interests, rights, and privileges related to the Litigation Trust Assets), which transfer shall vest in the Litigation Trust free and clear of Claims, Liens, Interests, charges, encumbrances, other interests, and contractually imposed restrictions, for the benefit of the Litigation Trust Beneficiaries which shall vest in the Litigation Trust, in trust, and consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Litigation Trust Beneficiaries.    No other entity shall have any interest, legal, beneficial or otherwise, in the Litigation Trust Assets upon the assignment and transfer of such assets to the Litigation Trust except as set forth in the Plan or the Litigation Trust Agreement. Upon the transfer of the Litigation Trust Assets and pursuant to the Litigation Trust Agreement, in no event shall any part of the Litigation Trust Assets revert to the Reorganized Debtors.

121.    After the Effective Date, the Litigation Trustee shall distribute the Litigation Trust Assets to the Litigation Trust Beneficiaries pursuant to the procedures set forth in the Litigation Trust Agreement and in accordance with the allocation of Litigation Trust Interests set forth in <u>Article III.B</u> of the Plan and the Litigation Trust Agreement.

122.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Litigation Trust Interests distributable on account of the RWE Claims shall be issued to certain holders of interests in the RWE Claims and/or their respective investment advisors, investment

managers, or affiliates, pursuant to an allocation designated by the Holder of record of the RWE

Claims as of the Confirmation Date to the Debtors in writing.

123.     Federal Rule of Evidence 502(d) Relief.   Pursuant to Federal Rule 502(d), the

production or transfer of any document by any party to the Litigation Trust shall not constitute or

be deemed a waiver or forfeiture of any claim of attorney-client privilege, work product protection,

or any other applicable privilege or protection, either in these Chapter 11 Cases or any other

proceeding.

124.     Any such documents and unredacted information produced pursuant to this

Confirmation Order or the Litigation Trust Agreement may be used by the parties in these Chapter

11 Cases or any other federal or state proceedings, subject to the holder of any privilege asserting

such privilege and clawing the applicable documents back, pursuant to Federal Rule 502(d), and

subject to the Litigation Trust Agreement.

125.     This Confirmation Order shall be interpreted to provide the greatest protection

allowed by Federal Rule 502, or otherwise permitted by law.

126.     The provisions of this Confirmation Order regarding relief pursuant to Federal Rule

502(d) shall survive the occurrence of the Effective Date and entry of a final decree by the Court

closing these Chapter 11 Cases pursuant to Bankruptcy Rule 3022 for any documentation or

material produced to the Litigation Trust by any party.   Neither the occurrence of the Effective

Date nor entry of the final decree by the Court closing the Chapter 11 Cases shall relieve counsel

or other persons obligated hereunder from their responsibilities and obligations pursuant this

Confirmation Order.

4874-0658-3801.1

127.    Nothing in this Confirmation Order granting relief pursuant to Federal Rule 502(d) shall otherwise affect the Debtors' or the Reorganized Debtors' rights or obligations under applicable Law.

128.    <u>Plan Classification Controlling</u>.    The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  All rights of the Debtors and the Reorganized Debtors to seek to reclassify Claims and/or Interests are expressly reserved.

129.    <u>Deemed Acceptance of the Plan as Modified</u>.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to accept the Plan. Subject to the consent and approval rights of applicable parties set forth in the Plan, the Restructuring Support Agreement and the Global Settlement Order, (a) no Holder of a Claim shall be permitted to change its vote as a consequence of Plan modifications (including modifications to the Plan Supplement) and (b) all modifications to the Plan (including the Plan Supplement) made after the Solicitation Date are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

130.    <u>Distributions</u>.  All distributions pursuant to the Plan shall be made in accordance with <u>Article VI</u> of the Plan, and such methods of distribution are approved.

131.    For the avoidance of doubt, with respect to the recovery of Holders of Allowed Bond General Unsecured Claims set forth in <u>Article III.B.5.c.ii</u> of the Plan, any such Holder who did not timely elect to exercise its Subscription Rights in accordance with the Rights Offering Procedures shall be deemed to have elected to receive, and shall receive, in lieu of its Pro Rata

share of Subscription Rights, Cash, in an amount equal to 6.622% of the Holder's Allowed Bond General Unsecured Claim on the Effective Date.

132.   For the avoidance of doubt, except as otherwise provided in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall affect the Debtors', the Reorganized Debtors', or the Litigation Trust's rights regarding any Claims or Interests, including all rights in respect of legal and equitable defenses to, or setoffs or recoupment against, any such Claims or Interests.  Neither the Reorganized Debtors nor the Litigation Trust shall have any duty or obligation to make distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form reasonably acceptable to the Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, any and all documents applicable to such distributions in accordance with Article VI of the Plan and the Litigation Trust Agreement, as applicable, and/or responds to the Debtors', the Reorganized Debtors' or the Litigation Trust's reasonable requests for information necessary to facilitate a particular distribution as set forth in Article VI of the Plan or the Litigation Trust Agreement.

133.   Professional Compensation and Professional Fee Escrow Account.  Article II.B of the Plan is hereby approved in its entirety.

134.   Claims and Interests Administration Responsibilities.   Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors and the Plan Administrator shall together have the sole authority to:  (a) File, withdraw, or litigate to judgment objections to Claims or Interests; (b) object to, compromise, and settle any Disputed Claim (including by Allowing any such settled amount) in accordance with Article VII.B of the Plan, and in doing so may take into consideration, without limitation, the Reorganized Debtors' and Plan Administrators' evaluation of the merits of such Disputed Claim and the expected costs and

4874-0658-3801.1

benefits to the Debtors' Estates and stakeholders of litigating such Disputed Claim; and (c) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court. In any action or proceeding to determine the existence, validity, or amount of any Disputed Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) are preserved as if the Chapter 11 Cases had not been commenced.

135.    <u>Rights Offering</u>. On the Effective Date, the Debtors shall consummate the Rights Offering pursuant to the terms and conditions of the Plan and the Rights Offering Procedures. The consummation of the Rights Offering is conditioned on the consummation of the Plan and satisfaction of the conditions set forth in the Rights Offering Procedures and in the Rights Offering Backstop Agreement, as applicable. On the Effective Date, the rights and obligations of the Debtors under the Rights Offering Backstop Agreement shall vest in the Reorganized Debtors. Further, on the Effective Date, as consideration for the commitments provided under the Rights Offering Backstop Agreement, and subject to and as set forth in the Rights Offering Backstop Agreement and the Rights Offering Backstop Approval Order, Reorganized Enviva Inc. Interests in an amount equal to the Rights Offering Backstop Commitment Premium (which shall be subject to dilution on account of the MIP Equity) shall be distributed to the Rights Offering Backstop Parties.

136.    <u>DIP Tranche A Equity Participation</u>. On the Effective Date, subject to the terms hereof, Reorganized Enviva Inc. Interests shall be distributed to the Holders of the DIP Tranche A Claims that elected to participate in the DIP Tranche A Equity Participation by the DIP Tranche A Equity Participation Election Time, including pursuant to the Rights Offering Backstop Agreement.

4874-0658-3801.1

137.    <u>Approval of the Alternative Exit Debt Financing</u>.  For the reasons set forth in section RR of this Confirmation Order, the Debtors' or Reorganized Debtors' (as applicable) execution and consummation of the Alternative Exit Debt Financing Commitment Letter and the Alternative Exit Debt Financing are hereby approved in their entirety.  Notwithstanding anything to the contrary in the Plan, (i) all references to the "Exit Facility" or "Exit Facilities" in the Plan shall be deemed to be references to the Alternative Exit Debt Financing, (ii) "Exit Facility Commitment Letter" shall be deemed to refer to the Alternative Exit Debt Financing Commitment Letter; *provided* that, as used in <u>Article VIII</u> of the Plan, the term "Exit Facility Commitment Letter" shall refer to both the Ad Hoc Group Commitment Letter and the Alternative Exit Debt Financing Commitment Letter, and (iii) "Exit Facility Agents" shall be deemed to mean, collectively, the administrative agent and collateral agent under the Alternative Exit Debt Financing.

138.    The Debtors and Reorganized Debtors, as applicable, are hereby authorized without further notice to or action, order or approval of the Court to enter into, perform under, and consummate the transactions contemplated by the Alternative Exit Debt Financing and the Exit Facility Documents (including, in each case, the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees, expenses, indemnities and other amounts paid and/or obligated to be paid by the Debtors or Reorganized Debtors, as applicable, in connection therewith), any commitment letters, engagement letters, fee letters, or similar arrangements in connection with the structuring, arranging, negotiation, or implementation of the Alternative Exit Debt Financing (including any undertakings, obligations, indemnities and payments under any such commitment letter, engagement letter, fee letter or similar agreement) and shall (x) execute and deliver on the Effective

Date, as applicable, all agreements, documents, instruments, financing statements, mortgages, security documents, and certificates relating to the Alternative Exit Debt Financing, including the Exit Facility Documents, in each case that are contemplated by the Exit Facility Documents to be executed and/or delivered, as applicable, on the Effective Date and (y) incur and pay any fees, expenses, indemnities, and other amounts paid and/or obligated to be paid in connection therewith. All such documents are approved, incorporated in the Plan and this Confirmation Order by reference, and shall become effective in accordance with their terms and the Plan.  Confirmation of the Plan shall be deemed approval of all obligations to be incurred and fees paid by the Debtors or the Reorganized Debtors in connection with the Alternative Exit Debt Financing, including the treatment of Expense Reimbursement (as defined in the Alternative Exit Debt Financing Commitment Letter) and the indemnity obligations contained in sections 3 and 4 of the Alternative Exit Debt Financing Commitment Letter as superpriority administrative expense claims which, for the avoidance of doubt, shall be *pari passu* with all other superpriority administrative expense claims (other than the DIP Superpriority Claims and the 507(b) Claims (each as defined in the Final DIP Order)).

139.    On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility Documents, and the Exit Facility Documents shall, subject to the satisfaction of the conditions thereof, constitute legal, valid, binding, and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with their respective terms, and such obligations shall not be, and shall not be deemed to be, enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable Law, the Plan, or this Confirmation Order or on account of the Confirmation or Consummation of the Plan. On the Effective Date, all of the Liens and security interests to be granted on the Effective Date in

accordance with the Alternative Exit Debt Financing and the Exit Facility Documents shall (a) be legal, binding, enforceable, and automatically perfected Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents without (i) further approval of the Court, (ii) any approvals, consents or waivers of any other party, or (iii) further corporate, limited liability company or similar action or approval, as applicable, by any Debtor or Reorganized Debtor, (b) be deemed automatically attached and perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, without the necessity of filing or recording any financing statement, assignment, pledge, notice of lien or any similar document or instrument or taking any other action (*provided* that, for the avoidance of doubt, the Reorganized Debtors and the Entities that granted such Liens shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order and shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties), and (c) not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The guarantees, pledges, liens, and other security interests granted to secure the obligations arising under the Exit Facility Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder, shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, recharacterization, or

subordination for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or fraudulent transfers under the Bankruptcy Code or any applicable nonbankruptcy law.

140.    <u>Ad Hoc Group Commitment Letter</u>.  The Debtors' entry into the Ad Hoc Group Commitment Letter was approved pursuant to the Backstop Order and became binding in connection therewith.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors remain bound by their obligations under, and in accordance with, the terms of the Ad Hoc Group Commitment Letter (including all obligations in respect of the Exit Commitment Premium (as defined therein) and all expenses, indemnities and other amounts), and the Debtors and the Reorganized Debtors (as applicable) are hereby authorized and directed, without further notice or action, to perform such obligations and pay such amounts arising therefrom (including in connection with the Debtors' termination of the commitments thereunder in order to consummate the Alternative Exit Debt Financing).

141.    <u>Issuance of New Securities Approved</u>.  On the Effective Date, as applicable, the Reorganized Debtors are authorized to and shall issue the Reorganized Enviva Inc. Interests (including the DIP Tranche A Equity Allocation, the Rights Offering Shares, and the Reorganized Enviva Inc. Interests issued on account of the Rights Offering Backstop Commitment Premium) for distribution or reservation, as the case may be, in accordance with the terms of the Plan, the Restructuring Transactions Exhibit, any DIP Tranche A Equity Participation Agreement, the Rights Offering Backstop Agreement, and the Rights Offering Procedures without the need for any further corporate action.  All Holders of Reorganized Enviva Inc. Interests (whether issued and distributed hereunder, including on account of the DIP Tranche A Equity Participation, or pursuant to the Rights Offering or otherwise, and in each case, whether such Reorganized Enviva

Inc. Interests are held directly or indirectly through the facilities of DTC) shall be deemed to be a party to, and bound by, the Stockholders Agreement in accordance with its terms, without the requirement to execute a signature page thereto; *provided*, that, without in any way reducing the force and effect of the foregoing, the Debtors may, in their discretion and as a means of further assurance (and with the consent of the Majority Consenting 2026 Noteholders) require that such Holders become party to the New Organizational Documents, either as a condition to distribution of the Reorganized Enviva Inc. Interests or at a later date.

142.    All of the Reorganized Enviva Inc. Interests, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable (as applicable).  Each distribution and issuance of the Reorganized Enviva Inc. Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents, any DIP Tranche A Equity Participation Agreement, the Rights Offering Backstop Agreement, and the Rights Offering Procedures, as applicable, which terms and conditions shall bind each Entity receiving such distribution or issuance.

143.    For the avoidance of doubt, the acceptance of Reorganized Enviva Inc. Interests by any Holder of any Claim or Interest or any other Entity shall be deemed as such Holder's or Entity's agreement to the applicable New Organizational Documents as may be amended or modified from time to time following the Effective Date in accordance with their terms.

144.    The amount of Reorganized Enviva Inc. Interests, if any, that will be issued on the Effective Date on account of the Bond General Unsecured Claims Equity Pool will be determined based upon, among other things, the Reorganized Debtors' projected net debt as of the Plan's

Effective Date, as estimated by the Debtors as of the week prior to the estimated Plan's Effective

Date.

145.    <u>New Organizational Documents</u>. To the extent required under the Plan or

applicable non-bankruptcy law, on or promptly after the Effective Date, the Reorganized Debtors

shall file their applicable New Organizational Documents with the applicable Secretaries of State

and/or other applicable authorities in accordance with <u>Article IV.J</u> of the Plan.   The New

Organizational Documents shall, as of the Effective Date, be valid, binding, and enforceable in

accordance with their terms, and each Holder of New Securities shall be bound thereby, in each

case without the need for execution by any party thereto other than the Reorganized Debtors.

146.    <u>Cancellation of Existing Securities and Agreements</u>.  Except as otherwise set forth

in the Plan or the Plan Supplement, on the Effective Date, all Enviva Inc. Interests shall be

canceled, released, discharged, and extinguished, and the Reorganized Enviva Inc. Interests

(including the DIP Tranche A Equity Allocation, the Rights Offering Shares, and the Reorganized

Enviva Inc. Interests issued on account of the Rights Offering Backstop Commitment Premium)

shall be issued pursuant to the Plan.  Except as otherwise provided in the Plan, on the Effective

Date: (a) the obligations of the Debtors under any certificate, security, share, note, bond, credit

agreement, indenture, purchase right, option, warrant, equity security, or other instrument or

document directly or indirectly evidencing, creating or relating to any indebtedness or obligation

of or ownership interest in the Debtors, or giving rise to any Claim or Interest (except such

agreements, certificates, notes, or other instruments or documents evidencing indebtedness or

obligation of or ownership interest in the Debtors that are Reinstated, amended and Reinstated, or

entered into pursuant to the Plan) shall be canceled solely as to the Debtors and their affiliates, and

the Reorganized Debtors shall not have any continuing obligations thereunder, without any need

66

for a Holder or Debtor to take any further action with respect thereto, and the duties and obligations of all parties thereto, including the Debtors or the Reorganized Debtors, as applicable, any non-Debtor Affiliates, and the Prepetition Agents, thereunder or in any way related thereto shall be deemed satisfied in full, canceled, released, discharged, and of no further force or effect; and (b) the obligations of the Debtors or the Reorganized Debtors, as applicable, and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or Interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated amended and Reinstated, or entered into pursuant to the Plan) shall be released and discharged; *provided* that notwithstanding the releases set forth in <u>Article VIII.E</u> of the Plan, Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights, claims, or remedies of the Holder of a Claim or Interest shall continue in effect solely for purposes of (1) enabling Holders of Allowed Claims to receive distributions under the Plan as provided herein and subject to the terms and conditions of the applicable governing document or instrument as set forth therein, (2) allowing and preserving the rights of each of the applicable agents and indenture trustees to (a) make or direct the distributions in accordance with the Plan as provided herein and (b) assert or maintain any rights for indemnification or contribution the applicable agent or indenture trustee may have against the Debtors or the applicable Lenders solely to the extent arising under, and due pursuant to the terms of, the applicable governing document or instrument, (3) preserving the Prepetition Agents' exercise of their rights, claims, causes of action, and interests as against any

money or property distributable to the holders of Allowed Claims, including permitting the Prepetition Agents to maintain, enforce, and exercise any charging liens against such distributions, (4) permitting the Prepetition Agents to enforce any obligation (if any) owed to them under the Plan, (5) permitting the Prepetition Agents to appear in the Chapter 11 Cases or in any proceeding in the Court or any other court relating to the Prepetition Debt Documents in furtherance of the foregoing, and (6) permitting the Prepetition Agents to perform any functions that are necessary to effectuate the foregoing; *provided*, *further*, that nothing in <u>Article IV.H</u> of the Plan shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan or result in any new or additional liability to the Reorganized Debtors; *provided, further*, that nothing in this section shall effectuate a cancellation of any Reorganized Enviva Inc. Interests, Intercompany Interests, Intercompany Claims, or Enviva, LP's equity interest in EWH. Payment of the Minority Lender Group Fee and Expense Reimbursement in accordance with paragraph 13(j) of the Final DIP Order shall be deemed to fully and finally satisfy any claim for expense reimbursement or indemnification held by the Minority Lender Group.

147.    On the Effective Date, each holder of a certificate or instrument evidencing a Claim that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument in accordance with the applicable indenture or agreement that governs the rights of such holder of such Claim without the need for any further action by the Holder thereof. Except as otherwise set forth herein or in the Plan Supplement, such surrendered certificate or instrument shall be deemed canceled as set forth in, and subject to the exceptions set forth in, <u>Article IV.H</u> of the Plan.

148.    Notwithstanding anything to the contrary in <u>Article IV.H</u> of the Plan, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor, as a result

of the cancellations, terminations, satisfaction, releases, or discharges provided for in <u>Article IV.H</u> of the Plan shall be deemed null and void and shall be of no force and effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of a Debtor or any of its counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by such Debtor or Reorganized Debtor, as applicable, pursuant to the Plan or a Final Order of the Court.

149.    <u>Director and Officer Liability Insurance</u>.  All of the Debtors' insurance policies, including D&O Liability Insurance Policies, and any agreements, documents, or instruments relating thereto, shall be treated as and deemed to be Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, and such insurance policies and any agreements, documents, and instruments related thereto shall revest in the Reorganized Debtors.

150.    Notwithstanding anything to the contrary contained in the Plan or this Confirmation Order, nothing shall alter, modify, amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Liability Insurance Policies, including the coverage for defense and indemnity under any of the D&O Liability Insurance Policies which shall remain available to all individuals insured thereunder regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date; *provided* that, for the avoidance of doubt, nothing in the preceding clause shall create any new or additional obligation of any Debtor to indemnify, hold harmless, or create any other obligation of similar import, with respect to any Entity.  In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance

Policies in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all members, directors, managers, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such members, directors, managers, and officers remain in such positions after the Effective Date.

151.    <u>Treatment of Executory Contracts and Unexpired Leases</u>.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in <u>Article V</u> of the Plan are hereby approved in their entirety.  For the avoidance of doubt, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Claims, all Executory Contracts and Unexpired Leases to which any of the Debtors are a party and which have not expired by their own terms on or prior to the Effective Date, shall be deemed assumed (the "<u>Assumed Contracts and Leases</u>") except for any Executory Contract and Unexpired Lease that: (a) is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (b) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Court or otherwise in accordance with the Assumption and Rejection Procedures Order; (c) is the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date (a "<u>Pending Motion or Notice</u>"); (d) is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; or (e) has previously expired or terminated pursuant to its terms or by agreement of the parties thereto.

152.    Upon entry of this Confirmation Order, the Debtors are authorized to perform any and all obligations under the Assumed Contracts and Leases.  Any Executory Contract or Unexpired Lease that is the subject of a Pending Motion or Notice shall be subject to approval by

the Court on or after the Effective Date.  Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases at any time through and including 60 Business Days after the Effective Date.

153.    To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" (whether direct or indirect) or "anti-assignment" provision, or similar provision implicated by a conversion of the form of entity of the Debtors or their Affiliates) then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease, assess or change any fee, or exercise any default-related rights with respect thereto.

154.    Any Executory Contracts and Unexpired Leases of the Debtors that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases as being rejected or that are otherwise rejected pursuant to the terms of the Plan or this Confirmation Order (collectively, the "Rejected Contracts") are rejected by the applicable Debtors, and such rejections are hereby approved by this Court pursuant to sections 365(a) and 1123 of the Bankruptcy Code, with such rejections subject to the occurrence of the Effective Date and effective as of the Effective Date (unless a later effective date of rejection is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases and agreed upon by the Debtors and the applicable counterparties to the applicable Executory Contracts or Unexpired Leases).  Rejection of any Rejected Contract pursuant to the Plan or otherwise will not constitute a termination of any preexisting obligations

owed to the Debtors or the Reorganized Debtors, as applicable, under such Rejected Contract.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not

Filed by the Rejection Damages Bar Date will be automatically Disallowed, forever barred from

assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized

Debtors, the Estates, or property of the foregoing parties, without the need for any objection by

the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or

approval of the Court or any other Entity, and any Claim arising out of the rejection of the

Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged,

notwithstanding anything in the Schedules or any Proof of Claim to the contrary.  Claims arising

from the rejection of any Executory Contract or Unexpired Lease shall be considered Non-Bond

General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

155.    Any monetary defaults under each Executory Contract and Unexpired Lease to be

assumed or assumed and assigned pursuant to the Plan and this Confirmation Order shall be

satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount

in Cash on the Effective Date with such Cure Claim being $0.00 if no amount is listed in the Cure

Notice, subject to the limitation described below, or on such other terms as the parties to such

Executory Contracts or Unexpired Leases may otherwise agree in satisfaction of any Cure Claim

(the "Cure Amount").  In the event of a dispute regarding (a) the amount of the Cure Claim, (b) the

ability of the Debtors or the Reorganized Debtors, as applicable, to provide "adequate assurance

of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the

Executory Contract or Unexpired Lease to be assumed or assumed and assigned, or (c) any other

matter pertaining to assumption, the cure payments required by section 365(b)(1) of the

Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute

and approving the assumption or assumption and assignment.  Notwithstanding the foregoing, to

the extent the dispute relates solely to any Cure Claims, the applicable Debtor (or Reorganized

Debtor) may (x) resolve any such dispute following the Effective Date without any further order

or approval of the Court or (y) assume the Executory Contract or Unexpired Lease prior to the

resolution of any such dispute; *provided, however*, that, in the case of (y) the Debtor reserves Cash

on the Effective Date in an amount sufficient to pay the full amount reasonably asserted as the

required Cure Claim by the contract counterparty; *provided, further*, however, that following

resolution of any such dispute, the Debtor shall have the right to reject any Executory Contract or

Unexpired Lease within 30 days of such resolution.

156.    Assumption or assumption and assignment of any Executory Contract or Unexpired

Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims

or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the

change in control or ownership interest composition or other bankruptcy-related defaults, arising

under any assumed or assumed and assigned Executory Contract or Unexpired Lease at any time

prior to the effective date of assumption or assumption and assignment, as applicable.  Any

counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice

of the proposed assumption or assumption and assignment of such Executory Contract or

Unexpired Lease shall be deemed to have consented to the assumption or assumption and

assignment, as applicable, of the applicable Executory Contract or Unexpired Lease

notwithstanding any provision thereof that purports to:  (a) prohibit, restrict, or condition the

transfer or assignment of such contract or lease; (b) terminate or modify, or permit the termination

or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of

the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control

of any Debtor under such contract or lease to the extent contemplated by the Plan; (c) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor or Reorganized Debtor under such Executory Contract or Unexpired Lease; or (d) create or impose a Lien upon any property or asset of any Debtor or Reorganized Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption or assumption and assignment of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption or assumption and assignment in accordance with the terms set forth in Article V.D of the Plan, shall forever be barred and enjoined from objecting to the proposed assumption or assumption and assignment or to the validity of such assumption or assumption and assignment (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

157.    Compromise and Settlement of Claims, Interests, and Controversies.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for, and as a requirement to receive, the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan and the Global Settlement shall constitute a good faith global and integrated compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that any Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest, as well as any and all actual and potential disputes between and among the Releasing Parties and the Released Parties as and to the extent provided under the Plan.

4874-0658-3801.1

158.    The entry of this Confirmation Order shall constitute the Court's approval of the Global Settlement as well as a finding by the Court that the Global Settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  The Global Settlement and the Global Settlement Order are binding upon all creditors and all other parties in interest pursuant to section 1141(a) of the Bankruptcy Code.  In accordance with the provisions of the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, the Reorganized Debtors and the Plan Administrator may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

159.    <u>Release, Exculpation, Discharge, Injunction, and Related Provisions</u>.  The release, exculpation, discharge, injunction, and related provisions set forth in <u>Article VIII</u> of the Plan shall be, and hereby are, approved and authorized in their entirety, including, but not limited to:

    a.  The discharge provisions set forth in <u>Article VIII.B</u> of the Plan;

    b.  The release of liens provisions set forth in <u>Article VIII.C</u> of the Plan;

    c.  The Debtor Release set forth in <u>Article VIII.D</u> of the Plan;

    d.  The Third-Party Release set forth in <u>Article VIII.E</u> of the Plan;

    e.  The exculpation provisions set forth in <u>Article VIII.F</u> of the Plan; and

    f.  The injunction provisions set forth in <u>Article VIII.G</u> of the Plan.

160.    Notwithstanding the releases set forth in <u>Article VIII.E</u> of the Plan, Confirmation or the occurrence of the Effective Date, any agreements among non-Debtors with respect to any participation interests in the RWE Claims shall remain in effect solely among such non-Debtors.

161.    <u>Indemnification Obligations</u>.  Except (i) as expressly provided by this Confirmation Order or the Plan, (ii) to the extent an applicable agreement is included on the Schedule of Rejected

Executory Contracts and Unexpired Leases, or (iii) as otherwise determined by the Debtors, consistent with applicable law, all indemnification provisions in place as of the Effective Date, including any tail policies (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise), for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, in each case solely in their capacity as such, as applicable, shall be (a) deemed Executory Contracts, (b) Reinstated or otherwise assumed (or assumed and assigned) by the Reorganized Debtors, (c) remain intact and irrevocable, and (d) survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date; *provided* that the immediately preceding subclauses (a) – (d) shall not apply to any obligation of any Debtor to indemnify, hold harmless, or any obligation of similar import that (x) may be assertable by (A) any Entity that is not a Released Party, (B) any RWE Excluded Persons or (C) any Preference Excluded Persons, or (y) is on account of conduct determined in a Final Order as constituting fraud, willful misconduct, gross negligence, self-dealing, or breach of the duty of loyalty. For the avoidance of doubt, subject to the occurrence of the Effective Date, the indemnification obligations in the proviso of the immediately preceding sentence shall be deemed rejected by the Debtors or the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code, whether or not included on the Schedule of Rejected Executory Contracts and Unexpired Leases, and, the Reorganized Debtors shall not have any such obligations to any RWE Excluded Persons or any Preference Excluded Persons.

4874-0658-3801.1

162.  <u>Certain Governmental Matters</u>.  Nothing in the Plan, the Plan Documents, or this Confirmation Order discharges, releases, precludes, enjoins, or exculpates:  (a) any liability to a Governmental Unit, that is not a Claim; (b) any Claim of a Governmental Unit arising after the Plan Effective Date; (c) any police or regulatory liability to a Governmental Unit on the part of any Entity as the owner, permittee, or operator of property after the Plan Effective Date; (d) any valid right of setoff or recoupment of a Governmental Unit against any of the Debtors or Reorganized Debtors; or (e) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Reorganized Debtors.  For the avoidance of doubt, nothing in the Plan or the Plan Documents shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any claim, liability, or cause of action.  Nor shall anything in this Confirmation Order, the Plan, or the Plan Documents enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside of the Court, any liability described in the preceding sentence.  Nothing in the Plan, the Plan Documents, or this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order, the Plan, or the Plan Documents to adjudicate any defense asserted under this Confirmation Order, the Plan, or the Plan Documents.

163.  <u>Texas Comptroller</u>.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the following provisions shall apply to Claims of the Texas Comptroller of Public Accounts (the "<u>Texas Comptroller</u>") and Texas Workforce Commission ("<u>TWC</u>"):

  a.  Nothing provided in the Plan shall release or discharge any entity, other than the Debtors or Reorganized Debtors, from any liability owed to the Texas Workforce Commission and/or the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax debt.  This provision is not an admission by any party that such liability exists.

  b.  Nothing provided in the Plan shall limit the Texas Workforce Commission and/or the Texas Comptroller's right to assert any valid setoff rights under 11 U.S.C. § 553.  This provision is not an admission by any party that such setoff rights exist

and all rights of the Debtors and the Reorganized Debtors, as applicable, to dispute any assertions by the Texas Comptroller as indicated above are reserved.

c.    In the event of a failure by any Debtors or Reorganized Debtors to comply with any provision in the Plan or this Confirmation Order regarding their payment obligations with respect to any Allowed Administrative Expense Claims or Allowed Priority Tax Claims of the TWC and/or the Texas Comptroller, the TWC and/or the Texas Comptroller shall send written notice of default (a "Notice of Default") to the Debtors or Reorganized Debtors, as applicable, and their counsel. If the Debtor or Reorganized Debtor, as applicable, fails to cure such default within 30 (thirty) calendar days after service of such Notice of Default from the TWC and/or the Texas Comptroller with respect to any Allowed Administrative Expense Claims or Allowed Priority Tax Claims of the TWC and/or the Texas Comptroller, the TWC and/or the Texas Comptroller may enforce the entire amount of its claim and exercise all rights and remedies under applicable nonbankruptcy law. The Debtors' and the Reorganized Debtors', as applicable, rights and defenses under nonbankruptcy law and the Bankruptcy Code with respect to the foregoing are fully preserved.

d.    For the avoidance of doubt, all Allowed Priority Tax Claims of the Texas Comptroller and TWC shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) and section 1129(a)(9)(D) of the Bankruptcy Code beginning on the Effective Date. To the extent that interest is payable with respect to any Allowed Administrative Expense Claim or Allowed Priority Tax Claim of the Texas Comptroller or TWC, such interest shall accrue at the statutory rate of interest pursuant to section 511 of the Bankruptcy Code and Texas Labor Code § 213.021, if applicable.

164.    Neither the Texas Comptroller nor TWC is required to file a request for the payment of an expense described in section 503(b)(1)(B) or (C) of the Bankruptcy Code pursuant to section 503(b)(1)(D) of the Bankruptcy Code as a condition of it being an allowed administrative expense and any post-petition tax claim(s) may instead be paid as and when they arise in the ordinary course of the Debtors' business.

165.    Orion Construction, LLC Objection. Notwithstanding any other language in the Plan, upon the occurrence of the Effective Date of the Plan, Orion Construction, LLC ("Orion") shall be permitted to file a complaint in Alabama state court to preserve its rights with respect to its asserted mechanics lien as detailed in Proof of Claim No. 430 (the "Orion Claim"). Such proceeding shall be immediately stayed upon the filing of such complaint (pursuant to this

Confirmation Order and without any further action required by either the Debtors or the Reorganized Debtors to seek a stay of such complaint) and Orion shall take any such action required to seek a stay of such proceedings, including informing the Alabama state court of this Confirmation Order authorizing such stay and requesting that any deadlines by the Debtors or Reorganized Debtors, as applicable, to respond to such complaint are tolled until a determination with respect to the allowance of the Orion Claim is made by this Court or by agreement among Orion and the Debtors or Reorganized Debtors, as applicable, pursuant to the claims reconciliation process set forth in the Plan.  The Debtors or the Reorganized Debtors, as applicable, and Orion reserves all other rights and remedies in connection therewith, including, but not limited to, the right to seek adjudication of the validity of the Orion Claim in this Court (which is understood to include the right to raise any and all objections or defenses to the Orion Claim in this Court) or to seek abstention or otherwise challenge the jurisdiction of the Court to adjudicate the Orion Claim.  Nothing in the Plan or in this Confirmation Order shall prohibit Orion, the Debtors, or the Reorganized Debtors, as applicable, from exercising any and all of its rights and remedies against any party who is not a Debtor or Reorganized Debtor.  Nothing in the Plan or this Confirmation Order shall be deemed an admission as to the validity of any aspect of the Orion Claim, including, but not limited to, whether Orion has asserted a valid mechanic's lien claim.

166.  <u>Sampson County Objection</u>.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the following provisions shall apply to Claims of Sampson County, North Carolina ("<u>Sampson County</u>"):

a.  Nothing provided in the Plan shall limit Sampson County's right to assert prepetition and postpetion tax liens, if any, to the extent it is entitled to such liens in accordance with applicable non-bankruptcy law until the prepetion and postpetition taxes are paid in full.

b.  In the event of a default in the payment of the amounts owed by the Debtors or the Reorganized Debtors, as applicable, to Sampson County, Sampson

County may exercise all rights and remedies under applicable nonbankruptcy law.

c.     All rights and defenses of the Debtors and the Reorganized Debtors, as applicable, with respect to the foregoing paragraphs (a) and (b) are reserved.

d.     Nothing provided in the Plan or this Confirmation Order shall excuse the Debtors or the Reorganized Debtors, as applicable, from paying any Allowed Priority Tax Claims held by Sampson County in full in the ordinary course of business, as and to the extent such Allowed Priority Tax Claims become due and payable.

167.    <u>Southampton County Objection</u>.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the following provisions shall apply to Claims of Southhampton County ("<u>Southampton County</u>"):

a.     Nothing provided in the Plan shall limit Southampton County's right to assert any valid setoff rights under section 553 of the Bankruptcy Code, including, for the avoidance of doubt, in connection with any prepetition payments owed to the Debtors or Reorganized Debtors, as applicable, under that certain agreement entitled Performance Agreement Southampton County dated as of May 22, 2019. This provision is not an admission by any party that such setoff rights exist and all rights of the Debtors and the Reorganized Debtors, as applicable, to dispute any assertions by Southampton County as indicated above are reserved.

b.     Nothing provided in the Plan shall limit Southampton County's right to assert prepetition and post-petition tax liens, if any, to the extent it is entitled to such liens in accordance with Code of Virginia §§ 58.1-3942 and 3340 until the prepetition and post-petition taxes are paid in full.  All rights and defenses of the Debtors and the Reorganized Debtors, as applicable, with respect to the foregoing are reserved.

c.     To the extent that interest accrues with respect to any taxes owed to Southampton County, such interest shall accrue at the statutory rate of interest pursuant to section 511 of the Bankruptcy Code and Code of Virginia §58.1-3918, if applicable.

168.    <u>Settlement with MGT Tesside Limited and John Hancock</u>.  Notwithstanding anything in the Plan, this Confirmation Order, or the Plan Supplement to the contrary:  (a) if the Enviva/MGT/JH Settlement (as defined in this paragraph) is consummated in accordance with its terms, including that the conditions precedent under the MGT/Enviva Settlement Documentation

(as defined in the Enviva/MGT/JH Settlement) are satisfied or waived in accordance with the terms

thereof, the terms of the *Order (I) Approving the Settlement Agreement Between the Debtors,*

*Hancock, and MGT Under Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related*

*Relief* [Docket No. 1218] and the settlement among the Debtors, MGT Teesside Limited ("MGT"),

Manulife Investment Management Timberland and Agriculture Inc. (f/k/a Hancock Natural

Resources Group, Inc.), John Hancock Life Insurance Company (U.S.A.) ("JHLIC USA"), and

John Hancock Life Insurance Company of New York ("JHLIC" and, collectively with Manulife

Investment Management Timberland and Agriculture Inc. and JHLIC USA, "John Hancock")

[Docket No. 1149, Exh. B] (the "Enviva/MGT/JH Settlement") shall continue in full force and

effect in accordance with the terms of the Enviva/MGT/JH Settlement, including that (i) the terms

of the Enviva/MGT/JH Settlement control (including with respect to any and all rights of setoff or

recoupment of MGT), and (ii) the MGT Guarantee (as defined in the Enviva/MGT/JH Settlement,

as amended, supplemented, or otherwise modified from time to time as of the Effective Date of

the Plan, including by the release and discharge of John Hancock from any and all obligations

under the MGT Guarantee pursuant to the Enviva/MGT/JH Settlement) is affirmed; and (b) if the

Enviva/MGT/JH Settlement is not consummated, (i) any and all rights of the Debtors to amend the

Schedule of Assumed Executory Contracts and Unexpired Leases and Schedule of Rejected

Executory Contracts and Unexpired Leases prior to the Effective Date, and any and all rights of

MGT and John Hancock to object thereto, are reserved, and (ii) any and all rights of setoff or

recoupment of MGT and John Hancock, and any and all rights of the Debtors and the Reorganized

Debtors, as applicable, to object thereto, are reserved.  For the avoidance of doubt, (x) if the

Enviva/MGT/JH Settlement is not consummated by the Effective Date, following the Effective

Date, the MGT Guarantee shall pass-through the Chapter 11 Cases pursuant to the Plan until such

time as the Enviva/MGT/JH Settlement is consummated, at which point, the Enviva/MGT/JH

Settlement shall govern the treatment of the MGT Guarantee, and (y) neither JHLIC USA nor any

other John Hancock entity will have surviving obligations under the Fuel Supply Direct

Agreement, dated as of August 10, 2016, upon consummation of the Enviva/MGT/JH Settlement.

169.     NMTC Claims.  On the Effective Date, (a) the NMTC Claims shall be Allowed in

the respective amount of the Allowed NMTC QLICI Loan Claims and the Allowed NMTC Source

Loan Claims, and (b) all Allowed NMTC Claims shall, at the option of the Debtors or the

Reorganized Debtors, as applicable, with the consent of the Majority Consenting 2026

Noteholders, either:  (i) receive payment in full in Cash or such other treatment so as to render it

Unimpaired pursuant to section 1124 of the Bankruptcy Code; or (ii) be Reinstated in accordance

with section 1124(2) of the Bankruptcy Code and continued after the Effective Date; provided,

that in connection with, and as a condition to, Reinstating the NMTC Claims in accordance with

the Plan and the aforementioned clause (ii), the Debtors or the Reorganized Debtors, as applicable,

are permitted to enter into any amendments to the Prepetition Senior Secured NMTC QLICI Loan

Agreement, Prepetition Senior Secured NMTC Source Loan Agreement, and any other agreement

or ancillary documents related thereto (collectively, the "NMTC Loan Documents") with the

consent of any parties whose consent is required for such amendments pursuant to the NMTC Loan

Documents; provided, further, that if the Debtors elect to instead repay the Allowed NMTC QLICI

Loan Claims in full in Cash or otherwise Unimpair such Claims in accordance with the Plan and

the aforementioned clause (i), then (A) the Debtors shall provide notice of such election to Jones

Walker LLP, in its capacity as counsel to the NMTC Participants, no less than seven (7) days prior

to the Effective Date (or on such later date acceptable to the NMTC Participants), (B) the Debtors'

and the applicable NMTC Participants' rights shall be fully reserved with respect to both the

amount of Allowed NMTC Claims that the Debtors are required to repay under the Plan and the scope and treatment of any related indemnification rights provided under the NMTC Loan Documents (as such term is defined in the Final DIP Order), and (C) absent a consensual resolution of any dispute among the Debtors and NMTC Parties regarding such matters, the Debtors and NMTC Parties shall be entitled to seek the Court's adjudication of such disputed matter on shortened notice.

170.    Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, to the extent not already paid, the NMTC Adequate Protection Fees and Expenses and the NMTC Debt Service Payments as referenced in paragraphs 13(f) and 13(h) of the Final DIP Order shall be paid on or before the Effective Date. Additionally, the following amounts, which remain payable under the NMTC Loan Documents (as defined in the Final DIP Order), shall be paid on or before the Effective Date: (i) $1,087.80 payable to UBCD Sub-CDE Midway, LLC for reimbursement of Alabama business privilege taxes; (ii) $1,319.00 payable to PBCIF Sub-CDE4, LLC for reimbursement of Alabama business privilege taxes; and (iii) any such other *de minimis* amounts that may be owed under the NMTC Loan Documents up to a maximum of $10,000 in aggregate.

171.    <u>Notice of Entry of Confirmation Order and Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), no later than five (5) business days after the Effective Date, the Reorganized Debtors shall file with the Court and serve by email and first class mail or overnight delivery service a notice of the entry of this Confirmation Order and occurrence of the Effective Date (the "<u>Confirmation Notice</u>"), in substantially the form annexed hereto as **Exhibit 2**, on all Holders of Claims and/or Interests and to all parties on the *Master Service List* maintained by Verita Global LLC.  Notwithstanding the above, no Confirmation Notice or service of any kind

shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the
Confirmation Hearing, but received such notice returned marked "undeliverable as addressed,"
"moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the
Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new
address.  To supplement the notice procedures described in the preceding sentences, no later than
fourteen (14) days after the Effective Date, the Reorganized Debtors shall cause the Confirmation
Notice, modified for publication, to be published on one occasion in each of the national editions
of the *Washington Post* and *USA Today*.  Mailing and publication of the Confirmation Notice in
the time and manner set forth in this paragraph shall be good, adequate, and sufficient notice under
the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002
and 3020(c).  No further notice will be necessary.

172.   <u>Dissolution of the Committee</u>.  On the Effective Date, the Committee shall dissolve
automatically, and the current and former members thereof and each Professional retained thereby
shall be released and discharged from all rights and duties arising from, or related to, the Chapter
11 Cases and under the Bankruptcy Code, provided, however, that the Committee will remain in
existence after the Effective Date solely for the purposes of (a) the preparation, filing and
prosecution of all final fee applications for all Professionals for the Committee and addressing any
matters concerning Professional Fee Claims; (b) the resolution of any appeal, motion for
reconsideration or similar litigation related to this Confirmation Order; (c) the resolution of any
appeals to which the Committee is a party, including taking any necessary steps to dismiss the DIP
Appeal; and (d) the selection and appointment of a Litigation Trust Board Member, if applicable,
by the Committee in accordance with the Plan and the Litigation Trust Agreement and matters
reasonably related thereto (collectively, the "<u>Post Effective Date Committee Matters</u>").  The

Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the Committee or any other statutory committee after the Effective Date other than any reasonable fees and expenses incurred in connection with the Post Effective Date Committee Matters, which fees and expenses shall be paid by the Reorganized Debtors without any further notice or application to, action, order or approval of the Court.

173.     Conditions to Effective Date.  The Plan shall not become effective unless and until the conditions set forth in Article IX of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

174.     Non-Severability of Plan Provisions Upon Confirmation. Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent and subject to the consent and approval rights of applicable parties to the extent provided in the Plan (including the Plan Supplement) or the Restructuring Support Agreement; and (c) non-severable and mutually dependent.

175.     Post-Confirmation Modifications. The Debtors are hereby authorized to amend or modify the Plan at any time prior to the Effective Date but only in accordance with section 1127 of the Bankruptcy Code and Article X.A of the Plan, without further order or approval of this Court; *provided* that any such modifications shall be subject to the consent rights set forth in the Global Settlement Order, the Plan and the Restructuring Support Agreement.

176.     Waiver or Estoppel.  Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount or in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, or any other Entity if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court.

177.    <u>Term of Injunctions or Stays</u>. Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

178.    <u>Binding Effect</u>. Pursuant to <u>Article XII.A</u> of the Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Confirmation Order, shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests voted or are deemed to have accepted the Plan, voted or are deemed to have rejected the Plan, or failed to vote to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

179.    <u>Reservation of Rights</u>. Except as expressly set forth in the Plan, the Plan shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

180.    <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

181.    Effect of Conflict. This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  In the event of an inconsistency between the Plan (without reference to the Plan Supplement) and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in this Confirmation Order).  In the event of an inconsistency between this Confirmation Order and the Plan, the Disclosure Statement, or the Plan Supplement, the Confirmation Order shall control.

182.    Waiver of Stay.  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

183.    Reversal/Stay/Modification/Vacatur of Order.  Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or Lien incurred or undertaken by the Debtors, the Reorganized Debtors, the Litigation Trustee, or any other Person or Entity authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

184.   <u>Final Order</u>.  This Confirmation Order is a Final Order, and the period in which an appeal must be filed shall commence upon the entry hereof.

185.   <u>Retention of Jurisdiction</u>. Except as otherwise provided in the Plan Documents or this Confirmation Order, this Court may properly, and upon the Effective Date shall, retain jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Cases, as set forth in <u>Article XI</u> of the Plan.

Dated: Nov 13 2024
Alexandria, Virginia

/s/ Brian F Kenney

BRIAN F. KENNEY
UNITED STATES BANKRUPTCY JUDGE

Entered On Docket: Nov 14 2024

4874-0658-3801.1

WE ASK FOR THIS:

/s/ *Jeremy S. Williams*

**KUTAK ROCK LLP**
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Adolyn C. Wyatt (VA 97746)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192

-and-

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:     (212) 373-3000
Facsimile:     (212) 757-3990

*Counsel to the Debtors and Debtors in
Possession*

## CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ *Jeremy S. Williams*

4874-0658-3801.1

### **Exhibit 1**

**Plan**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENVIVA INC., *et al.*, | ) | Case No. 24-10453 (BFK) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## AMENDED JOINT CHAPTER 11 PLAN OF
## REORGANIZATION OF ENVIVA INC. AND ITS DEBTOR AFFILIATES

Paul M. Basta (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192

*Counsel to the Debtors and Debtors in
Possession*

Dated: October 4, 2024

---

[1]    Due to the large number of Debtors in these jointly administered Chapter 11 Cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/enviva. The location of the Debtors' corporate headquarters is:  7272 Wisconsin Avenue, Suite 1800, Bethesda, MD 20814.

# TABLE OF CONTENTS

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

| | | |
|---|---|---|
| A. | *Defined Terms* | 1 |
| B. | *Rules of Interpretation* | 30 |
| C. | *Computation of Time* | 30 |
| D. | *Governing Law* | 30 |
| E. | *Reference to Monetary Figures* | 31 |
| F. | *Reference to the Debtors or the Reorganized Debtors* | 31 |
| G. | *Controlling Document* | 31 |
| H. | *Consent Rights of Restructuring Support Parties and DIP Creditors* | 31 |

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL
## FEE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY CLAIMS

| | | |
|---|---|---|
| A. | *Administrative Expense Claims* | 32 |
| B. | *Professional Compensation* | 33 |
| C. | *DIP Facility Claims* | 35 |
| D. | *Priority Tax Claims* | 36 |
| E. | *Statutory Fees* | 36 |

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| A. | *Summary of Classification* | 37 |
| B. | *Treatment of Claims and Interests* | 38 |
| C. | *Special Provision Governing Unimpaired or Reinstated Claims* | 43 |
| D. | *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code* | 43 |
| E. | *Elimination of Vacant Classes* | 43 |
| F. | *Voting Classes; Presumed Acceptance by Non-Voting Classes* | 43 |
| G. | *Intercompany Claims and Interests* | 43 |
| H. | *Subordinated Claims* | 44 |

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

| | | |
|---|---|---|
| A. | *Restructuring* | 44 |
| B. | *Sources of Consideration for Plan Distributions* | 46 |
| C. | *Issuance and Distribution of Reorganized Enviva Inc. Interests* | 48 |
| D. | *Rights Offering* | 49 |
| E. | *DIP Tranche A Equity Participation* | 50 |
| F. | *Corporate Existence* | 50 |
| G. | *Vesting of Property in the Reorganized Debtors* | 51 |
| H. | *Cancellation of Existing Securities and Agreements* | 51 |
| I. | *Corporate Action* | 53 |
| J. | *New Organizational Documents* | 54 |

K.   *Stockholders Agreement*.................................................................................................. 54
L.   *Directors and Officers of the Reorganized Debtors* ...................................................... 55
M.   *Effectuating Documents; Further Transactions*............................................................ 55
N.   *Exemption from Certain Taxes and Fees* ....................................................................... 56
O.   *Global Settlement*............................................................................................................ 56
P.   *Preservation of Causes of Action* ................................................................................... 61
Q.   *Management Incentive Plan* ............................................................................................ 62
R.   *Employment Agreements*.................................................................................................. 62
S.   *Employee and Retiree Benefits* ....................................................................................... 62
T.   *Payment of the Restructuring Expenses*.......................................................................... 63
U.   *Closing of Chapter 11 Cases* .......................................................................................... 63

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.   *Assumption and Rejection of Executory Contracts and Unexpired Leases* ..................... 63
B.   *Pass-Through*................................................................................................................... 64
C.   *Claims Based on Rejection of Executory Contracts or Unexpired Leases* ..................... 65
D.   *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases* .................. 65
E.   *Indemnification Obligations* ........................................................................................... 67
F.   *Insurance Policies* ........................................................................................................... 67
G.   *Modifications, Amendments, Supplements, Restatements, or Other Agreements*............ 68
H.   *Reservation of Rights* ...................................................................................................... 68
I.   *Nonoccurrence of Effective Date* .................................................................................... 69
J.   *Contracts and Leases Entered into After the Petition Date*............................................ 69

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.   *Timing and Calculation of Amounts to Be Distributed*................................................... 69
B.   *Plan Administrator*.......................................................................................................... 70
C.   *Rights and Powers of the Plan Administrator* ................................................................ 70
D.   *Delivery of Distributions and Undeliverable or Unclaimed Property* ........................... 70
E.   *Registration or Private Placement Exemption* ............................................................... 73
F.   *Compliance with Tax Requirements* ................................................................................ 74
G.   *Allocations* ...................................................................................................................... 75
H.   *No Postpetition Interest on Claims* ................................................................................. 75
I.   *Setoffs and Recoupment* .................................................................................................. 75
J.   *Claims Paid or Payable by Third Parties*....................................................................... 75

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.   *Allowance of Claims* ........................................................................................................ 76
B.   *Claims and Interests Administration Responsibilities* .................................................... 77
C.   *Estimation of Claims* ....................................................................................................... 77
D.   *Adjustment to Claims or Interests Without Objection* ..................................................... 78
E.   *Reservation of Rights with Respect to Claims* ................................................................. 78

F.    *Disputed Claims Reserve* ............................................................................. 78
G.    *Time to File Objections to Claims* ............................................................... 80
H.    *Disallowance of Claims* ............................................................................... 80
I.     *Amendments to Claims* ................................................................................ 80
J.     *No Distributions Pending Allowance* .......................................................... 80
K.    *Single Satisfaction of Claims* ..................................................................... 81
L.    *Non-Bond General Unsecured Claims Reconciliation Process* ................... 81

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Interests, and Controversies* ........... 82
B.    *Discharge of Claims and Termination of Interests* ...................................... 82
C.    *Release of Liens* .......................................................................................... 83
D.    *Releases by the Debtors and Estates* .......................................................... 83
E.    *Releases by Holders of Claims and Interests* .............................................. 85
F.    *Exculpation* ................................................................................................ 87
G.    *Injunction* ................................................................................................... 88
H.    *Protection Against Discriminatory Treatment* ............................................. 89
I.     *Recoupment* ................................................................................................ 89
J.     *Setoff* .......................................................................................................... 89
K.    *Subordination Rights* .................................................................................. 89
L.    *Reimbursement or Contribution* .................................................................. 89

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date* ................................................ 90
B.    *Waiver of Conditions* .................................................................................. 91
C.    *Substantial Consummation* .......................................................................... 92
D.    *Effect of Non-Occurrence of Conditions to the Confirmation Date or the Effective
      Date* .............................................................................................................. 92

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments* ..................................................................... 92
B.    *Effect of Confirmation on Modifications* ..................................................... 93
C.    *Revocation or Withdrawal of the Plan* ........................................................ 93

## ARTICLE XI.
## RETENTION OF JURISDICTION

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect* ............................................................................ 96
B.    *Additional Documents* ................................................................................. 96
C.    *Reservation of Rights* .................................................................................. 96

D.    *Successors and Assigns* ................................................................................................ 96
E.    *Service of Documents* ................................................................................................... 97
F.    *Term of Injunctions or Stays* ....................................................................................... 98
G.    *Entire Agreement* ......................................................................................................... 98
H.    *Exhibits* ......................................................................................................................... 98
I.    *Nonseverability of Plan Provisions* ............................................................................. 98
J.    *Votes Solicited in Good Faith* ...................................................................................... 99
K.    *Dissolution of the Committees* ..................................................................................... 99
L.    *Request for Expedited Determination of Taxes* ........................................................... 99
M.    *Closing of Chapter 11 Cases* ....................................................................................... 99
N.    *No Stay of Confirmation Order* .................................................................................... 99
O.    *Waiver or Estoppel* ..................................................................................................... 100
P.    *Deemed Acts* ............................................................................................................... 100

# INTRODUCTION

Enviva Inc. and its affiliated debtors, as Debtors and debtors in possession in the above-captioned Chapter 11 Cases, jointly propose this Plan for the resolution of all outstanding Claims against, and Interests in, the Debtors.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of all outstanding Claims against, and Interests in, such Debtor.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A hereof, or, if not defined in Article I.A. of the Plan, in the Bankruptcy Code or Bankruptcy Rules.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

---

**ALL HOLDERS OF CLAIMS AND INTERESTS WHO ARE ELIGIBLE TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD REVIEW THE SECURITIES LAW RESTRICTIONS AND NOTICES SET FORTH IN THIS PLAN (INCLUDING, WITHOUT LIMITATION, UNDER ARTICLE IV HEREOF) IN FULL.**

---

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below.

1.    "***2026 Noteholders***" means the Holders of the 2026 Notes.

2.    "***2026 Notes***" means the 6.500% senior notes due 2026 and governed by the 2026 Notes Indenture.

3.    "***2026 Notes Claims***" means Claims arising under or in connection with the 2026 Notes, including approximately $750,000,000 in aggregate outstanding principal amount, plus accrued and unpaid interest thereon, fees, and other expenses arising under and payable pursuant to the 2026 Notes Indenture.

4.    "***2026 Notes Guarantors***" means each of the guarantors party to the 2026 Notes Indenture.

5.    "***2026 Notes Indenture***" means that certain *Indenture*, dated as of December 9, 2019, among Enviva Partners, LP, Enviva Partners Finance Corp., as issuers, each of the guarantors party thereto, and the 2026 Notes Indenture Trustee, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

6.      "*2026 Notes Indenture Trustee*" means Wilmington Trust, N.A., in its capacity as trustee under the 2026 Notes Indenture and Wilmington Savings Fund Society, FSB, a Delaware federal savings bank, in its capacity as successor trustee under the 2026 Notes Indenture, and any successors in such capacity.

7.      "*2026 Notes Issuers*" means Enviva, LP and Enviva Partners Finance Corp.

8.      "*Ad Hoc Group*" means the ad hoc group represented by the Ad Hoc Group Advisors and consisting of certain Holders of 2026 Notes Claims, Senior Secured Credit Facility Claims, Bond Green Bonds Claims, Epes Green Bonds Claims, Existing Equity Interests, and other Claims or Interests.

9.      "*Ad Hoc Group Advisors*" means Davis Polk & Wardwell LLP and McGuireWoods LLP, as co-counsel, Evercore Inc., as financial advisor, and all other special or local counsel, consultants or advisors providing advice to the Ad Hoc Group, in connection with the Restructuring.

10.      "*Adequate Protection Claims*" means, collectively, the NMTC Participant Adequate Protection Claims and the Senior Secured Credit Facility Lender Adequate Protection Claims.

11.      "*Administrative Expense Claim*" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; and (e) the Restructuring Expenses; *provided* that, notwithstanding the foregoing, no Intercompany Claim shall constitute an Administrative Expense Claim unless otherwise agreed by the Debtors and the Required DIP Creditors.

12.      "*Administrative Expense Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Expense Claims (other than Professional Fee Claims), which shall be 30 days after the Effective Date.

13.      "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code as if the referenced Entity was a debtor in a case under the Bankruptcy Code.

14.      "*AHG Consenting Bond Green Bondholders*" means Bond Green Bondholders who are signatories to the Restructuring Support Agreement and any subsequent Bond Green Bondholder that may become a signatory thereto in accordance with Section 12 and/or Section 13 of the Restructuring Support Agreement.

15.      "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein, or any portion thereof: (a) that is evidenced by a Proof of Claim, timely filed by the applicable Claims Bar Date or that is not required to be evidenced by a timely Filed Proof of Claim under this Plan, the Bankruptcy Code, the Final DIP Order or any other Final Order; (b) that

is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed; or (c) that is allowed (i) expressly pursuant to the Plan, (ii) in any stipulation that is approved by the Court, or (iii) by the Final DIP Order or any other Final Order (including any such Claim to which the Debtors had objected or which the Court had disallowed prior to such Final Order); *provided* that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that such Claim or Interest is not Disallowed and no objection to the allowance thereof has been or, in the Debtors' reasonable good faith judgment, may be interposed by the Claims Objection Deadline or otherwise within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been allowed by a Final Order; *provided*, *further*, that no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor; *provided*, *further*, that, except as otherwise specified in the Plan, the Final DIP Order or any other Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date. "Allow," "Allowing," and "Allowance" shall have correlative meanings.

16.    "*Allowed NMTC QLICI Loan Claims*" means the Allowed amount of the NMTC QLICI Loan Claims in the aggregate principal amount equal to $42,030,000, plus any accrued and unpaid interest thereon and fees, expenses, costs, charges, indemnities, and other obligations incurred and payable under the Prepetition Senior Secured NMTC QLICI Loan Agreement.

17.    "*Allowed NMTC Source Loan Claims*" means the Allowed amount of the NMTC Source Loan Claims in the aggregate principal amount equal to $30,402,403, plus any accrued and unpaid interest thereon and fees, expenses, costs, charges, indemnities, and other obligations incurred and payable under the Prepetition Senior Secured NMTC Source Loan Agreement.

18.    "*Amory Seller Note*" means that certain Convertible Subordinated Promissory Note, dated as of August 4, 2010, by and among Enviva Pellets Amory, LLC and CKS Energy, Inc.

19.    "*Amory Seller Note Claims*" means Claims arising under or in connection with the Amory Seller Note.

20.    "*Alternative Transaction*" means an alternative transaction that meets the Threshold Clearing Requirements.

21.    "*Assumption and Rejection Procedures Order*" means the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases, (II) Approving the Form and Manner of the (A) Rejection Notice and (B) Assumption Notice, and (III) Granting Related Relief* [Docket No. 815].

22.    "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other similar Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies arising

under chapter 5 of the Bankruptcy Code, including sections 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer and preference laws.

23.    "***Backstop Motion***" means the *Debtors' Motion for Entry of an Order (I) Authorizing the (A) Debtors' Entry into, and Performance under, the Backstop Commitment Agreement, (B) Debtors' Entry Into, and Performance Under, the Exit Facility Commitment Letter, and (C) the Payment and Allowance of Related Premiums, Fees and Expenses as Administrative Expense Claims or Superpriority Administrative Expense Claims, as Applicable; and (II) Granting Related Relief* [Docket No. 1058].

24.    "***Backstop Order***" means the order of the Court approving the Backstop Motion.

25.    "***Ballots***" means the ballots distributed to certain Holders of Impaired Claims entitled to vote on the Plan upon which such Holders shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

26.    "***Bankruptcy Code***" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Cases.

27.    "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Court other than the Local Rules.

28.    "***Bar Date Order***" means the order entered by the Court, among other things, setting the General Bar Date and the Governmental Bar Date [Docket No. 321].

29.    "***Bond General Unsecured Claim***" means any 2026 Notes Claim, Bond Green Bonds Claim, or Epes Green Bonds Claim.

30.    "***Bond General Unsecured Claims Equity Pool***" means 100% of the Reorganized Enviva Inc. Equity Pool, which shall be subject to dilution on account of the MIP Equity and the DIP Tranche A and Rights Offering Equity Pool.

31.    "***Bond Green Bondholders***" means the Holders of the Bond Green Bonds.

32.    "***Bond Green Bonds***" means the Exempt Facilities Revenue Bonds, (Enviva Inc.), Series 2022 (Green Bonds) issued under the Bond Green Bonds Indenture.

33.    "***Bond Green Bonds 9019 Order***" means the *Order (I) Approving the Bond Green Bonds Settlement Under Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* [Docket No. 476].

34.    "***Bond Green Bonds Cash Paydown***" means the monies distributed or to be distributed by the Bond Green Bonds Indenture Trustee to the Bond Green Bondholders pursuant to the Bond Green Bonds 9019 Order.

35.    "***Bond Green Bonds Claims***" means Claims against the Debtors arising under or in connection with the Bond Green Bonds, including approximately $100,000,000 in aggregate principal amount, plus accrued and unpaid interest, fees, and other expenses arising under and payable pursuant to the Bond Green Bonds Indenture.

36.    "***Bond Green Bonds Guarantors***" means the "Guarantors" as such term is defined in that certain *Loan and Guaranty Agreement*, dated as of November 1, 2022, between Bond Green Bonds Issuer and Enviva Inc. and certain subsidiaries thereof, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

37.    "***Bond Green Bonds Indenture***" means that certain *Indenture of Trust*, dated as of November 1, 2022, between the Bond Green Bonds Issuer and the Bond Green Bonds Indenture Trustee, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

38.    "***Bond Green Bonds Indenture Trustee***" means Wilmington Trust, N.A., as trustee under the Bond Green Bonds Indenture, and any successors in such capacity.

39.    "***Bond Green Bonds Issuer***" means the Mississippi Business Finance Corporation.

40.    "***Bond Green Bonds Restructuring Support Agreement***" means that certain *Restructuring Support Agreement*, dated March 12, 2024, by and among the Debtors and the Bond Green Bonds Restructuring Support Parties, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

41.    "***Bond Green Bonds Restructuring Support Parties***" means, collectively, the Consenting Bond Green Bondholders and the Bond Green Bonds Indenture Trustee.

42.    "***Business Day***" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or other calendar day on which banks are authorized or required to be closed in New York, New York.

43.    "***Cash***" means the legal tender of the United States of America or the equivalent thereof.

44.    "***Cause of Action***" means any action, claim, counterclaim, cross-claim, cause of action, controversy, third-party claim, proceeding, dispute, demand, right, action, Lien, indemnity, contribution, guaranty, trespass, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, account, defense, offset, reckoning, remedy, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, Secured or Unsecured, asserted or assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract, in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, a "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for tort, breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to or otherwise contest, recharacterize, reclassify, subordinate, or disallow Claims or Interests; (c) any Claim or defense pursuant to section 362 or chapter 5 of the

Bankruptcy Code (including Avoidance Actions); (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar avoidance claim.

45.     "***Chapter 11 Cases***" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Court and (b) when used with reference to all of the Debtors, the jointly administered chapter 11 cases pending for the Debtors in the Court.

46.     "***Claim***" shall have the meaning set forth in section 101(5) of the Bankruptcy Code, against any Debtor.

47.     "***Claims Objection Deadline***" means the deadline for objecting to a Claim (other than Administrative Expense Claims) against a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be fixed by an order of the Court for objecting to such Claims; *provided* that, in each case, the Debtors or the Reorganized Debtors, as applicable, may agree with a Holder of a Claim to extend such deadline without further order of the Court.

48.     "***Claims Register***" means the official register of Claims against the Debtors maintained by the Noticing and Claims Agent.

49.     "***Class***" means a category of Claims against or Interests in the Debtors as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

50.     "***Committee***" means the official committee of unsecured creditors of the Debtors, appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on March 25, 2024 [Docket No. 172] and reconstituted on May 23, 2024 [Docket No. 603], including as such membership may be further reconstituted from time to time.

51.     "***Committee Expenses***" means the reasonable and documented fees and expenses of members of the Committee (including but not limited to fees and expenses for professionals to the individual members of the Committee), subject to an aggregate cap of $ 1 million; *provided* that such fees and expenses shall only be payable to the extent the Committee and its members do not file or otherwise assert an objection to the Plan or Confirmation of the Plan.

52.     "***Company Assets***" means all or substantially all of the Debtors' assets.

53.     "***Confirmation***" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been (a) satisfied or (b) waived pursuant to Article IX.B hereof.

54.     "***Confirmation Date***" means the date upon which the Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

55.     "*Confirmation Hearing*" means the hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

56.     "*Confirmation Order*" means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, the DIP Facility Agreement, and the Global Settlement Stipulation, including the consent rights contained therein, and which shall be in form and substance reasonably acceptable to the Committee and the RWE Committee.

57.     "*Consenting 2026 Noteholders*" means 2026 Noteholders who are signatories to the Restructuring Support Agreement, and any subsequent 2026 Noteholder that may become a signatory thereto in accordance with Section 12 and/or Section 13 of the Restructuring Support Agreement.

58.     "*Consenting Bond Green Bondholders*" means Bond Green Bondholders who are signatories to the Bond Green Bonds Restructuring Support Agreement and any subsequent Bond Green Bondholders that may become a signatory thereto in accordance with Section 14 and/or Section 15 of the Bond Green Bonds Restructuring Support Agreement.

59.     "*Consenting Epes Green Bondholders*" means Epes Green Bondholders who are signatories to the Restructuring Support Agreement, and any subsequent Epes Green Bondholder that may become a signatory thereto in accordance with Section 12 and/or Section 13 of the Restructuring Support Agreement.

60.     "*Consenting Senior Secured Credit Facility Lender*" means Senior Secured Credit Facility Lenders who are signatories to the Restructuring Support Agreement and any subsequent Senior Secured Credit Facility Lender that may become a signatory thereto in accordance with Section 12 and/or Section 13 of the Restructuring Support Agreement.

61.     "*Consummation*" means the occurrence of the Effective Date.

62.     "*Court*" means the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Eastern District of Virginia.

63.     "*Cure Amount*" shall have the meaning set forth in Article V.D hereof.

64.     "*Cure Claim*" means a monetary Claim based upon a Debtor's defaults under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed or assumed and assigned by such Debtor or Reorganized Debtor, as applicable pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

65.    "***Cure Notice***" means a notice of a proposed amount of Cash to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include the amount of Cure Claim (if any) to be paid in connection therewith.

66.    "***D&O Liability Insurance Policies***" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") maintained by any of the Debtors with respect to directors, managers, officers, and employees of any of the Debtors, and all agreements, documents, or instruments related thereto.

67.    "***Debtors***" means, collectively, the following: Enviva Aircraft Holdings Corp.; Enviva Development Finance Company, LLC; Enviva Energy Services, LLC; Enviva GP, LLC; Enviva Holdings GP, LLC; Enviva Holdings, LP; Enviva Inc.; Enviva, LP; Enviva Management Company, LLC; Enviva MLP International Holdings, LLC; Enviva Partners Finance Corp.; Enviva Pellets Bond, LLC; Enviva Pellets Epes Finance Company, LLC; Enviva Pellets Epes Holdings, LLC; Enviva Pellets Epes, LLC; Enviva Pellets Greenwood, LLC; Enviva Pellets, LLC; Enviva Pellets Lucedale, LLC; Enviva Pellets Waycross, LLC; Enviva Port of Pascagoula, LLC; and Enviva Shipping Holdings, LLC.

68.    "***Definitive Documentation***" has the meaning ascribed to it in the Restructuring Support Agreement, Filed as Exhibit C to the *Declaration of Glenn Nunziata in Support of Chapter 11 Petitions* [Docket No. 27].

69.    "***DIP Agents***" means, collectively, Acquiom Agency Services LLC, as co-administrative agent and collateral agent, and Seaport Loan Products LLC, as co-administrative agent, under the DIP Facility Agreement, and any successors in such capacity.

70.    "***DIP Appeal***" means the appeal of the Final DIP Order filed by the Committee on May 13, 2024 in the United States District Court for the Eastern District of Virginia, notice of which has been Filed at Docket No. 564.

71.    "***DIP Creditor***" means each creditor party from time to time under the DIP Facility Agreement in its capacity as such.

72.    "***DIP Facility***" means the debtor-in-possession financing facility provided by the DIP Creditors on the terms and conditions set forth in the DIP Facility Agreement and the DIP Orders.

73.    "***DIP Facility Agreement***" means that certain *Debtor-in-Possession Credit and Note Purchase Agreement*, dated as of March 15, 2024, between Enviva Inc., as borrower, the other Debtors, as guarantors, the DIP Agents, the DIP Creditors, and the other secured parties thereunder, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof, Filed as Exhibit 1 to the Interim DIP Order [Docket No. 103].

74.    "***DIP Facility Claims***" means, collectively, the DIP Tranche A Claims and DIP Tranche B Claims, plus any and all other Claims of the DIP Creditors for, without limitation, all principal amounts outstanding, interest, reasonable and documented fees, indemnification,

premiums, discounts, penalties, expenses and costs, and other charges of the DIP Creditors, in each case payable under and in accordance with the DIP Facility Documents or the DIP Orders.

75.    "***DIP Facility Documents***" means the DIP Facility Agreement and all other agreements, documents, instruments, and amendments related thereto, including the DIP Orders and any guaranty agreements, pledge and collateral agreements, UCC financing statements, or other perfection documents, subordination agreements, fee letters, and any other security agreements.

76.    "***DIP Loans***" means, collectively, the DIP Tranche A Loans, the DIP Tranche A Notes, the DIP Tranche B Loans, and the DIP Tranche B Notes.

77.    "***DIP Obligations***" shall mean all obligations of every nature of Enviva Inc. and each other entity that is a guarantor under the DIP Facility Agreement, including obligations from time to time owed to the co-administrative agents, the collateral agent, the DIP Creditors or any of them, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, in each case, that arise under, out of, or in connection with, any DIP Facility Document, whether on account of principal, premiums, interest, reimbursement obligations, fees and premiums (including the Backstop Premium, Break Premium, Exit Premium, Undrawn Commitment Premium and Upfront Premium, in each case as defined in the DIP Facility Agreement), indemnities, costs, expenses (including all reasonable and documented fees, charges and disbursements of the Ad Hoc Group Advisors and counsel to the co-administrative agents, in each case, required to be paid by Enviva Inc. pursuant to Section 9.05 of the DIP Facility Agreement) or otherwise and including all indemnity claims of the Ad Hoc Group, the co-administrative agents and the DIP Creditors pursuant to Section 9.05 of the DIP Facility Agreement.

78.    "***DIP Orders***" means, collectively, the Interim DIP Order and the Final DIP Order.

79.    "***DIP Secured Parties***" means the DIP Agent and DIP Creditors.

80.    "***DIP Tranche A and Rights Offering Equity Pool***" means the total number of Reorganized Enviva Inc. Interests to be issued on the Effective Date on account of the DIP Tranche A Equity Allocation, the Rights Offering, and the Rights Offering Backstop Commitment Premium, which shall be subject to dilution on account of the MIP Equity.

81.    "***DIP Tranche A Claims***" means Claims against the Debtors on account of the DIP Tranche A Loans and DIP Tranche A Notes arising under or in connection with the DIP Facility.

82.    "***DIP Tranche A Equity Allocation***" means the number of Reorganized Enviva Inc. Interests to be issued pursuant to the DIP Tranche A Equity Participation on the Effective Date, which shall be subject to dilution on account of the MIP Equity.

83.    "***DIP Tranche A Equity Participation Agreement***" means a subscription agreement in form and substance reasonably acceptable to the Majority Consenting 2026 Noteholders executed by a Holder of an Allowed DIP Tranche A Claim pursuant to which such Holder elects to participate in the DIP Tranche A Equity Participation.

84.     "***DIP Tranche A Equity Participation***" means the participation interest granted to Holders of Allowed DIP Tranche A Claims that elect pursuant to a DIP Tranche A Equity Participation Agreement or the Rights Offering Backstop Agreement, on or before the DIP Tranche A Equity Participation Election Time, to subscribe for the purchase of Reorganized Enviva Inc. Interests on the Effective Date, up to the principal amount of any DIP Obligations then owing in respect of such Allowed DIP Tranche A Claims, at a price equivalent to the price established pursuant to the Rights Offering, in accordance with the Rights Offering Procedures, and subject to the same dilution terms as the Rights Offering.

85.     "***DIP Tranche A Equity Participation Election Time***" means the date and time by which the Holders of DIP Tranche A Claims must elect whether to participate in the DIP Tranche A Equity Participation, which shall be the date and time of the commencement of the hearing to consider approval of the Disclosure Statement.

86.     "***DIP Tranche A Loans***" means the "Tranche A Loans" as defined in, and issued under, the DIP Facility Agreement, Filed as Exhibit 1 to the Interim DIP Order [Docket No. 103].

87.     "***DIP Tranche A Notes***" means the "Tranche A Notes" as defined in, and issued under, the DIP Facility Agreement, Filed as Exhibit 1 to the Interim DIP Order [Docket No. 103].

88.     "***DIP Tranche B Claims***" means Claims against the Debtors on account of the DIP Tranche B Loans and DIP Tranche B Notes arising under or in connection with the DIP Facility.

89.     "***DIP Tranche B Loans***" means the "Tranche B Loans" as defined in, and issued under, the DIP Facility Agreement, Filed as Exhibit 1 to the Interim DIP Order [Docket No. 103].

90.     "***DIP Tranche B Notes***" means the "Tranche B Notes" as defined in, and issued under, the DIP Facility Agreement, Filed as Exhibit 1 to the Interim DIP Order [Docket No. 103].

91.     "***Disallowed***" means, with respect to any Claim or Interest, a portion thereof that (a) is disallowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Court, or (iii) by Final Order (including any such Claim to which the Debtors had objected or which the Court had disallowed prior to such Final Order), (b) is scheduled by the Debtors at zero dollars ($0) or as contingent, disputed, or unliquidated and as to which a Claims Bar Date has been established but no Proof of Claim was timely filed or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order of the Court, including the order approving the Claims Bar Date, or otherwise deemed timely filed under applicable law, or (c) is not scheduled by the Debtors and as to which a Claims Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order of the Court or otherwise deemed timely filed under applicable law.

92.     "***Disclosure Statement***" means the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates*, dated as of August 30, 2024, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, rule, or regulation, and which shall be in form and substance consistent with the terms and conditions

of the Restructuring Support Agreement and DIP Facility Agreement, including the consent rights contained therein.

93. "***Disclosure Statement Motion***" means the *Debtors' Motion for Entry of an Order (I) Approving (A) the Adequacy of the Disclosure Statement, (B) the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) the Forms of Ballots, Other Solicitation Materials, and Notices in Connection Therewith, (D) the Scheduling of Certain Dates with Respect Thereto, (E) the Rights Offering Procedures, (F) the Overbid Procedures, and (II) Granting Related Relief* [Docket No. 1057], as may be amended, supplemented, or modified from time to time.

94. "***Disclosure Statement Order***" means the order entered by the Court approving, among other things, the Disclosure Statement, the solicitation procedures with respect to the Plan, the Rights Offering Procedures, and the Overbid Procedures.

95. "***Disputed***" means, with respect to any Claim or Interest (or a portion thereof), such Claim or Interest (a) that is not yet Allowed or Disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; (b) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law; (c) which is the subject of an objection or request for estimation, whether filed before or after the Effective Date that has not been determined by a Final Order or otherwise withdrawn; or (d) that is or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely Filed in accordance with the Bar Date Order; *provided* that no Senior Secured Credit Facility Claim or Bond General Unsecured Claim shall be Disputed and all such Claims shall be conclusively allowed as set forth in Article III hereof.

96. "***Disputed Claims Reserve***" means a reserve to be funded with the Disputed Claims Reserve Amount on or before the Effective Date for the benefit of Holders of Disputed Claims, in accordance with Article VII.E.

97. "***Disputed Claims Reserve Amount***" means (a) Cash in an amount equivalent to the recovery to which Holders of Disputed Claims would have been entitled under this Plan if such Claims had been Allowed as of the Effective Date, (b) such lesser amount as determined by the Court, or (c) such lesser amount as agreed to between the Reorganized Debtors or the Plan Administrator and the Holders of such Disputed Claims, as applicable.

98. "***Distribution Record Date***" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date as designated in an order of the Court.

99. "***DTC***" means The Depository Trust Company, a limited-purpose trust company and securities depository organized under the laws of the State of New York.

100. "***Effective Date***" means the date selected by the Debtors on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.A have been satisfied or waived (in accordance with Article IX.B); and (c) the Plan becomes effective; *provided, however,* that if such date does not occur on a Business Day, the Effective Date shall be deemed to occur on the first Business Day after such date.

101.   "***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

102.   "***Epes Green Bonds***" means the Exempt Facilities Revenue Bonds (Enviva Inc. Project), Series 2022 (Green Bonds) issued under the Epes Green Bonds Indenture.

103.   "***Epes Green Bondholders***" means the Holders of the Epes Green Bonds.

104.   "***Epes Green Bonds 9019 Order***" means the *Order (I) Approving the Epes Green Bonds Settlement Under Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* [Docket No. 475].

105.   "***Epes Green Bonds Cash Paydown***" means the monies distributed or to be distributed by the Epes Green Bonds Indenture Trustee to the Holders of Epes Green Bonds pursuant to the Epes Green Bonds 9019 Order.

106.   "***Epes Green Bonds Claims***" means Claims against the Debtors arising under or in connection with the Epes Green Bonds, including approximately $250,000,000 in principal amount, plus accrued and unpaid interest, fees, and other expenses arising under and payable pursuant to the Epes Green Bonds Indenture.

107.   "***Epes Green Bonds Guarantors***" means the "Guarantors" as such term is defined in that certain *Loan and Guaranty Agreement*, dated as of July 1, 2022, between Epes Green Bonds Issuer and Enviva Inc. and certain subsidiaries thereof, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

108.   "***Epes Green Bonds Indenture***" means that certain *Indenture of Trust*, dated as of July 1, 2022, between the Epes Green Bonds Issuer and the Epes Green Bonds Indenture Trustee, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

109.   "***Epes Green Bonds Indenture Trustee***" means Wilmington Trust, N.A., as trustee under the Epes Green Bonds Indenture, and any successors in such capacity.

110.   "***Epes Green Bonds Issuer***" means Industrial Development Authority of Sumter County.

111.   "***Estate***" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

112.   "***EWH***" means Enviva Wilmington Holdings, LLC, a Delaware limited liability company.

113.   "***Exchange Act***" means the Securities Exchange Act of 1934, as amended, and all rules and regulations promulgated thereunder.

114.   "***Excluded Claims***" means (i) any Claims and Causes of Action against RWE Excluded Persons alleging breaches of fiduciary duty arising from nondisclosure of, and failure to

seek approval from the Board of Directors of Enviva Inc. for, agreements for the purchase and sale of wood pellets by the Debtors and RWE Supply & Trading GmbH entered on or about October 13, 2022, November 19, 2022, December 8, 2022, and/or December 21, 2022, and (ii) any Claims and Causes of Action against Preference Excluded Persons alleging preferential transfer claims under 11 U.S.C. § 547 arising from severance payments, which claims may be litigated, prosecuted, settled or otherwise resolved (A) during the pendency of these Chapter 11 Cases with the reasonable written consent of the Committee and the RWE Committee, or (B) after the Effective Date in accordance with terms to be set forth in the Litigation Trust Agreement.

115.    "*Exculpated Party*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Committee and each of its current and former members; (d) each current and former Affiliate of each Entity in the foregoing clause (a) through the following clause (e); and (e) the directors, officers, and professionals of each Entity in clause (a) through clause (d); *provided* that, in each case, an Entity shall be an "Exculpated Party" only to the extent it has performed duties in connection with the Chapter 11 Cases.  For the avoidance of doubt, the term "Affiliate" as used in this provision does not include IHE Holdings, LLC, Enviva Management International Holdings, Limited, Enviva Management Germany GmbH, Enviva Management Japan K.K., Enviva Management UK, Limited, African Isabelle Shipping Co. Ltd (Bahamas), African Sisters Shipping Co. Ltd (Bahamas), Enviva Wilmington Holdings, LLC, Enviva Pellets Hamlet, LLC, Enviva Energy Services Cooperatief, U.A., Enviva Pellets Amory II, LLC, and Enviva Tooling Services Company, LLC.

116.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

117.    "*Existing Equity Interest*" means all Interests in Enviva Inc. that existed immediately prior to the Effective Date, other than, for the avoidance of doubt, any Interests consisting of rights to acquire Reorganized Enviva Inc. Interests through this Plan, the Rights Offering, the Rights Offering Backstop Agreement, the MIP Documents, the DIP Facility or otherwise.

118.    "*Exit Facilities*" means any new credit facility to be entered into on the Effective Date pursuant to the Exit Facility Documents, which may include a priority revolving credit facility, up to an aggregate principal amount of $1,000,000,000, as set forth in and consistent with and subject to the terms and conditions of the Exit Facility Credit Agreement(s).

119.    "*Exit Facility Agents*" means collectively, Acquiom Agency Services LLC and Seaport Loan Products LLC, as administrative agent and collateral agent under the Exit Facility, or any successor thereto, solely in its/their capacity/capacities as such.

120.    "*Exit Facility Commitment Letter*" means that certain *Exit Facility Commitment Letter*, dated as of August 30, 2024, as amended, supplemented, or otherwise modified from time to time pursuant to the terms thereof, which shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, including the consent rights contained therein.

121.   "***Exit Facility Credit Agreement(s)***" means any credit agreement(s) in respect of the Exit Facility to be entered into by Reorganized Enviva Inc., as administrative borrower, Enviva, LP, as subsidiary borrower, the Exit Facility Agents, the Exit Facility Lenders, and the other secured parties thereunder on the Effective Date.  The Exit Facility Credit Agreement(s) in substantially final form, in form and substance consistent with the terms and conditions of the Restructuring Support Agreement and DIP Facility Agreement, including the consent rights contained therein, will be included in the Plan Supplement.

122.   "***Exit Facility Documents***" means the Exit Facility Credit Agreement(s) and all other agreements, documents, instruments, and amendments related thereto, including any guaranty agreements, pledge and collateral agreements, UCC financing statements, or other perfection documents, subordination agreements, fee letters, and any other security agreements. The Exit Facility Documents shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, including the consent rights contained therein.

123.   "***Exit Facility Lender***" means each lender party to an Exit Facility Credit Agreement.

124.   "***Face Amount***" means, with respect to a Disputed Claim: (a) the full stated amount claimed by the Holder of such Claim in a Proof of Claim Filed by the General Bar Date (if the Proof of Claim specifies a liquidated amount); (b) the full amount of such Claim listed on the Debtors' Schedules if the applicable Proof of Claim does not specify a liquidated amount; or (c) the amount of such Claim estimated by the Court for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; *provided that*, with respect to such a Claim, the amount estimated by the Court for purposes of allowance pursuant to section 502(c) shall control notwithstanding that such Holder has Filed a Proof of Claim or the amount of such Claim is listed on the Debtors' Schedules.

125.   "***Federal Judgment Rate***" means the federal judgment rate in effect as of the Petition Date.

126.   "***FiberCo Notes***" means, collectively, the promissory notes originally issued by Enviva FiberCo, LLC to John Deere and Merchant Bank, and the promissory notes issued by Enviva Pellets, LLC to John Deere, Northland Capital, and JP Morgan Chase Bank, N.A.

127.   "***FiberCo Notes Claims***" means Claims arising under or in connection with the FiberCo Notes.

128.   "***File***," "***Filed***," or "***Filing***" means file, filed, or filing in the Chapter 11 Cases with the Court or, with respect to the filing of a Proof of Claim, the Noticing and Claims Agent or the Court through the PACER or CM/ECF website.

129.   "***Final DIP Order***" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 457], as may be amended from time to time.

130.    "***Final Order***" means (a) an order or judgment of the Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Cases (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Rules, may be filed relating to such order shall not prevent such order from being a Final Order.  For the avoidance of doubt, for purposes of the Plan, the Final DIP Order shall be treated as a Final Order notwithstanding any pending appeal.

131.    "***General Bar Date***" means June 14, 2024, at 5:00 p.m. (prevailing Eastern Time), the date established pursuant to the Bar Date Order by which Proofs of Claim (other than for Administrative Expense Claims, Claims held by Governmental Units, and certain other Claims), must be Filed.

132.    "***General Unsecured Claims***" means Bond General Unsecured Claims and Non-Bond General Unsecured Claims.

133.    "***Global Settlement***" means the comprehensive settlement between the Debtors, the Ad Hoc Group, the Committee and the RWE Committee, as set forth in the Plan and the Global Settlement Stipulation.

134.    "***Global Settlement Stipulation***" means that certain *Stipulation and Agreed Order* [Docket No. 1182] in respect of the Global Settlement.

135.    "***Governmental Bar Date***" means September 9, 2024, at 5:00 p.m. (prevailing Eastern Time), the date established pursuant to the Bar Date Order by which Proofs of Claim of Governmental Units must be Filed.

136.    "***Governmental Unit***" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

137.    "***GUC Distribution Pool Allocation***" means, with respect to each Debtor, the percentage ascribed to such Debtor as set forth on **Exhibit A** hereto.

138.    "***Holder***" means a Person or Entity holding a Claim against or Interest in a Debtor, as applicable.

139.   "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

140.   "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

141.   "*Intercompany Claim*" means any Claim held by one Debtor against another Debtor, including Proof of Claim No. 747.

142.   "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor.

143.   "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in a person (including any Debtor or Reorganized Debtor), including any ordinary share, unit, common stock, preferred stock, membership interest, limited liability company interest, equity ownership, profit interest, partnership interest, or other instrument, evidencing any fixed or contingent ownership interest, whether or not transferable, including any option, warrant, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, other right, contractual or otherwise, to acquire any such interest that existed immediately before the Effective Date, convertible exercisable or exchangeable securities or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

144.   "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 317].

145.   "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 103], as may be amended from time to time.

146.   "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended.

147.   "*IRS*" means the United States Internal Revenue Service.

148.   "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

149.   "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

150.   "*Litigation Trust*" means the one or more trusts or funds formed under the Litigation Trust Agreement and the Plan, which trust(s) shall hold the Litigation Trust Assets.

151.   "*Litigation Trust Board*" has the meaning set forth in **Error! Reference source n ot found.** of the Plan.

152.   "*Litigation Trust Board Member*" has the meaning set forth in **Error! Reference s ource not found.** of the Plan.

153.    "*Litigation Trust Agreement*" means the trust or similar agreement (if any) providing for the Litigation Trust, as may be amended, supplemented, restated, or otherwise modified from time to time in accordance with the terms thereof, which shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, including the consent rights contained therein and, for the avoidance of doubt, shall be in form and substance reasonably acceptable to each of the Debtors, the Committee, the Ad Hoc Group and the RWE Committee.

154.    "*Litigation Trust Assets*" means (i) Cash in an amount equal to $1 million, funded by the Debtors in accordance with the terms of the Litigation Trust Agreement; (ii) the Excluded Claims; and (iii) the proceeds of the Excluded Claims.

155.    "*Litigation Trust Beneficiaries*" means Holders of Allowed General Unsecured Claims.

156.    "*Litigation Trust Interest*" means a beneficial interest in the Litigation Trust issued to Holders of Allowed General Unsecured Claims on the Effective Date on account of such Claims.

157.    "*Litigation Trustee*" means the trustee of the Litigation Trust with the role, responsibilities and authority relating to the Litigation Trust and the Excluded Claims set forth in the Litigation Trust Agreement.

158.    "*Local Rules*" means the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia.

159.    "*Majority Consenting 2026 Noteholders*" means the Consenting 2026 Noteholders holding at least one-half in dollar amount of the aggregate outstanding principal amount of the 2026 Notes Claims held by all Consenting 2026 Noteholders at the time of such consent.

160.    "*Management Incentive Plan*" means that certain management incentive plan of the Reorganized Debtors implemented on the Effective Date and governed by the MIP Documents, pursuant to which the MIP Equity shall be issued on and after the Effective Date and/or reserved for grants made from time to time to directors, officers, or other management employees of the Reorganized Debtors, in a form, amounts, and at times to be determined by the New Board in accordance with this Plan.

161.    "*Minority Lender Group*" means that certain ad hoc group of first lien lenders represented by Latham & Watkins LLP (among other advisors) that does not constitute the Required Senior Secured Credit Facility Lenders.

162.    "*Minority Lender Group Fee and Expense Reimbursement*" means reimbursement of all reasonable and documented prepetition and postpetition fees and expenses of the Minority Lender Group, subject to an aggregate maximum limit of $400,000, subject to the terms and conditions set forth in paragraph 13(j) of the Final DIP Order and the review procedures set forth in paragraph 16 of the Final DIP Order.

163.    "*MIP Documents*" means any documents governing the Management Incentive Plan.

164.     "*MIP Equity*" means (a) 3.5% of the Reorganized Enviva Inc. Interests, in the form of restricted stock units, on a fully diluted basis, to be issued on the Effective Date, and (b) 6.5% of Reorganized Enviva Inc. Interests, on a fully diluted basis, to be issued at the discretion of the New Board on or after the Effective Date, each in accordance with the Management Incentive Plan.

165.     "*New Board*" means (a) with respect to Reorganized Enviva Inc., the initial board of directors of Reorganized Enviva Inc., and (b) with respect to each other Reorganized Debtor, the initial board of directors, board of managers, or other governing body of such Reorganized Debtor, in each case as determined pursuant to Article IV.L of this Plan and the Plan Supplement.

166.     "*New Organizational Documents*" means the Stockholders Agreement and all other new or amended organizational and governance documents for the Reorganized Debtors that will become effective on the Effective Date, including the form of the certificates or articles of incorporation, charters, bylaws, and limited liability company agreements, and/or, if applicable, any registration rights agreements or such other applicable formation documents of each of the Reorganized Debtors and term sheets related thereto.  Substantially final forms of the New Organizational Documents will be included in the Plan Supplement.  The New Organizational Documents shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, including the consent rights contained therein.

167.     "*New Securities*" means all Reorganized Enviva Inc. Interests (including the DIP Tranche A Equity Allocation, the Rights Offering Shares (including any Unsubscribed Shares), the Reorganized Enviva Inc. Interests issued on account of the Rights Offering Backstop Commitment Premium, and the MIP Equity).

168.     "*NMTC Claims*" means, collectively, the NMTC QLICI Loan Claims and the NMTC Source Loan Claims.

169.     "*NMTC Investment Fund*" means COCRF Investor 232, LLC.

170.     "*NMTC Participants*" means, collectively, (a) the Prepetition NMTC Source Loan Lender, (b) the Prepetition NMTC QLICI Loan Lenders, (c)(i) National Impact Fund, LLC as the managing member of NIF SUB IV, LLC, (ii) UB Community Development, LLC as the managing member of UBCD Sub-CDE Midway, LLC, (iii) PB Community Impact Fund, LLC as the managing member of PBCIF Sub-CDE4, LLC and (iv) MuniStrategies, LLC as the managing member of MuniStrategies Sub-CDE#41, LLC, (d) the NMTC Investment Fund, and (e) Capital One, N.A. as the 100% interest owner of the NMTC Investment Fund.

171.     "*NMTC Participant Adequate Protection Claims*" means all adequate protection Claims arising in favor of the NMTC Participants under applicable law or pursuant to the Final DIP Order.

172.     "*NMTC QLICI Loan Claims*" means Claims arising under or in connection with the Prepetition Senior Secured NMTC QLICI Loan Agreement.

173.     "*NMTC Source Loan Claims*" means Claims arising under or in connection with the Prepetition Senior Secured NMTC Source Loan Agreement.

174.    "***Non-AHG Bond General Unsecured Claims***" means all Bond General Unsecured Claims held by Holders that are not members of the Ad Hoc Group.

175.    "***Non-Bond General Unsecured Claim***" means, at each applicable Debtor, any Unsecured Claim (including, for the avoidance of doubt, any Claim arising from the rejection of an Executory Contract or Unexpired Lease with a Debtor) that is not otherwise (x) paid in full or otherwise satisfied during the Chapter 11 Cases in the ordinary course of business or pursuant to an order of the Court or (y) required to be paid in full or otherwise satisfied pursuant to the Plan; *provided* that Non-Bond General Unsecured Claims shall not include any Unsecured Claim that is an Administrative Expense Claim, an Intercompany Claim, a Claim held by a non-Debtor Affiliate against any Debtor, an Other Priority Claim, a Priority Tax Claim, a Professional Fee Claim, a Section 510(b) Claim, a Cure Claim, or a Bond General Unsecured Claim.

176.    "***Noticing and Claims Agent***" means Verita Global (f/k/a Kurtzman Carson Consultants LLC), as noticing, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases pursuant to the *Order Authorizing the Retention and Appointment of Kurtzman Carson Consultants LLC as Claims and Noticing Agent* entered by the Court on March 14, 2024 [Docket No. 87].

177.    "***Other Priority Claim***" means any Claim against a Debtor other than an Administrative Expense Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Cases.

178.    "***Other Secured Claim***" means any Secured Claim other than a DIP Tranche A Claim, a DIP Tranche B Claim, a Senior Secured Credit Facility Claim, an NMTC Claim, or a Priority Tax Claim.

179.    "***Overbid Procedures***" means the procedures for the implementation of the Overbid Process, as approved by the Court pursuant to the Disclosure Statement Order and subject in all respects to the consent rights set forth in the Final DIP Order.

180.    "***Overbid Process***" means the process described in <u>Annex A</u> to the Final DIP Order.

181.    "***Person***" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

182.    "***Petition Date***" means March 12, 2024 or March 13, 2024, as applicable, the date on which each Debtor Filed its voluntary petition for relief commencing the Chapter 11 Cases.

183.    "***Plan***" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Restructuring Support Agreement, and the terms hereof, including the Plan Supplement and all exhibits, supplements, appendices, and schedules to the Plan, which shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement and the DIP Facility Agreement, including the consent rights contained therein.

184.    "***Plan Administrator***" means, on the Effective Date, the Debtors or the Reorganized Debtors, as applicable, their respective agent(s), or any Entity or Entities designated by the Reorganized Debtors, in their discretion (or, if applicable, designated by the Debtors prior to the Effective Date, with the consent of the Majority Consenting 2026 Noteholders and Required Backstop Parties, and otherwise in the Debtors' discretion), to make or facilitate distributions in accordance with the Plan, to be identified (to the extent known) in the Plan Supplement.

185.    "***Plan Supplement***" means the compilation of documents and forms of documents, and all schedules, exhibits, attachments, agreements, and instruments referred to therein, ancillary or otherwise, including, among other things: (a) the Exit Facility Credit Agreement(s), (b) the New Organizational Documents, (c) the Stockholders Agreement, (d) the Schedule of Assumed Executory Contracts and Unexpired Leases, (e) the Schedule of Rejected Executory Contracts and Unexpired Leases, (f) the Schedule of Retained Causes of Action, (g) to the extent known and determined, the number and slate of directors or managers to be appointed to the New Board and any information to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, (h) the Restructuring Transactions Exhibit, (i) the identity of the Plan Administrator (to the extent known), and (j) the Litigation Trust Agreement, all of which shall be incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, through and after the Confirmation Date up until the Effective Date, consistent with the Plan, the Restructuring Support Agreement, and the Global Settlement, including any consent rights of the Restructuring Support Parties and the Settlement Parties as set forth in the Global Settlement Stipulation.  The Plan Supplement shall be Filed with the Court on or before fourteen (14) days prior to the Voting Deadline.

186.    "***Post Effective Date Committee Matters***" has the meaning set forth in Article XII.K hereof.

187.    "***Preference Actions***" means any and all Causes of Action which any of the Debtors or the Estates have asserted or may assert under section 547 of the Bankruptcy Code or any state law equivalent or, to the extent such Causes of Action arise solely in connection with claims under section 547 of the Bankruptcy Code, section 550 of the Bankruptcy Code.

188.    "***Preference Excluded Persons***" means William H. Schmidt, Jr., Shai S. Even, and John Keppler.

189.    "***Prepetition Agents***" means the 2026 Notes Indenture Trustee, the Bond Green Bonds Indenture Trustee, the Epes Green Bonds Indenture Trustee and the Senior Secured Credit Facility Agent, each in its capacity as such.

190.    "***Prepetition Debt Documents***" means the 2026 Notes Indenture, the Bond Green Bonds Indenture, the Epes Green Bonds Indenture and the Senior Secured Credit Facility Documents, and all documents, amendments and supplements related to each of the foregoing.

191.    "***Prepetition NMTC QLICI Loan Lenders***" means (a) NIF SUB IV, LLC, (b) UBCD Sub-CDE Midway, LLC, (c) PBCIF Sub-CDE4, LLC, and (d) MuniStrategies Sub-CDE#41, LLC.

192.    "***Prepetition NMTC Source Loan Lender***" means United Bank.

193. "***Prepetition Senior Secured NMTC QLICI Loan Agreement***" means that certain *Loan Agreement*, dated as of June 27, 2022, among Enviva Pellets Epes, LLC, the NMTC QLICI Lenders, and Enviva Inc., as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

194. "***Prepetition Senior Secured NMTC Source Loan Agreement***" means that certain *Loan Agreement*, dated as of June 27, 2022, among Enviva Pellets Epes Finance Company, LLC and the Prepetition NMTC Source Loan Lender, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

195. "***Priority Tax Claim***" means any Claim entitled to priority, whether Secured or Unsecured, against a Debtor held by a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

196. "***Pro Rata***" means, unless indicated otherwise, the proportion that an Allowed Claim or an Allowed Interest bears to the aggregate amount of Allowed Claims, Allowed Interests, or other matter so referenced, as the context requires.

197. "***Professional***" means, in such capacity, an Entity employed pursuant to a Final Order of the Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered in such capacity before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

198. "***Professional Fee Claims***" means all Claims for the compensation of Professionals for professional services rendered and the reimbursement of expenses incurred by such Professionals on or after the Petition Date through and including the Effective Date under sections 327, 328, 329, 330, or 331 the Bankruptcy Code, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Court.  To the extent the Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Allowed Professional Fee Claim.

199. "***Professional Fee Escrow Account***" means an interest-bearing account funded by the Debtors on the Effective Date in an amount equal to the Professional Fee Reserve Amount, pursuant to Article II.B.

200. "***Professional Fee Reserve Amount***" means the total amount of Professional Fee Claims estimated in accordance with Article II.B.3.

201. "***Proof of Claim***" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

202. "***Qualified Bid***" means a proposal or offer that meets all of the Qualified Bid Requirements.

203. "***Qualified Bid Requirements***" means, with respect to a proposal or offer, the following requirements:  (a) submitted in writing, on a binding basis; (b) provides for an Alternative Transaction that satisfies the Threshold Clearing Requirements and that is expected to

be consummated prior to the milestone set forth in the Restructuring Support Agreement for the Plan to become effective (as such date may be extended from time to time, including pursuant to the extension set forth in Annex A to the Final DIP Order and, if necessary, for customary regulatory approvals); (c) is accompanied by a timely paid cash deposit in the amount equal to ten percent (10%) of the aggregate purchase price of the proposal or offer on the terms set forth in the Overbid Procedures; (d) is submitted by a potential bidder that has the financial wherewithal to complete the Alternative Transaction without financing contingencies and otherwise meets the requirements to be a "Qualified Bidder"; and (e) otherwise satisfies each of the requirements in Section VII of the Overbid Procedures, which procedures are Filed as Exhibit I to Exhibit A of the Disclosure Statement Motion.

204.    "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

205.    "*Rejection Damages Bar Date*" means the deadline for Filing a Proof of Claim for Claims for damages arising from the Debtors' rejection of an Executory Contract or Unexpired Lease, which is:  (a) with respect to Claims for damages arising from the Debtors' rejection of an Executory Contract or Unexpired Lease pursuant to this Plan (including, without limitation, any Executory Contract or Unexpired Lease listed on the Schedule of Rejected Executory Contracts and Unexpired Leases), 30 days after service of a notice of the Effective Date; and (b) with respect to all other Claims for damages arising from the Debtors' rejection of an Executory Contract or Unexpired Lease, the later of (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is 30 days following service of an order approving the rejection of such Executory Contract or Unexpired Lease of the Debtors.

206.    "*Related Party*"  means, with respect to any Entity, each of, and in each case solely in its capacity as such and by reason of its capacity as such, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, equity holders, employees, independent contractors, subcontractors, agents, board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

207.    "*Released Avoidance Action Party*" means any trade counterparty of the Debtors against which the Debtors may hold an Avoidance Action; *provided* that no Preference Excluded Person shall be a Released Avoidance Action Party.

208.    "*Released Party*" means each of the following solely in its capacity as such: (a) the Debtors and their Estates; (b) the Reorganized Debtors; (c) the DIP Agents; (d) the DIP Creditors; (e) the Restructuring Support Parties; (f) the Bond Green Bonds Restructuring Support Parties; (g) the Committee and each of its current and former members, in their capacity as such; (h) the RWE Committee and each of its current and former members, in their capacity as such; (i) the Exit Facility Agent; (j) the Exit Facility Lenders; (k) the Rights Offering Backstop Parties; (l) the 2026 Notes Indenture Trustee; (m) the Epes Green Bonds Indenture Trustee; (n) the Senior Secured Credit Facility Agent; (o) each Releasing Party; and (p) each Related Party of each of the foregoing

parties under clauses (a) through (o); *provided* that, in each case, any Holder of a Claim or Interest that is not a Releasing Party shall not be a "Released Party."

209.    "***Releasing Party***" means each of the following solely in its capacity as such: (a) the Debtors and their Estates; (b) the Reorganized Debtors; (c) the DIP Agents; (d) the DIP Creditors; (e) the Restructuring Support Parties; (f) the Bond Green Bonds Restructuring Support Parties; (g) the Committee and each of its current and former members, in their capacity as such; (h) the Exit Facility Agent; (i) the Exit Facility Lenders; (j) the Rights Offering Backstop Parties; (k) the 2026 Notes Indenture Trustee; (l) the Epes Green Bonds Indenture Trustee; (m) the Senior Secured Credit Facility Agent; (n) the RWE Committee and each of its current and former members, in their capacity as such; (o) all Holders of Impaired Claims and Interests who voted to accept the Plan; (p) all Holders of Impaired Claims and Interests who abstained from voting on the Plan, voted to reject the Plan, or are deemed to have rejected the Plan; (q) all Holders of Unimpaired Claims; (r) all Holders of Interests; and (s) each Related Party of each Entity in clause (a) through this clause (s) for which such Entity is legally entitled to bind such Related Party to the release contained in the Plan under applicable law; *provided* that an Entity listed in clauses (o) through (r) shall only constitute a Releasing Party if the applicable Entity either (x) elects to opt in to provide the releases contained in the Plan or (y) is otherwise specifically enumerated in clause (a) through (n); *provided further*, that any member of the RWE Committee that fails to opt in to provide the releases contained in the Plan shall not be a "Releasing Party" and, if an Entity is not a "Releasing Party," then its Related Parties (in their capacities as such) are not Releasing Parties.

210.    "***Reorganized***" means, in relation to a Debtor, such Debtor (or any successor thereto, by merger, consolidation, or otherwise), as reorganized on or after the Effective Date.

211.    "***Reorganized Debtors***" means, collectively, each of the Debtors (including Reorganized Enviva Inc.) on the Effective Date.

212.    "***Reorganized Debtors Cooperation Provisions***" has the meaning set forth in Article IV.O hereof.

213.    "***Reorganized Enviva Inc.***" means Enviva Inc., as Reorganized on the Effective Date, which will hold, directly or indirectly, substantially all of the assets and property of Enviva Inc., including the Intercompany Interests in the Subsidiary Debtors, as Reorganized on or after the Effective Date; *provided* that such term shall also refer to any successor or replacement entity acting as the corporate parent of the Reorganized Debtors or to Enviva Inc. if and as reorganized under a different name or in a different legal entity form.

214.    "***Reorganized Enviva Inc. Equity Pool***" means the total number of Reorganized Enviva Inc. Interests to be issued under the Plan.

215.    "***Reorganized Enviva Inc. Interest***" means an Interest in Reorganized Enviva Inc. that will be issued by the Plan Administrator on the Effective Date (or such other date as set forth herein or in the Plan Supplement) or issued on or after the Effective Date.

216.    "***Required Senior Secured Credit Facility Lenders***" means Senior Secured Credit Facility Lenders having loans outstanding, exposure and unused commitments in respect of any loans under the Senior Secured Credit Agreement representing more than 50% of the sum of all

loans outstanding, exposure and unused commitments in respect of any loans under the Senior Secured Credit Agreement.

217.    "*Required DIP Creditors*" means, at any time, DIP Creditors having outstanding DIP Loans and unused commitments thereunder representing more than 50% of the sum of all outstanding DIP Loans and unused commitments thereunder at such time; *provided* the DIP Loans and commitments of any Defaulting DIP Creditor (as defined in the DIP Facility Agreement) shall be disregarded in the determination of the Required DIP Creditors at any time.

218.    "*Restructuring*" means all actions that may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary to effectuate, the Restructuring Support Agreement and the Plan.

219.    "*Restructuring Expenses*" means the reasonable and documented fees and expenses (including but not limited to fees and expenses for professionals and advisors) incurred by (a) the Ad Hoc Group Advisors, (b) the Senior Secured Credit Facility Agent, (c) the Bonds Green Bonds Indenture Trustee, (d) the Epes Green Bonds Indenture Trustee, (e) the 2026 Notes Indenture Trustee, and (f) the Committee Expenses, in each case pursuant to the terms of (x) any applicable respective fee and engagement letters entered into by such Persons in connection with or arising as a result of the Restructuring, the Plan, or the Chapter 11 Cases, (y) any applicable indenture or agreement, or (z) the Global Settlement Stipulation, and in each case not previously paid by, or on behalf of, the Debtors; *provided* that the fees and expenses of the Epes Green Bonds Indenture Trustee and the Bond Green Bonds Indenture Trustee shall, as applicable, be subject to any restrictions on the fees and expenses thereof pursuant to the Epes Green Bonds 9019 Order or the Bond Green Bonds 9019 Order.

220.    "*Restructuring Support Agreement*" means that certain *Restructuring Support Agreement*, dated March 12, 2024 (including all exhibits, annexes, and schedules thereto) by and among the Debtors and the Restructuring Support Parties, Filed as Exhibit C to the *Declaration of Glenn Nunziata in Support of Chapter 11 Petitions* [Docket No. 27], as amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

221.    "*Restructuring Support Parties*" means the Consenting 2026 Noteholders, the Consenting Senior Secured Credit Facility Lenders, the AHG Consenting Bond Green Bondholders and Consenting Epes Green Bondholders.

222.    "*Restructuring Term Sheet*" means that certain term sheet for the Restructuring attached as Exhibit A to the Restructuring Support Agreement, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms of the Restructuring Support Agreement.

223.    "*Restructuring Transactions Exhibit*" means the exhibit to the Plan Supplement that will set forth the material components of the transactions to effectuate the Restructuring contemplated by the Restructuring Support Agreement, the Plan and the Plan Supplement, including any "restructuring steps memo," "tax steps memo" or other document describing steps to be taken in connection with the Restructuring; *provided* that to the extent the exhibit (or any

portion thereof) relates to the Global Settlement, such exhibit (or any portion thereof) shall be subject to the reasonable consent rights of the Committee and RWE Committee.

224.    "***Retained Causes of Action***" means any Cause of Action that any Debtor may have or be entitled to assert on behalf of its Estate or itself, whether or not asserted, that is not released, waived, or transferred by the Debtors pursuant to the Plan, including (i) the Excluded Claims and (ii) the claims and Causes of Action set forth in the Schedule of Retained Causes of Action.  For the avoidance of doubt, Excluded Claims are not released and shall be transferred to the Litigation Trust as of the Effective Date in accordance with the Plan.

225.    "***Rights Offering***" means the equity rights offering pursuant to which each eligible Holder of Allowed Bond General Unsecured Claims will be entitled to receive rights to subscribe to purchase the Rights Offering Shares in accordance with the Plan, the Rights Offering Procedures, and the Rights Offering Backstop Agreement.

226.    "***Rights Offering Amount***" means proceeds of at least $250 million, which amount shall be subject to adjustment in accordance with the Rights Offering Procedures, generated by the Rights Offering.

227.    "***Rights Offering Backstop Agreement***" means that certain *Backstop Commitment Agreement*, entered into and dated as of August 30, 2024, pursuant to which the Rights Offering Backstop Parties have agreed to backstop the Rights Offering. The Rights Offering Backstop Agreement shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, including the consent rights contained therein.

228.    "***Rights Offering Backstop Approval Order***" means an order entered by the Court approving the Rights Offering Backstop Agreement, which order shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, including the consent rights contained therein.

229.    "***Rights Offering Backstop Parties***" means those parties who have executed the Rights Offering Backstop Agreement, in their capacity as such.

230.    "***Rights Offering Backstop Commitment Premium***" means a premium equal to $29,374,622.28, which shall be subject to dilution on account of the MIP Equity, payable in the form of additional Reorganized Enviva Inc. Interests issued at the same price and with the same applicable discount as the Reorganized Enviva Inc. Interests issued pursuant to the Rights Offering distributed to each Rights Offering Backstop Party in proportion to its individual backstop commitment, and to be issued pursuant to section 4(a)(2) of the Securities Act, section 1145 of the Bankruptcy Code or any other applicable exemption from registration under the Securities Act, other applicable securities laws or the Bankruptcy Code.

231.    "***Rights Offering Participants***" means those Persons who duly subscribe for shares of Reorganized Enviva Inc. Interests issued by Enviva Inc. in accordance with the Rights Offering Procedures.

232.    "***Rights Offering Procedures***" means the procedures for the implementation of the Rights Offering, as approved by the Court pursuant to the Disclosure Statement Order, which shall

be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, including the consent rights contained therein.

233.  "***Rights Offering Shares***" means the Reorganized Enviva Inc. Interests that shall be issued in the Rights Offering, which shall be subject to dilution by the MIP Equity.

234.  "***Rights Offering Subscription Rights***" means those certain rights to purchase the Subscription Shares at the applicable Purchase Price (each as defined and set forth in the Rights Offering Procedures) in accordance with the Rights Offering Procedures, which Reorganized Enviva Inc. will issue to holders of Bond General Unsecured Claims that are entitled to participate in the Rights Offering on account of such claims as set forth herein, and which rights shall, (x) as to any Rights Offering Backstop Party, be subject to the designation and transfer rights set forth in Section 2.7 of the Rights Offering Backstop Agreement and Section 8 of the Rights Offering Procedures, as applicable, and (y) otherwise be non-transferable.

235.  "***RWE Claims***" means Claims against Enviva, LP, Enviva Pellets Waycross, LLC, and Enviva Inc., respectively, described in Proof of Claim Nos. 372, 373 and 374 (which amends and supersedes Proof of Claim No. 396).

236.  "***RWE Committee***" means the ad hoc committee of holders of interests (whether through having entered into a trade and/or acquiring a beneficial ownership interest in the form of a participation, the acquisition of legal title through an assignment or otherwise), or investment managers or advisors to such holders, in certain of the RWE Claims, and other Claims against the Debtors.  For the avoidance of doubt, none of the RWE Committee, any of its members nor any of their respective Related Parties shall include RWE Supply and Trading GmbH.

237.  "***RWE Excluded Persons***" means Thomas Meth, Shai S. Even, William H. Schmidt, Jr., Michael A. Johnson, and John Keppler.

238.  "***RWE Obligors***" means Enviva, LP, Enviva Pellets Waycross, LLC and Enviva Inc.

239.  "***Schedule of Assumed Executory Contracts and Unexpired Leases***" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, with the consent of the Required DIP Creditors, as set forth in the Plan Supplement, as may be amended from time to time prior to the Effective Date, and which shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement and the DIP Facility Agreement, including the consent rights contained therein.

240.  "***Schedule of Rejected Executory Contracts and Unexpired Leases***" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, with the consent of the Required DIP Creditors, as set forth in the Plan Supplement, as may be amended from time to time prior to the Effective Date, and which shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement and the DIP Facility Agreement, including the consent rights contained therein.

241.  "***Schedule of Retained Causes of Action***" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, which shall

be included in the Plan Supplement, and which shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement and the DIP Facility Agreement, including the consent rights contained therein; *provided* that, for the avoidance of doubt, the Schedule of Retained Causes of Action shall not include any Causes of Action against any Released Parties.

242.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

243.    "*SEC*" means the United States Securities and Exchange Commission.

244.    "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

245.    "*Secured*" means a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

246.    "*Secured Tax Claim*" means any Secured Claim against a Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

247.    "*Securities Act*" means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

248.    "*Security*" has the meaning set forth in section 101(49) of the Bankruptcy Code.

249.    "*Senior Secured Credit Agreement*" means that certain *Amended and Restated Credit Agreement,* dated as of October 18, 2018, among Enviva Inc., as administrative borrower, Enviva, LP, as subsidiary borrower, the Senior Secured Credit Facility Agent, and the Senior Secured Credit Facility Lenders, as may be amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

250.    "*Senior Secured Credit Facility*" means the revolving and term credit facilities pursuant to the Senior Secured Credit Agreement.

251.    "*Senior Secured Credit Facility Agent*" means Ankura Trust Company, LLC as administrative agent and collateral agent under the Senior Secured Credit Agreement in its capacity as such, and any successors in such capacity, and solely for the purpose of being included as a "Released Party" under the terms of this Plan, shall also include, Barclays Bank plc, solely in its

capacity as the predecessor administrative agent and collateral agent under the Senior Secured Credit Agreement.

252.    "*Senior Secured Credit Facility Claims*" means Claims arising under or in connection with the Senior Secured Credit Agreement, including approximately $672,495,880 in principal amount, plus accrued and unpaid interest, fees, and other expenses arising under and payable pursuant to the Senior Secured Credit Agreement.

253.    "*Senior Secured Credit Facility Documents*" means the Senior Secured Credit Agreement and all other agreements, documents, instruments, and amendments related thereto, including any guaranty agreements, pledge and collateral agreements, UCC financing statements, or other perfection documents, subordination agreements, fee letters, and any other security agreements.

254.    "*Senior Secured Credit Facility Lender*" means each lender party to the Senior Secured Credit Agreement in its capacity as such.

255.    "*Senior Secured Credit Facility Lender Adequate Protection Claims*" means all adequate protection Claims arising in favor of the Senior Secured Credit Facility Lenders under applicable law or pursuant to the Final DIP Order.

256.    "*Settlement Parties*" has the meaning set forth in Article IV.O of the Plan.

257.    "*Solicitation Materials*" means the solicitation materials with respect to the Plan, including the Disclosure Statement (and all exhibits thereto).

258.    "*Special Committee*" means the special committee of the Board of Directors of Enviva Inc.

259.    "*Stockholders Agreement*" means the stockholders agreement, limited liability company agreement or similar agreement or instrument that may be entered into on the Effective Date by Reorganized Enviva Inc. and all Holders of the Reorganized Enviva Inc. Interests.  A substantially final form of the Stockholders Agreement, if any, in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, including the consent rights contained therein, will be included in the Plan Supplement.

260.    "*Subscription Rights*" means the subscription rights offered to Holders of Allowed Bond General Unsecured Claims to purchase Reorganized Enviva Inc. Interests for an aggregate purchase price of the Rights Offering Amount in accordance with the Rights Offering Procedures.

261.    "*Subsidiary Debtors*" means, collectively, the following:  Enviva Aircraft Holdings Corp.; Enviva Development Finance Company, LLC; Enviva Energy Services, LLC; Enviva GP, LLC; Enviva Holdings GP, LLC; Enviva Management Company, LLC; Enviva MLP International Holdings, LLC; Enviva Partners Finance Corp.; Enviva Pellets Bond, LLC; Enviva Pellets Epes Finance Company, LLC; Enviva Pellets Epes Holdings, LLC; Enviva Pellets Epes, LLC; Enviva Pellets Greenwood, LLC; Enviva Pellets, LLC; Enviva Pellets Lucedale, LLC; Enviva Pellets Waycross, LLC; Enviva Port of Pascagoula, LLC; and Enviva Shipping Holdings, LLC.

262. "**_Threshold Clearing Requirements_**" has the meaning set forth in Article IV.A of the Plan.

263. "**_Transaction Election_**" means the Debtors' election to consummate an Alternative Transaction.

264. "**_Transaction Election Deadline_**" means no later than 4:00 p.m. (prevailing Eastern Time) on the date that is one (1) calendar day prior to the deadline to object to confirmation of the Plan; _provided_ that such date shall be no earlier than November 5, 2024, at 4:00 p.m. (prevailing Eastern Time).

265. "**_Treasury Regulation_**" shall mean, with respect to any referenced provision, such provision of the regulations of the United States Department of the Treasury or any successor provision.

266. "**_Unclaimed Property_**" means any distribution under the Plan on account of an Allowed Claim whose Holder has not: (a) accepted such distribution or, in the case of distributions made by check, negotiated such check within 90 calendar days of receipt; (b) given notice to the Reorganized Debtors of an intent to accept such distribution within 90 calendar days of receipt; (c) responded to, as applicable, the Debtors' or Reorganized Debtors' requests for information necessary to facilitate such distribution prior to the deadline included in such request for information; or (d) timely taken any other action necessary to facilitate such distribution.

267. "**_Unexpired Lease_**" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

268. "**_Unimpaired_**" means, with respect to a Class of Claims or Interests, a Class consisting of Claims or Interests that are not "impaired" within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash or Reinstatement.

269. "**_Unsecured_**" means, with respect to a Claim, a Claim or any portion thereof that is not Secured.

270. "**_Unsubscribed Shares_**" means any Rights Offering Shares that are not subscribed for and purchased in the Rights Offering by a Rights Offering Participant.

271. "**_U.S. Trustee_**" means the Office of the United States Trustee for the Eastern District of Virginia.

272. "**_U.S. Trustee Fees_**" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

273. "**_Voting Deadline_**" means, the deadline for submitting votes to accept or reject the Plan, which deadline is November 6, 2024 at 4:00 p.m. (prevailing Eastern Time), unless extended by the Debtors.

274.   "***Voting Procedures***" means the procedures and instructions for voting on the Plan and related deadlines as set forth in the Court order approving the Disclosure Statement and the solicitation procedures.

B.   *Rules of Interpretation*

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be in that form or on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing contract, lease, instrument, release, indenture, or other agreement or document shall mean that referenced document, as it may by amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof; (4) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms of the Plan and the Restructuring Support Agreement; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (8) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (9) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (11) any docket number references in the Plan shall refer to the docket number of any document Filed with the Court in the Chapter 11 Cases.

C.   *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction, action, or event shall or may occur pursuant to the Plan is a day that is not a Business Day, then such transaction, action, or event shall instead occur on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

D.   *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise

set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that the corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Reorganized Debtor.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.    *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors, the Reorganized Debtors, and/or the Litigation Trust, as applicable, to the extent the context requires.

G.    *Controlling Document*

In the event of an inconsistency between the Plan, the Restructuring Support Agreement, and the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing, other than the Plan Supplement), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and any of the Plan, the Disclosure Statement, or the Plan Supplement, the Confirmation Order shall control.

H.    *Consent Rights of Restructuring Support Parties and DIP Creditors*

Notwithstanding anything herein to the contrary, any and all consent rights of (1) the Restructuring Support Parties (or any subset thereof) set forth in the Restructuring Support Agreement, (2) the DIP Creditors as set forth in the DIP Orders and the DIP Facility Agreement, (3) the Rights Offering Backstop Parties set forth in the Rights Offering Backstop Agreement, and (4) the Exit Facility Lenders set forth in the Exit Facility Commitment Letter with respect to the form and substance of this Plan, the Disclosure Statement, the motion seeking approval by the Court of the Disclosure Statement, the Plan Supplement, and any other Definitive Documentation, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference and fully enforceable as if stated in full herein. Failure to reference in the Plan the rights referred to in the immediately preceding sentence shall not impair such rights and obligations. The Restructuring Support Agreement, the DIP Facility Agreement, the Rights Offering Backstop Agreement and the Exit Facility Commitment Letter, as applicable, shall control in case of a conflict between the consultation, information, notice, and consent rights of any party set forth in the Restructuring Support Agreement, the DIP Facility Agreement, the Rights Offering Backstop Agreement and the Exit Facility Commitment Letter with the consultation, information, notice, or consent rights set forth in the Plan. Notwithstanding anything

31

in the Plan to the contrary, the consent rights of the Committee and the RWE Committee shall be as set forth in the Global Settlement Stipulation and as otherwise set forth in this Plan.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL
## FEE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.    *Administrative Expense Claims*

Except with respect to Administrative Expense Claims that are Professional Fee Claims, and except to the extent that an Administrative Expense Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Expense Claim and the applicable Debtor(s) (with the consent of the Majority Consenting 2026 Noteholders) agree to less favorable treatment, each Holder of an Allowed Administrative Expense Claim will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Expense Claim in accordance with the following: (1) if such Administrative Expense Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Expense Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Expense Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors (with the consent of the Majority Consenting 2026 Noteholders), as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Court or the Final DIP Order.

Except as otherwise provided in this Article II.A of the Plan and except with respect to Administrative Expense Claims that are Professional Fee Claims or that arise in the ordinary course of the Debtors' businesses, requests for allowance and payment of Administrative Expense Claims must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, pursuant to the procedures specified in the Bar Date Order, the Confirmation Order, and the notice of entry of the Confirmation Order no later than the Administrative Expense Claims Bar Date. Holders of Administrative Expense Claims that are required to, but do not, File and serve on the Debtors or the Reorganized Debtors, as applicable, a request for allowance and payment of such Administrative Expense Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, or their respective assets or property and such Administrative Expense Claims shall be deemed compromised, settled, released, and discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Debtors or the Reorganized Debtors, as applicable,

and the requesting party no later than 90 days after the Effective Date or such other date fixed by the Court. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be Filed with respect to an Administrative Expense Claim previously Allowed.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE ADMINISTRATIVE CLAIM BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, OR THE PROPERTY OF ANY OF THE FOREGOING, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED COMPROMISED, SETTLED, RELEASED, AND DISCHARGED AS OF THE EFFECTIVE DATE WITHOUT THE NEED FOR ANY OBJECTION FROM THE REORGANIZED DEBTORS OR ANY NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT OR ANY OTHER ENTITY.**

B.      *Professional Compensation*

1.      Final Fee Applications

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through and including the Effective Date, shall be Filed and served on the Reorganized Debtors no later than 45 days after the Effective Date. Each such final request will be subject to approval by the Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Court, such Allowed Professional Fee Claims shall be promptly paid in Cash from the Professional Fee Escrow Account up to its full Allowed amount. If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims shall be promptly paid by the Reorganized Debtors without any further action or order of the Court. The Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the terms of the Interim Compensation Order.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party no later than 21 days after such Professional Fee Claim is Filed with the Court.

2.      Professional Fee Escrow Account

As soon as practicable after Confirmation, and not later than the Effective Date, the Debtors shall, in consultation with the Ad Hoc Group, establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall not be subject to any Lien and shall be maintained in trust solely for the benefit of the Professionals, including with respect to whom fees or expenses have been held back pursuant

to the Interim Compensation Order.  The funds in the Professional Fee Escrow Account shall not be deemed to be property of the Estates, the Reorganized Debtors, the Litigation Trustee or the Litigation Trust.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from the Professional Fee Escrow Account (a) as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order or the Final DIP Order, (b) on such other terms as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Debtors or the Reorganized Debtors, as applicable, or (c) in accordance with the Interim Compensation Order.  When all such Allowed amounts owing to all Professionals on account of Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be turned over to the Reorganized Debtors without any further action or order of the Court.

3.    Professional Fee Reserve Amount

No later than 5 Business Days prior to the Effective Date, the Debtors shall solicit Professionals for estimates of their unpaid Professional Fee Claims before and as of the Effective Date, and such Professionals shall deliver such estimate to the Debtors and counsel to the Ad Hoc Group in writing via email 2 Business Days prior to the Effective Date; *provided, however,* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.  If a Professional does not timely provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional in consultation with the Ad Hoc Group.

4.    Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors or the Reorganized Debtors shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses incurred by the Reorganized Debtors and, solely as it pertains to the Post Effective Date Committee Matters set forth in Article XII.K hereof, the Committee; *provided* that (x) nothing in the foregoing shall limit the rights of the Reorganized Debtors to dispute or seek further information as to the reasonableness of such Post Effective Date fees and expenses, (y) the Reorganized Debtors and the applicable party or professional shall work in good faith to consensually resolve any dispute or disagreement with respect to such fees and expenses and (z) to the extent the respective parties cannot resolve such dispute amicably, the applicable parties may return to the Court for further determination.

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional for fees and expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Court.  For the avoidance of doubt, professional persons employed or compensated by the Litigation Trust shall be employed and compensated by the Litigation Trust and not by the Debtors, their Estates or the Reorganized Debtors.

C.    *DIP Facility Claims*

1.    Allowance

All DIP Facility Claims shall be deemed Allowed as of the Effective Date in an amount equal to the aggregate amount of the DIP Obligations, including, without limitation, (a) the principal amount of all notes and loans outstanding under the DIP Facility as of the Effective Date, (b) all interest accrued and unpaid thereon through and including the Effective Date, and (c) any and all accrued and unpaid fees, expenses and indemnification or other obligations of any kind payable under the DIP Facility Documents.

From and after the entry of the Confirmation Order, the Debtors or Reorganized Debtors, as applicable, shall, without any further notice to or action, order or approval of the Court or any other party, pay in Cash the legal, professional and other fees and expenses of the DIP Agents in accordance with the Final DIP Order, but without any requirement that the professionals of the DIP Agents comply with the review procedures set forth therein.

2.    DIP Tranche A Claims

Except to the extent that a Holder of an Allowed DIP Tranche A Claim agrees to a less favorable treatment (which treatment shall be subject to the consent of the Majority Consenting 2026 Noteholders), in full and final satisfaction, compromise, settlement, release and discharge of each Allowed DIP Tranche A Claim, as well as any other fees, interest, or other obligations owing to third parties under the DIP Facility Agreement and/or the DIP Orders, to the extent any DIP Tranche A Claims and such other fees, interest or other obligations owing to third parties under the DIP Facility Agreement and/or the DIP Orders have not otherwise been repaid or satisfied, each Holder of an Allowed DIP Tranche A Claim shall receive in exchange for such Claim, on the Effective Date, payment in full in Cash; *provided* that, to the extent such Holder elected, by the DIP Tranche A Equity Participation Election Time, to make a portion of its DIP Tranche A Claim, up to the principal amount of any DIP Obligations then owing in respect of such Allowed DIP Tranche A Claims held by such Holder, subject to the DIP Tranche A Equity Participation, such Holder will receive its Pro Rata share of the DIP Tranche A Equity Allocation in lieu of Cash, which shall be offset against repayment of the applicable portion of such Holder's DIP Obligations then owing in respect of such Allowed DIP Tranche A Claims.  In accordance with the DIP Facility Agreement, a Holder of an Allowed DIP Tranche A Claim may elect, pursuant to a notice reasonably acceptable to the DIP Agents, to offset the DIP Obligations owed to it under the DIP Facility (including with respect to any fees or premiums but after any offset described in the preceding proviso) against any payment obligations it may have with respect to the Rights Offering.

3.    DIP Tranche B Claims

Except to the extent that a Holder of an Allowed DIP Tranche B Claim agrees to a less favorable treatment (which treatment shall be subject to the consent of the Majority Consenting 2026 Noteholders), in full and final satisfaction, compromise, settlement, release and discharge of each Allowed DIP Tranche B Claim, as well as any other fees, interest, or other obligations owing to third parties under the DIP Facility Agreement and/or the DIP Orders, to the extent any DIP

Tranche B Claims and such other fees, interest or other obligations owing to third parties under the DIP Facility Agreement and/or the DIP Orders have not otherwise been repaid, each Holder of an Allowed DIP Tranche B Claim shall receive in exchange for such Claim, on the Effective Date, payment in full in Cash.  In accordance with the DIP Facility Agreement, a Holder of an Allowed DIP Tranche B Claim may elect, pursuant to a notice reasonably acceptable to the DIP Agents, to offset the DIP Obligations owed to it under the DIP Facility (including with respect to any fees or premiums but after any offset against repayment of the principal amount of such Holder's DIP Obligations then owing in respect of such Allowed DIP Tranche B Claims) against any payment obligations it may have with respect to the Rights Offering.

    4.    <u>Repayment, Termination of Liens and Survival</u>

In accordance with the terms of the Plan, on the Effective Date all Liens granted to secure the Allowed DIP Facility Claims shall be automatically terminated and all collateral subject to such Liens shall be automatically released and, in each case, shall be of no further force and effect without any further notice to, or action, order, or approval of, the Court, the DIP Agents, the DIP Creditors, or any other Entity.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the DIP Facility and the DIP Facility Documents shall continue in full force and effect after the Effective Date with respect to any unsatisfied obligations thereunder, as applicable, including, but not limited to, those provisions relating to the rights of the DIP Agent and the other DIP Creditors to expense reimbursement, indemnification, and other similar amounts (either from the Debtors or the DIP Creditors) and any provisions that may survive termination or maturity of the DIP Facility in accordance with the terms thereof.

D.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment (which treatment shall be subject to the consent of the Majority Consenting 2026 Noteholders), in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business by the Reorganized Debtors. In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

E.    *Statutory Fees*

All U.S. Trustee fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, each Debtor or Reorganized Debtor, as applicable, shall pay any and all such fees for each quarter (including any fraction thereof) until such Debtor's or Reorganized Debtor's Chapter 11 Case is converted, dismissed, or a final decree is issued, whichever occurs first.  The Reorganized Debtors shall

continue to file quarterly, post-confirmation operating reports in accordance with the U.S. Trustee's Region 4 Guidelines for Debtors-in-Possession.  For the avoidance of doubt, the Litigation Trust shall not be responsible for payment of U.S. Trustee fees or be required to file quarterly reports.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Summary of Classification*

Claims and Interests, except for Administrative Expense Claims, Professional Fee Claims, DIP Facility Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, waived, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor. Notwithstanding the foregoing, any Class that is vacant as to a particular Debtor will be treated in accordance with Article III.E below.  The classification of Claims and Interests set forth herein, shall apply separately to each of the Debtors, except as expressly set forth herein. All of the potential Classes for the Debtors are set forth herein. Voting tabulations for recording acceptances or rejections of this Plan shall be conducted on a Debtor-by-Debtor basis as set forth herein.

1.    <u>Class Identification</u>

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claim/Interest | Status | Voting Rights |
|:---:|---|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Senior Secured Credit Facility Claims | Unimpaired | Presumed to Accept |
| 4 | NMTC Claims | Unimpaired | Presumed to Accept |
| 5 | Bond General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Non-Bond General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote |

| 8 | Section 510(b) Claims | Impaired | Deemed to Reject |
| 9 | Intercompany Interests | Unimpaired/Impaired | Not Entitled to Vote |
| 10 | Existing Equity Interests | Impaired | Deemed to Reject |

B.   *Treatment of Claims and Interests*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or Reorganized Debtors, and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of the Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.   <u>Class 1 – Other Priority Claims</u>

a.   *Classification*:  Class 1 consists of all Other Priority Claims.

b.   *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each Holder thereof shall receive, at the option of the Debtors or the Reorganized Debtors, as applicable, with the consent of the Majority Consenting 2026 Noteholders, either:

i.   payment in full, in Cash of the unpaid portion of its Allowed Other Priority Claim; or

ii.   such other treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code,

in each case payable on the later of the Effective Date and the date that is 10 Business Days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon as reasonably practicable thereafter.

c.   *Voting*:  Class 1 is Unimpaired under the Plan.  Each Holder of an Other Priority Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Priority Claims will not be entitled to vote to accept or reject the Plan.

2.   <u>Class 2 – Other Secured Claims</u>

a.   *Classification*:  Class 2 consists of all Other Secured Claims.

b.  *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Other Secured Claim, each such Holder shall receive, at the option of the Debtors or the Reorganized Debtors, as applicable, with the consent of the Majority Consenting 2026 Noteholders, either:

  i.  payment in full in Cash of such Holder's Allowed Other Secured Claim;

  ii.  the collateral securing such Holder's Allowed Other Secured Claim;

  iii.  Reinstatement of such Holder's Allowed Other Secured Claim; or

  iv.  such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

c.  *Voting*:  Class 2 is Unimpaired under the Plan.  Each Holder of an Other Secured Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Secured Claims will not be entitled to vote to accept or reject the Plan.

3.  <u>Class 3 – Senior Secured Credit Facility Claims</u>

a.  *Classification*:  Class 3 consists of all Senior Secured Credit Facility Claims.

b.  *Allowance*:  On the Effective Date, the Senior Secured Credit Facility Claims shall be Allowed in the aggregate principal amount equal to $672,495,880, *plus* any accrued and unpaid interest thereon and fees, expenses, costs, charges, indemnities, and other obligations incurred and payable under the Senior Secured Credit Facility Documents (subject to the limitations set forth in paragraph 13(j) of the Final DIP Order and Article IV.H hereof).

c.  *Treatment*:  On the Effective Date, or as soon as practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Allowed Senior Secured Credit Facility Claims, such Allowed Senior Secured Credit Facility Claims shall receive payment in full in Cash.

d.  *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Senior Secured Credit Facility Claims are conclusively presumed to have accepted the Plan

pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.   Class 4 – NMTC Claims

a.   *Classification*:  Class 4 consists of all NMTC Claims.

b.   *Allowance*:  On the Effective Date, the NMTC Claims shall be Allowed in the respective amount of the Allowed NMTC QLICI Loan Claims and the Allowed NMTC Source Loan Claims.

c.   *Treatment*:  On the Effective Date, all Allowed NMTC Claims shall, at the option of the Debtors or the Reorganized Debtors, as applicable, with the consent of the Majority Consenting 2026 Noteholders, either:

  i.   be Reinstated in accordance with section 1124(2) of the Bankruptcy Code and continued after the Effective Date; or

  ii.   receive payment in full in Cash or such other treatment so as to render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

d.   *Voting*:  Class 4 is Unimpaired under the Plan.  Holders of NMTC Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

5.   Class 5 – Bond General Unsecured Claims

a.   *Classification*:  Class 5 consists of all Bond General Unsecured Claims.

b.   *Allowance*:  On the Effective Date, the Bond General Unsecured Claims shall be Allowed in the following principal amounts, *plus*, in each case, accrued and unpaid prepetition interest, fees, indemnities and any and all other expenses arising in connection therewith:

  i.   the 2026 Notes Claims shall be Allowed in the aggregate principal amount of $750,000,000 against each of the 2026 Notes Issuers and the 2026 Notes Guarantors;

  ii.   the Bond Green Bonds Claims shall be Allowed in the aggregate principal amount of $100,000,000, *less* the amount of the Bond Green Bonds Cash Paydown, against each of Enviva Inc. and the Bond Green Bonds Guarantors; and

  iii.   the Epes Green Bonds Claims shall be Allowed in the aggregate principal amount of $250,000,000, *less* the amount of the Epes

Green Bonds Cash Paydown, against each of Enviva Inc. and the Epes Green Bonds Guarantors.

c.  *Treatment*:  On the Effective Date, except to the extent that a Holder of a Bond General Unsecured Claim agrees to less favorable treatment, with the consent of the Majority Consenting 2026 Noteholders, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Bond General Unsecured Claim against each applicable Debtor, each such Holder thereof shall receive its Pro Rata share of:

    i.  the Bond General Unsecured Claims Equity Pool;

    ii.  the Subscription Rights; *provided* that any Holder of a Non-AHG Bond General Unsecured Claim who does not timely elect to exercise its Subscription Rights in accordance with the Rights Offering Procedures shall receive Cash in an amount equal to 6.622% of the Holder's Allowed Bond General Unsecured Claim; and

    iii.  89.91% of the Litigation Trust Interests.

d.  *Voting*: Class 5 is Impaired under the Plan.  Each Holder of a Bond General Unsecured Claim will be entitled to vote to accept or reject the Plan.

6.  Class 6 – Non-Bond General Unsecured Claims

a.  *Classification*:  Class 6 consists of all Non-Bond General Unsecured Claims.

b.  *Treatment*:  Except to the extent that a Holder of a Non-Bond General Unsecured Claim agrees to less favorable treatment, with the consent of the Majority Consenting 2026 Noteholders, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Non-Bond General Unsecured Claim, each Holder thereof shall receive, with respect to the applicable Debtor, its Pro Rata share of: (i) Cash in an amount equal to $41.94 million *multiplied by* the applicable GUC Distribution Pool Allocation; and (ii) 10.09% of the Litigation Trust Interests *multiplied by* the applicable GUC Distribution Pool Allocation;

c.  *Voting*: Class 6 is Impaired under the Plan.  Each Holder of a Non-Bond General Unsecured Claim will be entitled to vote to accept or reject the Plan.

7.  Class 7 – Intercompany Claims

a.  *Classification*:  Class 7 consists of all Intercompany Claims.

    b.    *Treatment*: All Intercompany Claims will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the applicable Debtor's discretion, with the consent of the Majority Consenting 2026 Noteholders.

    c.    *Voting*: Class 7 Intercompany Claims are either Unimpaired, in which case the Holders of such Intercompany Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired and not receiving any distribution under the Plan, in which case the Holders of such Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Intercompany Claim will not be entitled to vote to accept or reject the Plan.

8.    <u>Class 8 – Section 510(b) Claims</u>

    a.    *Classification*: Class 8 consists of all Section 510(b) Claims.

    b.    *Treatment*: All Section 510(b) Claims against the Debtors shall be discharged and released, and will be of no further force or effect, and the Holders of Section 510(b) Claims shall not receive or retain any distribution, property, or other value on account of their Section 510(b) Claims.

    c.    *Voting*: Class 8 is Impaired under the Plan. Holders of Section 510(b) Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9.    <u>Class 9 – Intercompany Interests</u>

    a.    *Classification*: Class 9 consists of all Intercompany Interests.

    b.    *Treatment*: All Intercompany Interests shall be Reinstated and otherwise unaffected by the Plan or canceled in exchange for replacement equity interests in the applicable Reorganized Debtor on the Effective Date in the applicable Debtor's discretion, with the consent of the Majority Consenting 2026 Noteholders.

    c.    *Voting*: Class 9 Intercompany Interests are either Unimpaired, in which case the Holders of such Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired and not receiving any distribution under the Plan, in which case the Holders of such Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Intercompany Interest will not be entitled to vote to accept or reject the Plan.

10. <u>Class 10 – Existing Equity Interests</u>

    a.    *Classification*:  Class 10 consists of all Existing Equity Interests.

    b.    *Treatment*:  All existing Equity Interests in Enviva Inc. will be cancelled and extinguished, and Holders of Existing Equity Interests in Enviva Inc. shall receive no recovery pursuant to the Plan on account of such Interests.

    c.    *Voting*:  Class 10 is Impaired under the Plan.  Holders of Existing Equity Interests in Enviva Inc. are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Existing Equity Interests in Enviva Inc. are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired or Reinstated Claims*

Except as specifically provided in the Plan, the Final DIP Order or any other Final Order, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' claims, Causes of Action, rights, or defenses in respect of any Unimpaired Claims or Reinstated Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims or Reinstated Claims.

D.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

The Debtors reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests, and the Filing of the Plan shall constitute a motion for such relief.

E.    *Elimination of Vacant Classes*

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.    *Voting Classes*; *Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

G.    *Intercompany Claims and Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Claims and Intercompany Interests are not being received by Holders of such Intercompany Claims and Intercompany Interests on account of their Intercompany Claims and Intercompany Interests but for the purposes of administrative convenience, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

H.    *Subordinated Claims*

Except as may be the result of the compromise and settlement described in Article VIII.A of the Plan, the allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Restructuring*

Unless the Transaction Election is made, on or, with the consent of the Majority Consenting 2026 Noteholders, before the Effective Date, the applicable Debtors or the Reorganized Debtors, shall undertake the Restructuring in accordance with the Restructuring Transactions Exhibit, including:  (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, sale, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, the Restructuring Support Agreement, and the Plan Supplement, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Restructuring Support Agreement, and the Plan Supplement, and having other terms for which the applicable Entities agree; (3) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (4) the execution, delivery and filing, if applicable, of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, or dissolution pursuant to applicable state law, including any New Organizational Documents; (5) the issuance of securities, including the Reorganized Enviva Inc. Interests (including the DIP Tranche A Equity Allocation, the Rights Offering Shares, and the Reorganized Enviva Inc. Interests issued on account of the Rights Offering Backstop Commitment Premium), which shall be authorized and approved in all respects in each case without further action being required under applicable law, regulation, order, or rule; (6) the execution and delivery of the Exit Facility Documents, which shall occur on the Effective Date; (7) the execution and delivery of Definitive Documentation not otherwise included in the foregoing, if any; (8) the settlement, reconciliation, repayment, cancellation, discharge, and/or release, as applicable, of Intercompany Claims consistent with the Plan; (9) all other actions that the Debtors or the Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law, in each case consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Support Agreement.  The Confirmation Order shall and shall be deemed, pursuant to sections 363, 365 1123, and 1145(a) of the Bankruptcy Code, to authorize, among other things, all actions as may be necessary or appropriate

to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring.

    1.    <u>Overbid Process</u>

Consistent with the Overbid Process set forth in the Final DIP Order, as an alternative to the Restructuring set forth in the Plan, the Debtors have actively marketed offers for, or are in the process of actively marketing offers for Alternative Transactions, solely to the extent such transactions meet the Threshold Clearing Requirements.  Alternative Transactions may take the form of (a) one or more sales or dispositions of the Company Assets or (b) one or more reorganization transactions involving the Debtors and/or the Company Assets.

As set forth in the Overbid Procedures, any Alternative Transaction must meet the following requirements (the "<u>Threshold Clearing Requirements</u>"):

    a.    Provide for the repayment in cash in full of all DIP Facility Claims, Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Senior Secured Credit Facility Claims, NMTC Claims, FiberCo Notes Claims, Amory Seller Note Claims, 2026 Notes Claims, Bond Green Bonds Claims (after taking into account the Bond Green Bonds Cash Paydown), Epes Green Bonds Claims (after taking into account the Epes Green Bonds Cash Paydown), and the Rights Offering Backstop Commitment Premium and the fee set forth in the Exit Facility Commitment Letter (unless such fees are not approved by the Court), including, as applicable, claims in respect of principal, interest, fees, expenses and other amounts owing under the applicable instrument; or

    b.    Are otherwise acceptable to the Majority Consenting 2026 Noteholders (it being understood that no Alternative Transaction or indication or bid for an Alternative Transaction shall be deemed to satisfy this clause (b) unless and until the Majority Consenting 2026 Noteholders have manifested such acceptance expressly and in writing (including by email from counsel)).

If the Debtors obtain one or more Qualified Bids for an Alternative Transaction that satisfies the Threshold Clearing Requirements, and which the Debtors, in consultation with the Ad Hoc Group and the Committee, determine in good faith and in an exercise of their business judgment will maximize value for the Debtors' estates and provide higher and better value as compared to the Restructuring contemplated by the Plan, the Debtors will make the Transaction Election and thereby elect to consummate an Alternative Transaction in accordance with the Overbid Procedures and the Overbid Process.  The Transaction Election, if any, shall be made no later than the Transaction Election Deadline.  For the avoidance of doubt, the Transaction Election Deadline may not be extended except with the express written consent of the Debtors and the Majority Consenting 2026 Noteholders.  If the Transaction Election is made, the Debtors will modify the Plan to reflect the terms of the Alternative Transaction and resolicit the amended Plan, if necessary.

The rights related to and in connection with the Overbid Process of (a) the Restructuring Support Parties, as provided in the Final DIP Order and the Restructuring Support Agreement, (b) the commitments parties, as provided in the Exit Facility Commitment Letter, and (c) the

Rights Offering Backstop Parties, as provided in the Rights Offering Backstop Agreement, and in each case, in the Overbid Procedures are expressly reserved.

In the event the Debtors make the Transaction Election and elect to consummate an Alternative Transaction in accordance with the Overbid Procedures and the Overbid Process, and such Alternative Transaction does not provide for the repayment in cash in full of all RWE Claims, each Holder of a RWE Claim shall have the right to modify its vote on the Plan without any requirement to show cause.

B.    *Sources of Consideration for Plan Distributions*

The Debtors, the Reorganized Debtors, the Plan Administrator and/or the Litigation Trustee, as applicable, shall fund distributions under the Plan as follows:

1.    Cash on Hand

On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall make all Cash distributions required to be made under the Plan using Cash on hand as of the Effective Date, including Cash from operations and the proceeds of the Rights Offering.  All remaining Cash on hand as of the Effective Date, after payment of all Cash distributions required to be made on the Effective Date, including Cash from operations and the proceeds of the Rights Offering, but excluding the Cash funded into the Professional Fee Escrow Account, shall be retained by, vested in, or transferred to, as applicable, the Reorganized Debtors.  Cash payments to be made pursuant to the Plan will be made by the Debtors or the Reorganized Debtors, as applicable.  The Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan and continue the operations of their businesses in the ordinary course of business.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers may be accounted for and/or settled in accordance with the Debtors' historical intercompany account settlement practices and any such action will not violate the terms of the Plan.

2.    Exit Financing

a.    *Exit Facility*

On the Effective Date, the Reorganized Debtors will enter into the Exit Facility in accordance with the terms of the Exit Facility Credit Agreement(s).  The Reorganized Debtors may use the proceeds of the Exit Facility for any purpose permitted by the Exit Facility Documents, including the funding of Cash distributions under the Plan and satisfaction of ongoing working capital needs.

The Confirmation Order shall constitute approval of the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Reorganized Debtors in connection therewith), and authorization for the Debtors or the Reorganized Debtors, as applicable, without further notice to or order of the Court, to enter into, execute, deliver, and perform under the Exit Facility Documents and such other documents as may be required or appropriate to effectuate the transactions

contemplated thereby. Execution of the Exit Facility Documents by the Exit Facility Agent shall be deemed to bind all Exit Facility Lenders as if each such Exit Facility Lenders had executed the applicable Exit Facility Documents with appropriate authorization, regardless of whether such Exit Facility Lender has executed a signature page thereto.

The Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, whether under the Bankruptcy Code or other applicable non-bankruptcy law, and shall not constitute preferential transfers, fraudulent transfers, obligations, or conveyances, or other voidable transfers or obligations under the Bankruptcy Code or any other applicable non-bankruptcy law.  On the Effective Date, all of the Liens and security interests to be granted by the Reorganized Debtors in accordance with the Exit Facility Documents (including any Liens and security interests previously granted with respect to the Senior Secured Credit Facility Documents or the DIP Facility Documents that are deemed to be granted in accordance with the Exit Facility Documents) (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (c) shall be deemed automatically perfected on the Effective Date without the need for the taking of any further filing, recordation, approval, consent or other action, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, and (d) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, obligations, or conveyances, or other voidable transfers or obligations under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents, and take any other actions necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically on the Effective Date by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. The Reorganized Debtors shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

b.      *Alternative Exit Financing*

The Debtors have engaged in a best-efforts exit debt financing process to seek proposals for alternative exit debt financing in consultation with and subject to a process acceptable to the Majority Consenting 2026 Noteholders, as provided for and set forth more fully in the Exit Commitment Letter.  In the event that the Debtors are able to secure alternative exit debt financing on terms that are more favorable to the Debtors and their Estates than the terms of the Exit Facility,

in accordance with the Backstop Order, the Debtors may file an amended Plan Supplement reflecting the terms of such alternative exit debt financing.  Absent any objections from any party in interest within seven (7) days after the filing of such amended Plan Supplement, the Debtors will be authorized to enter into the alternative exit debt financing and emerge from these Chapter 11 Cases with the alternative exit debt financing as a source of funds for plan distributions in lieu of the Exit Facility, without resolicitation, further amendment or modification of this Plan, notice with respect thereto or order of the Court.

3. <u>Litigation Trust Assets</u>

The Litigation Trustee shall fund distributions under the Plan, for the benefit of the Litigation Trust Beneficiaries, in accordance with the Plan and the Litigation Trust Agreement. For the avoidance of doubt, other than the vesting of the Litigation Trust Assets on the Effective Date, none of the Debtors, their Estates or the Reorganized Debtors shall be responsible for any compensation or be obligated hereunder to bear any cost or expense or other liability in connection with the administration of the Litigation Trust.

C. *Issuance and Distribution of Reorganized Enviva Inc. Interests*

On the Effective Date Reorganized Enviva Inc. shall be authorized to and shall issue the Reorganized Enviva Inc. Interests (including the DIP Tranche A Equity Allocation, the Rights Offering Shares, and the Reorganized Enviva Inc. Interests issued on account of the Rights Offering Backstop Commitment Premium) for distribution or reservation, as the case may be, in accordance with the terms of the Plan, the Restructuring Transactions Exhibit, any DIP Tranche A Equity Participation Agreement, the Rights Offering Backstop Agreement, and the Rights Offering Procedures without the need for any further corporate action.  All Holders of Reorganized Enviva Inc. Interests (whether issued and distributed hereunder, including on account of the DIP Tranche A Equity Participation, or pursuant to the Rights Offering or otherwise, and in each case, whether such Reorganized Enviva Inc. Interests are held directly or indirectly through the facilities of DTC) shall be deemed to be a party to, and bound by, the Stockholders Agreement in accordance with its terms, without the requirement to execute a signature page thereto; *provided*, that, without in any way reducing the force and effect of the foregoing, the Debtors may, in their discretion and as a means of further assurance (and with the consent of the Majority Consenting 2026 Noteholders) require that such Holders become party to the New Organizational Documents, either as a condition to distribution of the Reorganized Enviva Inc. Interests or at a later date.

All of the Reorganized Enviva Inc. Interests, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable (as applicable).  Each distribution and issuance of the Reorganized Enviva Inc. Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents, any DIP Tranche A Equity Participation Agreement, the Rights Offering Backstop Agreement, and the Rights Offering Procedures, as applicable, which terms and conditions shall bind each Entity receiving such distribution or issuance.

For the avoidance of doubt, the acceptance of Reorganized Enviva Inc. Interests by any Holder of any Claim or Interest or any other Entity shall be deemed as such Holder's or Entity's

agreement to the applicable New Organizational Documents as may be amended or modified from time to time following the Effective Date in accordance with their terms.

The amount of Reorganized Enviva Inc. Interests, if any, that will be issued on the Effective Date on account of the Bond General Unsecured Claims Equity Pool will be determined based upon, among other things, the Reorganized Debtors' projected net debt as of the Plan's Effective Date, as estimated by the Debtors as of the week prior to the estimated Plan's Effective Date.

To the extent practicable, as determined in good faith by the Debtors and the Majority Consenting 2026 Noteholders, the Reorganized Debtors shall (a) emerge from these Chapter 11 Cases as private companies on the Effective Date and not be subject to SEC reporting requirements under Sections 12 or 15 of the Exchange Act, or otherwise; *provided* that the Debtors are able to meet the requisite thresholds for SEC deregistration; (b) not be voluntarily subjected to any reporting requirements promulgated by the SEC; except, in each case, as otherwise may be required pursuant to the New Organizational Documents, the Exit Facilities Documents or applicable law; (c) not be required to list the Reorganized Enviva Inc. Interests on a national securities exchange; (d) timely file or otherwise provide all required filings and documentation to allow for the termination and/or suspension of registration with respect to SEC reporting requirements under the Exchange Act prior to the Effective Date; (e) make good faith efforts to ensure DTC eligibility of securities issued in connection with the Plan (other than any securities required by the terms of any agreement or by the applicable securities laws to be held on the books of an agent and not in DTC); and (f) take steps necessary to reduce regulatory and/or compliance costs in connection with the foregoing.

D.    *Rights Offering*

On the Effective Date, the Debtors shall consummate the Rights Offering pursuant to the terms and conditions of the Plan and the Rights Offering Procedures. The Rights Offering shall be conducted prior to the Effective Date and the Rights Offering Shares shall be issued Pro Rata to the Rights Offering Participants pursuant to the Plan and the Rights Offering Procedures. Pursuant to the Plan, the Rights Offering Procedures, and the Rights Offering Backstop Agreement, the Rights Offering shall be open to all eligible Holders of Allowed Bond General Unsecured Claims. The consummation of the Rights Offering is conditioned on the consummation of the Plan and satisfaction of the conditions set forth in the Rights Offering Procedures and in the Rights Offering Backstop Agreement, as applicable. The Rights Offering Subscription Rights may not be sold, transferred, or assigned, except in the circumstances described in the Rights Offering Procedures.

The Rights Offering Backstop Parties have agreed (on a several and not joint basis) to purchase any Unsubscribed Shares offered in the Rights Offering pursuant to the terms and conditions of the Rights Offering Backstop Agreement. On the Effective Date, the rights and obligations of the Debtors under the Rights Offering Backstop Agreement shall vest in the Reorganized Debtors.

On the Effective Date, as consideration for the commitments provided under the Rights Offering Backstop Agreement, and subject to and as set forth in the Rights Offering Backstop Agreement and the Rights Offering Backstop Approval Order, Reorganized Enviva Inc. Interests

in an amount equal to the Rights Offering Backstop Commitment Premium (which shall be subject to dilution on account of the MIP Equity) shall be distributed to the Rights Offering Backstop Parties.

E.     *DIP Tranche A Equity Participation*

On or prior to the DIP Tranche A Equity Participation Election Time, Holders of Allowed DIP Tranche A Claims may elect whether to participate in the DIP Tranche A Equity Participation (1) solely in the case of the Rights Offering Backstop Parties and their related funds, pursuant to the Rights Offering Backstop Agreement, and (2) in the case of any other Holder of DIP Tranche A Claims, pursuant to a DIP Tranche A Equity Participation Agreement that is in form and substance acceptable to the Majority Consenting 2026 Noteholders and parties whose consent is required under the Rights Offering Backstop Agreement; *provided* that the Debtors shall be permitted to waive or modify such DIP Tranche A Equity Participation Agreements solely with the consent of the Majority Consenting 2026 Noteholders and such other consents as required under the Rights Offering Backstop Agreement.

On the Effective Date, subject to the terms hereof, Reorganized Enviva Inc. Interests shall be distributed to the Holders of the DIP Tranche A Claims that elect to participate in the DIP Tranche A Equity Participation by the DIP Tranche A Equity Participation Election Time.

F.     *Corporate Existence*

Except as otherwise provided in the Plan, the Plan Supplement (including the Restructuring Transactions Exhibit), the Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed or pursuant to the respective certificate of incorporation and bylaws (or other formation documents and agreements) in effect prior to the Effective Date, except to the extent that such certification of incorporation and bylaws (or other formation documents and agreements) are amended under the Plan, including, with respect to Reorganized Enviva Inc., pursuant to the New Organizational Documents, or otherwise, in each case, consistent with the Plan, and to the extent such documents are amended, such documents are deemed amended pursuant to the Plan and require no further action or approval (other than any requisite filings, approvals or consents required under applicable state, provincial or federal law).  After the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents or agreements) of one or more of the Reorganized Debtors may be amended or modified without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  After the Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, merged, converted, liquidated, etc., without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G.    *Vesting of Property in the Reorganized Debtors*

Except as otherwise provided in the Plan, the Plan Supplement, the Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date all property in each Estate, including all Causes of Action and, for the avoidance of doubt, all equity interests in EWH held by Enviva, LP, and any property acquired by any of the Debtors shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Plan Supplement, or the each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Except with respect to Liens securing the Exit Facility, as applicable, or as otherwise provided for in the Plan, to the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors or any administrative agent under the Exit Facility Documents, as applicable, that are necessary or desirable to cancel and/or extinguish such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

After the Effective Date, the Reorganized Debtors may present Court order(s) or assignment(s) suitable for filing in the records of every county or governmental agency where the property vested in accordance with the foregoing paragraph is or was located, which provide that such property is conveyed to and vested in the Reorganized Debtors; *provided* that the presentation or filing of the Confirmation Order shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of any mortgages, deeds of trust, Liens, pledges, or other security interests.  The Court order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred, assigned and/or vested free and clear of.  The Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished and no notice, other than by the Plan, shall be given prior to the presentation of such Court order(s) or assignment(s).  Any Person having a Lien, Claim, encumbrance, or other interest against any of the property vested in accordance with the foregoing paragraph shall be conclusively deemed to have consented to the transfer, assignment and vesting of such property to or in the Reorganized Debtors free and clear of all Liens, Claims, charges or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan.

H.    *Cancellation of Existing Securities and Agreements*

Except as otherwise set forth in the Plan or the Plan Supplement, on the Effective Date, all Enviva Inc. Interests shall be canceled, released, discharged, and extinguished, and the Reorganized Enviva Inc. Interests (including the DIP Tranche A Equity Allocation, the Rights Offering Shares, and the Reorganized Enviva Inc. Interests issued on account of the Rights

Offering Backstop Commitment Premium) shall be issued pursuant to the Plan.  Except as otherwise provided in the Plan, on the Effective Date: (1) the obligations of the Debtors under any certificate, security, share, note, bond, credit agreement, indenture, purchase right, option, warrant, equity security, or other instrument or document directly or indirectly evidencing, creating or relating to any indebtedness or obligation of or ownership interest in the Debtors, or giving rise to any Claim or Interest (except such agreements, certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated, amended and Reinstated, or entered into pursuant to the Plan) shall be canceled solely as to the Debtors and their affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder, without any need for a Holder or Debtor to take any further action with respect thereto, and the duties and obligations of all parties thereto, including the Debtors or the Reorganized Debtors, as applicable, any non-Debtor Affiliates, and the Prepetition Agents, thereunder or in any way related thereto shall be deemed satisfied in full, canceled, released, discharged, and of no further force or effect; and (2) the obligations of the Debtors or the Reorganized Debtors, as applicable, and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or Interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated amended and Reinstated, or entered into pursuant to the Plan) shall be released and discharged; *provided* that notwithstanding the releases set forth in Article VIII.E of the Plan, Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights, claims, or remedies of the Holder of a Claim or Interest shall continue in effect solely for purposes of (1) enabling Holders of Allowed Claims to receive distributions under the Plan as provided herein and subject to the terms and conditions of the applicable governing document or instrument as set forth therein, (2) allowing and preserving the rights of each of the applicable agents and indenture trustees to (a) make or direct the distributions in accordance with the Plan as provided herein and (b) assert or maintain any rights for indemnification or contribution the applicable agent or indenture trustee may have against the Debtors or the applicable Lenders solely to the extent arising under, and due pursuant to the terms of, the applicable governing document or instrument, (3) preserving the Prepetition Agents' exercise of their rights, claims, causes of action, and interests as against any money or property distributable to the holders of Allowed Claims, including permitting the Prepetition Agents to maintain, enforce, and exercise any charging liens against such distributions, (4) permitting the Prepetition Agents to enforce any obligation (if any) owed to them under the Plan, (5) permitting the Prepetition Agents to appear in the Chapter 11 Cases or in any proceeding in the Court or any other court relating to the Prepetition Debt Documents in furtherance of the foregoing, and (6) permitting the Prepetition Agents to perform any functions that are necessary to effectuate the foregoing; *provided*, *further*, that nothing in this Article IV.H shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan or result in any new or additional liability to the Reorganized Debtors; *provided*, *further*, that nothing in this section shall effectuate a cancellation of any Reorganized Enviva Inc. Interests, Intercompany Interests, Intercompany Claims, or Enviva, LP's equity interest in EWH. Payment of the Minority Lender Group Fee and Expense Reimbursement in accordance with paragraph 13(j) of the Final DIP Order shall be deemed to fully and finally

satisfy any claim for expense reimbursement or indemnification held by the Minority Lender Group.

On the Effective Date, each holder of a certificate or instrument evidencing a Claim that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument in accordance with the applicable indenture or agreement that governs the rights of such holder of such Claim without the need for any further action by the Holder thereof.  Except as otherwise set forth herein or in the Plan Supplement, such surrendered certificate or instrument shall be deemed canceled as set forth in, and subject to the exceptions set forth in, this Article IV.H.

Notwithstanding anything to the contrary in this Article IV.H, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Article IV.H shall be deemed null and void and shall be of no force and effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of a Debtor or any of its counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by such Debtor or Reorganized Debtor, as applicable, pursuant to the Plan or a Final Order of the Court.

I.    *Corporate Action*

Upon the Effective Date, all actions (whether to occur before, on, or after the Effective Date) contemplated by the Plan (including any transaction described in, or contemplated by, the Restructuring Transactions Exhibit) shall be deemed authorized and approved by the Court in all respects, including, as applicable: (1) consummation of the Rights Offering and the DIP Tranche A Equity Participation; (2) entry into the Exit Facility; (3) execution, delivery, and performance of the Exit Facility Documents; (4) the issuance and distribution of the Reorganized Enviva Inc. Interests (including the DIP Tranche A Equity Allocation, the Rights Offering Shares, and the Reorganized Enviva Inc. Interests issued on account of the Rights Offering Backstop Commitment Premium); (5) appointment of the New Board and other directors and officers for Reorganized Enviva Inc. and the other Reorganized Debtors; (6) implementation of the Restructuring; (7) if the Debtors expect to qualify for and elect to utilize the special bankruptcy exception under section 382(l)(5) of the Internal Revenue Code, the New Organizational Documents may include, if applicable, any restrictions on certain transfers of the Reorganized Enviva Inc. Interests; and (8) all other actions contemplated by the Plan and the Restructuring Transactions Exhibit (whether to occur before or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of Reorganized Enviva Inc. and the other Reorganized Debtors, and any corporate, limited liability company, or related action required by the Debtors, Reorganized Enviva Inc., the other Reorganized Debtors, the Litigation Trust Board or the Litigation Trustee, as applicable, in connection with the Plan (including any items listed in the first sentence of this paragraph) shall be deemed to have occurred and shall be in effect in all respects in accordance with the Plan, including the Restructuring Transactions Exhibit, in each case without further notice to or order of the Court and without any requirement of further action by the equityholders, directors, managers, officers or other authorized persons of the Debtors, Reorganized Enviva Inc., the other Reorganized Debtors, the Litigation Trust Board or the Litigation Trustee, as applicable, and with like effect as though such action had been taken

unanimously by the shareholders, members, directors, managers, officers or other authorized persons, as applicable, of the Debtors, the Reorganized Debtors, the Litigation Trust Board or the Litigation Trustee, as applicable. On or (as applicable) before the Effective Date, the appropriate directors, managers, officers, or other authorized persons of the Debtors, Reorganized Enviva Inc., the other Reorganized Debtors, the Litigation Trust Board or the Litigation Trustee, as applicable, shall be authorized, empowered and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the transactions contemplated by the Plan) in the name of and on behalf of Reorganized Enviva Inc. and the other Reorganized Debtors or the Litigation Trust, as applicable, including the Exit Facility Documents, the New Organizational Documents, the Litigation Trust Agreement and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Court. The authorizations and approvals contemplated by this Article IV.I of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

J.     *New Organizational Documents*

To the extent required under the Plan or applicable non-bankruptcy law, Reorganized Enviva Inc. and the other Reorganized Debtors, as applicable, will, on or as soon as practicable after the Effective Date, file their respective New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation or formation in accordance with the corporate or other applicable laws of the respective states, provinces, or countries of incorporation or formation. On the Effective Date, the New Organizational Documents shall be effective. To the extent required pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents of each applicable Reorganized Debtor will prohibit the issuance of non-voting equity securities. After the Effective Date, Reorganized Enviva Inc. and the other Reorganized Debtors, as applicable, may amend and restate their respective New Organizational Documents and other constituent documents, as permitted by the laws of their respective states, provinces, or countries of organization or formation and their respective New Organizational Documents.

On the Effective Date, the New Organizational Documents, in the forms set forth in the Plan Supplement, shall be adopted automatically by the applicable Reorganized Debtors and shall be amended or amended and restated, as applicable, as may be required to be consistent with the provisions of the Plan and the Restructuring Support Agreement, and shall be deemed to be valid, binding, and enforceable in accordance with their terms and provisions.

K.     *Stockholders Agreement*

On the Effective Date, Reorganized Enviva Inc. may enter into and adopt the Stockholders Agreement, substantially in the form set forth in the Plan Supplement, and which shall be deemed to be valid, binding upon the parties thereto, and enforceable in accordance with its terms and provisions. Reorganized Enviva Inc. or the Plan Administrator shall deliver the Stockholders Agreement to each Holder of Reorganized Enviva Inc. Interests, and, to the extent that the Stockholders Agreement purports to bind any such parties, such parties shall be bound thereby, in each case, without the need for execution by any party thereto other than Reorganized Enviva Inc. After the Effective Date, the successors, transferees, and assigns of each Holder of Reorganized

Enviva Inc. Interests shall be required to execute a joinder to the Stockholders Agreement as and to the extent required pursuant to the New Organizational Documents or the Stockholders Agreement.

L.    *Directors and Officers of the Reorganized Debtors*

As of the Effective Date, subject to any requirement of Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the terms of the current members of the boards of directors, boards of managers, or other governing bodies of the Debtors shall expire automatically and each person serving as a director or manager of a Debtor shall be removed and shall be deemed to have resigned and cease to have any authority automatically from and after the Effective Date to the extent not expressly included in the list of directors of the New Board, and the New Board of each of the Reorganized Debtors shall be appointed in accordance with the Plan, the New Organizational Documents, and other constituent documents of each Reorganized Debtor. For the avoidance of doubt, except as otherwise provided in the Plan, the Confirmation Order, the Plan Supplement, or the New Organizational Documents, each Person serving as an officer of a Debtor shall continue to serve in such capacity for such Reorganized Debtor following the Effective Date.

The size and composition of the New Board shall be determined by the Debtors and the Ad Hoc Group (subject to the consent rights contained in the Restructuring Support Agreement) and shall be set out in the New Organizational Documents or the Stockholders Agreement.  The directors or managers for the other Reorganized Debtors shall be identified and selected by the New Board of Reorganized Enviva Inc. in accordance with the terms of the New Organizational Documents.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in advance of the Confirmation Hearing as part of the Plan Supplement, to the extent known at such time, the identity and affiliations of any Person proposed to serve on the New Board of Reorganized Enviva Inc. or as an officer of any of the Reorganized Debtors.  To the extent any such director, manager, or officer of the Reorganized Debtors is an Insider, the Debtors also shall disclose the nature of any compensation to be paid to such director, manager, or officer.  Each such officer and director or manager shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of Reorganized Enviva Inc. and each of the other Reorganized Debtors and applicable laws of the respective Reorganized Debtors' jurisdiction of formation.

M.    *Effectuating Documents*; *Further Transactions*

On, before, or after the Effective Date, the Reorganized Debtors, the Reorganized Debtors' officers, and the directors or members of the New Boards, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the New Organizational Documents, the Exit Facility Documents, and the Securities issued pursuant to the Plan, including the Reorganized Enviva Inc. Interests, and any and all other agreements, documents, securities, filings, and instruments relating to the foregoing, in the name of and on behalf of Reorganized Enviva Inc. or the other Reorganized Debtors, without the need for any approvals, authorization, or consents

except those expressly required pursuant to the Plan. The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under non-bankruptcy law.

N.     *Exemption from Certain Taxes and Fees*

Pursuant to, and to the fullest extent permitted by and subject to, section 1146(a) of the Bankruptcy Code, (a) any issuance, transfer, or exchange of a Security (including of the Reorganized Enviva Inc. Interests), (b) any grant of collateral under the Exit Facility, (c) any creation, modification, consolidation or recording of any Lien, mortgage, deed of trust, or other security interest, (d) any transfer (whether from a Debtor to a Reorganized Debtor or to any other Person) of property, (e) the making or assignment of any lease or sublease, (f) any Restructuring authorized by the Plan, or (g) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including (i) any merger agreements; (ii) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (iii) deeds; (iv) bills of sale; (v) assignments executed in connection with any Restructuring occurring under the Plan; or (vi) the other Definitive Documentation, in each case, pursuant to, in contemplation of, or in connection with, the Plan or the Confirmation Order, or (h) any transfer to the Litigation Trust or any issuances of Litigation Trust Interests, shall not, in each case, be subject to any document recording tax, personal property tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate federal, state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any instruments of transfer or other relevant documents without the payment of any such tax, recordation fee, or governmental assessment.

O.     *Global Settlement*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors, the Committee, the Ad Hoc Group and the RWE Committee (the "Settlement Parties") agreed to the terms of the Global Settlement, to be implemented through the Plan and to be approved by the Bankruptcy Court as a good faith compromise and settlement of Claims and controversies among the Settlement Parties.  The compromises and settlements included in the Global Settlement are each (a) integrated with and dependent on all other compromises and settlements contemplated in connection with the Plan and (b) necessary and integral to this Plan and the success of these Chapter 11 Cases.

1.     Allowance of RWE Claims

Pursuant to the terms of the Global Settlement, as of the Effective Date, the RWE Claims shall be Allowed as General Unsecured Claims at the following Debtor entities in the following amounts:  (i) an Allowed Non-Bond General Unsecured Claim against Enviva, LP in the amount of $337,570,504; (ii) an Allowed Non-Bond General Unsecured Claim against Enviva Pellets Waycross, LLC in the amount of $11,079,496; and (iii) an Allowed Non-Bond General Unsecured Claim against Enviva Inc. in the amount of $11,079,496; *provided* that, notwithstanding anything to the contrary in the Plan, the aggregate amount of Cash and value as of the Effective Date of

Litigation Trust Interests distributed pursuant to the Plan on account of the two Allowed Non-Bond General Unsecured Claims described in the preceding clauses (ii) and (iii) shall in no event exceed $11,079,496.

    2.    <u>Litigation Trust</u>

    a.    *Creation of the Litigation Trust*

The Debtors shall take all steps necessary to establish the Litigation Trust on the Effective Date in accordance with the Plan and the Litigation Trust Agreement.  On the Effective Date, the Debtors shall be deemed to transfer to the Litigation Trust all of their rights, title and interest in and to all of the Litigation Trust Assets free and clear of all Liens, charges, Claims, encumbrances, and interests, in accordance with section 1141 of the Bankruptcy Code.  Thereupon, the Debtors shall no longer have any interest in or with respect to the Litigation Trust Assets. Other than transferring the Litigation Trust Assets to the Litigation Trust, under no circumstances shall the Debtors or the Reorganized Debtors be required to contribute any additional assets or funds to the Litigation Trust or otherwise be obligated to bear any costs, expenses or liabilities in connection with the administration of the Litigation Trust other than as may be incurred by the Reorganized Debtors in carrying out their obligations in respect of the Reorganized Debtors Cooperation Provisions.

    b.    *Litigation Trustee, Litigation Trust Board  and Litigation Trust Agreement*

The Litigation Trust Agreement generally will provide for, among other things: (a) the transfer of the Litigation Trust Assets to the Litigation Trust; (b) governance of the Litigation Trust; (c) the mechanics for funding the payment of expenses of the Litigation Trust, the Litigation Trustee and the Litigation Trust Board; (d) the authority of the Litigation Trustee and the Litigation Trust Board (if any) to prosecute, settle, compromise, abandon, dismiss, or otherwise resolve any Excluded Claims; and (e) the procedures for distributing net proceeds of Excluded Claims, if any, and any other Litigation Trust Assets to the Litigation Trust Beneficiaries, in accordance with this Plan and in the Litigation Trust Agreement.

The Litigation Trust will be operated by the Litigation Trustee and governed by the Litigation Trustee and the Litigation Trust Board (if any).  The Litigation Trustee will be selected by the Committee with the reasonable consent of the Majority Consenting 2026 Noteholders and the RWE Committee (in each case, such consent not to be unreasonably withheld).  The Litigation Trustee shall report to a three-member board (the "<u>Litigation Trust Board</u>," and any member of such Litigation Trust Board, a "<u>Litigation Trust Board Member</u>"), comprised of (i) two (2) members appointed by the Majority Consenting 2026 Noteholders and (ii) one (1) member appointed by the Committee, which member shall be mutually agreeable to the RWE Committee; *provided* that the Majority Consenting 2026 Noteholders may, in their sole discretion, elect not to establish a Litigation Trust Board, in which case the Litigation Trustee shall be the sole governor of the Litigation Trust.  The Debtors will disclose in advance of the Confirmation Hearing as part of the Plan Supplement, to the extent known at such time, the identity and affiliations of any Person proposed to serve as the Litigation Trustee or a Litigation Trust Board Member.

Without exclusion to other governance terms of the Litigation Trust Agreement that may be agreed, the Litigation Trust Board (if any) shall have the authority (by majority vote), in consultation with the Litigation Trustee and counsel to the Litigation Trust, to compel a settlement that the Litigation Trust Board (if any) reasonably determines is in the best interests of the Litigation Trust Beneficiaries and does not frustrate the purpose of the Litigation Trust, or to veto a settlement that the Litigation Trust Board (if any) reasonably determines is not in the best interests of the Litigation Trust Beneficiaries or frustrates the purpose of the Litigation Trust, in each case, it being understood that in making any such determination, the Litigation Trust Board (if any) may reasonably (but not exclusively) consider the impact, if any, on the Reorganized Debtors of the continued pursuit of any Excluded Claim(s).

The Litigation Trustee shall be the exclusive administrator of the assets of the Litigation Trust for purposes of 31 U.S.C. § 3713(b), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the Litigation Trustee's duties under the Litigation Trust Agreement. The Litigation Trust Agreement shall include reasonable and customary provisions regarding the cooperation of the Reorganized Debtors with respect to providing documents and other information to the Litigation Trustee necessary for the Litigation Trust's investigation, commencement, pursuit, settlement and/or other resolution of the Excluded Claims, including, but not limited to, appropriate provisions regarding privileged documents and communications of the Debtors (including the Special Committee) (such provisions, the "<u>Reorganized Debtor Cooperation Provisions</u>"). Subject to the terms and conditions hereof, the powers, rights, and responsibilities of the Litigation Trustee and the Litigation Trust Board shall be specified in the Litigation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this Article IV.O. The Litigation Trustee shall hold and distribute plan distributions in accordance with the provisions of this Plan and the Litigation Trust Agreement. After the Effective Date, the Debtors and the Reorganized Debtors shall have no interest in the Litigation Trust Assets, except as set forth in the Litigation Trust Agreement.

The Litigation Trust may employ, without further order of the Court, professionals to assist in carrying out the duties of the Litigation Trustee and Litigation Trust Board hereunder and under the Litigation Trust Agreement, and may compensate and reimburse the reasonable fees and expenses of those professionals in accordance with the terms and conditions of the Litigation Trust Agreement. The Litigation Trust Agreement shall include reasonable and customary provisions that allow for indemnification of the Litigation Trustee and the Litigation Trust Board Members by the Litigation Trust. Any such indemnification shall be the sole responsibility of the Litigation Trust and payable solely from the Litigation Trust Assets and the proceeds thereof.

The Litigation Trust Board and the Litigation Trustee shall be compensated by the Litigation Trust on terms acceptable to the Committee, the Majority Consenting 2026 Noteholders and the RWE Committee, which terms shall be set forth in the Litigation Trust Agreement; *provided* that the Majority Consenting 2026 Noteholders may determine that members of the Litigation Trust Board shall receive no compensation. For the avoidance of doubt, Reorganized Enviva Inc. and the Reorganized Debtors shall not be responsible hereunder or under the Litigation Trust Agreement for any compensation, expense reimbursement claims or indemnity of the Litigation Trust, the Litigation Trustee and the Litigation Trust Board.

c.    *Excluded Claims*

Subject to the terms of this Article IV.O.2, the Litigation Trust Agreement and the authority of the Litigation Trust Board as provided for herein and therein (including the authority of the Litigation Trust Board with respect to settlement of Excluded Claims), the Litigation Trustee, on behalf of the Litigation Trust, shall have the exclusive right in respect of all Excluded Claims to institute, file, prosecute, enforce, settle, compromise, release, abandon, or withdraw any and all Excluded Claims without any further order of the Court or consent of any other party.

d.    *Litigation Trust Interests*

Any and all Litigation Trust Interests will not, and are not intended to, constitute "securities" and will not be registered pursuant to the Securities Act, as amended, or any state securities law. However, if it should be determined that the Litigation Trust Interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code shall apply to the Litigation Trust Interests. Any and all Litigation Trust Interests shall not be certificated, shall be subject to certain restrictions, and all Litigation Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law or as provided in the Litigation Trust Agreement. However, if it should be determined that Litigation Trust Interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code shall apply to the Litigation Trust Interests.

e.    *U.S. Federal Income Tax Treatment of the Litigation Trust for the Litigation Trust Assets*

i.    <u>Litigation Trust as a Liquidating Trust</u>

Except to the extent the Litigation Trust Agreement provides that all or any portion of the Litigation Trust is treated as one or more disputed ownership funds under Treasury Regulation Section 1.468B-9 for U.S. federal income tax purposes (which in certain circumstances may be taxable as a qualified settlement fund) or otherwise pursuant to the terms of the Litigation Trust Agreement, the Debtors expect that the Litigation Trust will be classified as a liquidating trust under Treasury Regulation Section 301.7701-4(d).

For U.S. federal income tax purposes, the Litigation Trust shall be treated as a grantor trust and the beneficiaries of the Litigation Trust shall be treated as the grantors of the Litigation Trust and the owners of the Litigation Trust Assets. Accordingly, for all U.S. federal income tax purposes, all parties shall treat the transfer of Litigation Trust Assets (net of any applicable liabilities) to the Litigation Trust for the benefit of the beneficiaries thereof as (a) a transfer by the Debtors of the Litigation Trust Assets (net of any applicable liabilities) directly to the beneficiaries of the Litigation Trust (to the extent of the value of their respective interests in the Litigation Trust Assets), followed by (b) the transfer of the Litigation Trust Assets (net of any applicable liabilities) by the beneficiaries of the Litigation Trust (to the extent of the value of their respective interests in the Litigation Trust Assets) to the Litigation Trust in exchange for the Litigation Trust Interests.

The Litigation Trustee shall be responsible for filing all U.S. federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto, for the Litigation Trust. The Litigation Trustee shall file all tax returns for the Litigation Trust as a grantor

trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article IV.O.3.  Within a reasonable time following the end of the taxable year, the Litigation Trustee shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their U.S. federal income tax returns.  The Litigation Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Litigation Trust with respect to each holder of a Litigation Trust Interest to the extent required by the Tax Code and applicable law.  A holder of a Litigation Trust Interest may incur a U.S. federal income tax liability with respect to its allocable share of the Litigation Trust's income even if the Litigation Trust does not make a concurrent distribution to such holder.

As soon as reasonably practicable after the Effective Date, the Litigation Trustee shall make a good faith valuation of the  Litigation Trust Assets, and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes.  The Litigation Trust Agreement will require consistent valuation by all parties, including the Debtors, the Reorganized Debtors, the Litigation Trustee and each holder of a Litigation Trust Interest, for all U.S. federal income tax and reporting purposes of any property held by the Litigation Trust.

The Litigation Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Trust that are required by any taxing authority.

The Litigation Trustee may request an expedited determination of the tax obligations of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

The Litigation Trust shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, local, or foreign taxing authority, and all distributions made by the Litigation Trust shall be subject to any such withholding and reporting requirements.

ii.    <u>Litigation Trust as a Disputed Ownership Fund</u>

To the extent all or any portion of the Litigation Trust is treated as one or more disputed ownership funds under Treasury Regulation Section 1.468B-9 (each of which will be taxable as a qualified settlement fund if all of the assets are passive investment assets for U.S. federal income tax purposes), any appropriate elections with respect thereto shall be made, and such treatment will also be applied to the extent possible for state and local tax purposes.  The Litigation Trustee will be responsible for payment of any taxes imposed on a disputed ownership fund.  Accordingly, distributions from a disputed ownership fund will be net of any taxes relating to the retention, disposition and distribution of assets in such disputed ownership fund.  In the event, and to the extent, any cash of a disputed ownership fund  is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such disputed ownership fund (including any income that may arise upon the distribution of the assets in such disputed ownership fund), assets of such disputed ownership fund may be sold to pay such taxes.

3.     <u>Release of Avoidance Actions Against Released Avoidance Action Parties</u>

Notwithstanding anything herein to the contrary, on the Effective Date, the Debtors, on behalf of themselves and their estates, shall release and waive all Avoidance Actions against each Released Avoidance Action Party.

P.     *Preservation of Causes of Action*

In accordance with section 1123(b)(3) of the Bankruptcy Code, but subject in all respects to Article VIII, the Reorganized Debtors shall retain and may enforce all rights to commence, pursue, litigate, settle or otherwise resolve, as appropriate, any and all Retained Causes of Action (other than Avoidance Actions against the Released Avoidance Action Parties, which shall be released on the Effective Date of the Plan and shall not be Retained Causes of Action) of the Debtors (provided that the Litigation Trust shall receive and retain all of the Debtors' and their Estates' rights to commence, pursue, litigate, settle or otherwise resolve, as appropriate, any and all Excluded Claims), whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Retained Causes of Action, as appropriate, shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue the Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors, and the Litigation Trust may pursue the Excluded Claims, as appropriate, in accordance with the best interests of the Litigation Trust Beneficiaries and as set forth herein.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Retained Causes of Action against it.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity, except as otherwise expressly provided in the Plan; *provided* that, as of the Effective Date, Debtors and the Reorganized Debtors shall have no such rights with respect to Excluded Claims in accordance with Article IV.O of the Plan.**  Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including pursuant to Article VIII hereof, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication or settlement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.O include any claim or Cause of Action released pursuant to Article VIII of the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor.  The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without

the consent or approval of any third party or further notice to or action, order, or approval of the Court.

Q.    *Management Incentive Plan*

On the Effective Date, the Reorganized Debtors will implement the Management Incentive Plan.  The Reorganized Debtors will reserve a pool of Reorganized Enviva Inc. Interests representing (on a fully diluted basis) up to 10.0% of the Reorganized Enviva Inc. Interests, 3.5% of which shall be allocated to the applicable recipients on the Effective Date in the form of restricted stock units to be granted at emergence, and up to 6.5% of which shall be allocated to the applicable recipients after the Effective Date in the discretion of the New Board (or its designees) in a form of equity-based awards to be determined by the New Board or as set forth in the Plan Supplement, if applicable.  Awards under the Management Incentive Plan may be granted to the Reorganized Debtors' officers, directors, management, employees, and consultants.  Subject to the foregoing, the New Board (or its designees) will administer and determine in its discretion the additional terms of the Management Incentive Plan and awards granted thereunder after the Effective Date, including the recipient(s), allocation, structure, granting, and vesting of applicable awards, including determining performance metrics.

The Confirmation Order shall authorize the Reorganized Debtors to adopt and enter into the Management Incentive Plan, on the terms set forth herein.  The equity-based awards granted under the Management Incentive Plan shall dilute all of the Reorganized Enviva Inc. Interests.

R.    *Employment Agreements*

All employment, confidentiality, severance, non-competition agreements, and offer letters with respect to the Debtors' employees, retirees, consultants, and contractors, in each case, are deemed to be, and shall be treated as, Executory Contracts under the Plan and, on the Effective Date, shall be assumed and, as applicable, assigned to the applicable Reorganized Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code, whether or not specifically included in the Plan Supplement, except (i) as otherwise ordered by the Court prior to the Effective Date, or (ii) to the extent such agreements are included on the Schedule of Rejected Executory Contracts and Unexpired Leases, subject to the consent of the Majority Consenting 2026 Noteholders, *provided* that, for the avoidance of doubt, nothing herein shall result in the assumption of any indemnification obligations that may be asserted by any RWE Excluded Persons or Preference Excluded Persons.

S.    *Employee and Retiree Benefits*

All compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, consultants, and contractors, including all savings plans, retirement plans, healthcare plans, disability plans, incentive plans, severance agreements and related payments, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under the Plan and, on the Effective Date, shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code, whether or not specifically included in the Plan Supplement, except to the extent such agreements are included on the Schedule of Rejected Executory Contracts and Unexpired Leases, subject to the consent of the

Majority Consenting 2026 Noteholders. To the extent required under section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

T.    *Payment of the Restructuring Expenses*

The accrued and unpaid Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date (whether incurred prepetition or postpetition) shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the DIP Orders, without any requirement to File a fee application with the Court, without the need for time detail, and without any requirement for review or approval by the Court or any other party. All Restructuring Expenses to be paid on the Effective Date shall be estimated in good faith prior to and as of the Effective Date and such estimates, together with corresponding invoices, shall be delivered to the Debtors and the other applicable parties for notice and review in the same manner as set forth in paragraph 16 of the Final DIP Order; *provided* that such estimates shall not be considered to be admissions or limitations with respect to such Restructuring Expenses. In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due, pre- and post-Effective Date Restructuring Expenses, when due and payable in the ordinary course, whether incurred before, on or after the Effective Date, including for the avoidance of doubt and without limitation, all post-Effective Date Restructuring Expenses incurred by the Ad Hoc Group Advisors for work related to implementation of the Plan. For the avoidance of doubt, any and all DIP Obligations that are also Restructuring Expenses are entitled to all rights and protections of other DIP Obligations. Any Restructuring Expenses invoiced after the Effective Date shall be paid promptly, but no later than 10 Business Days from receiving an invoice.

U.    *Closing of Chapter 11 Cases*

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all but one of their Chapter 11 Cases. The Reorganized Debtors may designate one Chapter 11 Case to remain open, and all contested matters and adversary proceedings relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Case. The Reorganized Debtors may change the name of the remaining Debtor and case caption of the remaining open Chapter 11 Case as desired, in the Reorganized Debtors' sole discretion.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be assumed by and assigned to the applicable Reorganized Debtor or its designated assignees in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code

without the need for any further notice to or action, order, or approval of the Court, regardless of whether such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, other than:  (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, subject to the consent of the Majority Consenting 2026 Noteholders; (2) those that have been previously rejected or assumed by a Final Order or otherwise in accordance with the Assumption and Rejection Procedures Order; (3) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; or (5) those that have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto. The assumption or rejection of all Executory Contracts or Unexpired Leases in the Chapter 11 Cases or in the Plan shall be determined by the Debtors, with the consent of the Majority Consenting 2026 Noteholders.

Entry of the Confirmation Order shall constitute the Court's order approving the assumptions, assumptions and assignments, or rejections, as applicable, of Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court.  Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date. Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases at any time through and including 60 Business Days after the Effective Date.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" (whether direct or indirect) or "anti-assignment" provision, or similar provision implicated by a conversion of the form of entity of the Debtors or their Affiliates) then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease, assess or change any fee, or exercise any default-related rights with respect thereto.

B.     *Pass-Through*

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the operation of the Reorganized Debtors' business, but not otherwise addressed as a Claim or Interest or assumed under Article V.A of the Plan, including non-exclusive or exclusive patent, trademark, copyright, or other intellectual property licenses, and other contracts not assumable

under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of the Reorganized Debtors, *provided* that notwithstanding anything to the contrary herein, any Claim thereunder shall be treated in accordance with the distribution provisions of the Plan.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Counterparties to Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases shall be promptly served with a notice of rejection of Executory Contracts and Unexpired Leases substantially in the form approved by the Court pursuant to the Disclosure Statement Order.  Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Court by the Rejection Damages Bar Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed by the Rejection Damages Bar Date will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or any Proof of Claim to the contrary.**  Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be considered Non-Bond General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan and the Confirmation Order shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date with such Cure Claim being $0.00 if no amount is listed in the Cure Notice, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree in satisfaction of any Cure Claim (the "Cure Amount").  In the event of a dispute regarding (1) the amount of the Cure Claim, (2) the ability of the Debtors or the Reorganized Debtors, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment.  Notwithstanding the foregoing, to the extent the dispute relates solely to any Cure Claims, the applicable Debtor (or Reorganized Debtor) may (x) resolve any such dispute following the Effective Date without any further order or approval of the Court or (y) assume the Executory Contract or Unexpired Lease prior to the resolution of any such dispute; *provided*, *however*, that, in the case of (y) the Debtor reserves Cash on the Effective Date in an amount sufficient to pay the full amount reasonably asserted as the required Cure Claim by the contract counterparty; *provided*, *further*, *however*, that following resolution of any such

dispute, the Debtor shall have the right to reject any Executory Contract or Unexpired Lease within 30 days of such resolution.

At least twenty-one (21) days prior to the Confirmation Hearing, the Debtors shall provide for notices of proposed assumption or assumption and assignment and proposed Cure Amounts to be sent to applicable counterparties and for procedures for objecting thereto and resolution of disputes by the Court.  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related Cure Amount must be Filed, served, and actually received by the Debtors by no later than fourteen days after the service of notice of assumption on the affected counterparties.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or Cure Amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and Cure Amount.**  To the extent an Executory Contract or Unexpired Lease is deemed assumed pursuant to Article V.A hereof, but the subject counterparty did not receive notice of such assumption by the Reorganized Debtors, such counterparty shall be afforded the ability to dispute whether such assumption satisfies the requirements of section 365(b) of the Bankruptcy Code; *provided*, that to the extent the Reorganized Debtors and the subject counterparty are unable to consensually resolve any such dispute or the Court determines a Cure Amount in an adverse manner to the Reorganized Debtors, the Reorganized Debtors may deem such Executory Contract or Unexpired Lease to be rejected as of the Effective Date.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assumed and assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment, as applicable.  Any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease shall be deemed to have consented to the assumption or assumption and assignment, as applicable, of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to:  (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (2) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control of any Debtor under such contract or lease to the extent contemplated by the Plan; (3) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor or Reorganized Debtor under such Executory Contract or Unexpired Lease; or (4) create or impose a Lien upon any property or asset of any Debtor or Reorganized Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption or assumption and assignment of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption or assumption and assignment in accordance with the terms set forth in this Article V.D, shall forever be barred and enjoined from objecting to the proposed assumption or assumption and assignment or to the validity of such assumption or assumption and assignment (including with respect to any Cure Amounts or the provision of

66

adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

E.       *Indemnification Obligations*

Except (i) as expressly provided by the Confirmation Order or the Plan, (ii) to the extent an applicable agreement is included on the Schedule of Rejected Executory Contracts and Unexpired Leases, or (iii) as otherwise determined by the Debtors, consistent with applicable law, all indemnification provisions in place as of the Effective Date, including any tail policies (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise), for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, in each case solely in their capacity as such, as applicable, shall be (1) deemed Executory Contracts, (2) Reinstated or otherwise assumed (or assumed and assigned) by the Reorganized Debtors, (3) remain intact and irrevocable, and (4) survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date; *provided* that the immediately preceding subclauses (1)–(4) shall not apply to any obligation of any Debtor to indemnify, hold harmless, or any obligation of similar import that (x) may be assertable by (a) any Entity that is not a Released Party, (b) any RWE Excluded Persons or (c) any Preference Excluded Persons, or (y) is on account of conduct determined in a Final Order as constituting fraud, willful misconduct, gross negligence, self-dealing, or breach of the duty of loyalty.  For the avoidance of doubt, subject to the occurrence of the Effective Date, the indemnification obligations in the proviso of the immediately preceding sentence shall be deemed rejected by the Debtors or the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code, whether or not included on the Schedule of Rejected Executory Contracts and Unexpired Leases.

F.       *Insurance Policies*

Unless listed on the Schedule of Rejected Executory Contracts and Unexpired Leases, all of the Debtors' insurance policies, including D&O Liability Insurance Policies, and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, and such insurance policies and any agreements, documents, and instruments related thereto shall revest in the Reorganized Debtors.

Notwithstanding anything to the contrary contained in this Plan or Confirmation Order, nothing shall alter, modify, amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Liability Insurance Policies, including the coverage for defense and indemnity under any of the D&O Liability Insurance Policies which shall remain available to all individuals insured thereunder regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date; *provided* that, for the avoidance of doubt, nothing in the preceding clause shall create any new or additional obligation of any Debtor

to indemnify, hold harmless, or create any other obligation of similar import, with respect to any Entity.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all members, directors, managers, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such members, directors, managers, and officers remain in such positions after the Effective Date.

G.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan or by separate order of the Court, each Executory Contract or Unexpired Lease that is assumed or assumed and assigned shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan or other order of the Court.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases and actions taken in accordance therewith (1) shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims against any Debtor that may arise in connection therewith, (2) are not and do not create postpetition contracts or leases, (3) do not elevate to administrative expense priority any Claims of the counterparties to such Executory Contracts and Unexpired Leases against any of the Debtors, and (4) do not entitle any Entity to a Claim against any of the Debtors under any section of the Bankruptcy Code on account of the difference between the terms of any prepetition Executory Contracts or Unexpired Leases and subsequent modifications, amendments, supplements, or restatements.

H.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, Schedule of Rejected Executory Contracts and Unexpired Leases or any Cure Notice, nor anything contained in the Plan or the Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.

Except as explicitly provided in this Plan, nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the

Debtors or the Reorganized Debtors under any executory or non-executory contract or unexpired or expired lease.

Nothing in this Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

If, prior to the Effective Date, there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, the Reorganized Debtors shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such Executory Contract or Unexpired Lease *nunc pro tunc* to the Confirmation Date.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

J.      *Contracts and Leases Entered into After the Petition Date*

Unless otherwise specifically provided for in an order of the Court, the Plan, or the Confirmation Order, any contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) that have not expired or otherwise been terminated, canceled, or rejected as of the date of Confirmation will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim, including any portion of a Claim that is an Allowed Claim notwithstanding that other portions of such Claim are a Disputed Claim, shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in this Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such

distributions are delivered on or at any time after the Effective Date.  The Debtors shall have no obligation to recognize any transfer of Claims against any Debtor or privately held Interests occurring on or after the Distribution Record Date.  Distributions to Holders of Claims or Interests related to public securities shall be made to such Holders in exchange for such securities, which shall be deemed canceled as of the Effective Date.

Notwithstanding the foregoing, the timing of distribution(s) to the Litigation Trust Beneficiaries shall be determined in the Litigation Trust Agreement.

B.     *Plan Administrator*

Distributions under the Plan shall be made by the Plan Administrator.  The Debtors, Reorganized Debtors, and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other Security for the performance of their duties unless otherwise ordered by the Court.  However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash by the Debtors.  To the extent the Plan Administrator is any party other than the Reorganized Debtors, the appointment and removal of the Plan Administrator shall be in the discretion of the Reorganized Debtors.

C.     *Rights and Powers of the Plan Administrator*

The Plan Administrator shall be empowered to: (1) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (2) make all distributions contemplated hereby; (3) oversee and make distributions from the Disputed Claims Reserve; (4) employ professionals to represent it with respect to its responsibilities; and (5) exercise such other powers as may be vested in the Plan Administrator by order of the Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof.

Except as otherwise ordered by the Court, the amount of any reasonable fees and expenses (including in respect of tax obligations paid or payable by the Plan Administrator) incurred by the Plan Administrator on or after the Effective Date, and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Plan Administrator, in each case directly related to distributions under the Plan and its responsibilities hereunder, shall be subject to agreement between the Plan Administrator and the Reorganized Debtors (in their discretion), and the Reorganized Debtors are authorized to pay such fees and expenses in Cash in the ordinary course of business.  In the event that the Reorganized Debtors and a Plan Administrator are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Court.

D.     *Delivery of Distributions and Undeliverable or Unclaimed Property*

1.     Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims and Interests maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any of the

Claims and Interests after the Distribution Record Date. The Debtors, the Reorganized Debtors, and the Plan Administrator, as applicable, shall have no obligation to recognize any transfer of any Claims or Interests occurring after the close of business on the Distribution Record Date. In addition, with respect to payment of any Cure Claims or disputes over any Cure Claims, neither the Debtors nor the Plan Administrator shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim or a Cure Claim.

Notwithstanding anything in this Plan to the contrary, in connection with any distribution to be effected through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors and the Reorganized Debtors, as applicable, shall be entitled to recognize and deal for all purposes under this Plan with Holders of Reorganized Enviva Inc. Interests to the extent consistent with the customary practices of DTC used in connection with such distributions. All Reorganized Enviva Inc. Interests to be distributed under this Plan shall be issued in the names of such Holders or their nominees in accordance with DTC's book-entry exchange procedures to the extent that the holders of Reorganized Enviva Inc. Interests held their Enviva Inc. Interests through the facilities of DTC; *provided* that such Reorganized Enviva Inc. Interests are eligible to be held and cleared through DTC's book-entry system; *provided*, *further*, *however*, to the extent the Reorganized Enviva Inc. Interests or a portion thereof are not eligible for distribution through the facilities of DTC in accordance with DTC's customary practices or because of applicable securities laws, Reorganized Enviva Inc. shall take all such reasonable actions as may be required to cause the distributions of the Reorganized Enviva Inc. Interests under this Plan.

2.  <u>Delivery of Distributions in General</u>

Except as otherwise provided herein, distributions to Holders of Allowed Claims or Interests shall be made to the Holders of record as of the Distribution Record Date by the Debtors, the Reorganized Debtors or the Litigation Trustee, as applicable, as follows: (1) to the signatory set forth on the last Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address) or, to the extent a notice of transfer of Claim has been filed under Bankruptcy Rule 3001 and has not been timely objected to, the transferee set forth in such notice; (2) at the address set forth in any written notice of address changes delivered to the Reorganized Debtors after the Effective Date; (3) at the address reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtors have not received a written notice of a change of address; or (4) to the extent the distribution cannot otherwise be made, to any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Reorganized Debtors and the Plan Administrator shall not incur any liability whatsoever on account of any distributions made in accordance with the Plan. The Litigation Trustee and the Litigation Trust Board shall not incur any liability whatsoever on account of any distributions from the Litigation Trust, except as provided in the Litigation Trust Agreement.

Notwithstanding any provision of the Plan to the contrary, all distributions to Holders of Allowed Senior Secured Credit Facility Claims and Holders of Bond General Unsecured Claims shall be deemed completed when made to or at the direction of the applicable Prepetition Agents, which shall be deemed to be the Holder of such Claims for purposes of distributions to be made under this Plan. The applicable Prepetition Agents shall hold or direct such distributions for the benefit of the Holders of the foregoing Allowed Senior Secured Credit Facility Claims or Bond General Unsecured Claims. The Prepetition Agents shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct. If any of the Prepetition Agents are unable to make, or consents to the Reorganized Debtors making, such distributions, the Reorganized Debtors or the Plan Administrator, with the applicable Prepetition Agent's cooperation, shall make such distribution. For the avoidance of doubt, all distributions referenced in this paragraph shall be subject to any exercise of the Prepetition Agents' rights, claims, causes of action, and interests as against any money or property distributable to the holders of Allowed Senior Secured Credit Facility Claims and Bond General Unsecured Claims, including the right to exercise the Prepetition Agents' priority rights to payment or charging liens against such distributions.

At the option of the Plan Administrator, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, or credit card, or as otherwise required or provided in applicable agreements.

3.      Minimum Distributions

No fractional shares of Reorganized Enviva Inc. Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to the Plan on account of an Allowed Claim or Interest, as applicable, would otherwise result in the issuance of a number of shares of Reorganized Enviva Inc. Interests that is not a whole number, the actual distribution of shares of Reorganized Enviva Inc. Interests shall be rounded as follows: (a) fractions of one-half or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of Reorganized Enviva Inc. Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

Holders of Allowed Claims entitled to distributions of $50.00 or less or one share of Reorganized Enviva Inc. Interests shall not receive distributions, and each Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder shall be forever barred pursuant to Article VIII from asserting that Claim against the Reorganized Debtors or their property. Fractional amounts of Reorganized Enviva Inc. Interests that are not distributed in accordance herewith shall be returned to, and ownership thereof shall vest in, the Reorganized Debtors.

4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Plan Administrator, the Debtors, the Reorganized Debtors or the Litigation Trust, as applicable, shall have determined the then-current address of

such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to and vest in the applicable Reorganized Debtor automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial, state, or other jurisdiction escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred. The Reorganized Debtors, the Plan Administrator, and the Litigation Trustee (or, as applicable, the Litigation Trust Board) shall have no obligation to attempt to locate any Holder of an Allowed Claim other than through the Reorganized Debtors' and Plan Administrators' review of the Court's filings and the Debtors' books and records.

E.      *Registration or Private Placement Exemption*

Except as otherwise set forth immediately below, the New Securities issued under Article III of the Plan (other than any Unsubscribed Shares, the Reorganized Enviva Inc. Interests issued on account of the Rights Offering Backstop Commitment Premium, and the MIP Equity) will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance upon section 1145 of the Bankruptcy Code (or pursuant to another available exemption from registration under the Securities Act).  Such Reorganized Enviva Inc. Interests issued under the Plan in reliance upon section 1145 of the Bankruptcy Code are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities. Pursuant to section 1145 of the Bankruptcy Code, such Reorganized Enviva Inc. Interests issued under the Plan in reliance upon section 1145 of the Bankruptcy Code may be sold without registration under the Securities Act by the recipients thereof, subject to: (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (2) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents and the Stockholders Agreement (if any); and (3) any other applicable regulatory approvals and requirements.

Under Rule 144(a)(1), an "affiliate" of Reorganized Enviva Inc. is a person that directly, or indirectly controls, or is controlled by, or is under common control with Reorganized Enviva Inc. Affiliates (under Rule 144(a)(1)) of Reorganized Enviva Inc. that receive Reorganized Enviva Inc. Interests that will be subject to the requirements of Rule 144 with respect to control securities, including volume limitations, current public information requirements, manner of sale requirements, and filing requirements.  **The Reorganized Enviva Inc. Interests issued to Holders of Claims or Interests in exchange for such Claims or Interests, shall be issued in reliance on section 1145 of the Bankruptcy Code.  The MIP Equity will be issued pursuant to a registration statement or an available exemption from registration under the Securities Act and other applicable law.**

**The Unsubscribed Shares and the Reorganized Enviva Inc. Interests issued on account of the Rights Offering Backstop Commitment Premium will be treated as issued pursuant to Section 4(a)(2) of the Securities Act and/or Regulation D thereunder, will be "restricted securities" subject to restrictions on resale, and may be resold, exchanged, assigned, or otherwise transferred only pursuant to an effective registration statement, under Rule 144 or another available exemption from registration under the federal and state securities laws.**

The availability of the exemption under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to the occurrence of the Effective Date.

On the Effective Date, the ownership of the Reorganized Enviva Inc. Interests shall be reflected through the facilities of DTC (subject to Article VI.D.1 of this Plan and the last sentence of this paragraph).  None of the Debtors, the Reorganized Debtors, or any other Person shall be required to provide any further evidence other than the Plan or the Confirmation Order to any Entity (including, for the avoidance of doubt, any transfer agent for the Reorganized Enviva Inc. Interests or DTC) with respect to the treatment of the Reorganized Enviva Inc. Interests under applicable securities laws.  DTC and any transfer agent shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the Reorganized Enviva Inc. Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.  If and to the extent that the Reorganized Enviva Inc. Interests are eligible to be held through DTC's book-entry system, the Debtors may elect to distribute all Reorganized Enviva Inc. Interests through the facilities of DTC, whether or not the applicable Holders held their Claims against or Interests in the Debtors through the facilities of DTC prior to the Effective Date.

Notwithstanding anything to the contrary in this Plan, no Person (including DTC and any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by this Plan, including whether the Reorganized Enviva Inc. Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services or validly issued, fully paid, and nonassessable.

F.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, the Reorganized Debtors, or the Plan Administrator as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.  Any amounts withheld

pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  The distributing party may require a Holder of an Allowed Claim or Interest to complete and return an IRS Form W-8 or W-9, as applicable to each such Holder, and any other applicable tax forms or other information, documentation or certifications reasonably necessary for the distributing party to comply with all applicable withholding and information reporting requirements imposed on the disbursing party by any Governmental Unit. Notwithstanding any other provisions of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.

G.    *Allocations*

The aggregate consideration to be distributed to each Holder of an Allowed Claim will be allocated first to the principal amount of such Allowed Claim, with any excess allocated to unpaid interest that accrued on such Allowed Claims, if any.  Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes.

H.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if any, if and when such Disputed Claim becomes an Allowed Claim.

I.    *Setoffs and Recoupment*

Except as specifically provided in the Plan, the Final DIP Order or any other Final Order, the Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, set off against, or recoup from, any Allowed Claim against a Debtor or any claim, right, or Cause of Action of any nature whatsoever that the applicable Debtor or Reorganized Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim against a Debtor hereunder shall constitute a waiver, abandonment, or release by the applicable Debtor or Reorganized Debtor of any such claim, right or Cause of Action it may have against the Holder of such Allowed Claim.

J.    *Claims Paid or Payable by Third Parties*

1.    <u>Claims Paid by Third Parties</u>

The Debtors or the Reorganized Debtors, as applicable, shall reduce an Allowed Claim, and such Claim shall be Disallowed (in whole or in part, as applicable) without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party

that is not a Debtor or Reorganized Debtor; *provided* that the Debtors or the Reorganized Debtors, as applicable, shall provide 21 days' notice to the Holder prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Court.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to Debtors or the Reorganized Debtors, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the Petition Date.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.     Claims Payable by Insurers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection having to be Filed and without any further notice to or action, order, or approval of the Court; *provided* that the Debtors or the Reorganized Debtors, as applicable, shall provide 21 days' notice to the Holder of such Claim prior to any disallowance of such Claim during which period the Holder may object to such expungement, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Court.

3.     Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.     *Allowance of Claims*

On or after the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses its predecessor Debtor had with respect to any Claim immediately prior to the Effective Date.  The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy law.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before

the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan, the Final DIP Order or the Bankruptcy Code, or the Court has entered any other Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim; *provided* that, notwithstanding anything to the contrary herein or in the Confirmation Order, the rights of the Debtors under paragraph 12 of the Bar Date Order shall be fully preserved and the allowance of all Claims (other than the Senior Secured Credit Facility Claims, the 2026 Notes Claims, the RWE Claims, the Bond Green Bonds Claims and the Epes Green Bonds Claims) may be modified, rescinded, or otherwise disputed, except to the extent such Claims are allowed by the Final DIP Order or any other Final Order.  All settlements of Claims approved prior to the Effective Date pursuant to a Final Order of the Court, pursuant to Bankruptcy Rule 9019, or otherwise shall be binding on all parties.

B.      *Claims and Interests Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors and the Plan Administrator, by order of the Court, shall together have the sole authority to: (1) File, withdraw, or litigate to judgment objections to Claims or Interests; (2) object to, compromise, and settle any Disputed Claims (including Allowing any such settled amounts) without supervision or approval of the Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, and the guidelines and requirements of the U.S. Trustee, other than those restrictions expressly imposed by the Plan or the Confirmation Order; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court.  In any action or proceeding to determine the existence, validity, or amount of any Disputed Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) are preserved as if the Chapter 11 Cases had not been commenced.

C.      *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of the Final DIP Order or any other Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Court.  In the event that the Court estimates any Disputed Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before 14 days after the date

on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

D.     *Adjustment to Claims or Interests Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court. Additionally, any Claim or Interest that is duplicative or redundant with another Claim or Interest against the same Debtor may be adjusted or expunged on the Claims Register at the direction of the Reorganized Debtors without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court. Notwithstanding the foregoing, the Debtors shall provide any Holder of a Claim or Interest subject to such adjustment or expungement pursuant to this section with fourteen (14) days' notice prior to the Claim or Interest being adjusted or expunged from the Claims Register as the result of a Claim or Interest being paid, satisfied, amended or superseded.

E.     *Reservation of Rights with Respect to Claims*

The failure of the Debtors, the Reorganized Debtors, or the Plan Administrator to object to any Claim shall not be construed as an admission to the amount, priority, character, or validity of any such Claim, any portion thereof, or any other claim related thereto, whether or not such claim is asserted in any currently pending or subsequently initiated proceeding, and shall be without prejudice to the right of the Debtors, the Reorganized Debtors, the Plan Administrator, or any other party in interest to contest, challenge the validity of, or otherwise defend against, any such Claim in the Court or non-bankruptcy forum at any time prior to or after the Effective Date. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Reorganized Debtors and the Plan Administrator, on behalf of the Reorganized Debtors, shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim, including the Retained Causes of Action.

F.     *Disputed Claims Reserve*

On or before the Effective Date, the Reorganized Debtors, with the consent of the Majority Consenting 2026 Noteholders, and, as applicable, the Plan Administrator, shall establish the Disputed Claims Reserve, which shall be administered by the Reorganized Debtors or the Plan Administrator, as applicable. In establishing the Disputed Claims Reserve, the Reorganized Debtors and, as applicable, the Plan Administrator, shall use the Face Amount of Disputed Claims as set forth in this Plan, the Debtors' good faith estimates of such Disputed Claims, or an order of the Court estimating such Disputed Claims, as applicable.

On or prior to the Effective Date, the Disputed Claims Reserve shall be funded with the Disputed Claims Reserve Amount to be held in trust for the benefit of the Holders of Disputed Claims, as applicable, which are ultimately determined to be Allowed after the Effective Date.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim from the Disputed Claims Reserve Amount.  The Reorganized Debtors and the Plan Administrator shall have the authority to make distributions to Holders whose Disputed Claims ultimately become Allowed Claims on such dates that, in the judgment of the Plan Administrator or the Reorganized Debtors, as applicable, provide Holders of such Claims with payments as quickly as reasonably practicable while limiting the costs incurred in the distribution process, and with respect to any Disputed Claim, only after the date that an order or judgment of a court of competent jurisdiction allowing any Disputed Claim becomes a Final Order.  At such time, the Reorganized Debtors or the Plan Administrator, as applicable, shall provide to the Holder of such Claim Cash in an amount equal to the distribution to which such Holder is entitled to receive under the Plan as of the Effective Date, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable nonbankruptcy law; *provided*, that such distribution shall not exceed the amount retained with respect to such Claim in connection with the Disputed Claims Reserve.  As Disputed Claims are Allowed, Disallowed, or otherwise resolved, the Reorganized Debtors or the Plan Administrator, as applicable, shall make adjustments to the Disputed Claims Reserve (but the Reorganized Debtors or the Plan Administrator shall not be required to increase the Disputed Claims Reserve Amount at any time from and after the Effective Date).  Any Cash to account for Disputed Claims that remains after all Disputed Claims are adjudicated in accordance with Article VII shall be promptly distributed Pro Rata to Holders of Allowed Non-Bond General Unsecured Claims asserted against such Debtor Pro Rata, or on such earlier date(s) as may be determined by the Reorganized Debtors or the Plan Administrator, as applicable.

Each Holder of a Disputed Claim, as applicable, that ultimately becomes an Allowed Claim will have recourse only to the assets attributable to the Disputed Claims Reserve and not to any other property of the Reorganized Debtors or any property previously distributed on account of any Allowed Claim or Allowed Interest.  The rights of Holders of Allowed Claims to receive distributions from the Disputed Claims Reserve in accordance with the Plan will be non-transferable, except with respect to a transfer by will, the laws of descent, and distribution or operations of law.

Subject to definitive guidance from the IRS or a court of competent jurisdiction in the United States to the contrary, or the receipt of a determination by the IRS, the Plan Administrator shall treat any Cash and other property held in the Disputed Claims Reserve as held by a disputed ownership fund governed by Treasury Regulation Section 1.468B-9 (which will be taxable as a qualified settlement fund if all assets of such Disputed Claims Reserve are passive investment assets for U.S. federal income tax purposes) and to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including, without limitation, the Debtors, the Reorganized Debtors, the Plan Administrator, and the Holders of Disputed Claims) will be required to report for tax purposes consistently with the foregoing (whether in audits, tax returns or otherwise) unless required to take a different position pursuant to a "determination" within the meaning of Section 1313 of the Internal Revenue Code.  The Plan

Administrator shall be responsible for payment, out of the assets of the Disputed Claims Reserve, of any taxes imposed on the Disputed Claims Reserve or its assets.  In the event, and to the extent any Cash in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets in the Disputed Claims Reserve, assets of the Disputed Claims Reserve may be sold to pay such taxes.

G.     *Time to File Objections to Claims*

Any objections to Claims, which, prior to the Effective Date, may be Filed by any party, shall be Filed on or before the Claims Objection Deadline.

H.     *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

I.     *Amendments to Claims*

On or after the applicable deadline set forth in the Bar Date Order, except as provided in the Plan or the Confirmation Order, a Proof of Claim or Interest may not be Filed or amended without the prior authorization of the Court or the Plan Administrator (and, solely with respect to any Proof of Claim or Interest relating to any RWE Obligor, the Plan Administrator shall consult with the RWE Committee with respect to the Claim or Interest in question), and any such new or amended Proof of Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Court.

J.     *No Distributions Pending Allowance*

No payment or distribution provided under the Plan shall be made to the extent that any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as set forth in Article VII, unless and until such Disputed Claim becomes an Allowed Claim; *provided* that any portion of a Claim that is an Allowed Claim shall receive the payment or distribution

provided under the Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

K.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100% of such Allowed Claim plus interest, if applicable.  For the avoidance of doubt, if a Holder of a Non-Bond General Unsecured Claim receives 100% recovery on account of its Pro Rata share of the distribution under Article III.B.6.b(i), it shall not be entitled to any distributions from the Litigation Trust, and such distributions that would otherwise be distributable under the Litigation Trust Agreement will be redistributed to other Holders of Allowed Non-Bond General Unsecured Claims on a ratable basis in accordance with the applicable GUC Distribution Pool Allocation and Litigation Trust Agreement.

L.      *Non-Bond General Unsecured Claims Reconciliation Process*

Notwithstanding anything in the Plan to the contrary, the Debtors and, on and after the Effective Date, the Reorganized Debtors and the Plan Administrator, as applicable, shall:  (i) use commercially reasonable efforts to reconcile and resolve (including through prosecuting objections to allowance) any and all Disputed Non-Bond General Unsecured Claims against any of the RWE Obligors, (ii) upon reasonable request from the RWE Committee, provide the RWE Committee with information and updates regarding the Non-Bond General Unsecured Claims reconciliation process from time to time, and (iii) with respect to any Non-Bond General Unsecured Claim against any of the RWE Obligors in an amount exceeding $1,000,000, (a) promptly deliver to the legal and financial advisors to the RWE Committee all non-privileged information which they may reasonably request from time to time in connection with the reconciliation of such Non-Bond General Unsecured Claim, subject to the execution of reasonably acceptable confidentiality agreements by such advisors, and (b) not enter into any settlement contemplating the allowance of such Non-Bond General Unsecured Claim without providing notice to Milbank LLP or a successor identified to the Debtors (or Reorganized Debtors or Plan Administrator, as applicable) as counsel to the RWE Committee, regarding the economic terms of such settlement no less than ten (10) days before entering into such settlement and, to the extent requested, consulting with counsel to the RWE Committee during such 10-day period.  In addition, the Debtors and, on and after the Effective Date, the Reorganized Debtors and the Plan Administrator, as applicable, shall provide the RWE Committee with no less than seven (7) days' notice before filing any pleading seeking to convert or reclassify any Claim into a Non-Bond General Unsecured Claim against any of the RWE Obligors.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, which distributions, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan (including the Global Settlement), and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith global and integrated compromise and settlement of all Claims and Interests and controversies relating to the contractual, legal, and subordination rights that any Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest, as well as any and all actual and potential disputes resolved pursuant to the Plan.

The entry of the Confirmation Order shall constitute the Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable and is binding upon all creditors and all other parties in interest pursuant to section 1141(a) of the Bankruptcy Code.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) and subject to 1141(d)(6) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors) and Causes of Action against and Interests in any Debtors of any nature whatsoever (including any interest accrued on such Claims or Interests from and after the Petition Date), whether known or unknown, and any liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, Causes of Action, and liabilities that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim against or Interest in any Debtor that existed immediately before or on account of the Filing of the Chapter 11 Cases on

the Effective Date shall be deemed cured (and no longer continuing) as of the Effective Date; *provided* that, for the avoidance of doubt, the foregoing shall not constitute a discharge pursuant to section 1141(d) of the Bankruptcy Code with respect to any non-Debtor Affiliate. The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in any Debtor subject to the Effective Date occurring.

C.    *Release of Liens*

**Except as otherwise specifically provided in the Plan, the Plan Supplement, the Confirmation Order, the Exit Facility Documents (including in connection with any express written amendment of any mortgage, deed of trust, Lien, pledge, or other security interest under the Exit Facility Documents), or in any other Definitive Documentation, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors.**

D.    *Releases by the Debtors and Estates*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the Effective Date, each Released Party is unconditionally, irrevocably, generally, individually, and collectively released, acquitted, and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable by or on behalf of the Debtors, their Estates, or the Reorganized Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert (whether individually or collectively), or on behalf of the Holder of any Claim or Interest or other Person or Entity, that the Debtors, their Estates, and the Reorganized Debtors (whether individually or collectively) ever had, now have, or thereafter can, shall or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, operation, or ownership of any Debtor), their Estates, the Debtors' in- or out-of-court restructuring efforts, the Restructuring, the Debtors' intercompany transactions, the Senior Secured Credit Facility Documents, the DIP Orders (and any payments or transfers in connection therewith), Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support**

Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Definitive Documentation, the DIP Facility, the DIP Facility Documents, the Exit Facility, the Exit Facility Commitment Letter, the Exit Facility Documents, the Management Incentive Plan, the Global Settlement, the New Organizational Documents, the Reorganized Enviva Inc. Interests, the Rights Offering, the Rights Offering Backstop Agreement, the DIP Tranche A Equity Participation, the 2026 Notes Indenture, the Bond Green Bonds Indenture, the Epes Green Bonds Indenture, the Senior Secured Credit Agreement, the Prepetition Senior Secured NMTC Source Loan Agreement, the Prepetition Senior Secured NMTC QLICI Loan Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the DIP Facility Documents, the Exit Facility, the Exit Facility Commitment Letter, the Exit Facility Documents, the Management Incentive Plan, the Global Settlement, the New Organizational Documents, the Reorganized Enviva Inc. Interests, the DIP Tranche A Equity Participation, the Rights Offering, the Rights Offering Backstop Agreement, the 2026 Notes Indenture, the Bond Green Bonds Indenture, the Epes Green Bonds Indenture, the Senior Secured Credit Agreement, the Prepetition Senior Secured NMTC Source Loan Agreement, the Prepetition Senior Secured NMTC QLICI Loan Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Overbid Process, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from, or related or relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.D do not waive, release, modify, discharge, limit, or impair (1) any post-Effective Date obligations of any Person or Entity related to the Restructuring, including those obligations and commitments set forth in this Plan, the Restructuring Support Agreement, the Exit Facility Commitment Letter, the Rights Offering Backstop Agreement, or other document, instruments, or agreement executed to implement the Plan or as may be Reinstated in connection therewith, as applicable; (2) the rights of any Person to enforce the contracts, instruments, and other agreements or documents delivered under or in connection with the Restructuring, including this Plan, the Restructuring Support Agreement, the Exit Facility Commitment Letter, and the Rights Offering Backstop Agreement (including, in each case, if any obligation is breached, the underlying cause or scope of damages arising from, in connection with, or as a result of such breach); (3) any Causes of Action specifically identified on the exhibits to the Schedule of Retained Causes of Action; (4) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (5) any Cause of Action against a Holder of a Disputed Claim, to the extent such Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan; and (6) any

Excluded Claims; and (ii) nothing in this Article VIII.D shall, nor shall it be deemed to, release any Released Party from any claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's knowing and intentional fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.D, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) essential to the Confirmation of the Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the claims and Causes of Action released by such releases; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Debtors or their Estates asserting any claim or Cause of Action released pursuant to such releases.

E.    *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party hereby releases and discharges each Debtor, Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, their Estates, or the Reorganized Debtors, whether individually or collectively), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, that such Releasing Party or its estate, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert (whether individually or collectively or on behalf of the Holder of any Claim or Interest or other person), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, operation, or ownership of any Debtor), their Estates, the Debtors' in- or out-of-court restructuring efforts, the Restructuring, the Debtors' intercompany transactions, the Senior Secured Credit Facility Documents, the DIP Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Definitive Documentation, the DIP Facility, the DIP Facility Documents, the Exit Facility, the Exit Facility Commitment Letter, the Exit Facility Documents, the Management Incentive Plan, the Global Settlement, the New Organizational Documents, the Reorganized Enviva Inc. Interests, the DIP Tranche A Equity Participation, the Rights Offering, the Rights Offering Backstop Agreement, the 2026 Notes Indenture, the Bond

85

Green Bonds Indenture, the Epes Green Bonds Indenture, the Senior Secured Credit Agreement, the Prepetition Senior Secured NMTC Source Loan Agreement, the Prepetition Senior Secured NMTC QLICI Loan Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the DIP Facility Documents, the Exit Facility, the Exit Facility Commitment Letter, the Exit Facility Documents, the New Organizational Documents, the Reorganized Enviva Inc. Interests, the DIP Tranche A Equity Participation, the Rights Offering, the Rights Offering Backstop Agreement, the 2026 Notes Indenture, the Bond Green Bonds Indenture, the Epes Green Bonds Indenture, the Senior Secured Credit Agreement, the Prepetition Senior Secured NMTC Source Loan Agreement, the Prepetition Senior Secured NMTC QLICI Loan Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Overbid Process, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from, or related or relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.E do not release (1) any post-Effective Date obligations of any Person or Entity under the Plan, including those obligations and commitments set forth in this Plan, the Restructuring Support Agreement, the Exit Facility Commitment Letter, and the Rights Offering Backstop Agreement, or other document, instrument, or agreement executed to implement the Plan or as may be Reinstated in connection therewith, as applicable; (2) any Cause of Action specifically identified on the exhibits to the Schedule of Retained Causes of Action; (3) any Excluded Claims; and (4) any lender under the Senior Secured Credit Agreement of any indemnification or contribution claims of the Senior Secured Credit Facility Agent specifically provided for in such agreement; and (ii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's knowing and intentional fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) essential to the Confirmation of the Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the claims and Causes of Action released by such releases; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable and reasonable; (7) given and made after due notice and opportunity for hearing;

and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.

F.    *Exculpation*

From and after the Petition Date through the Effective Date, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Debtors (including the management, operation, or ownership of any Debtor), their Estates, the Chapter 11 Cases (including the administration thereof), the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Rights Offering Backstop Agreement, the DIP Tranche A Equity Participation, the Rights Offering, the Exit Facility, the Exit Facility Documents, the Exit Facility Commitment Letter, the New Organizational Documents, the DIP Facility, the DIP Facility Documents, the issuance of the Reorganized Enviva Inc. Interests, the Management Incentive Plan, the Global Settlement, the Disclosure Statement, the Plan, the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Overbid Process, the solicitation of votes with respect to this Plan, or the Restructuring, or any related contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the DIP Tranche A Equity Participation, the Rights Offering, the Rights Offering Backstop Agreement, the Exit Facility, the Exit Facility Documents, the Exit Facility Commitment Letter, the New Organizational Documents, the DIP Facility, the DIP Facility Documents, the issuance of the Reorganized Enviva Inc. Interests, the Management Incentive Plan, the Global Settlement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the Confirmation Order, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other related agreement, act or omission, transaction, event or other occurrence related to the foregoing and taking place on or before the Effective Date, except for (i) any Excluded Claims and (ii) claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, knowing and intentional fraud, or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Confirmation Order shall provide that the Exculpated Parties (to the extent applicable) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of

87

acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting the Exculpated Parties from liability.

G.    *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.D, Article VIII.E, or Article VIII.F hereof, without the Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals,

**and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.**

H.    *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom or which the Reorganized Debtors have been associated, solely because any Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.    *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.    *Setoff*

In no event shall any Holder of an Allowed Claim be entitled to setoff any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder has Filed a motion with the Court requesting the authority to perform such setoff on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff.

K.    *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights.  Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

L.    *Reimbursement or Contribution*

If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-

contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date*

It shall be a condition to the occurrence of the Effective Date that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.B hereof):

1.    the Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect, and no default shall exist thereunder that has not been otherwise cured or waived;

2.    the Rights Offering Backstop Agreement shall not have been terminated and shall remain in full force and effect and no default shall exist thereunder that has not been otherwise cured or waived;

3.    the Confirmation Order, in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, the DIP Facility Agreement and the Global Settlement Stipulation, including the consent rights contained therein and herein, shall have been entered and shall be a Final Order that has not been stayed, modified, reversed, amended, dismissed, reconsidered or vacated on appeal;

4.    the Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but prior to the Effective Date, shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, the DIP Facility Agreement, the Global Settlement Stipulation, including the consent rights contained therein and herein;

5.    the Exit Facility Documents shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the Exit Facility shall have been waived or satisfied in accordance with the terms thereof, and the closing of the Exit Facility shall be deemed to occur concurrently with the occurrence of the Effective Date;

6.    the Litigation Trust Agreement shall have been executed and in full force and effect, and shall be in form and substance acceptable to the Committee, the Majority Consenting 2026 Noteholders and the RWE Committee, and the Debtors shall have funded $1 million into the Litigation Trust;

7.    on the Effective Date, any and all Claims against Debtor Enviva, LP under Proof of Claim No. 782 shall have been released and no new Proof of Claim or liability scheduled against any RWE Obligor based in whole or in part on Claims set forth in Proof of Claim No. 782 shall

have been scheduled, authorized or stipulated by the Debtors, or otherwise allowed and approved for Filing by the Court;

8.      no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a Final Order making it illegal or otherwise restricting, preventing, or prohibiting the consummation of the Restructuring, the Restructuring Support Agreement, or any of the Definitive Documentation contemplated thereby;

9.      all other Definitive Documentation shall have been (or shall, contemporaneously with the occurrence of the Effective Date, be) effected or be executed and in full force and effect, and shall be in form and substance consistent with the terms and conditions of the Restructuring Support Agreement, including the consent rights contained therein, and all conditions precedent contained in the Definitive Documentation shall have been satisfied or waived in accordance with the terms thereof, except with respect to such conditions that by their terms shall be satisfied substantially contemporaneously with or after Consummation of the Plan;

10.      all conditions precedent to the issuance of the Reorganized Enviva Inc. Interests, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

11.      all required governmental and third-party approvals, authorizations and consents, including Court approval, necessary in connection with the transactions provided for in the Plan shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect, and all applicable waiting periods shall have expired without any action having been taken by any competent authority that would restrain or prevent such transactions;

12.      all documents and agreements necessary to implement the Plan and the Restructuring shall have been (a) tendered for delivery and (b) effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements (other than any conditions related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements (including the Exit Facility Documents);

13.      The Debtors or the Reorganized Debtors, as applicable, shall have obtained directors' and officers' insurance policies and entered into indemnification agreements or similar arrangements for the New Board, which shall be, in each case, effective on or by the Effective Date;

14.      all Restructuring Expenses shall have been paid in full; and

15.      the Professional Fee Escrow Account shall have been funded in the Professional Fee Reserve Amount and all Allowed Professional Fee Claims approved by the Court shall have been paid in full.

B.      *Waiver of Conditions*

The conditions precedent to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article IX may be waived by mutual agreement of the Debtors and the Majority Consenting 2026 Noteholders in writing (email being sufficient) without notice, leave, or order of

the Court or any formal action other than proceedings to confirm or consummate the Plan; *provided*, that the condition precedent set forth in A.7 of this Article IX shall not be waived without the consent of the RWE Committee, the Majority Consenting 2026 Noteholders, the Committee, and the Debtors; *provided, further*, that the conditions precedent set forth in (i) sections A.3, A.4 (as it relates to the Committee's applicable consent rights), A.6, A.14 (with respect to Committee Expenses), and A.15 in this Article IX may not be waived without the consent (not to be unreasonably withheld, conditioned, or delayed) of the Committee and (ii) sections A.3, A.4 (as it relates to the RWE Committee's applicable consent rights) and A.6 in this Article IX may not be waived without the consent (not to be unreasonably withheld, conditioned, or delayed) of the RWE Committee.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.      *Effect of Non-Occurrence of Conditions to the Confirmation Date or the Effective Date*

If the Confirmation Date and/or the Effective Date do(es) not occur, the Plan shall be null and void in all respects and nothing contained in the Plan, the Disclosure Statement, the Exit Facility Commitment Letter, the Rights Offering Backstop Agreement, or the Restructuring Support Agreement shall:  (1) constitute a waiver or release of any Claims by or Claims or Liens against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors or any other Entity; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect; or (4) be used by the Debtors or any Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments or claims.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

A.      *Modification and Amendments*

Subject to the limitations contained herein and in the Global Settlement Stipulation, the Debtors reserve the right, with the consent of the Majority Consenting 2026 Noteholders, to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the restrictions on modifications set forth in the Plan, and the terms of the Restructuring Support Agreement, the Debtors expressly reserve their rights, subject to and in accordance with the terms of the Restructuring Support Agreement, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan; *provided* that any such modifications shall be subject to the consent rights of the Committee and RWE Committee as set forth in the Global Settlement Stipulation.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right, subject to and in accordance with the terms of the Restructuring Support Agreement and the Global Settlement Stipulation, to revoke or withdraw the Plan with respect to any or all Debtors prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation do not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; or (d) be used by the Debtors or any other Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims. For the avoidance of doubt, the foregoing sentence shall not be construed to limit or modify the rights of the Restructuring Support Parties pursuant to the Restructuring Support Agreement or the Settlement Parties under the Global Settlement Stipulation.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, arising in, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections relating to any of the foregoing;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, any Cure Claims, or any other matter related to such Executory

Contract or Unexpired Lease; (b) the Debtors or the Reorganized Debtors, as applicable, amending, modifying, or supplementing, pursuant to Article V hereof, the Schedule of Assumed Executory Contracts and Unexpired Leases or the Schedule of Rejected Executory Contracts and Unexpired Leases; and (c) any dispute regarding whether a contract or lease is or was executory, terminated, or unexpired;

4.      ensure that distributions to Holders of Allowed Claims or Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and grant or deny any applications involving a Debtor or the Estates that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor;

7.      adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and the Restructuring Support Agreement, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Restructuring Support Agreement;

9.      enter and enforce any order for the sale of property pursuant to sections 363 or 1123 of the Bankruptcy Code, as may be applicable;

10.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan or the Restructuring Support Agreement;

11.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.J.1 hereof;

14.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters or disputes that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or Disclosure Statement; *provided* that the Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein, including any Restructuring;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine matters concerning state, local, and U.S. federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     hear and determine matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code and section 4(a)(2) of, and Regulation D under, the Securities Act;

21.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

22.     hear and determine matters concerning the implementation of the Management Incentive Plan;

23.     enforce all orders, judgments, and rulings previously entered by the Court;

24.     hear any other matter not inconsistent with the Bankruptcy Code;

25.     enter an order or final decree concluding or closing the Chapter 11 Cases; and

26.     enforce the injunction, release, and exculpation provisions set forth in Article VIII hereof.

Nothing herein limits the jurisdiction of the Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases,

including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Organizational Documents and any documents related thereto shall be governed by the jurisdictional provisions therein and the Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement.  The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect unless the Effective Date occurs.  Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests.

D.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor,

administrator, successor or assign, affiliate, officer, director, manager, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.     *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or Reorganized Debtors shall be served on:

| | |
|---|---|
| Debtors or the Reorganized Debtors | Enviva Inc. 7272 Wisconsin Avenue, Suite 1800 Bethesda, MD 20814 Attn: Jason Paral |
| Counsel to the Debtors | Paul, Weiss, Rifkind, Wharton & Garrison LLP 1285 Avenue of the Americas New York, NY 10019 Attn: Paul M. Basta          Andrew M. Parlen          Michael J. Colarossi |
| | and |
| | Kutak Rock LLP 1021 East Cary Street, Suite 810 Richmond, VA 23219 Attn: Michael A. Condyles          Peter J. Barrett          Jeremy S. Williams |
| Counsel to the Ad Hoc Group | Davis Polk & Wardwell, LLP 450 Lexington Avenue New York, NY 10017 Attn: Damian S. Schaible          David Schiff          Joseph W. Brown |
| | and |
| | McGuireWoods LLP 800 East Canal Street Richmond, VA 23219 Attn: Dion W. Hayes          K. Elizabeth Sieg |

F.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan, the Confirmation Order, or a Final Order, all injunctions or stays arising under or in effect during the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the later of the Effective Date and the termination date set forth in the order providing for such injunction or stay.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.    *Entire Agreement*

Except as otherwise indicated, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan, Plan Supplement, and Confirmation Order.

H.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://www.veritaglobal.net/enviva or the Court's website at https://www.vaeb.uscourts.gov.

I.    *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided* that, subject to and in accordance with the Restructuring Support Agreement and the Global Settlement Stipulation, and consistent with the consent rights set forth therein, any such alteration or interpretation shall be reasonably acceptable to the Debtors, the applicable Restructuring Support Parties, the Committee and the RWE Committee, and otherwise consistent with the terms and conditions of the Restructuring Support Agreement and the Global Settlement Stipulation, including the consent rights therein.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and, subject to and in accordance with the consent rights set forth in the Restructuring Support Agreement and the Global Settlement Stipulation, may not be deleted or modified without the Debtors', the applicable Restructuring Support Parties', the Committee's and the RWE Committee's consent rights, as applicable; and (3) nonseverable and mutually dependent.

J.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Restructuring Support Parties, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals nor the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

K.      *Dissolution of the Committees*

On the Effective Date, the Committee shall dissolve automatically, and the current and former members thereof and each Professional retained thereby shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, *provided*, *however*, that the Committee will remain in existence after the Effective Date solely for the purposes of (i) the preparation, filing and prosecution of all final fee applications for all Professionals for the Committee and addressing any matters concerning Professional Fee Claims; (ii) the resolution of any appeal, motion for reconsideration or similar litigation related to the Confirmation Order; and (iii) the resolution of any appeals to which the Committee is a party, including taking any necessary steps to dismiss the DIP Appeal; (collectively, the "Post Effective Date Committee Matters").  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the Committee or any other statutory committee after the Effective Date other than any reasonable fees and expenses incurred in connection with the Post Effective Date Committee Matters, which fees and expenses shall be paid by the Reorganized Debtors without any further notice or application to, action, order or approval of the Bankruptcy Court.

L.      *Request for Expedited Determination of Taxes*

The Debtors or the Reorganized Debtors, as the case may be, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

M.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Cases.

N.      *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

O.    *Waiver or Estoppel*

Except with respect to the Restructuring Support Agreement and the parties thereto, each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement or the Debtors' or Reorganized Debtors' right to enter into settlements was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Court or the Noticing and Claims Agent prior to the Confirmation Date.

P.    *Deemed Acts*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of the Plan and the Confirmation Order.

\* \* \* \*

[*Remainder of page intentionally left blank*]

Respectfully submitted as of the date set forth below,

Dated:      October 4, 2024
            Richmond, Virginia

                                    Enviva Inc.
                                    on behalf of itself and all other Debtors


                                    _/s/ Glenn T. Nunziata_____
                                    Glenn T. Nunziata
                                    Interim Chief Executive Officer & Chief Financial
                                    Officer

**Exhibit A**

**GUC Distribution Pool Allocation**

| Debtor | Allocation Percentage |
|---|---|
| Enviva Aircraft Holdings Corp. | 0.000000% |
| Enviva Development Finance Company, LLC | 0.000000% |
| Enviva Energy Services, LLC | 0.000000% |
| Enviva GP, LLC | 0.000000% |
| Enviva Holdings GP, LLC | 0.000000% |
| Enviva Holdings, LP | 0.520151% |
| Enviva Inc. | 26.093476% |
| Enviva, LP | 66.780026% |
| Enviva Management Company, LLC | 0.013023% |
| Enviva MLP International Holdings, LLC | 0.000000% |
| Enviva Partners Finance Corp. | 0.000000% |
| Enviva Pellets Bond, LLC | 0.010000% |
| Enviva Pellets Epes Finance Company, LLC | 0.000000% |
| Enviva Pellets Epes Holdings, LLC | 0.123283% |
| Enviva Pellets Epes, LLC | 1.074059% |
| Enviva Pellets Greenwood, LLC | 0.041612% |
| Enviva Pellets, LLC | 3.991211% |
| Enviva Pellets Lucedale, LLC | 0.403493% |
| Enviva Pellets Waycross, LLC | 0.929665% |
| Enviva Port of Pascagoula, LLC | 0.010000% |
| Enviva Shipping Holdings, LLC | 0.010000% |

## **Exhibit 2**

**Confirmation Notice**

Paul M. Basta (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone:      (212) 373-3000
Facsimile:      (212) 757-3990

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

*Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENVIVA INC., *et al*., | ) | Case No. 24-10453 (BFK) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ENVIVA INC. AND ITS DEBTOR AFFILIATES AND (II) OCCURRENCE OF EFFECTIVE DATE

**PLEASE TAKE NOTICE** that on November [•], 2024, the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") confirmed the *Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* (with all supplements and exhibits thereto, as it has been and may be amended, altered, modified, revised, or supplemented from time to time, the "Plan"), which is attached as **Exhibit A** to the *Order Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Enviva Inc. and Its Debtor Affiliates* [Docket No. [•]] (the "Confirmation Order").[2]

---

[1]    Due to the large number of Debtors in these jointly administered Chapter 11 Cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/enviva. The location of the Debtors' corporate headquarters is:  7500 Old Georgetown Road, Suite 1400, Bethesda, MD 20814.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Confirmation Order or the Plan, as applicable.

**PLEASE TAKE FURTHER NOTICE** that on **[•], 2024**, the Effective Date of the Plan occurred.  All conditions precedent to the Effective Date set forth in <u>Article IX.A</u> of the Plan have been satisfied or waived in accordance with the Plan and the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Plan, the Confirmation Order, or any other order of the Court, all requests for payment of an Administrative Claim must be Filed and served on the Reorganized Debtors, (a) with respect to Administrative Expense Claims other than Professional Fee Claims or that arise in the ordinary course of the Debtors' business, no later than 30 days after the Effective Date, (b) with respect to Professional Fee Claims, no later than 45 days after the Effective Date and (c) with respect to Administrative Claims arising under Unexpired Leases that are rejected pursuant to the Plan (including, without limitation, any Executory Contract or Unexpired Lease listed on the Schedule of Rejected Executory Contracts and Unexpired Leases), no later than 30 days after service of this notice (the "<u>Administrative Claims Bar Date</u>").  **Holders of Administrative Expense Claims that are required to file and serve a request for payment of such administrative expense claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such administrative claims against the Debtors, the Reorganized Debtors, or the property of any of the foregoing, and such administrative claims shall be deemed compromised, settled, released, and discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any notice to or action, order, or approval of the Court or any other entity.**

**PLEASE TAKE FURTHER NOTICE** that, pursuant to <u>Article V</u> of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be assumed by and assigned to the applicable Reorganized Debtor or its designated assignees in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code without the need for any further notice to or action, order, or approval of the Court, regardless of whether such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, subject to the consent of the Majority Consenting 2026 Noteholders; (2) those that have been previously rejected or assumed by a Final Order or otherwise in accordance with the Assumption and Rejection Procedures Order; (3) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; or (5) those that have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to <u>Article V</u> of the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases at any time through and including 60 Business Days after the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that the release, exculpation, and injunction provisions set forth in, among others, <u>Articles VIII.D</u>, <u>VIII.E</u>, <u>VIII.F</u>, and <u>VIII.G</u> of the Plan, are

immediately effective as of the Effective Date and binding on all Persons and Entities to the extent set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Plan, the Plan Documents, and the Confirmation Order are immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan and the Confirmation Order, each Entity acquiring property under the Plan or the Confirmation Order, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, any Holder of a Claim or Interest, and each of their respective heirs, executors, administrators, successors, and assigns, whether or not: (a) the Claim or Interest is Impaired under the Plan; (b) such Holder has accepted or rejected the Plan; (c) such Holder has failed to vote to accept or reject the Plan; (d) such Holder is entitled to a distribution under the Plan; (e) such Holder will receive or retain any property or interests in property under the Plan; or (f) such Holder has filed a Proof of Claim in the Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that copies of Confirmation Order, the Plan, the Plan Supplement, and related documents can be viewed and/or obtained by: (a) accessing the Court's website at https://ecf.vaeb.uscourts.gov/, or (b) from the Debtors' Claims Agent, Verita Global, at https://www.veritaglobal.net/enviva or by calling (888) 249-2695 (USA or Canada) or (310) 751-2601 (International).  Note that a PACER password is needed to access documents on the Court's website.

Please take further notice that *your rights may be affected*.  **You should read the Plan and the Confirmation Order carefully and discuss it with your attorney, if you have one.  If you do not have an attorney, you may wish to consult with one.**

---

**IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE, PLEASE CONTACT VERITA GLOBAL BY CALLING (888) 249-2695 (USA AND CANADA) OR (310) 751-2601 (INTERNATIONAL).  YOU MAY ACCESS DOCUMENTS AND CASE INFORMATION AT: HTTPS://WWW.VERITAGLOBAL.NET/ENVIVA**

---

Dated:  November 12, 2024
Alexandria, Virginia

Respectfully submitted,

*/s/ Jeremy S. Williams*
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Adolyn C. Wyatt (VA 97746)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:    (804) 644-1700
Facsimile:     (804) 783-6192

- and -

Paul M. Basta (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:    (212) 373-3000
Facsimile:     (212) 757-3990

*Counsel to the Debtors and
Debtors in Possession*